IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES ARMY CORPS OF ENGINEERS, )<br>*et al.*, )<br>)<br>Defendants. ) | Civil Action No.<br>1:06-cv-01268-HHK |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
UNOPPOSED MOTION OF THE CITY OF NEWPORT NEWS, VIRGINIA
TO INTERVENE AS A DEFENDANT**

Paragraph 1 of the Complaint describes this action and the City of Newport News' interest in intervening to defend it:

> This action challenges the issuance of a permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, by the United States Army Corps of Engineers (the "Corps") to the City of Newport News ("Newport News") to construct a 1,526-acre reservoir in King William County, Virginia ("King William Reservoir" or "Reservoir").

Newport News seeks to intervene as a defendant. Counsel for Newport News have discussed its motion to intervene with opposing counsel, as required by LCvR 7(m). The defendants have authorized us to state that they consent to the granting of the motion, and the plaintiffs have authorized us to state that they will not oppose the motion.

**STATEMENT OF THE CASE**

Newport News' motion to intervene comes at a very early stage of the case. The Complaint was filed on July 17, 2006. No other pleadings or other papers

have been filed. The United States Attorney reportedly was served on July 17, 2006, and the defendants' Answer is not due until September 15, 2006. Rule 12(a)(3)(A), Fed.R.Civ.P. The timeliness requirement of Fed. R. Civ. P. 24 therefore is satisfied.

### The King William Reservoir Project

As stated above, this suit challenges a Corps of Engineers permit to construct the 1,526-acre King William Reservoir (KWR) in King William County, Virginia. The KWR project is a regional undertaking by an unincorporated coalition of local governments on the Lower York-James Peninsula (or Northside Hampton Roads) – the Cities of Newport News and Williamsburg and the County of York – known as the Regional Raw Water Study Group (RRWSG). Newport News is the "lead agency" for the RRWSG, which has no corporate existence and no authority to obtain permits or to build and operate a public water supply system.

In Virginia, "cities have the duty to protect their water supplies, and the Commonwealth's policy is to encourage every reasonable exercise of this obligation." *Alliance to Save the Mattaponi v. Commonwealth*, 270 Va. 423, 443, 621 S.E.2d 78, 89 (2005), *cert. denied*, No. 05-1141 (U.S. June 12, 2006). Virginia Health Department regulations require water suppliers to begin expansion plans when demands reach 80 percent of a system's rated capacity. 12 Va. Admin. Code § 5-59-520. By 1987, the demand on Newport News' water system exceeded 80 percent of its capacity, and Newport News, Williamsburg, and York County formed the RRWSG to identify and develop a source to meet their joint water needs. The population served by the RRWSG jurisdictions is expected to increase from slightly

2

more than 400,000 people in 1990 to more than 600,000 by the year 2040. The KWR project was designed to meet this expanding regional public water supply need.[1]

The project has been "on the drawing board" for nearly 20 years. The permit at issue in this case is the last major regulatory permit required for its implementation. Other major permits have been issued by the Virginia State Water Control Board (SWCB) and the Virginia Marine Resources Commission (VMRC). Newport News and the SWCB have successfully defended challenges to the SWCB permit. *See Alliance to Save the Mattaponi v. Commonwealth of Virginia, supra*, 270 Va. 423, 621 S.E.2d 78.[2] There was no judicial challenge to the VMRC permit.

Beginning in 1987, the RRWSG conducted numerous detailed studies, in cooperation with the Corps of Engineers and other federal and state agencies, to determine the extent of its need and the best alternative to satisfy it. Those studies identified a combination of alternatives, including the King William Reservoir, as the best available project to make up the deficit.

The Reservoir will be created by a dam across Cohoke Creek, a small, non-navigable tributary of the Pamunkey River, between the Pamunkey and Mattaponi Rivers. The Reservoir will be supplied primarily by water "skimmed" from the

---

[1] James City County also is a participant in the regional effort, though not formally a "member" of the RRWSG. The Newport News water service area includes the Cities of Hampton and Poquoson. "Host" jurisdictions King William and New Kent Counties also will receive water from the project.

[2] Earlier decisions in the Alliance's and other challenges to the State Water Control Board permit are reported at *Alliance to Save the Mattaponi v. Commonwealth*, 30 Va. App. 690, 519 S.E.2d 413 (1999); *Mattaponi Indian Tribe v. Commonwealth*, 31 Va. App. 472, 524 S.E.2d 167 (2000); *Mattaponi Indian Tribe v. Commonwealth*, 261 Va. 366, 541 S.E.2d 920 (2001); and *Mattaponi Indian Tribe v. Commonwealth*, 43 Va. App. 690, 601 S.E.2d 667 (2004). Newport News was a party to all of the cited cases.

Mattaponi River during times of high rainfall runoff. A maximum of 75 million gallons of water per day (mgd) (but an average of less than 20 mgd) will be withdrawn from the River and pumped to the Reservoir through a 1.5 mile pipeline. Up to 50 mgd will be pumped out of the Reservoir, as needed, through an 11.7 mile pipeline to Newport News' existing Diascund Creek Reservoir in New Kent County, and from there to terminal reservoirs serving water treatment plants in the Lower Peninsula. The Project is estimated to cost $130,000,000.

