UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
ALLIANCE TO SAVE THE                                )
MATTAPONI, et al.                                   )
                                                    )
            Plaintiffs,                             )
                                                    )
      v.                                            )       Civil Action No. 06-CV-1268-HHK
                                                    )
UNITED STATES ARMY CORPS OF                         )
ENGINEERS, et al.                                   )
                                                    )
            Defendants.                             )
_____             )

## ANSWER OF UNITED STATES ARMY CORPS OF ENGINEERS ET AL.

Defendants United States Army Corps of Engineers; Francis J. Harvey, Secretary of the

Army (in his official capacity); Carl Strock, Chief of Engineers and Commanding General of the

United States Army Corps of Engineers (in his official capacity); and Major General William T.

Grisoli, Commander and Division Engineer of the United States Army Corps of Engineers,

North Atlantic Division (in his official capacity) (collectively, "defendants" or "Corps") hereby

answer the allegations in plaintiffs' Complaint as follows:

1.      The first sentence of Paragraph 1 characterizes plaintiffs' claim and requires no

response.  The Corps admits the allegations in the second sentence of Paragraph 1.  The Corps

lacks information sufficient to admit or deny the allegations in the third sentence of Paragraph 1.

The fourth sentence of Paragraph 1 consists of legal conclusions that require no response.

2.      The Corps admits that the King William Reservoir ("Reservoir") will be

constructed on Cohoke Creek, a tributary to the Pamunkey River.  The Corps lacks information

sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 2.  The

Corps admits the allegations in the second, third, fourth, and fifth sentences of Paragraph 2.

3.       The first sentence of Paragraph 3 consists of legal conclusions that require no

response.  The Corps admits the allegations in the second sentence of Paragraph 3.  The Corps

denies the allegations in the third sentence of Paragraph 3.  The Corps denies that the project will

destroy important riparian and forested habitat.  The Corps lacks information sufficient to admit

or deny the remaining allegations in the fourth sentence of Paragraph 3.

4.       The Corps admits that water withdrawals from the Mattaponi River will affect the

flows and salinity patterns in the River.  The Corps further admits that the American shad is an

andromadous fish species.  The Corps lacks information sufficient to admit or deny the

allegation that the American shad has been in steady decline in the Commonwealth of Virginia

for the past several decades.  The Corps denies the remaining allegations in the first sentence of

Paragraph 4.  The second sentence of Paragraph 4 quotes a document, which speaks for itself.

To the extent that the allegations in the second sentence of Paragraph 4 are inconsistent with the

quoted document, the Corps denies those allegations.  The third sentence of Paragraph 4

identifies the quoted document and requires no response.  The fourth sentence of Paragraph 4

quotes a document, which speaks for itself.  To the extent that the allegations in the fourth

sentence of Paragraph 4 are inconsistent with the quoted document, the Corps denies those

allegations.    The fifth sentence of Paragraph 4 identifies the quoted document and requires no

response.

5.       The Corps denies the allegations in the first sentence of Paragraph 5.    The

second, third, and fourth sentences of Paragraph 5 characterizes Corps documents, which speak

for themselves.  To the extent that the allegations in the second, third, and fourth sentences of Paragraph 5 are inconsistent with the documents referred to, the Corps denies those allegations. The fifth sentence of Paragraph 5 consists of legal conclusions that require no response.

6.      The Corps denies the allegations in the first sentence of Paragraph 6.  The Corps denies the allegations in the second sentence of Paragraph 6.  The Corps lacks information sufficient to admit or deny the allegations in the third sentence of Paragraph 6.  The fourth sentence of Paragraph 6 consists of legal conclusions that require no response.  The fifth sentence of Paragraph 6 consists of legal conclusions that require no response.  The fifth sentence of Paragraph 6 also characterizes the Chesapeake 2000 Agreement, which speaks for itself.  To the extent that any factual allegations in the fifth sentence of Paragraph 6 are inconsistent with that Agreement, the Corps denies those allegations.

7.      Paragraph 7 consists of legal conclusions that require no response.

8.      Paragraph 8 characterizes plaintiffs' claim and requires no response.

## JURISDICTION AND VENUE

9.      Paragraph 9 consists of legal conclusions that require no response.

10.      The Corps admits that the headquarters of the United States Army Corps of Engineers is located at 441 G St. NW, Washington, D.C., 20314.  The remainder of Paragraph 10 consists of legal conclusions that require no response.

## PARTIES AND STANDING

11.      The first sentence of Paragraph 11 identifies plaintiffs and requires no response. The Corps admits that plaintiffs participated in the public process relating to issuance of the Permit.  The Corps lacks information sufficient to admit or deny the remaining allegations in the

second sentence of Paragraph 11.  The Corps lacks information sufficient to admit or deny the

allegations in the third sentence of Paragraph 11.  The Corps lacks information sufficient to

admit or deny the allegations in the fourth sentence of Paragraph 11.  The fifth sentence of

Paragraph 11 consists of legal conclusions that require no response.

12.     The Corps lacks information sufficient to admit or deny the allegations in the first

sentence of Paragraph 12.  The Corps admits that the Alliance to Save the Mattaponi

("Alliance") participated in the public process relating to issuance of the Permit.  The Corps

admits that the

Alliance submitted comments on the Draft EIS, but lacks information sufficient to admit or deny

whether the Alliance submitted comments on the Final EIS.  The remainder of the second

sentence of Paragraph 12 consists of legal conclusions that require no response.  The Corps lacks

information sufficient to admit or deny the remaining allegations in Paragraph 12.

13.     The Corps lacks information sufficient to admit or deny the allegations in the

first, second, or third sentences of Paragraph 13.  The Corps admits that the Chesapeake Bay

Foundation ("Foundation") participated in the public process relating to issuance of the Permit.

