## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALLIANCE TO SAVE THE MATTAPONI,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **1:06-cv-01268-HHK** |
| | ) | |
| **UNITED STATES ARMY CORPS OF ENGINEERS,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION OF THE CITY OF NEWPORT NEWS, VIRGINIA
## TO JOIN THE MATTAPONI INDIAN TRIBE AS A DEFENDANT

The City of Newport News, Virginia, intervening defendant, respectfully moves for entry of an order directing that the Mattaponi Indian Tribe (the Tribe) be joined as a defendant in this action, pursuant to Fed.R.Civ.P. 19(a)(2)(ii).  As discussed in the accompanying Memorandum of Points and Authorities, the Tribe has claimed an interest relating to the subject of the action and is so situated that the disposition of the action in its absence may leave the defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations, and therefore it should be joined as a party.

The Tribe is recognized as an Indian Tribe by the Commonwealth of Virginia, but it is not recognized by the United States.  It is located on a tribal reservation (of which it is the beneficial owner) located on the Mattaponi River in King William County, Virginia, within 100 miles of this Court, and therefore it is subject to service of process pursuant to Fed.R.Civ.P. 4(k)(1)(B).

Counsel for the City of Newport News have discussed this motion with opposing counsel, as required by Local Civil Rule 7(m), and with counsel for co-defendants United States Army Corps of Engineers, *et al.* We are authorized to state that both the plaintiffs and the Corps take no position on the motion.

Respectfully submitted,

TROUTMAN SANDERS LLP

Charles A. Zdebski (D.C. Bar #451075)
Troutman Sanders LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004-2134
(202) 274-2909 (Phone)
(202) 654-5632 (Fax)

*Counsel for the City of Newport News, Virginia*

Of Counsel:

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia  23218-1122
(804) 697-1200 (Phone)
(804) 698-1339 (Fax)

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia  23462
(757) 687-7500 (Phone)
(757) 687-7510 (Fax)

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Street
Newport News, Virginia  23607
(757) 926-8416 (Phone)
(757) 926-8549 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on October ___6th___, 2006, true copies of the foregoing Motion, the accompanying Memorandum of Points and Authorities, and the proposed Order were mailed to the following:

Deborah M. Murray, Esquire
Senior Attorney
Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902

        Counsel for Plaintiffs Alliance to Save the Mattaponi, Chesapeake
        Bay Foundation, Inc., and Sierra Club, Virginia Chapter

Jon A. Mueller, Esquire
Director of Litigation
The Chesapeake Bay Foundation, Inc.
6 Herndon Ave.
Annapolis, MD 21403

        Co-Counsel for Plaintiff Chesapeake Bay Foundation, Inc.

Angeline Purdy, Esquire
U.S. Department of Justice Environmental Defense Section
601 D Street, NW
Suite 8000
Washington, DC 20004

Pat M. Falcigno, Esquire
Office of Counsel
North Atlantic Division
U.S. Army Corps of Engineers
Fort Hamilton
302 General Lee Avenue
Brooklyn, New York 11252-6700

        Counsel for Defendants U.S. Army Corps of Engineers, *et al.*

Hope Babcock, Esquire
Emma E. Garrison, Esquire
Institute for Public Representation
Georgetown University Law Center
600 New Jersey Avenue, N.W.
Washington, D.C. 20001

4

David S. Bailey, PLLC
16397 Triple Creek Lane
Beaverdam, Virginia 23015

Counsel for the Mattaponi Indian Tribe

_____
Charles A. Zdebski

1540851

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIANCE TO SAVE THE MATTAPONI, *et al.*,    )
                                              )
                        Plaintiffs,           )
                                              )        **Civil Action No.**
v.                                            )        **1:06-cv-01268-HHK**
                                              )
UNITED STATES ARMY CORPS OF ENGINEERS,        )
                        *et al.*,             )
                                              )
                        Defendants.           )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF THE CITY OF NEWPORT NEWS, VIRGINIA TO JOIN THE MATTAPONI INDIAN TRIBE AS A DEFENDANT

The City of Newport News, Virginia, intervening defendant, has moved for entry of an order directing that the Mattaponi Indian Tribe (the Tribe) be joined as a defendant in this action, pursuant to Fed.R.Civ.P. 19(a)(2)(ii). As discussed in this memorandum, the Tribe is subject to service of process and its joinder will not deprive the court of jurisdiction. It has claimed an interest relating to the subject of the action, and disposition of the action in its absence would leave the defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. The Tribe's participation in this action also will further the interests that Rule 19 was designed to protect. It should enter this action as a plaintiff, but it has refused to do so; but it may and should be joined as a defendant.

