UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, et al. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 06-CV-1268 ) |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al. | ) ) ) |
| Defendants. | ) ) ) |

**COMBINED MEMORANDUM
IN SUPPORT OF THE UNITED STATES' PARTIAL MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants United States Army Corps of Engineers, et al. ("Corps") and United States Environmental Protection Agency ("EPA") (collectively "United States") move to dismiss all claims asserted against EPA by plantiff-intervenors Mattaponi Indian Tribe, et al. ("Tribe"). The United States further moves to dismiss the Tribe's claims against the Corps asserted under the citizen-suit provision of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365(a). Finally, the United States opposes plaintiffs Alliance to Save the Mattaponi, et al.'s (collectively "Alliance's") motion to amend their complaint to add claims against EPA and the Corps similar to those asserted by the Tribe.

The Alliance originally filed suit to challenge the Corps' issuance of Permit No. 93-0902-12 ("Permit") authorizing construction of the King William Reservoir ("Reservoir"), alleging that the Corps' issuance of the Permit violated various environmental laws and was arbitrary,

capricious, or otherwise contrary to law. See Alliance Complaint ("Alliance Compl.") ¶ 1 and Counts I - VI. On November 8, 2006, the Tribe filed an unopposed motion to intervene as a plaintiff in this matter. The Tribe's Complaint ("Tribe Compl.") adds both a new defendant (EPA) and additional claims against the Corps to those asserted in the Alliance's Complaint. The Alliance has now moved to amend its Complaint to add claims against EPA and the Corps that are essentially identical to those contained in the Tribe's Complaint. See Motion for Leave To File First Amended Complaint ("Alliance Mot."); Plaintiffs' Memorandum Of Points And Authorities In Support Of Motion For Leave To File First Amended Complaint ("Alliance Mem.")

The Alliance and the Tribe seek to proceed against both agencies under (1) the citizen-suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(2), and (2) the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. As to the first set of claims, the citizen-suit provision of the Clean Water Act authorizes claims against EPA only where EPA has failed to perform a mandatory duty, and neither the Tribe nor the Alliance has identified any such duty. The relevant provision of this Act does not, moreover, authorize claims against the Corps at all. The Tribe's claims against both agencies under the Clean Water Act must therefore be dismissed, and the Alliance's motion to add such claims should be denied. as futile.[1]

As to claims asserted under the APA, the United States does not dispute that the Court has jurisdiction over the Alliance's and the Tribe's challenges to the Corps' issuance of the

---

[1] The Alliance's proposed amended complaint would also include "update[s]" to the factual allegations contained in paragraphs 15, 18, 19, and 85 of their existing complaint. Alliance Mot. at 3. Although these amendments appear unnecessary, the United States does not oppose the Alliance's motion to amend these particular paragraphs.

- 2 -

Permit as arbitrary, capricious, or otherwise contrary to law; thus, both parties have an adequate remedy against the Corps if issuance of the Permit was in fact in error. The APA does not, however, apply where agency action or inaction "is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and neither the Tribe nor the Alliance has identified any nondiscretionary duty that EPA failed to fulfill. The Tribe's claims against EPA under the APA must therefore be dismissed, and the Alliance's motion to add such claims should be denied as futile.

## BACKGROUND

### I.    Statutory Background

#### A.    The Clean Water Act

The Clean Water Act is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, Congress sought to control discharges of pollutants at their source. See EPA v. California ex rel. State Water Resources Control Bd., 426 U.S. 200, 204-05 (1976). Accordingly, the Act prohibits the discharge of any pollutant into covered waters in the absence of a permit. 33 U.S.C. § 1311(a). Permit programs established by the Act include the Section 404 program, which authorizes the Corps (or approved states) to issue permits for the discharge of dredged or fill material into navigable waters at specific sites. 33 U.S.C. § 1344(a)-(b), (g)-(j). Such sites are to be specified by the Corps "through the application of guidelines developed by [EPA], in conjunction with [the Corps]." 33 U.S.C. § 1344(b). These "guidelines" are found at 40 C.F.R. Part 230.