### The Alliance's claims

This action challenges the Corps' issuance of a permit to Newport News under Section 404 of the Clean Water Act, 33 U.S.C. § 1344. Plaintiffs claim that the Corps' action violates substantive and procedural provisions of the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, the National Environmental Policy Act, 42 U.S.C. §§ 4321, *et seq.*, and the Chesapeake 2000 Agreement, and that it is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

### ARGUMENT

A motion to intervene is governed by Rule 7 of this Court's Local Rules and Rule 24 of the Federal Rules of Civil Procedure. *See, e.g., Hodgson v. United Mine Workers*, 473 F.2d 118 (D.C. Cir. 1972). Rule 24 provides for two types of intervention:

> (a) **Intervention of Right**.
>
> Upon timely application anyone shall be permitted to intervene in an action … when the applicant claims an interest relating to

> the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> (b) **Permissive Intervention**.
>
> Upon timely application, anyone may be permitted to intervene in an action … when an applicant's claim or defense and the main action have a question of law or fact in common…. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Motions to intervene "are usually evaluated on the basis of well pleaded matters in the motion, the complaint, and any responses of opponents to intervention." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981); *see also Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (concluding that a court "must accept as true the non-conclusory allegations of [a] motion [to intervene]"); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 917 (8th Cir. 1962) (concluding that all well-pleaded nonconclusory allegations must be taken as true, and that a court may take notice of uncontroverted facts in pleadings and affidavits opposing intervention).

### A. Newport News is entitled to intervene as a matter of right.

In general, courts "construe Rule 24(a) liberally in favor of potential intervenors." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (*Southwest Center*); *see also United States v. Exxon Corp.*, 773 F.2d 1240, 1306 (Temp. Emer. Ct. App. 1985) (Rule 24(a), "in the absence of exceptional circumstances, permits only 'housekeeping' limitations or limitations for efficiency on intervention of right"); *Kozak v. Wells*, 278 F.2d 104, 112 (8th Cir. 1960)

(intervention of right should be liberally construed to avoid multiplicity of suits and settle all related controversies in one action; upon application for intervention under Rule 24(a), doubts are to be resolved in favor of the intervenors).

Intervention must be permitted under Rule 24(a) if the moving party can show (1) that it has an interest in the property or transaction that is the subject of the action, (2) that disposition of the action may practically impair or impede its ability to protect that interest, and (3) that the interest is not adequately represented by existing parties. *Nuesse v. Camp*, 385 F.2d 694, 699 (D.C. Cir. 1967). Newport News satisfies all three conditions here.

First, Newport News holds the Section 404 permit that is the subject of this litigation. An intervenor's interest in a governmental benefit is sufficient to entitle it to intervene. *See, e.g., Kleissler v. United States Forest Service*, 157 F.3d 964, 973-74 (3d Cir. 1998) (intervention by right should have been granted to timber companies and governmental bodies that had direct, substantial interests in a suit to prevent the issuance of logging permits by the Forest Service); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 842 (10th Cir. 1996) (commercial wildlife photographer had sufficient interest to intervene in suit against the United States Fish and Wildlife Service and other government agencies alleging that they had failed to follow proper procedures and lacked sufficient data to list an owl as threatened under the Endangered Species Act).

Second, the disposition of this action "may as a practical matter impair or impede" Newport News' ability to protect its interests. "[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he

should, as a general rule, be entitled to intervene." *Southwest Center*, 268 F.3d at 822 (citing Fed. R. Civ. P. 24 Advisory Committee Notes). In *Southwest Center* the Ninth Circuit found that any relief revoking all or part of a city's incidental take permit would adversely affect a conservation plan and thereby would adversely affect applicant construction companies' projects that were approved pursuant to that plan. The court therefore held that there was a potential impairment of the companies' interests and directed the district court to grant their motion to intervene.

The City's interest in constructing the King William Reservoir is inextricably tied to a valid Section 404 permit. If the relief sought by the plaintiffs were granted, the City would not be able to move forward with construction of the Reservoir. The City therefore satisfies the second part of the intervention of right test.

Finally, Newport News' interests are not or may not be adequately protected by any of the existing parties in this litigation. "The burden of establishing this lack of representation is minimal," *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Asso.*, 646 F.2d 117, 122 (4th Cir. 1981), and the movant need show only "that representation of its interests may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). *See also Nuesse*, 385 F.2d at 702 (discussing the need for a liberal application of the test for adequate representation in favor of permitting intervention).