The Corps admits that the Foundation submitted comments on the Draft EIS and on Newport

News' wetlands mitigation plan, but lacks information sufficient to admit or deny whether the

Foundation submitted comments on the Final EIS.  The remainder of the fourth sentence of

Paragraph 13 consists of legal conclusions that require no response.  The fifth sentence of

Paragraph 11 characterizes comments submitted by the Foundation, which speak for themselves.

To the extent that the allegations in the fifth sentence of Paragraph 11 are inconsistent with those

comments, the Corps denies those allegations.  The Corps lacks information sufficient to admit

or deny the remaining allegations in Paragraph 13.

14.    The Corps lacks information sufficient to admit or deny the allegations in Paragraph 14.

15.    The Corps lacks information sufficient to admit or deny the allegations in Paragraph 15.

16.    The Corps lacks information sufficient to admit or deny the allegations in Paragraph 16.

17.    The Corps lacks information sufficient to admit or deny the allegations in Paragraph 17.

18.    The Corps lacks information sufficient to admit or deny the allegations in the first two sentences of Paragraph 18. The Corps admits that the Sierra Club participated in the public process relating to issuance of the Permit. The Corps admits that the Sierra Club submitted comments on the Draft EIS, but lacks information sufficient to admit or deny whether the Sierra Club submitted comments on the Final EIS. The Corps lacks information sufficient to admit or deny the remaining allegations in the third sentence of Paragraph 18. The Corps lacks information sufficient to admit or deny the allegations in the fourth sentence of Paragraph 18. The fifth sentence of Paragraph 18 characterizes a document, which speaks for itself. To the extent that the allegations in the fifth sentence of Paragraph 18 concerning the content of that document are inconsistent with the cited document, the Corps denies those allegations. The Corps lacks information sufficient to admit or deny the remaining allegations in the fifth sentence of Paragraph 18. The Corps lacks information sufficient to admit or deny the remaining allegations in Paragraph 18.

19.     The Corps admits that it is a federal agency.  The remainder of the first sentence of Paragraph 19 consists of legal conclusions that require no response.  The second sentence of Paragraph 19 consists of legal conclusions that require no response.  The Corps admits the allegations in the third sentence of Paragraph 19.  The Corps denies the allegations in the fourth sentence of Paragraph 19.

20.     The Corps admits that Francis J. Harvey is the Secretary of the Army.  The remainder of the first sentence of Paragraph 20 characterizes plaintiffs' claim and requires no response.  The second sentence of Paragraph 20 consists of legal conclusions that require no response.  The Corps admits the allegations in the third sentence of Paragraph 20.

21.     The Corps admits the allegations in the first sentence of Paragraph 21.  The Corps admits the allegations in the second sentence of Paragraph 21.  The third sentence of Paragraph 21 consists of legal conclusions and characterizes plaintiffs' claim, and requires no response.

22.     The Corps admits the allegations in the first sentence of Paragraph 22, except to aver that William T. Grisoli is now a Major General.  The second sentence of Paragraph 22 characterizes plaintiffs' claim and requires no response.  The Corps denies that Major General Grisoli personally supervises and manages all decisions, but avers that he oversees the Division and is ultimately responsible for decisions.  The Corps admits that Major General Grisoli signed the Section 404 permit that is the subject of this lawsuit.  The Corps admits the allegations in the fourth sentence of Paragraph 22.

23.     The Corps admits the allegations in the first sentence of Paragraph 23.  The second sentence of Paragraph 23 consists of legal conclusions that require no response.

**The King William Reservoir**

24.     The allegations in Paragraph 24 characterizes the water supply proposal contained in the Final EIS, which speaks for itself.  To the extent that the allegations in Paragraph 24 are inconsistent with the water supply proposal contained in the Final EIS, the Corps denies those allegations.

25.     The Corps admits that the Reservoir component includes the Reservoir itself, a water intake structure in the Mattaponi River, and a pumping station.  The Corps denies the remaining allegations in the first sentence of Paragraph 25.  The Corps admits the allegations in the second and third sentences of Paragraph 25.

26.     The Corps denies the allegations in the first sentence of Paragraph 26.  The Corps admits the allegations in the second, third, and fourth sentences of Paragraph 26.  The Corps admits that the Virginia Marine Resources Commission issued a permit in August 2004.  The remaining allegations in the fifth sentence of Paragraph 26 characterize that permit, which speaks for itself.  To the extent that the allegations in the fifth sentence of Paragraph 26 are inconsistent with the permit, the Corps denies those allegations.

27.     The Corps admits the allegations in Paragraph 27.

28.     The Corps admits that construction of the Reservoir would flood 1,526 acres of land.  The Corps denies the remaining allegations in the first sentence of Paragraph 28.  The Corps admits that the Reservoir Project would inundate 875 acres of uplands.  The Corps denies the remaining allegations in the second sentence of Paragraph 28.   The Corps denies the allegations in the third sentence of Paragraph 28.  The Corps admits that freshwater withdrawals from the Mattaponi River could alter salinity patterns in the River, and that the sensitive joint vetch is listed as a threatened species under the Endangered Species Act.  The Corps denies the

remaining allegations in the fourth sentence of Paragraph 28.

29.      The first sentence of Paragraph 29 characterizes a document, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 29 are inconsistent with the cited document, the Corps denies those allegations.  The second sentence of Paragraph 29 identifies the cited document and requires no response.  The Corps denies the allegations in the third sentence of Paragraph 29.