Counsel for the City of Newport News have discussed this motion with opposing counsel, as required by Local Civil Rule 7(m), and with counsel for

co-defendants United States Army Corps of Engineers, *et al.* We are authorized to state that both the plaintiffs and the Corps take no position on the motion.

## STATEMENT OF THE CASE

The Alliance to Save the Mattaponi, Chesapeake Bay Foundation, Inc., and the Sierra Club, Virginia Chapter (collectively Alliance), brought this action, as stated in paragraph 1 of their Complaint, "challeng[ing] the issuance of a permit under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, by the United States Army Corps of Engineers (the 'Corps') to the City of Newport News ('Newport News') to construct a 1,526-acre reservoir in King William County, Virginia ('King William Reservoir' or 'Reservoir')." The King William Reservoir (KWR) project is a regional undertaking by an unincorporated coalition of local governments on the Lower York-James Peninsula (or Northside Hampton Roads) – the Cities of Newport News and Williamsburg and the County of York – known as the Regional Raw Water Study Group (RRWSG). Newport News is the "lead agency" for the RRWSG, which has no corporate existence and no authority to obtain permits or to build and operate a public water supply system.

This case is only one in a series of challenges to the KWR project. The Alliance and the Tribe have led the opposition to the project in a long series of proceedings in both federal and state agencies, including the Corps of Engineers in the proceedings leading to issuance of the permit at issue here; and both the Alliance and the Tribe have been plaintiffs in a series of judicial challenges to the project. *See Alliance to Save the Mattaponi v. Commonwealth*, 30 Va. App. 690, 519 S.E.2d 413

2

(1999), and *Mattaponi Indian Tribe v. Commonwealth*, 31 Va. App. 472, 524 S.E.2d

167 (2000), *rev'd, Mattaponi Indian Tribe v. Commonwealth*, 261 Va. 366, 541

S.E.2d 920 (2001); *Alliance to Save the Mattaponi v. Virginia Marine Resources

Commission*, 43 Va. App. 724, 601 S.E.2d 684 (2004); *Mattaponi Indian Tribe v.

Virginia Marine Resources Commission*, 43 Va. App. 728, 601 S.E.2d 686 (2004);

*Mattaponi Indian Tribe v. Department of Environmental Quality ex rel. State Water

Control Board*, 43 Va. App. 690, 601 S.E.2d 667 (2004), *aff'd, Alliance to Save the

Mattaponi v. Commonwealth*, 270 Va. 423, 621 S.E.2d 78 (2005), *cert. denied,

Mattaponi Indian Tribe v. Virginia*, 126 S. Ct. 2862 (2006); and *Mattaponi Indian

Tribe v. Virginia Marine Resources Commission*, 45 Va. App. 208, 609 S.E.2d 619

(2005).

Even more to the point, the Tribe has stated unequivocally and

unambiguously, in a letter from its counsel to the Corps of Engineers and others, that

it intends to sue the Corps in an effort to set aside the same permit that is at issue in

this action.  A copy of that letter is attached to this memorandum as Exhibit 1.  It

notified the Secretary of the Army, the Chief of Engineers, and the Administrator of

the EPA

> of the Tribe's intent to file suit under [Clean Water Act] section
> 505(a)(2), 33 U.S.C. § 1365(a)(2), against Francis J. Harvey in
> his capacity as Secretary of the Army, Lieutenant General Carl
> A. Strock in his capacity as Chief of the Army Corps of
> Engineers, and Stephen L. Johnson in his capacity as
> Administrator of the Environmental Protection Agency for
> failing to perform non-discretionary duties under section 404 of
> the Clean Water Act, 33 U.S.C. § 1344, and the Act's
> implementing regulations, including 40 C.F.R. § 230.10 and 33
> C.F.R. § 320.4, regarding the issuance of Permit 93-0902-12
> authorizing the King William Reservoir ("KWR")…. Although

> not required by law, the Tribe also gives notice of its intent to
> sue the same parties under the Administrative Procedure Act
> ("APA"), 5 U.S.C. §§ 701-706, for their violations of the
> National Environmental Policy Act ("NEPA"), 42 U.S.C.
> § 4332.