EPA itself does not issue Section 404 permits, and EPA's role under Section 404 is limited and discretionary:

> [EPA] is <u>authorized</u> to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and . . . is <u>authorized</u> to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever [EPA] determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have [certain adverse effects].

33 U.S.C. § 1344(c) (emphasis added).

The Act also includes a citizen-suit provision, which allows citizens to bring civil actions against "any person" (including the United States) "who is alleged to be in violation of" certain effluent standards or limitations and certain related orders. 33 U.S.C. § 1365(a)(1). Of particular relevance here, the citizen-suit provision also authorizes citizens to bring an action against "the Administrator" when "there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). "Administrator" in the Act refers explicitly to the Administrator of EPA, as distinct from the Corps or any Corps officials. 33 U.S.C. § 1251(d) (referring to " . . . the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator'"); <u>compare</u> 33 U.S.C. § 1344(d) (defining "the Secretary" as used in Section 404 as the Secretary of the Army, acting through the Chief of Engineers).

### B. The Administrative Procedure Act

The judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 <u>et</u> <u>seq</u>., provide that persons "adversely affected or aggrieved by agency action within the meaning of a relevant statute" have a right to judicial review. 5 U.S.C. § 702; <u>see also id</u>. § 704 (specifying reviewable actions). Agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise unlawful may be set aside. 5 U.S.C. § 706(2). "Agency action" includes certain failures to act, and a court has authority to "compel agency action unlawfully withheld."

5 U.S.C. §§ 551(13), 706(1). The only actions that may be compelled, however, are those that are "legally *required*." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) (italics in original); see also 5 U.S.C. § 701(a)(2) (the APA does not apply to extent that agency action or inaction "is committed to agency discretion by law.").

**II.    Factual and Litigation Background**

    **A.    The Alliance's Original Complaint**

On November 16, 2005, the Corps issued the Permit authorizing construction of the King William Reservoir. Tribe Compl. ¶ 22; see also Alliance Compl. ¶ 1. On July 16, 2006, the Alliance filed a complaint against the Corps, alleging in relevant part that the issuance of the Permit was "arbitrary and capricious, an abuse of discretion, and not in accordance with law" for various reasons. See, e.g., Alliance Compl. ¶¶ 97, 104, 110, 116  The Alliance alleges that its claim "arises under" the Clean Water Act, the National Environmental Policy Act ("NEPA"), and the APA. Alliance Compl. ¶ 9. The Alliance further alleges that the Court has jurisdiction over this matter pursuant to the federal question statute, 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Alliance Compl. ¶ 9. The Alliance did not, however, rely on the citizen-suit provision of the Clean Water Act for its claims against the Corps.

### B.     The Tribe's Complaint

The Court granted the Tribe's motion to intervene in this matter on November 16, 2006. In many respects, the Tribe's complaint parallels that filed by the Alliance.[2/] The Tribe, however, specifically cites the citizen-suit provision of the Clean Water Act as one basis for the Court's jurisdiction. Tribe Compl. ¶ 4. The Tribe also added EPA as a defendant, alleging that EPA has "ultimate and final supervisory authority" over the Corps's administration of Section 404 and that by "allowing" the Corps to issue the Permit EPA acted arbitrarily and capriciously. Tribe Compl. ¶¶ 20, 111, 129. Moreover, in addition to alleging that the Corps acted arbitrarily or capriciously by issuing the Permit, the Tribe explicitly alleges that the Corps violated a variety of "mandatory dut[ies]" by issuing the Permit. See, e.g., Tribe Compl. ¶ 109, 113-119.

### C.     The Alliance's Motion to Amend

In light of the Tribe's allegations, the Alliance has now moved to amend its existing complaint. Alliance Mot. at 3. The Alliance's jurisdictional allegations remain the same as in the existing complaint. Compare Alliance Compl. ¶ 9 with Alliance Proposed Amended Complaint ("Am. Compl.") ¶ 11. The Alliance has, however, added claims against both EPA and the Corps. As to EPA, like the Tribe, the Alliance alleges that EPA has "final supervisory authority" over the Corps's administration of Section 404 and is required to ensure that the Corps complies with that Section and its implementing regulations. Am. Compl. ¶ 26. More