A federal regulatory agency has a duty to represent broad public interests that may not coincide with the private, local or parochial interests of its permittee. Several courts considering motions to intervene have recognized the often disparate objectives of a federal government agency and the private and local government

7

parties they regulate. The Third Circuit in *Kleissler*, for example, discussed the need to allow third parties to represent their own interests when a governmental action, such as the Corps' permitting action at issue in the present case, is being contested. The plaintiffs, individuals and an environmental organization, claimed that the United States Forest Service had violated statutory requirements in approving two projects that permitted substantial tree cutting in the Allegheny National Forest. The plaintiffs requested an injunction barring implementation of the proposed measures, halting all logging activity, and suspending or canceling contracts for logging in the forest. Several timber companies and a number of municipalities and school districts located near the Forest moved to intervene. The Court of Appeals found that the federal regulatory agency defendant could not adequately represent the interests of either the private or municipal parties seeking intervention and that "[t]he straightforward business interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies." *Id.* at 973-74. It also noted:

> The expansion of standing by statute and case law has enabled "private attorneys general" and "public interest" groups to call governmental agencies to task in litigation. These efforts, though often well-intentioned, sometimes concentrate on narrow issues that are of significant concern to plaintiffs but have an immediate and deleterious effect on other individuals and entities. Rather than barring access to these parties, Rule 24 allows the court to give them the opportunity to present their positions.

*Id.* at 971. *See also, e.g., Conservation Law Found., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) ("The Secretary's judgments are necessarily constrained by his view of the public welfare. While the Secretary may well believe that what best serves the public welfare will also best serve the overall interests of fishermen, … the

8

fisherman may see their own interest in a different, perhaps more parochial light"); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The government must represent the broad public interest, not just the economic concerns of the timber industry. Given the minimal burden on the movants [timber trade associations] to satisfy this requirement, we conclude that the government's representation of the intervenors' interest is inadequate"); *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("The Forest Service is required to represent a broader view than the more narrow, parochial interests of the State of Arizona and Apache County…. Accordingly, [the State and the County] have satisfied the minimal showing required that the Forest Service may not adequately represent their interests in defending against the issuance of a broad injunction").

Newport News seeks to defend its Section 404 permit. Its interest is in furthering the construction of a project it has been pursuing for nearly 20 years. The plaintiffs' interests are adverse, and the defendants cannot or at least may not adequately represent Newport News' interests. Thus, all three requirements of Rule 24(a) are satisfied and Newport News is entitled to intervene as a matter of right.

### B. In the alternative, Newport News satisfies the requirements for permissive intervention.

Alternatively, Newport News should be permitted to intervene under Rule 24(b). Permissive intervention under Rule 24(b) is "discretionary by definition." *Hodgson*, 473 F.2d at 125. Permissive intervention is appropriate "'when an applicant's claim or defense and the main action have a question of law or fact in common.' It is within the Court's discretion to permit or deny intervention under

such circumstances." *American Special Risk Ins. Co. v. City of Centerline*, 69 F. Supp. 2d 944, 955 (E.D. Mich. 1999) (quoting FED. R. CIV. P. 24).

Newport News' defense of plaintiffs' challenge to the permit plainly has a "a question of law or fact in common" with plaintiffs' claims against the Corps and other defendants. The questions presented by plaintiffs' claims and Newport News' defense are identical. Newport News does not propose to raise any additional issues, only to defend the plaintiffs' challenge to its permit.

Allowing Newport News to intervene also will not "unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b). The motion to intervene comes at an early stage of the case when the only pleading or other paper that has been filed is the Complaint. For all of these reasons, Newport News should be permitted to intervene pursuant to Rule 24(b).

## CONCLUSION

For all of the foregoing reasons, Newport News' motion to intervene should be granted.

Respectfully submitted,

TROUTMAN SANDERS LLP

_____
Stuart F. Pierson (D.C. Bar #56820)
Charles A. Zdebski (D.C. Bar #451075)
Troutman Sanders LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004-2134
(202) 274-2909 (Phone)
(202) 654-5632 (Fax)

*Counsel for the City of Newport News, Virginia*

Of Counsel:

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200 (Phone)
(804) 698-1339 (Fax)

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia 23462
(757) 687-7500 (Phone)
(757) 687-7510 (Fax)

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Street
Newport News, Virginia 23607
(757) 926-8416 (Phone)
(757) 926-8549 (Fax)

11

## CERTIFICATE OF SERVICE

I hereby certify that on August ____, 2006, true copies of the foregoing Memorandum were mailed to the following:

Deborah M. Murray, Esquire
Senior Attorney
Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902

    Counsel for Plaintiffs Alliance to Save the Mattaponi, Chesapeake Bay Foundation, Inc., and Sierra Club, Virginia Chapter

Jon A. Mueller, Esquire
Director of Litigation
The Chesapeake Bay Foundation, Inc.
6 Herndon Ave.
Annapolis, MD 21403

    Co-Counsel for Plaintiff Chesapeake Bay Foundation, Inc.

Angeline Purdy, Esquire
U.S. Department of Justice
PO Box 23986
Washington, DC 20026

Pat M. Falcigno, Esquire
Office of Counsel
North Atlantic Division
U.S. Army Corps of Engineers
Fort Hamilton
302 General Lee Avenue
Brooklyn, New York 11252-6700

    Counsel for Defendants U.S. Army Corps of Engineers, *et al.*

_____
Stuart F. Pierson
Charles A. Zdebski