### Federal Statutory and Regulatory Background.

30.      Paragraph 30 consists of legal conclusions that require no response.

31.      Paragraph 31 consists of legal conclusions that require no response.

32.      Paragraph 32 consists of legal conclusions that require no response.

33.      Paragraph 33 consists of legal conclusions that require no response.

34.      Paragraph 34 consists of legal conclusions that require no response.

35.      Paragraph 35 consists of legal conclusions that require no response.

36.      Paragraph 36 consists of legal conclusions that require no response.

37.      Paragraph 37 consists of legal conclusions that require no response.

38.      Paragraph 38 consists of legal conclusions that require no response.

39.      Paragraph 39 consists of legal conclusions that require no response.

40.      Paragraph 40 consists of legal conclusions that require no response.

41.      Paragraph 41 consists of legal conclusions that require no response.

42.      Paragraph 42 consists of legal conclusions that require no response.

43.      Paragraph 43 consists of legal conclusions that require no response.

44.      Paragraph 44 consists of legal conclusions that require no response.

45.    Paragraph 45 consists of legal conclusions that require no response.

46.    Paragraph 46 consists of legal conclusions that require no response.

**Proceedings Relating to Section 404 Permit and NEPA Review**

47.    The Corps admits the allegations in the first sentence of Paragraph 47.  The Corps lacks information sufficient to admit or deny the allegations in the second sentence of Paragraph 47.  The Corps admits the allegations in the third sentence of Paragraph 47.  The fourth and fifth sentences of Paragraph 47 characterizes the water supply proposal contained in the Final EIS, which speaks for itself.  To the extent that the allegations in the sentence of Paragraph 47 are inconsistent with the water supply proposal contained in the Final EIS, the Corps denies those allegations.

48.    The Corps admits the allegations in Paragraph 48.

49.    The Corps admits that on November 13, 1990, Newport News executed an agreement with the Board of Supervisors of King William County, Virginia.  The remaining allegations in Paragraph 49 characterize that agreement, which speaks for itself.  To the extent that the allegations in Paragraph 49 are inconsistent with that agreement, the Corps denies those allegations.

50.    The Corps admits the allegations in Paragraph 50.

51.    The Corps admits that it issued a Draft EIS for the Virginia Lower Peninsula regional raw water supply plan in February 1994.  The remaining allegations in the first sentence of Paragraph 51 characterize that plan, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 51 are inconsistent with that plan, the Corps denies those allegations.  The second sentence of Paragraph 51 characterizes the Draft EIS, which speaks for

- 9 -

itself.  To the extent that the allegations in the second sentence of Paragraph 51 are inconsistent with the Draft EIS, those allegations are denied.

52.     The Corps admits that the United States Fish and Wildlife Service ("FWS") and the United States Environmental Protection Agency ("EPA") submitted comments dated May 17, 1994, and June 1, 1944, respectively.  The remaining allegations in Paragraph 52 characterize these comments, which speak for themselves.  To the extent that the allegations in Paragraph 52 are inconsistent with the comments, the Corps denies those allegations.

53.     The Corps admits the allegations in Paragraph 53.

54.     The Corps admits that the FWS submitted comments dated March 28, 1996.  The remaining allegations in the first sentence of Paragraph 54 characterize those comments, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph 54 are inconsistent with those comments, the Corps denies those allegations.  The second sentence of paragraph 54 characterizes a Memorandum of Agreement, which speaks for itself.  To the extent that the allegations in the second sentence of paragraph 54 are inconsistent with that MOA, the Corps denies those allegations.

55.     The Corps admits that EPA submitted comments dated November 13, 1996.  The remaining allegations in Paragraph 55 characterize those comments, which speak for themselves.  To the extent that the allegations in Paragraph 55 are inconsistent with those comments, the Corps denies those allegations.

56.     The Corps admits the allegations in Paragraph 56.

57.     The first sentence of Paragraph 57 characterizes comments submitted by EPA, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph

57 are inconsistent with those comments, the Corps denies those allegations. The second sentence of Paragraph 57 characterizes comments submitted by the FWS, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 57 are inconsistent with those comments, the Corps denies those allegations.

58.    The first sentence of Paragraph 58 characterizes the 1997 Final EIS, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 58 are inconsistent with the Final EIS, the Corps denies those allegations. The Corps admits that during the public comment period on the Final EIS it received a July 14, 1997, report authored by Michael Siegel and Dr. Thomas Muller and entitled "Analysis of the Lower Virginia Peninsula, Regional Raw Water Supply Plan." The Corps lacks information sufficient to admit or deny that it received three reports or that these were "expert" reports. The remaining allegations in the second sentence of Paragraph 58 characterize the July 14, 1997, report, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 58 are inconsistent with the report, the Corps denies those allegations.

59.    The Corps admits that the Norfolk District requested that the Corps' Institute for Water Resources ("IWR") provide an independent technical review of Newport News' water needs forecast and reports critiquing that forecast. The Corps lacks information sufficient to admit or deny that there were three reports or that these were "expert" reports. The Corps denies the remaining allegations in the first sentence of Paragraph 59. The Corps admits that IWR contracted with Planning and Management Consultants, Ltd. ("PMCL"), and that in May 1998, PMCL issued a report. The remaining allegations in the second sentence of Paragraph 59 characterize the May 1998 report, which speaks for itself. To the extent that the allegations in

- 11 -

the second sentence of Paragraph 59 are inconsistent with the May 1998 report, the Corps denies those allegations.    The allegations in the third sentence of Paragraph 59 characterize the May 1998 report, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 59 are inconsistent with the May 1998 report, the Corps denies those allegations.  The Corps admits the allegations in the fourth sentence of Paragraph 59.