*Id*. at 1-2. *See also id*. at 4-12, describing alleged violations of the Clean Water Act

and NEPA that are substantively identical in virtually all respects to claims asserted

by the Alliance in this case.[1]  The Tribe's letter is dated April 20, 2006, more than

five months ago and nearly three months before the Alliance filed this action.  The

Tribe nevertheless has not yet filed the threatened suit.[2]

Concerned by the prospect of multiple and repetitive litigation, at different

times and potentially in different courts, counsel for the City of Newport News wrote

to the Tribe's counsel on September 18, 2006 (after it was granted leave to intervene

as a defendant), inviting the Tribe to intervene as a plaintiff in this action.  A copy of

that letter is attached as Exhibit 2.  Newport News requested a response to its

invitation within ten days, or by September 28, 2006.  In response to a request from

the Tribe's counsel it later agreed to a response by October 2, 2006.  On the latter

date, the Tribe's counsel left a telephone message for the City's counsel stating that

---

[1]      The Tribe's letter states that it intends to sue the Administrator of the EPA as well as the Secretary of the Army and the Chief of Engineers, but its substantive allegations charge only the Corps, not EPA, with violating federal law.

[2]      The Tribe's opposition to the project has not abated, however.  To the contrary, it continues vigorously to pursue litigation against Newport News and against the project in a suit alleging violations of the 1677 "Treaty at Middle Plantation" and riparian rights, on remand to the Circuit Court for the City of Newport News from the Virginia Supreme Court's decision in *Alliance to Save the Mattaponi v. Commonwealth*, *supra*, 270 Va. 423, 621 S.E.2d 78.

4

she was "authorized by the Tribe to tell you to go ahead and file your motion for joinder."

The Tribe is recognized as an Indian tribe by the State of Virginia but not by the United States, and therefore it has no sovereign immunity from suit in a federal court. *E.g.*, *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 467 (S.D. N.Y. 2005) ("Plaintiffs' contention that the Unkechaug enjoy sovereign immunity despite the Tribe's lack of federal recognition is meritless. Whether a tribe is recognized as sovereign is determined by application to the Bureau of Indian Affairs .... Absent federal recognition, the Unkechaug do not enjoy sovereign immunity"). The Tribe is located on a reservation on the banks of the Mattaponi River in King William County, Virginia, within 100 miles of the Court, and is subject to service of process pursuant to Fed.R.Civ.P. 4(k)(1)(B).

## ARGUMENT

Rule 19(a) of the Federal Rules of Civil Procedure provides, in part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

The Tribe meets all of those qualifications, and therefore it should be joined as a party. It should join as a plaintiff but has refused to do so, as described above. It

therefore may be made a defendant, as this is not a "proper case" for making it an "involuntary plaintiff."[3]  Its formal alignment as a defendant need not and should not have any substantive impact on the conduct of this action, however.  It may submit briefs and arguments in support of the plaintiffs' position, and like all other parties it will be bound by the judgment in this action.

**A.  The Tribe is subject to service of process, and its joinder will not deprive the court of jurisdiction over the subject matter of the action.**

As stated above, the Tribe is located on a reservation in King William County, Virginia, within 100 miles of the Court.  It therefore is subject to service of process pursuant to Fed.R.Civ.P. 4(k)(1)(B), which provides:  "Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant … who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues."

As stated in the Complaint (¶ 9), the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (federal question).  This is not a diversity of citizenship case, and therefore joinder of the Tribe as a party creates no issues regarding the subject matter jurisdiction of the Court.

---

[3]      It is generally accepted that the "involuntary plaintiff" procedure is available only where the absentee (1) has a duty to allow the plaintiff to use its name or an obligation to join the plaintiff in the action and (2) is beyond the jurisdiction of the court, so that it cannot be joined as a defendant. *E.g.*, *Sheldon v West Bend Equipment Corp.*, 718 F.2d 603, 606 & n.2 (3d Cir. 1983); *Eikel v States Marine Lines, Inc.*, 473 F.2d 959, 961-62 (5th Cir. 1973).  *See also* 7 C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure* §§ 1605, 1606 (3d ed. 2001).