---

[2/] Pursuant to the Court's order granting the motion to intervene, the Tribe's complaint was deemed filed and served by mail as of November 16, 2006. Thus, the United States' response to that complaint would ordinarily have been due on January 18, 2007. The Court's further order of November 20, 2006, however, granted the parties' joint motion requesting, inter alia, that the United States' obligation to respond to the Tribe's complaint be stayed until all jurisdictional issues could be briefed simultaneously.

specifically, the Alliance alleges that EPA violated a mandatory duty by failing to "veto" issuance of the Permit under Section 404(c) of the Act, 33 U.S.C. § 1344(c). Am. Compl. ¶¶ 38, 105, 113, 122, 130. In the alternative, the Alliance alleges that EPA's failure to stop the Corps from issuing the Permit was arbitrary, capricious, or otherwise contrary to law. Am. Compl. ¶¶ 106, 114, 123, 131. Finally, as to the Corps, the Alliance has added an allegation that issuance of the Permit violated a "nondiscretionary duty" under the Act. Am. Compl. ¶¶ 105, 113, 122, 130.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, and a plaintiff bringing a case to federal court must establish a basis for the court's jurisdiction. Steel Co. v. Citizens For A Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)); Kokkonen v. Guardian Life Ins. Co. of America., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). For claims against the United States, a plaintiff's jurisdictional showing must include the identification of a waiver of sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit;" sovereign immunity is "jurisdictional in nature"). Waivers of sovereign immunity must be strictly construed in favor of the United States. United States v. Nordic Village Inc., 503 U.S. 30, 34 (1992); see also Lane v. Pena, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity

must be expressed "unequivocally . . . in statutory text.").

In reviewing a motion to dismiss, a court must view a complaint's factual allegations in the light most favorable to the plaintiff and draw all reasonable inferences in favor of the plaintiff.  See Fitts v. Fed. Nat'l Mortgage Ass'n, 44 F. Supp. 2d 317, 321 (D.D.C. 1999).  The Court should not, however, accept legal conclusions or mere allegations of subject matter jurisdiction as true.  See id.   With regard to the Alliance's motion to amend, such motions may be denied where amendment would be futile because the proposed pleading would not survive a motion to dismiss.  National Wrestling Coaches Ass'n v. Department of Education, 366 F.3d 930, 945 (D.C. Cir. 2004).  The Alliance's amended complaint would do far more than simply adding a new "legal theory," Alliance Mem. at 4; instead, it would add claims over which the Court lacks subject matter jurisdiction.  The Alliance's Motion to Amend should thus be denied.

## ARGUMENT

Although the jurisdictional allegations are framed slightly differently in the two complaints, the Tribe, the Alliance, or both invoke (1) the federal question provision of 28 U.S.C. § 1331; (2) the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; (3) the Mandamus Act, 28 U.S.C. § 1361; (4) the citizen-suit provision of the Clean Water Act, 28 U.S.C. § 1365(a)(2); and (5) the APA.  Tribe Compl. ¶ 4; Am. Compl. ¶ 11.[3]  Of these provisions, only two contain possibly applicable waivers of sovereign immunity.  "Neither the federal-question statute nor the

---

[3] The Tribe alleges that the Court has jurisdiction under 28 U.S.C. § 1331 because the action "arises under" laws of the United States including the Declaratory Judgment Act, the Clean Water Act, and the APA.  Tribe Compl. ¶ 4.  The Alliance alleges that the action "arises under" laws including the Act and the APA, and further alleges that the Court has jurisdiction under the federal-question statute, the Mandamus Act, and the Declaratory Judgment Act.  Am. Compl. ¶ 9.

- 8 -

mandamus statute by itself waives sovereign immunity." Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) (citation omitted). The Declaratory Judgment Act, moreover, is merely a procedural statute, and does not itself waive the United States' sovereign immunity. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft, 360 F. Supp.2d 64, 66 n.3 (D.D.C. 2004).