60.    The Corps admits the allegations in the first sentence of Paragraph 60.  The Corps admits the allegations in the second sentence of Paragraph 60.  The third sentence of Paragraph 60 characterizes the IWR 1999 Panel Report, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 60 are inconsistent with that report, the Corps denies those allegations.  The fourth sentence of Paragraph 60 characterizes the 1997 Final EIS, which speaks for itself.  To the extent that the allegations in the fourth sentence of Paragraph 60 are inconsistent with the 1997 Final EIS, the Corps denies those allegations.  The Corps denies that the IWR finalized its report in August 2001, but avers that it was finalized in June 2001.  The remaining allegations in the fifth sentence of Paragraph 60 characterize the IWR Final Report, which speaks for itself.  To the extent that the allegations in the fifth sentence of Paragraph 60 are inconsistent with the IWR Final Report, the Corps denies those allegations.

61.    The allegations in the first sentence of Paragraph 61 characterize a June 4, 1999, letter from the Norfolk District to Newport News, which speaks for itself.   To the extent that the allegations in the first sentence of Paragraph 61 are inconsistent with that letter, the Corps denies those allegations.  The Corps admits that then-Governor Gilmore of Virginia wrote a letter dated June 8, 1999.  The remaining allegations in the second sentence of Paragraph 61 characterize this letter, which speaks for itself.  To the extent that the allegations in the second sentence of

Paragraph 61 are inconsistent with that letter, the Corps denies those allegations.  The Corps admits that on March 20, 2001, the Norfolk District published a Draft Recommended Record of Decision ("RROD").  The remaining allegations in the third sentence of paragraph 61 characterize the Draft RROD, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 61 are inconsistent with the Draft RROD, the Corps denies those allegations.

62.     The Corps admits that EPA submitted a letter to the Corps dated May 1, 2001. The Corps further admits that the FWS submitted a letter to the Corps dated May 1, 2001.  The remaining allegations in Paragraph 62 characterize those letters, which speaks for themselves. To the extent that the allegations in Paragraph 62 are inconsistent with those letters, the Corps denies those allegations.

63.     The Corps admits that the Norfolk District issued a Final RROD on July 2, 2001. The remaining allegations in Paragraph 63 characterize the Final RROD, which speaks for itself. To the extent that the allegations in Paragraph 63 are inconsistent with the Final RROD, the Corps denies those allegations.

64.     The allegations in Paragraph 64 characterize the Final RROD, which speaks for itself.  To the extent that the allegations in Paragraph 64 are inconsistent with the Final RROD, the Corps denies those allegations.

65.     The Corps admits that the permit application was elevated to the North Atlantic Division for review.  The remainder of Paragraph 65 consists of legal conclusions that require no response.

66.     The Corps admits that on September 30, 2002, the North Atlantic Division issued

a 38-page interim decision memorandum for the King William Reservoir project ("Interim Decision Memorandum"). The Corps admits that Brigadier General Rhoades signed the Interim Decision Memorandum. The remaining allegations in the first sentence of Paragraph 66 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 66 are inconsistent with the Interim Decision Memorandum, the Corps denies those allegations. The allegations in the second sentence of Paragraph 66 characterize the Interim Decision Memorandum, the IWR Final Report, and the 1997 Final EIS, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 66 are inconsistent with the documents characterized therein, the Corps denies those allegations. The allegations in the third sentence of Paragraph 66 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the third sentence of Paragraph 66 are inconsistent with the Interim Decision Memorandum, the Corps denies those allegations. The Corps admits that the Interim Decision Memorandum did not result in issuance of the Permit. The remaining allegations in the fourth sentence of Paragraph 66 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the fourth sentence of Paragraph 66 are inconsistent with the Interim Decision Memorandum, the Corps denies those allegations.

67.    The allegations in the first sentence of Paragraph 67 characterize the Conceptual Wetlands Mitigation Plan. To the extent that the allegations in the first sentence of Paragraph 67 are inconsistent with the Conceptual Wetlands Mitigation Plan, the Corps denies those allegations. The Corps admits that the mitigation plan was revised several times; that a draft conceptual mitigation plan was released for public comment in December 2003; and that a Final

Streams and Wetlands Mitigation Plan ("Final Mitigation Plan") was released in June 2004.  The Corps denies the remaining allegations in the second sentence of Paragraph 67.

68.    The allegations in the first sentence of Paragraph 68 characterize the Final Mitigation Plan, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 68 are inconsistent with the Final Mitigation Plan, the Corps denies those allegations. The Corps admits that the CBF submitted comments on the Final Mitigation Plan dated February 1, 2005.  The remaining allegations in the second sentence of Paragraph 68 characterize those comments, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 68 are inconsistent with those comments, the Corps denies those allegations.  The allegations in the third and fourth sentences of Paragraph 68 characterize the Final Mitigation Plan, which speaks for itself.   To the extent that the allegations in the third and fourth sentences of Paragraph 68 are inconsistent with those Final Mitigation Plan, the Corps denies those allegations.

69.    The Corps admits that EPA submitted comments on the Draft RROD dated May 2001.  The remaining allegations in Paragraph 69 characterize EPA's comments, which speak for themselves.  To the extent that the remaining allegations in Paragraph 69 are inconsistent with those comments, the Corps denies those allegations.

70.    The Corps admits that both EPA and FWS submitted comments on the draft Final Mitigation Plan.  The Corps denies the remaining allegations in the first sentence of Paragraph 70.  The remaining allegations in Paragraph 70 characterize these comments, which speaks for themselves.  To the extent that the allegations in Paragraph 70 are inconsistent with those comments, the Corps denies those allegations.

71.     The Corps admits that the FWS submitted written comments on the draft Final Mitigation Plan on March 29, 2004, and February 1, 2005.  The remaining allegations in Paragraph 71 characterize the FWS's comments, which speak for themselves.  To the extent that the allegations in Paragraph 71 are inconsistent with the FWS's comments, the Corps denies those allegations.