**B.   The Tribe claims an interest relating to the subject of the action.**

      The Tribe has repeatedly demonstrated its claim of interest relating to the subject of this action, both by its active and vigorous participation in a series of administrative and judicial challenges to the project whose federal permit is at issue, as described very briefly above, and by its April 20, 2006, letter attached as Exhibit 1.

**C.   Disposition of the action in the absence of the Tribe would leave the present defendants subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the Tribe's claimed interest.**

      If this case proceeds in the absence of the Tribe, and the Tribe later brings a separate action challenging the Corps' permit decision, there is a very clear and substantial risk that the courts might render conflicting decisions that would impose multiple or otherwise inconsistent obligations on the Corps and Newport News.  One court might sustain the permit in all respects while the other found that the Corps had somehow erred in its decisionmaking and remanded the permit to the Corps for further proceedings.  Or both courts might find errors but remand with conflicting instructions.  The only circumstances under which the Corps and/or Newport News would *not* be subjected to multiple or otherwise inconsistent obligations would be if (1) both courts sustained the permit in all respects or (2) both courts identified identical errors in the decision and remanded with identical (or at least consistent) instructions.

      We are not aware of any cases presenting facts identical to this one.  The principles laid down by this Court and other federal courts in other cases establish,

however, that the "double, multiple, or otherwise inconsistent obligations" element is satisfied.

This case is analogous, for example, to *Bridges v. Blue Cross & Blue Shield Ass'n*, 889 F. Supp. 502 (D. D.C. 1995). Bridges, a federal employee participating in the Blue Cross and Blue Shield Service Benefit Plan, sued the Blue Cross & Blue Shield Association (BCBSA) claiming that BCBSA had secretly negotiated discounts with health care providers, resulting in Plan participants paying a higher percentage in coinsurance than they were supposed to pay. BCBSA moved to compel joinder of the Office of Personnel Management (OPM) as a defendant. The motion was granted. After noting that "the OPM has been actively working with BCBSA to implement changes in the discount amount methodology used to calculate coinsurance payments" and that "Plaintiffs' entire case involves the issue of allegedly improper discounted coinsurance payments, so the ongoing OPM/BCBSA negotiations and revisions will have direct consequences in this action," *id.* at 504, the Court reasoned that OPM's joinder was necessary under Rule 19(a)(2)(ii), the provision at issue here:

> should this Court not join the OPM as a party defendant, BCBSA runs a substantial risk of being subjected to inconsistent obligations. As stated above, BCBSA and the OPM are currently working to implement an agreement which would provide rebates to some federal employees whose coinsurance obligations were calculated according to the methodology formerly used by BCBSA entities and recently refined by the OPM and BCBSA. If this Court were to award plaintiffs all or some of the remedies they currently seek, BCBSA would be obligated not only to fulfill its duties under the OPM agreement, but also its duties as imposed by this Court, and those obligations might well come into conflict.

*Id.* In this case, absent joinder of the Tribe, the Corps and Newport News face a substantial risk of being subjected to inconsistent obligations due to separate adjudications of suits by the Alliance and the Tribe, not as a result of a judgment inconsistent with contractual agreements. The analogy to this case nevertheless is clear.

The Court of Appeals invoked Rule 19 *sua sponte* in *Weisberg v. U.S. Dep't of Justice*, 631 F.2d 824 (D.C. Cir. 1980), because Weisberg's Freedom of Information Act (FOIA) suit subjected the Department of Justice to a substantial risk of incurring inconsistent obligations. Weisberg sought copies of copyrighted photographs of the scene of the assassination of Dr. Martin Luther King, Jr., that TIME, Inc., had submitted to the FBI for use in the assassination investigation. The district court adjudicated Weisberg's claim without joining TIME, Inc., the copyright holder.

The Court of Appeals reversed. It agreed with the district court that the photos were "agency records" and therefore subject to the FOIA. It declined, however, to decide whether such materials were within statutory exemptions or subject only to inspection rather than copying, as the Government argued, or whether the FOIA requires the Government to provide copies of copyrighted materials on the same terms as any other agency records. It concluded instead that the district court should have sought the presence of the alleged copyright holder under Rule 19 before deciding the case. Deciding the case in its absence exposed the Department to a substantial risk of inconsistent obligations: it might be ordered to release the photographs to Weisberg in one action but held liable to TIME, Inc., for doing so in

9

another. "If TIME were to bring its own action challenging the Government's right to duplicate the photos, the district court's determination would not necessarily serve as a bar…. The possibility therefore remains that a separate action by TIME would be allowed to proceed, raising the prospect of conflicting legal obligations for the Government with respect to the disposition of TIME's photos." *Id.* at 829-30.