That leaves the Act's citizen-suit provision and the APA, neither of which authorizes the claims asserted against EPA. Section 505(a)(2) of the Act waives sovereign immunity for claims against EPA only for failure to perform acts which are "not discretionary," and the Tribe and the Alliance have failed to identify any such failure. Moreover, even if the APA's waiver of sovereign immunity might otherwise extend to plaintiffs' request for declaratory relief, see Trudeau v. FTC, 456 F.3d 178, 186-187 (D.C. Cir. 2006), the APA does not apply where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The APA thus simply does not authorize a claim against EPA based on the alleged failure to perform a wholly discretionary action. See Norton, 542 U.S. at 63-64.

As to the Corps, while there is no dispute that the Alliance and the Tribe can pursue an APA claim challenging the Corps's issuance of the Permit as arbitrary or capricious, the waiver of sovereign immunity contained in the citizen-suit provision of the Clean Water Act does not authorize any claims against the Corps. All of the Tribe's claims against EPA, and its claims against the Corps asserted under the Clean Water Act, should therefore be dismissed; moreover, the Alliance's motion to amend its complaint to add similar claims should be denied.

**I.     THE COURT LACKS JURISDICTION OVER ALL CLAIMS AGAINST EPA.**

The Tribe's claim against EPA is based on EPA's alleged failure to "exercise its

supervisory authority" over the Corps, whereby EPA allegedly improperly "allowed the approval" of the Permit. See, e.g., Tribe Compl. ¶ 104, 111, 129; see also id. ¶ 20 (alleging that EPA has "ultimate and final supervisory authority" over Corps's administration of Section 404). The Tribe's complaint never identifies the source of this alleged supervisory authority – the closest the Tribe comes is by alleging that EPA is responsible for promulgating regulations implementing Section 404 of the Act.[4] Tribe Compl. ¶ 106. The Alliance similarly alleges generally in its proposed amended complaint that EPA has "final supervisory authority" over the Corps, and also points specifically to EPA's authority to "veto" a permit under Section 404(c) of the Act, 33 U.S.C. § 1344(c). Am. Compl. ¶¶ 26, 38. Neither the Tribe nor the Alliance has, however, identified any nondiscretionary duty that might justify their claims against EPA.

> A.  **Section 505(a)(2) Of The Act Does Not Waive Sovereign Immunity As To The Tribe's Or The Alliance's Claims Against EPA.**

The Act's citizen-suit provision is a limited waiver of sovereign immunity that, in pertinent part, authorizes suits against EPA alleging a failure to perform a nondiscretionary duty. 33 U.S.C. § 1365(a)(2) (suit allowed against "the Administrator [of EPA] where there is alleged a failure . . . to perform any act or duty under this chapter which is not discretionary"); see also Sierra Club v. Whitman, 268 F.3d 898, 901 (9th Cir. 2001) (where EPA acts within its discretion, district court properly dismisses for lack of jurisdiction.) There is no merit to the Alliance's claim (and the Tribe's implied claim) that EPA had a mandatory duty to "veto" the Permit under Section 404(c), 33 U.S.C. § 1344(c). Under that Section, EPA is "authorized" – but not required

---

[4] The Act does provide that disposal sites in 404 permits are to be specified "through the application of guidelines developed by [EPA], in conjunction with [the Corps]." 33 U.S.C. § 1344(b)(1)). Such guidelines have been promulgated and are found at 40 C.F.R. Part 230. Thus, any duty this section imposes on EPA has been fulfilled.

– to prohibit or restrict the use of disposal sites in Section 404 permits in certain circumstances. As multiple courts have held, the non-mandatory language of Section 404(c) renders EPA's exercise of discretion under that section outside the ambit of the Act's citizen-suit provision. See City of Olmsted Falls v. EPA, 266 F. Supp. 2d 718, 723 (N.D. Ohio 2003) (EPA veto power set forth in Section 404(c) is "obvious[ly] discretionary"); Preserve Endangered Areas of Cobb's History, Inc. v. Corps, 915 F. Supp. 378, 380-381 (N.D. Ga. 1995), aff'd 87 F.3d 1242, 1249-1250 (11th Cir. 1996) (dismissing for lack of jurisdiction claim that EPA failed to veto issuance of permit, and holding that such a claim was not authorized by 33 U.S.C. § 1365 (a)(2)). The waiver of sovereign immunity in the Act's citizen-suit provision thus does not authorize any claim based on EPA's allegedly improper failure to "veto" the Permit.