72.     The Corps admits the allegations in the first sentence of Paragraph 72.  The allegations in the second sentence of Paragraph 72 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 72 are inconsistent with the 2005 ROD, the Corps denies those allegations.  The Corps admits the allegations in the third sentence of Paragraph 72.

73.     The allegations in Paragraph 73 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in Paragraph 73 are inconsistent with the 2005 ROD, the Corps denies those allegations.

74.     The Corps admits that on August 11, 2005, the FWS's Regional Director for Region 5 issued a letter.  The remaining allegations in the first sentence of Paragraph 74 characterize that letter, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 74 are inconsistent with that letter, the Corps denies those allegations. The allegations in the second sentence of Paragraph 74 characterize a September 1, 2005, letter from the Department of the Interior, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 74 are inconsistent with that letter, the Corps denies those allegations.  The third sentence of Paragraph 74 characterizes agreements between the FWS and the Corps, which speak for themselves.  To the extent that the allegations in the third sentence of

Paragraph 74 are inconsistent with those agreements, the Corps denies those allegations.   The

Corps admits that certain mitigation sites identified in the Final Mitigation Plan are no longer

available.  The Corps lacks information sufficient to admit or deny the remaining allegations in

the fourth sentence of Paragraph 74.

75.     The Corps admits the allegations in Paragraph 75.

**Related State Proceedings**

76.     The Corps admits that the Virginia State Water Control Board issued a permit on

December 22, 1997 (the "VWP Permit").  The remaining allegations in Paragraph 76

characterize the VWP Permit, which speaks for itself.  To the extent that the allegations in

Paragraph 76 are inconsistent with the VWP Permit, the Corps denies those allegations.

77.     The Corps admits the allegations in Paragraph 77.

78.     The Corps admits that Newport News sent a letter to the Virginia Department of

Environmental Quality dated December 13, 2005.  The remaining allegations in the first sentence

of Paragraph 78 characterize this letter, which speaks for itself.  To the extent that the allegations

in the first sentence of Paragraph 78 are inconsistent with the letter, the Corps denies those

allegations.  The Corps admits the allegations in the second sentence of Paragraph 78.

79.     The first sentence of Paragraph 79 states legal conclusions that require no

response.  The Corps admits that in 1993 Newport News applied to the VMRC for a permit.  The

remaining allegations in the second sentence of Paragraph 79 characterize that permit

application, which speaks for itself.  To the extent that the allegations in the second sentence of

Paragraph 79 are inconsistent with the permit application, the Corps denies those allegations.

80.     The Corps admits that the VMRC voted to deny Newport News' permit

application on May 14, 2003.  The remaining allegations in the first, second, and third sentences

of Paragraph 80 characterize the VMRC's denial, which speaks for itself.  To the extent that the

allegations in the first, second, and third sentences of Paragraph 80 are inconsistent with the

denial, the Corps denies those allegations.  The fourth sentence of Paragraph 80 consists of a

citation to the VMRC's denial, and requires no response.

      81.     The Corps admits the allegations in the first sentence of Paragraph 81.  The

allegations in the second sentence of Paragraph 81 characterize an agreement between VMRC

and Newport News, which speaks for itself.  To the extent that the allegations in the second

sentence of Paragraph 81 are inconsistent with that agreement, the Corps denies those

allegations.

      82.     The Corps admits that the VMRC issued a permit for the Reservoir Project, but

denies the allegation that the permit was issued on August 17, 2004.  The Corps avers that the

permit was officially issued on November 30, 2004.  The Corps lacks information sufficient to

admit or deny the remaining allegations in the first sentence of Paragraph 82.  The allegations in

the second and third sentences of Paragraph 82 characterize the VMRC permit, which speaks for

itself.  To the extent that the allegations in the second and third sentences of Paragraph 82 are

inconsistent with the VMRC permit, the Corps denies those allegations.  The allegations in the

fourth, fifth, and sixth sentences of Paragraph 82 characterize comments submitted on the draft

VMRC permit, which speak for themselves.  To the extent that the allegations in the fourth, fifth,

and sixth sentences are inconsistent with those comments, the Corps denies those allegations.

      83.     The allegations in Paragraph 83 characterize the VMRC permit, which speaks for

itself.  To the extent that the allegations in Paragraph 83 are inconsistent with the VMRC permit,

the Corps denies those allegations.

84.    The Corps admits that the Virginia Department of Environmental Quality issued its concurrence with Newport News' certification of consistency with the Virginia Coastal Resources Management Program on December 27, 2004.  The Corps lacks information sufficient to admit or deny the remaining allegations in Paragraph 84.

85.    The Corps denies the allegations in Paragraph 85.

## CLAIMS FOR RELIEF

### Count I

86.    The Corps incorporates its responses to Paragraphs 1 through 85 above.

87.    Paragraph 87 consists of legal conclusions that require no response.

88.    The Corps admits that the project will involve the excavation, filling, and flooding of 437 acres of waters of the United States that includes 403 acres of wetlands in the Cohoke Creek watershed and 34 acres of shallow open water.  The Corps denies the remaining allegations in the first sentence of Paragraph 88.  The Corps denies the second sentence of Paragraph 88.  The Corps lacks information sufficient to admit or deny the allegations in the third sentence of Paragraph 88.  The Corps denies the allegations in the fourth sentence of Paragraph 88.  The Corps admits that wetlands impacts would occur as a result of construction of the pipeline.  The Corps denies the remaining allegations in the fifth sentence of Paragraph 88.

89.    The allegations in Paragraph 89 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in Paragraph 89 are inconsistent with the 2005 ROD, the Corps denies those allegations.

90.    The Corps denies the allegations in Paragraph 90.

91.     The Corps denies the allegations in Paragraph 91.

92.     The Corps denies the allegations in the first sentence of Paragraph 92.  The Corps admits that changes in salinity patterns may occur and that the sensitive joint vetch is a threatened species under the Endangered Species Act.  The Corps denies the remaining allegations in the second sentence of Paragraph 92.   The third sentence of Paragraph 92 characterizes an unidentified document of the VMRC, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 92 are inconsistent with that document, those allegations are denied.