This case is distinguishable from *Weisberg*, of course, but it is analogous. This Court's determination that the KWR permit is valid, for example, or a decision rejecting some of the plaintiffs' challenges but remanding for further proceedings on others, "would not necessarily serve as a bar" to a later suit by the Tribe, thus "raising the prospect of conflicting legal obligations for the Government." The same conclusion – that the Tribe should be joined under Rule 19(a) – therefore applies here.

In another case, brought by lessees of a condemned property against one of several co-owners of the property, the Court of Appeals recognized that if the lessees prevailed and the defendant owner paid a judgment out of the condemnation proceeds, he "might, in later litigation, be adjudged liable to his co-lessors for the same proceeds" and [s]uch a risk of inconsistent adjudication and multiple liability is often accepted as sufficient to make an absentee claimant 'indispensable.'" *Park v. Didden*, 695 F.2d 626, 632 (D.C. Cir. 1982). Again, the case clearly is analogous, and it supports a decision requiring joinder of the Tribe in this case.

In *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435 (4th Cir. 1999), Owens-Illinois sued to compel arbitration of attorney Meade's clients' (Plaintiffs') claims alleging personal injuries resulting from exposure to Owens-Illinois' asbestos products. It sought to enforce an Agreement which specified the terms and process

10

by which Meade's clients would settle future asbestos tort cases against Owens-

Illinois.  Subject matter jurisdiction was based on diversity of citizenship.  Owens-

Illinois therefore named only Plaintiffs who lived in West Virginia as defendants,

excluding Plaintiffs who lived in Ohio, the location of Owens-Illinois' principal place

of business.  The Fourth Circuit held that the Ohio Plaintiffs were parties that should

be joined under Rule 19(a)(2)(ii):

> The non-diverse Plaintiffs are necessary parties to this
> action because permitting this suit to continue in both the state
> and federal courts would likely subject all of the parties to
> conflicting legal obligations in a manner prohibited by Rule
> 19(a)(2)(ii).  As the district court noted, in the instant case both
> courts are being asked to make determinations on the validity
> and interpretation of the Agreement, creating a high likelihood
> of incongruous results.  In previous cases we have ruled that the
> increased potential for inconsistent judgments is grounds for
> finding a non-joined party necessary….
>
> .… If this action was allowed to proceed one court
> might compel arbitration on the basis of the Agreement, while
> the other found that, because Owens-Illinois breached the
> Agreement, alternative judicial remedies were available to some
> of the Plaintiffs.  This potential for factual and legal "whip-saw"
> weighs heavily in favor of having one court adjudicate the entire
> case with all of the affected parties before it….  In fairness to all
> of the parties involved in this matter, we hold that the non-
> diverse, Ohio Plaintiffs excluded from the Petition to Compel
> are necessary parties.

*Id*. at 441 (citations omitted).  There is a similar "potential for factual and legal

'whip-saw'" in this case, which likewise "weighs heavily in favor of having one court

adjudicate the entire case with all of the affected parties before it."

*Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076 (5th Cir. 1984), is a

procedurally complicated case, but the details are not material here.  Insofar as

relevant, Aetna lent money for a major agricultural development in Australia to

11

various Australian entities which Crutcher controlled, and Crutcher personally guaranteed the loans. Crutcher claimed that Aetna's delay in funding the loans made him unable to plant a crop, resulting in the absence of a cash flow from which to make scheduled payments and "yield[ing] the bitter harvest of default." *Id*. at 1079. After the default, Aetna appointed receivers for the agricultural property under Australian law. Crutcher subsequently sued Aetna alleging breach of fiduciary duties, mismanagement, self-dealing, tortious interference, and conspiracy.

The district court held that the Australian receivers were necessary parties who could not be joined and dismissed the suit. The Fifth Circuit agreed. In an opinion by Judge John R. Brown, it reasoned that "our decree would not bind the receivers, thus running the risk of inconsistent obligations being imposed upon persons and property." *Id*. at 1080.