    **B.    The APA Does Not Authorize The Tribe's Or The Alliance's Claims Against EPA.**

The Tribe and the Alliance also assert an APA claim against EPA, alleging that by "allowing" the Corps to issue the Permit, EPA "acted arbitrarily and capriciously, and otherwise not in accordance with law." Tribe Compl. ¶ 111; Am. Compl. ¶¶ 106, 114, 123, 131. Neither party identifies any allegedly arbitrary action by EPA; rather, it is EPA's inaction that underlies both complaints. And while agency inaction is reviewable in some circumstances, the APA does not apply where agency action or inaction is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As established above, EPA's decision of whether to "veto" a Corps permit under Section 404(c) is firmly committed to EPA's discretion; thus, any assertion that EPA improperly failed to take action is not within the ambit of the APA. See Heckler v. Chaney, 470 U.S. 821, 828 (1985) (before judicial review may be had under APA, party must "clear the hurdle of § 701(a)"); see also Olmsted Falls, 266 F. Supp. 2d at 723 (finding that because of "the obvious

discretionary nature of [EPA's] veto power under Section 404(c)," court lacked jurisdiction over APA claim based on decision not to veto issuance of permit).

As the Supreme Court has further held, "the only agency action that can be compelled under the APA is action legally *required*." Norton, 542 U.S. at 63 (italics in original). The Court reasoned that the provision of the APA authorizing a court to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), was based on the pre-existing mandamus remedy, which was in turn limited to "enforcement of a specific, unequivocal command." Norton, 542 U.S. at 63 (citation omitted). Section 706(1) "empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." Id. at 64 (internal quotations and citation omitted). Thus, the Court held, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Id. (italics in original); see also id. at 65 (limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law). Neither the Tribe nor the Alliance has identified any such act.

The Tribe and the Alliance have thus failed to carry their burden of showing that their claims against EPA are authorized under either the citizen-suit provision of the Act or under the APA. The Tribe's claims against EPA should therefore be dismissed, and the Alliance's motion to amend its complaint to add similar claims should be denied.

> **C.    The Alliance Has Identified No Waiver of Sovereign Immunity That Would Authorize a Claim Based on an Alleged Violation of the Chesapeake 2000 Agreement.**

The Alliance's original complaint asserts a claim against the Corps based on an alleged violation of the "Chesapeake 2000" agreement, and the Alliance now seeks to amend its

complaint to add a claim that EPA, by failing to "veto" the Permit, has also violated this agreement.  Compl. ¶¶ 128-32; Am. Compl. ¶¶ 143-147.  The Alliance has, however, failed to identify a waiver of sovereign immunity that would authorize either claim.[5/]  See supra at 7, 8-9.

The Alliance cannot rely on the APA's waiver of sovereign immunity.  See Am. Compl. ¶ 147.  "As a procedural statute, the APA provides no substantive requirements, but merely provides the framework for judicial review of agency action. . . . Accordingly, "[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the basis for [the] complaint.'"  Preferred Risk Mut. Ins. v. United States, 86 F.3d 789, 792 (8th Cir. 1996) (citations omitted); see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 883 (1990) (party seeking review under APA must show he is adversely affected or aggrieved within meaning of relevant statute); Trudeau, 456 F.3d at 187-88 (distinguishing between waiver of sovereign immunity and cause of action); Sierra Club v. Martin, 110 F.3d 1551, 1555 (11th Cir. 1997).  The Chesapeake 2000 Agreement is not, however, a "relevant statute" whose violation could support an APA claim.

The Alliance's claim against the Corps based on an alleged violation of the Agreement should be therefore be dismissed, and its motion to amend its complaint to add a similar claim

---

[5/] The Agreement is not an act of Congress, but rather is a voluntary agreement among Maryland, Pennsylvania and Virginia; the District of Columbia; the Chesapeake Bay Commission, a tri-state legislative body; EPA; and citizen advisory groups, which guides the Chesapeake Bay Program members' combined efforts to restore and protect the Chesapeake Bay.  Thus, the Agreement itself cannot, and indeed does not, waive the United States' sovereign immunity.  See Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress"); United States v. Testan, 424 U.S. 392, 399 (1976) (except as Congress has consented to cause of action against United States, there is no jurisdiction to entertain suit).

against EPA should be denied.