93.     The Corps admits that a population of a federally threatened aquatic plant, the sensitive joint vetch, is found in the vicinity of the proposed intake structure.  The Corps further admits that other such populations are located elsewhere on the Mattaponi River.  The Corps admits that these populations could be affected by changes in salinity caused by the Reservoir.  The Corps lacks information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 93.  The remaining allegations in Paragraph 93 characterize a study by the Virginia Institute of Marine Sciences, which speaks for itself.  To the extent that the allegations in Paragraph 93 are inconsistent with the cited study, the Corps denies those allegations.

94.     The allegations in the first two sentences of Paragraph 94 characterize a May 12, 2004 letter, which speaks for itself.  To the extent that the allegations in the first two sentences of Paragraph 94 are inconsistent with that letter, the Corps denies those allegations.  The third sentence of Paragraph 94 identifies the cited letter and requires no response.

95.     The Corps denies the allegations in Paragraph 95.

96.     The allegations in the first sentence of Paragraph 96 characterize the RROD,

which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 96 are inconsistent with the RROD, the Corps denies those allegations.  The allegations in the second sentence of Paragraph 96 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 96 are inconsistent with the 2005 ROD, the Corps denies those allegations.

97.     Paragraph 97 consists of legal conclusions that require no response.

## Count II

98.     The Corps incorporates its responses to Paragraphs 1 through 97 above.

99.     Paragraph 99 consists of legal conclusions that require no response.

100.     The allegations in the first sentence of Paragraph 100 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 100 are inconsistent with the 2005 ROD, the Corps denies those allegations.  The allegations in the second and third sentences of Paragraph 100 characterize the Draft and Final EISs, which speak for themselves.  To the extent that the allegations in the second and third sentences of Paragraph 100 are inconsistent with the Draft and Final EISs, the Corps denies those allegations.

101.     The allegations in Paragraph 101 characterize the Final EIS, which speaks for itself.  To the extent that the allegations in Paragraph 101 are inconsistent with the Final EIS, the Corps denies those allegations.

102.     The allegations in the first sentence of Paragraph 102 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 102 are inconsistent with the 2005 ROD, the Corps denies those allegations.  The Corps denies the allegations in the second and third sentences of Paragraph 102.  The fourth sentence of

Paragraph 102 consists of legal conclusions that require no response.

103.    The Corps denies the allegations in the first sentence of Paragraph 103.  The Corps lacks information sufficient to admit or deny the allegations regarding advancing gray water technology.  The Corps admits that the military has discontinued use of the Big Bethel Reservoir at Fort Monroe in Hampton, Virginia.  The Corps denies the remaining allegations in the second sentence of Paragraph 103.  The third sentence of Paragraph 103 consists of legal conclusions that require no response.

104.    The Corps denies the allegations in the first sentence of Paragraph 104.  The second sentence of Paragraph 104 consists of legal conclusions that require no response.

**Count III**

105.    The Corps incorporates its responses to Paragraphs 1 through 104 above.

106.    The first sentence of Paragraph 106 consists of legal conclusions that require no response.  The Corps admits that it entered into a 1990 Memorandum of Agreement with EPA.  The remaining allegations in the second through fifth sentences of Paragraph 106 characterize that MOA, which speaks for itself.  To the extent that the allegations in the second through fifth sentences of Paragraph 106 are inconsistent with the MOA, the Corps denies those allegations.

107.    The Corps admits that the project will involve the excavation, filling, and flooding of 403 acres of wetlands in the Cohoke Creek watershed and 34 acres of shallow open water.  The Corps denies the remaining allegations in the first sentence of Paragraph 107.  The Corps denies the allegations of the second sentence of Paragraph 107.  The allegations in the third and fourth sentences of Paragraph 107 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the third and fourth sentences of Paragraph 107 are

inconsistent with the 2005 ROD, the Corps denies those allegations. The fifth and sixth sentences of Paragraph 107 consist of legal conclusions that require no response.

108. The allegations in the first two sentences of Paragraph 108 characterize the Final Mitigation Plan, which speaks for itself. To the extent that the allegations in the first two sentences of Paragraph 108 are inconsistent with the Final Mitigation Plan, the Corps denies those allegations. The Corps denies the allegations in the third sentence of Paragraph 108.

109. The assertion that the Final Mitigation Plan is inadequate constitutes a legal conclusion that requires no response. The factual allegations in Paragraph 109 characterize the Final Mitigation Plan, which speaks for itself. To the extent that the factual allegations in Paragraph 109 are inconsistent with the Final Mitigation Plan, the Corps denies those allegations. The Corps denies the last sentence of Paragraph 109.

110. The Corps denies the allegations in the first sentence of Paragraph 110. The second and third sentences of Paragraph 110 contain legal conclusions that require no response.

**Count IV**

111. The Corps incorporates its responses to Paragraphs 1 through 110 above.

112. Paragraph 112 consists of legal conclusions that require no response.

113. The allegations in the first two sentences of Paragraph 113 characterize the RROD, which speaks for itself. To the extent that the allegations in the first two sentences of Paragraph 113 are inconsistent with the RROD, the Corps denies those allegations. The third sentence of Paragraph 113 consists of legal conclusions that require no response.

114. Paragraph 114 consists of legal conclusions that require no response.

115. Paragraph 115 consists of legal conclusions that require no response.

116.    Paragraph 116 consists of legal conclusions that require no response.

**Count V**

117.    The Corps incorporates its responses to Paragraphs 1 through 116 above.

118.    Paragraph 118 consists of legal conclusions that require no response.

119.    Paragraph 119 consists of legal conclusions that require no response.

120.    The first clause of Paragraph 120 consists of legal conclusions that require no response.

(a) (i)    The allegations in the first sentence of Paragraph 120(a)(1) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 120(a)(i) are inconsistent with the Final EIS, the Corps denies those allegations. The Corps denies the allegations in the second sentence of Paragraph 120(a)(i) . The Corps denies the allegations in the third sentence of Paragraph 120(a)(i).

(a)(ii)    The allegations in Paragraph 120(a)(ii) characterize the Final EIS, which speaks for itself. To the extent that the allegations in Paragraph 120(a)(ii) are inconsistent with the Final EIS, the Corps denies those allegations.

(a)(iii)    Paragraph 120(a)(iii) consists of legal conclusions that require no response.

(b)(i)    The Corps admits the allegations in the first sentence of Paragraph 120(b)(i). The Corps admits that withdrawals from the Mattaponi will alter salinity patterns in the River. The Corps denies the remaining allegations in the second sentence of Paragraph 120(b)(i). The allegations

in the third sentence of Paragraph 120(b)(i) characterize the 2005 ROD, which speaks for itself. To the extent that the allegations in the third sentence of Paragraph 120(b)(i) are inconsistent with the 2005 ROD, the Corps denies those allegations.

(b)(ii)  The allegations in the first three sentences of Paragraph 120(b)(ii) characterize the 1997 Final EIS, which speaks for itself. To the extent that the allegations in the first three sentences of Paragraph 120(b)(ii) are inconsistent with the Final EIS, the Corps denies those allegations. The first three sentences of Paragraph 120(b)(ii) also contain legal conclusions that require no response. The Corps denies the allegations in the fourth sentence of Paragraph 120(b)(ii)

(b)(iii) The allegations in the first sentence of Paragraph 120(b)(iii) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 120(b)(iii) are inconsistent with the Final EIS, the Corps denies those allegations. The Corps lacks information sufficient to admit or deny the allegations in the second sentence of Paragraph 120(b)(iii).

(b)(iv) The allegations in the first sentence of Paragraph 120(b)(iv) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the first  sentence of Paragraph 120(b)(iv) are inconsistent with the Final EIS, the Corps denies those allegations. The Corps admits that farmers along the Mattaponi River withdraw water to irrigate their lands. The

Corps denies the remaining allegations in the second sentence of Paragraph 120(b)(iv). The Corps lacks information sufficient to admit or deny the allegations in the third sentences of Paragraph 120(b)(iv). The Corps denies the allegations in the fourth sentence of Paragraph 120(b)(iv).

(b)(v)    The allegations in the first sentence of Paragraph 120(b)(v) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 120(b)(v) are inconsistent with the Final EIS, the Corps denies those allegations. The allegations in the second sentence of Paragraph 120(b)(v) characterize the 2005 ROD, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 120(b)(v) are inconsistent with the 2005 ROD, the Corps denies those allegations. The allegations in the third sentence of Paragraph 120(b)(v) characterize the RROD, which speaks for itself. To the extent that the allegations in the third sentence of Paragraph 120(b)(v) are inconsistent with the RROD, the Corps denies those allegations. The allegations in the fourth sentence of Paragraph 120(b)(v) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the fourth sentence of Paragraph 120(b)(v) are inconsistent with the Final EIS, the Corps denies those allegations.

(b)(vi)   The allegations in the first sentence of Paragraph 120(b)(vi) characterize the Final EIS, which speaks for itself. To the extent that the allegations in

- 26 -

the first sentence of Paragraph 120(b)(vi) are inconsistent with the Final EIS, the Corps denies those allegations. The allegations in the second and third sentences of Paragraph 120(b)(vi) characterize an agreement between Newport News and King William County, which speaks for itself. To the extent that the allegations in the second and third sentences of Paragraph 120(b)(vi) are inconsistent with the cited agreement, the Corps denies those allegations. The allegations in the fourth and fifth sentences of Paragraph 120(b)(vi) characterize the RROD, which speaks for itself. To the extent that the allegations in the fourth and fifth sentences of Paragraph 120(b)(vi) are inconsistent with the RROD, the Corps denies those allegations. The allegations in the sixth sentence of Paragraph 120(b)(vi) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the sixth sentence of Paragraph 120(b)(vi) are inconsistent with the Final EIS, the Corps denies those allegations.

121.    Paragraph 121 consists of legal conclusions that require no response.

### Count VI

122.    The Corps incorporates its responses to Paragraphs 1 through 121 above.

123.    Paragraph 123 consists of legal conclusions that require no response.

124.    The first sentence of Paragraph 124 consists of legal conclusions that require no response.

a.    The Corps denies that the Reservoir Project has substantially changed as a

- 27 -

result of conditions imposed in the state permit issued by the VMRC to Newport News in 2004. The remaining allegations in the first sentence of Paragraph 124(a) characterize that permit, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 124(a) are inconsistent with that permit, the Corps denies those allegations. The allegations in the second sentence of Paragraph 124(a) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 124(a) are inconsistent with the Final EIS, the Corps denies those allegations. The Corps admits that the pumping hiatus imposed by the VMRC permit corresponds to some of the highest flow months of the year. The Corps denies the remaining allegations in the third sentence of Paragraph 124(a). The Corps lacks information sufficient to admit or deny the allegations in the fourth sentence of Paragraph 124(a).

b.     The Corps denies that there was a significant alteration to project design and pumping regime that would have an impact on aquatic resources. The Corps admits the remaining allegations in the first sentence of Paragraph 124(b). The Corps lacks information sufficient to admit or deny the allegations in the second sentence of Paragraph 124(b). The Corps denies that there was a significant change in the pumping regime that may affect the salinity modeling results. The Corps admits that the remaining allegations in the third sentence of Paragraph 124(b). The fourth sentence

of Paragraph 124(b) consists of legal conclusions that require no response. The Corps admits the allegations in the fifth sentence of Paragraph 124(b). The Corps lacks information sufficient to admit or deny the allegations in the sixth sentence of Paragraph 124(b). The Corps admits the allegations in the seventh sentence of Paragraph 124(b).

c.      The Corps denies the allegations in the first two sentences of Paragraph 124(c). The Corps lacks information sufficient to admit or deny the allegations in the third sentence of Paragraph 124(c). The fourth sentence of Paragraph 124(c) consists of legal conclusions that require no response.

d.      The Corps admits that the FWS submitted a letter to the Corps dated June 23, 2005. The remaining allegations in Paragraph 124(d) characterize this letter, which speaks for itself. To the extent that the allegations in Paragraph 124(d) are inconsistent with the letter, the Corps denies those allegations.

e.      The Corps admits that Michael Siegel submitted a letter to the Corps dated September 2, 2005. The remaining allegations in the first three sentences of Paragraph 124(e) characterize this letter, which speaks for itself. To the extent that the allegations in the first three sentences of Paragraph 124(e) are inconsistent with that letter, the Corps denies those allegations. The fourth sentence of Paragraph 124(e) consists of legal conclusions that require no response.

- 29 -

f.      The allegations in the first sentence of Paragraph 124(f) characterize the VMRC permit, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 124(f) are inconsistent with the VMRC permit, the Corps denies those allegations. The Corps admits that the sensitive joint vetch is listed as a threatened species under the Endangered Species Act. The Corps lacks information sufficient to admit or deny the remaining allegations in the second sentence of Paragraph 124(f). The Corps admits that it did not analyze the potential impacts of the installation of a chemical feed system. The Corps denies the remaining allegations in the third sentence of Paragraph 124(f).

g.      The Corps admits that certain mitigation sites identified in the Final Mitigation Plan are no longer available. The Corps lacks information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 124(g). The Corps denies the allegations in the second sentence of Paragraph 124(g).

h.      The Corps denies the allegations in the first sentence of Paragraph 124(h). The allegations in the second sentence of Paragraph 124(h) characterize a USGS document, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 124(h) are inconsistent with the cited document, the Corps denies those allegations. The allegations in the third sentence of Paragraph 124(h) characterize the FWS letter of June 23, 2005, which speaks for itself. To the extent that the

allegations in the third sentence of Paragraph 124(h) are inconsistent with that letter, the Corps denies those allegations.  The Corps denies the allegations in the fourth sentence of Paragraph 124(h).

125.    The Corps admits that plaintiffs requested the Corps to prepare a supplemental EIS.  The remaining allegations in the first sentence of Paragraph 125 characterize the plaintiffs' request, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 125 are inconsistent with the plaintiffs' request, the Corps denies those allegations. The allegations in the second sentence of Paragraph 125 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 125 are inconsistent with the 2005 ROD, the Corps denies those allegations.

126.    Paragraph 126 consists of legal conclusions that require no response.

**Count VII**

127.    The Corps incorporates Paragraphs 1 through 126 above.

128.    The allegations in Paragraph 128 characterize the Chesapeake 2000 Agreement, which speaks for itself.  To the extent that the allegations in Paragraph 128 are inconsistent with that Agreement, the Corps denies those allegations.

129.    The allegations in Paragraph 129 characterize the Chesapeake 2000 Agreement, which speaks for itself.  To the extent that the allegations in Paragraph 129 are inconsistent with that Agreement, the Corps denies those allegations.

130.    Paragraph 130 consists of legal conclusions that require no response.

131.    The Corps denies the allegations in Paragraph 131.

132.    Paragraph 132 consists of legal conclusions that require no response.

## PRAYER FOR RELIEF

133.    Paragraph 133 identifies plaintiffs' requested relief and requires no response.

134.    Paragraph 134 identifies plaintiffs' requested relief and requires no response.

135.    Paragraph 135 identifies plaintiffs' requested relief and requires no response.

136.    Paragraph 136 identifies plaintiffs' requested relief and requires no response.

137.    Paragraph 137 identifies plaintiffs' requested relief and requires no response.

138.    Paragraph 138 identifies plaintiffs' requested relief and requires no response.


## GENERAL DENIAL

To the extent that any allegation of plaintiffs' Complaint has not been admitted or specifically responded to, Defendant denies such allegation.

## AFFIRMATIVE DEFENSES

A.    The Court lacks subject matter jurisdiction over some or all of plaintiffs' claims.

B.    Some or all of plaintiffs' claims fail to state a claim for which relief may be granted.


WHEREFORE, defendant prays that plaintiffs take nothing by their complaint.

Respectfully submitted this 15th day of September, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

_____*/s/ Devon Lehman McCune*_____
DEVON LEHMAN McCUNE
Trial Attorney

Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO  80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov


SAMANTHA KLEIN
Trial Attorney
Natural Resources Section
P.O. Box 0663
Washington DC 20044-0663
(202) 305-0474 (tel.)
(202) 305-0506 (fax)

ANGELINE PURDY
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
Voice: (202) 514-0996
Fax: (202) 514-8865
e-mail: angeline.purdy@usdoj.gov

Attorneys for Defendants,

OF COUNSEL
Pat M. Falcigno
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2006, I electronically filed the **ANSWER OF UNITED STATES ARMY CORPS OF ENGINEERS ET AL.** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Deborah M. Murray
Email: dmurray@selcva.org

Stuart F. Pierson
Email: stuart.pierson@troutmansanders.com

_/s/ Devon Lehman McCune_
DEVON LEHMAN McCUNE