> As an example, if we granted the relief requested by Crutcher, rescinding and cancelling the receivership, Camballin Farms would be placed in the position of being declared free of the receivership by an American court and remaining subject to the receivership under Australian law. Besides presenting an international conflict between the courts of Australia and the United States, this would certainly place a cloud on the status of the receivership.

*Id*. at 1080 n.8. Similarly, a decision by one federal court sustaining the KWR permit, and a decision by another federal court invalidating the permit, "would certainly place a cloud on the status" of the permit and thus impose inconsistent obligations on the Corps and Newport News.

12

In short, principles established by analogous cases demonstrate that the "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" element of Rule 19(a)(2)(ii) is satisfied here.

**D.  The Tribe's participation in this action will further the interests that Rule 19 was designed to protect.**

The Tribe's participation in this action also will further "those interests that Rule 19 was designed to protect, including the public interest in preventing multiple and repetitive litigation, and the interest of parties in obtaining complete and effective relief in a single action." *National Union Fire Ins. Co. v. Massachusetts Municipal Wholesale Electric Co.*, 117 F.R.D. 321, 323 (D. Mass. 1987). *See also, e.g.,* *Provident Bank v. Patterson*, 390 U.S. 102, 108, 88 S. Ct. 733 (1967): "The optimum solution [is] an adjudication … that would be binding on all interested persons"; *Federal Resources Corp. v. Shoni Uranium Corp.*, 408 F.2d 875, 877-78 (10th Cir. 1969): "To obtain this result [the "optimum solution" referenced in *Provident Bank*] is the very purpose of Rule 19 and reflects the true interest of all litigants, both state and federal courts, and, indeed, the public itself.  Legal controversies should be settled, when possible, in whole and not through multiple litigation." *See generally, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130 (1966), citing Federal Civil Rules 2, 18-20 and 42: "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."

There is no *good* reason for the Tribe's refusal to intervene as a plaintiff in this action.  The only apparent reason for its reluctance is that it wants to preserve the

13

option of taking a "second bite at the apple," a second attempt to invalidate Newport

News' Corps permit, probably in another court, if the Alliance fails to do so in this

action. That tactic may suit the Tribe's purposes, but it is antithetical to all of the

goals and purposes of Rule 19, and indeed of the Federal Rules of Civil Procedure

generally. *See* Notes of Advisory Committee on 1966 amendments to Rule 19:

> Whenever feasible, the persons materially interested in the
> subject of an action … should be joined as parties so that they
> may be heard and a complete disposition made…. New
> subdivision (a) defines the persons whose joinder in the action is
> desirable. Clause (1) stresses the desirability of joining those
> persons in whose absence the court would be obliged to grant
> partial or 'hollow' rather than complete relief to the parties
> before the court. The interests that are being furthered here are
> not only those of the parties, but also that of the public in
> avoiding repeated lawsuits on the same essential subject matter.

*See also*, *e.g.*, *Provident Bank*, *supra*, 390 U.S. at 111, referring to "the interest of the

courts and the public in complete, consistent, and efficient settlement of

controversies"; *Acton Co. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78

(1st Cir. 1982): Rule 19 "furthers several related policies, including the public

interest in preventing multiple and repetitive litigation, the interest of the present

parties in obtaining complete and effective relief in a single action, and the interest of

absentees in avoiding the possible prejudicial effect of deciding the case without

them." *See generally* Fed.R.Civ.P. 1: "These rules …. shall be construed and

administered to secure the just, speedy, and inexpensive determination of every

action."

14

## CONCLUSION

For the reasons stated in this memorandum, the requirements of

Fed.R.Civ.P. 19(a)(2)(ii) are satisfied and Newport News' motion to join the

Mattaponi Indian Tribe as a defendant should be granted.

Respectfully submitted,

TROUTMAN SANDERS LLP

Charles A. Zdebski (D.C. Bar #451075)
Troutman Sanders LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004-2134
(202) 274-2909 (Phone)
(202) 654-5632 (Fax)

*Counsel for the City of Newport News, Virginia*

Of Counsel:

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia  23218-1122
(804) 697-1200 (Phone)
(804) 698-1339 (Fax)

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia  23462
(757) 687-7500 (Phone)
(757) 687-7510 (Fax)

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Street
Newport News, Virginia  23607
(757) 926-8416 (Phone)
(757) 926-8549 (Fax)

1540855