## II. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE CLEAN WATER ACT CLAIMS AGAINST THE CORPS.

The United States does not challenge the Tribe's or the Alliance's right to seek judicial review of the Corps's issuance of the Permit under the APA. To the extent that either party seeks to proceed against the Corps under the Clean Water Act itself, however, they again step beyond the Court's jurisdiction. Section 505(a)(2) of the Act authorizes suits against "the Administrator," 33 U.S.C. § 1365(a)(2), which has consistently been held to extend only to EPA and exclude suits against the Corps. See 33 U.S.C. § 1251(d) (specifying that Administrator of EPA is referred to as "Administrator"); Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1249 (11th Cir. 1996); Northwest Environmental Defense Center v. United States Army Corps of Engineers, 118 F. Supp. 2d 1115, 1119-20 (D. Or. 2000); Cascade Conservation League v. M.A. Segale Inc., 921 F. Supp. 692, 696-97 (W.D. Wash. 1996).

There is, moreover, no basis for a claim under Section 505(a)(1) that the Corps has "violated" the Act simply by issuing the Permit.[6/] Any such claim would run counter to the Supreme Court's ruling in Bennett v. Spear, 520 U.S. 154 (1997). In that case, the Court held

---

[6/] The Alliance's original Complaint improperly characterizes its claim as one for "violation" of the Clean Water Act or its implementing regulations. See Compl. ¶ 5, 97, 104, 110, 116. Generously read, however, the same allegations that the Alliance relies on to establish a "violation" of the Act state a claim under the APA that issuance of the permit was arbitrary, capricious, or an abuse of discretion. The United States thus did not seek dismissal of the Alliance's original complaint (although it did assert a defense of lack of subject matter jurisdiction; see Answer at 32). At this time, however, the Court should clarify that both the Tribe's and the Alliance's only proper claims against the Corps are those asserted under the APA.

that a citizen-suit provision authorizing claims based on a "violation" of the statute was "not an alternative avenue for judicial review of [an agency's] implementation of the statute." Bennett, 520 U.S. 173. Even if found arbitrary and capricious, the Corps's issuance of the permit would not be a "violation" of the Act – it would simply be an arbitrary agency action to be set aside under the APA. Thus, while all plaintiffs remain free to pursue their remedies against the Corps under the APA, any claims against the Corps asserted under the Clean Water Act should be dismissed, and the Alliance's motion to amend their complaint to add such claims should be denied.

## CONCLUSION

For the foregoing reasons, all of the Tribe's claims against EPA, and all claims asserted against the Corps under the Clean Water Act, should be dismissed, and the Alliance's Motion to Amend should be denied.

February 23, 2007                             Respectfully submitted,

                                              MATTHEW J. MCKEOWN
                                              Acting Assistant Attorney General
                                              United States Department of Justice
                                              Environment & Natural Resources Division

                                                /s/ Angeline Purdy
                                              ANGELINE PURDY
                                              Trial Attorney
                                              Environmental Defense Section
                                              PO Box 23986
                                              Washington DC 20026-3986
                                              (202) 514-0996 (tel.)
                                              (202) 514-8865 (fax)
                                              Angeline.Purdy@usdoj.gov

                    DEVON LEHMAN McCUNE
                    Trial Attorney
                    Natural Resources Section
                    1961 Stout St., 8th Floor
                    Denver, CO 80294
                    (303) 844-1487 (tel.)
                    (303) 844-1350 (fax)
                    Devon.McCune@usdoj.gov

                    SAMANTHA KLEIN
                    Trial Attorney
                    Natural Resources Section
                    PO Box 663
                    Washington DC  20044-0663
                    (202) 305-0474 (tel.)
                    (202) 305-0506 (fax)
                    Samantha.Klein@usdoj.gov


Of Counsel:

Pat M. Falcigno
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers