IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:02-CV-53-(4)

PAMLICO-TAR RIVER FOUNDATION,    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )
                                 )
U.S. ARMY CORPS OF ENGINEERS;    )
COLONEL JAMES DELONEY, U.S.      )
Army Corps of Engineers,         )
Wilmington District; LT.         )                **ORDER**
GENERAL ROBERT B. FLOWERS,       )
U.S. Army Corps of Engineers;    )
UNITED STATES ENVIRONMENTAL      )
PROTECTION AGENCY; JIMMY         )
PALMER, Regional                 )
Administrator, Region IV,        )
U.S. EPA; CHRISTINE WHITMAN,     )
Administrator, U.S. EPA; and     )
PCS PHOSPHATE COMPANY, INC.      )
                                 )
        Defendants.              )

        This matter is before the court on defendants' motions to
dismiss.  Plaintiff has responded and this matter is ripe for
adjudication.


### STATEMENT OF THE CASE

        Plaintiff Pamlico-Tar River Foundation ("PTRF") filed this
action on April 4, 2002, under the Clean Water Act ("CWA"), 33
U.S.C. §1251, et seq., and the Administrative Procedure Act
("APA"), 5 U.S.C. §§701-706.  PTRF's complaint challenges the
issuance of a permit by defendant U.S. Army Corps of Engineers
("the Corps") to defendant PCS Phosphate, Inc. ("PCS"), authorizing

PCS to discharge dredged materials into 1,263 acres of wetlands owned by PCS in Beaufort County, North Carolina, in connection with PCS's mining and manufacturing activities.

Count I of the complaint alleges that the Corps violated the CWA by failing to consider practicable alternatives to the permitted action, and that defendant United States Environmental Protection Agency ("EPA") violated the CWA by not properly reviewing and vetoing the permit. Count II alleges that the Corps violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4332, by failing to consider reasonable alternatives to the permitted action. Count III alleges that the Corps also violated NEPA by failing "to fully assess the range of cumulative and foreseeable impacts from actions connected to the proposed activity." Compl. ¶¶58-59. The complaint requests declaratory and injunctive relief.

On May 22, 2003, the federal defendants[1] moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing that PTRF lacks standing to bring this action, and that Count I of the complaint fails to state a claim for which relief may be granted. The following day, PCS submitted its own motion to dismiss pursuant to the same rules, asserting the federal defendants' sovereign immunity, PTRF's lack of standing, and PTRF's

---

[1]"Federal defendants" refers to all defendants in this action other than PCS.

2

failure to state a claim in all counts of the complaint.[2]

## STATEMENT OF THE FACTS

Plaintiff's complaint alleges the following facts. PTRF is a non-profit corporation with approximately 1,300 members, the majority of whom live and work on or near the Pamlico and Tar Rivers. "Many PTRF members visit, recreate, fish, hunt, boat, swim, view wildlife, and otherwise use and enjoy the waters of the Pamlico River adjoining and in the vicinity of the phosphate mining activities which are the subject of this lawsuit." Compl. ¶5. PTRF members work to protect wetlands adjacent to the Pamlico River in order to maintain their role of protecting and improving water quality in the river. PTRF and its members claim to be directly harmed by the loss of wetlands and the appurtenant algal blooms, fish kills, and loss of plant and animal habitat.

PCS owns nearly 50,000 acres of land adjoining the Pamlico River and its tributaries, on which it mines and processes phosphate. The northeastern-most portion of the PCS property is a peninsula known as Hickory Point or the NCPC tract. On July 15, 1991, PCA applied for a permit under §404 of the Clean Water Act to

---

[2]In its complaint, PTRF does not allege that PCS violated any federal law or duty, and focuses its attention primarily on the actions of the federal defendants. Accordingly, PCS's motion to dismiss primarily focuses on the propriety of PTRF's claims against the federal defendants. PTRF includes PCS as a defendant "pursuant to Rules 19(a) and 20(a)" of the Federal Rules of Civil Procedure, since PCS has an interest in this action and disposition of the action in its absence may impair its ability to protect its interests. Compl. ¶14.

mine phosphate in the NCPC tract over a 20-year period.  Over a
multi-year period, the Corps drafted and revised an environmental
impact statement ("EIS") regarding mining alternatives.  On August
27, 1997, the Corps issued a permit under §404 to PCS, authorizing
20 years of mining and establishing a mining sequence of 20 blocks
that must be mined in numerical order.  PTRF believed the federal
defendants' consideration of PCS' proposed mining activity to be
deficient under federal law, and, after PTRF provided notice to the
defendants of its intent to file suit, this action followed.[3]

## COURT'S DISCUSSION

### I.    Standard of Review

A federal district court confronted with a motion to dismiss
for failure to state a claim should view the allegations of the
complaint in the light most favorable to the plaintiff.    See
Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).   The
intent of Rule 12(b)(6) is to test the sufficiency of a complaint;
"importantly, [a  Rule 12(b)(6) motion] does not resolve contests
surrounding the facts, the merits of a claim, or the applicability
of defenses."  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th
Cir. 1999) (citing Republican Party v. Martin, 980 F.2d 943, 952
(4th Cir. 1992)).  After accepting all well-pleaded allegations in

---

[3]The court notes that the CWA contains certain notice and temporal
restrictions on filing suit in this court.  The parties agree that PTRF complied
with the notice requirements, and that any temporal defenses were waived during
extensive settlement negotiations that preceded the filing of this action.

the plaintiff's complaint as true and drawing all inferences in the plaintiff's favor, motions to dismiss are granted only where the plaintiff can prove no facts which would entitle him to relief. See Mylan Lab. Inc. v. Matkari, 7 F.3d 1130 (4th Cir. 1983).

Similarly, when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court assumes that all factual allegations in the complaint are true." Falwell v. City of Lynchburg, Virginia, 198 F.Supp.2d 765, 771-72 (W.D. Va. 2002)(citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Energy Recovery, Inc. v. Hauge, 133 F.Supp.2d 814, 816-17 (E.D. Va. 2000)). In order to survive a 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. Richmond, Fredricksburg, and Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "the moving party should prevail only if the material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law." Id.

## II.  Analysis

### A.  Standing

Defendants assert that PTRF has no standing to bring this action and that this court therefore lacks subject matter jurisdiction. In response to defendants' motions, PTRF asserts that it has "representational standing" to sue on behalf of its members.

An association has representational standing when "(a) its

members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); see also American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003). Here, PTRF asserts representational standing on behalf of its members who use the Pamlico River area in various ways in keeping with the group's purpose to protect the environmental quality of the area. The court finds that these averments establish the second and third prongs of representational standing. Defendants appear to challenge primarily the first prong, asserting that PTRF's members do not have standing in their own right to bring this action.

"With respect to individuals' standing, 'at an irreducible minimum, Art. III requires the party who invokes the court's authority to show (1) that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . and (2) that the injury fairly can be traced to the challenged action and (3) is likely to be redressed by a favorable decision." American Canoe, 326 F.3d at 517 (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "These three

prongs are most commonly referred to as (1) injury in fact, (2) traceability, and (3) redressibility." Id.

While standing challenges are common in environmental cases, the standing requirements in such cases "are not onerous." Id. "Environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc., 528 U.S. 167, 183 (2000)).

At this point, it is important to note that this matter is currently before the court at the pleading stage on a motion to dismiss. As plaintiff argues, this posture, and the accompanying standard of review set out above, significantly affects the court's resolution of the standing issue. In Lujan, supra, the Supreme Court held that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that the general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)). The Court explicitly drew a distinction between this relatively liberal standard and the more rigorous requirements of specific facts and affidavits at the summary judgment stage. Id.; see also National Wildlife Fed'n v. Burford, 835 F.2d 305, 312 (D.C. Cir. 1987).

7

Thus, the argument by defendants in this case that PTRF has failed to name specific members and their specific activities in specific locations in the Pamlico River area fails. While utterly vague or conclusory statements would be insufficient to establish representational standing, PTRF may establish standing by *generally* alleging "that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."[4]  American Canoe, 326 F.3d at 517.

The court finds that PTRF's complaint meets this burden. The complaint avers that (1) PTRF consists of many members working and residing in the area surrounding PCS's proposed activity, (2) that the members use that area for various enumerated aesthetic and recreational purposes, and (3) that the proposed activities will have a negative impact on the area and a related negative impact on the outdoor activities enjoyed by the members. The allegations of the members' activities and the injuries likely to flow from PCS's mining are expounded upon with sufficient particularity to suggest an injury in fact.

Additionally, the allegations of the complaint are sufficient

---

[4]Defendant cites, inter alia, United States v. AVX Corp., 962 F.2d 108 (1st Cir. 1992), for the proposition that significant specificity is required to establish representational standing in an environmental case.  The court has studied AVX, and finds that its analysis of the requirements of standing are not applicable to this case.  The AVX court appears to apply the standards applicable to standing challenges at the summary judgment stage, as opposed to the pleading stage relevant to this case.  Furthermore, the court finds that the allegations of PTRF in this case are more precise than those of the plaintiff in AVX.  In any event, this court is compelled to follow the law as subsequently announced by the Supreme Court in Lujan and the Fourth Circuit in American Canoe.

to establish traceability and redressibility.  PTRF alleges that
the algal blooms, fish kills, and loss of plant and animal habitat
that would injure PTRF members are common problems associated with
the destruction of wetlands, and that such problems are likely to
occur in the Pamlico River area if the proposed mining activity is
permitted.  PTRF also alleges that such harms may be averted if
injunctive relief is granted.

Accordingly, the court concludes that PTRF has sufficiently
alleged facts to show that members would have standing to bring
this action in their own right.  Whether plaintiff can establish
these allegations with specificity through affidavits and other
evidence is a matter for summary judgment.

B.    Count I - Violation of CWA §404

    1.    PTRF's Claim Pursuant to §505(a)(2) - Sovereign
          Immunity of the Corps

PCS contends that Count I of PTRF's complaint must be
dismissed because the federal defendants enjoy sovereign immunity
from the CWA claim.  A federal court does not have subject matter
jurisdiction over the federal government or its agencies unless
Congress has waived the government's sovereign immunity.  Dep't of
the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999).
Congressional waivers of sovereign immunity "must be unequivocally
expressed," and are "strictly construed . . . in favor of the
sovereign."  Lane v. Pena, 518 U.S. 187, 192 (1996).

The citizen suit provision of the CWA allows citizens to

9

institute an action "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."   33 U.S.C. §1365(a)(2) (also referred to as §505(a)(2) of the CWA).   This provision does not explicitly authorize suit against the Corps.   Therefore, in light of the narrow construction of waivers of sovereign immunity, PCS argues that the Corps may not be sued under the CWA.

In response, PTRF cites Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313 (4th Cir. 1988).   In Hanson, the plaintiffs alleged a violation of a non-discretionary duty by the Corps and the EPA in determining that certain lands were not wetlands subject to the permitting requirements of §404.   859 F.2d at 315.   The Fourth Circuit held that the plaintiffs' action against both the EPA Administrator and the Corps was permissible.   Specifically, the court found it "quite clear that both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms.   Id.   The court therefore concluded that §505(a)(2) of the CWA "should be interpreted . . . to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by section 1344(c)."   Id. at 316.

Another division of this court followed Hanson in a subsequent

10

similar case.  In Environmental Def. Fund v. Tidwell, 837 F.Supp.
1344 (E.D.N.C. 1992), the court denied a motion to dismiss the
Corps and the EPA from a lawsuit under §505(a)(2), holding that the

> EPA has a nondiscretionary duty to regulate dredged
> or fill material under [§404] . . . [T]he Corps
> remains "ultimately responsible" for making permit
> determinations under the statutory scheme of
> [§404].   Thus, under the 4th Circuit's expansive
> interpretation of nondiscretionary duty in Hanson,
> both   federal  Defendants'   actions   regarding
> silvicultural   activities   constitute   a
> nondiscretionary act for the purposes of section
> [505(a)(2)].

837 F.Supp. at 1354-55.

PCS argues that Hanson and Tidwell are not controlling or even
relevant to this court's resolution of the sovereign immunity
issue.  PCS notes that Hanson was before the Fourth Circuit on the
issue of the propriety of attorneys' fees awarded to the plaintiffs
after the merits of the case had been decided.  PCS also notes that
the Hanson court did not explicitly address the issue of sovereign
immunity in its adjudication of the case.  Similarly, the phrase
"sovereign immunity" does not appear in Tidwell.  PCS argues that
other circuits have more directly addressed the issue of sovereign
immunity and have found that the Corps is not liable to suit under
§505 of the CWA.  See Preserve Endangered Areas of Cobb's History,
Inc. v. U.S. Army Corps of Eng'rs, 915 F.Supp. 378 (N.D. Ga. 1995),
aff'd 87 F.3d 1242 (11th Cir. 1996); Northwest Envtl. Def. Ctr. v.
U.S. Army Corps of Eng'rs, 118 F.Supp.2d 1115 (D. Or. 2000).  Some
courts have also distinguished Hanson on the grounds asserted by

11

PCS, that the Fourth Circuit did not explicitly take up the issue of sovereign immunity. <u>Cascade Conservation League v. M.A. Segale, Inc.</u>, 921 F.Supp. 692, 697 (W.D. Wash. 1996).

Given the widely-accepted narrow construction of waivers of sovereign immunity, there is some force in the arguments asserted by PCS. Nevertheless, the court declines to hold that suit against the Corps pursuant to §505(a)(2) is unavailable when the Fourth Circuit has explicitly held to the contrary. Although the <u>Hanson</u> court did not directly address the issue of sovereign immunity, this court must presume that the Fourth Circuit found that it had jurisdiction over the case before passing on it. Furthermore, it is clear that the court was addressing the propriety of suits against the Corps despite the statute's reference only to the EPA Administrator: "Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exerts its authority over the Corps' determination." <u>Hanson</u>, 859 F.2d at 316. In the absence of a more acute ruling by the Fourth Circuit on the issue, this court is compelled to hold, as the Fourth Circuit did in <u>Hanson</u>, that suit against the Corps under §505(a)(2) is permissible.

### 2.    PTRF's Claim Pursuant to §505(a)(2) - Federal Defendants' Discretion

In Count I, PTRF alleges that (1) the Corps did not properly

12

construe CWA §404(b)(1) guidelines regulating the discharge of fill
material by failing to analyze a full range of practicable mining
alternatives, and (2) that the EPA failed to ensure compliance with
§404 by not requiring the Corps to conduct an analysis of a full
range of practicable and reasonable alternatives, and by not
vetoing the permit when the Corps failed to perform such an
analysis. Defendants' arguments in support of their motions to
dismiss this count focus primarily on whether the EPA and the Corps
violated a nondiscretionary duty, as required for suits under
§505(a)(2).[5] As stated above, CWA §505(a)(2) authorizes private
lawsuits "against the Administrator [of the EPA] where there is an
alleged failure of the Administrator to perform any act or duty
under this chapter which is *not discretionary* with the
Administrator." 33 U.S.C. §1365(a)(2) (emphasis added). Thus, in
order to determine whether PTRF's complaint states a cognizable
claim under §505(a)(2), the court must determine whether the Corps
had a nondiscretionary duty to "analyze a full range of practicable
mining alternatives," and whether the EPA had nondiscretionary duty
to require the Corps to conduct such an analysis and to veto a

---

[5]The federal defendants' motion concisely asserts this argument in an
effort to show that PTRF's complaint fails to state a claim for which relief may
be granted. In a zealous effort to take advantage of a more favorable, or at
least narrow, standard of review, PCS asserts that the federal defendants'
sovereign immunity is only waived as to nondiscretionary duties, and that
sovereign immunity bars suits based on discretionary duties such as those
allegedly in issue here. Although the court is doubtful that this distinction
makes a significant difference in the adjudication of the present motions, the
court will consider defendants' arguments in light of the narrow construction
given to waivers of sovereign immunity.

permit that was not the product of such an analysis.

Again, the court finds that its resolution of this issue is controlled by the Fourth Circuit's decision in Hanson.  In that case, the court held that "[t]he Corps has a mandatory duty to ascertain the relevant facts, correctly construe the applicable statutes and regulations, and properly apply the law to the facts," and that "[t]he EPA is ultimately responsible for the protection of wetlands."  Hanson, 859 F.2d at 315-16.  As a result, the court found that citizens could sue under §505(a)(2) "when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by [§404(c) of the CWA]."  Id. at 316.

The court finds that the allegations of Count I of PTRF's complaint are in accordance with the Fourth Circuit's explanation of the mandatory duties of the federal defendants.  Under guidelines promulgated by the EPA pursuant to the CWA, the Corps may not issue a permit for a proposed discharge into United States waters unless there is "sufficient information to make a reasonable judgment as to whether the proposed discharge will comply with the Guidelines."  40 C.F.R. §230.12(a)(3)(iv).  The guidelines further provide that, among other requirements, there can be no discharge into waters of the United States if a practicable, environmentally preferable alternative exists.  40 C.F.R. §230.10(a).  Finally, the guidelines contain a presumption that practicable, environmentally

14

preferable alternatives exist for activities that are not water-dependent.  40 C.F.R. §230.10(a)(3).

PTRF has alleged that the Corps failed to analyze a full range of practicable mining alternatives, and that this failure constituted an incorrect construction of the guidelines and application of the facts of this case.  According to PTRF, the Corps' failure to consider alternatives as required by the guidelines prevented it from making a "reasoned determination," as required by Hanson.  Similarly, PTRF alleges that the EPA shrank from its duty of oversight by not requiring the Corps to comply with the guidelines, and by not vetoing a permit issued on a faulty legal foundation.  The court concludes that these allegations closely track the Fourth Circuit's statement of the law in Hanson, and that the allegations, if true, would state a claim for which relief may be granted.

### 3.    PTRF's Claim Pursuant to the APA

In the alternative to its claim under §505(a)(2), PTRF alleges that Count I states a cognizable claim under the APA.  The APA permits courts to review and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. §706(2)(A).  Plaintiff asserts this claim in this court under the general grant of federal subject matter jurisdiction in 28 U.S.C. §1331.

15

In its motion to dismiss, PCS argues that this court lacks subject matter jurisdiction over the alternative APA claim because the challenged decisions are committed to the federal defendants' absolute discretion.  PCS notes that the APA does not apply to "agency action that is committed to agency discretion by law."  5 U.S.C. §701(a)(2).    However, this limiting provision has consistently been read to preclude judicial review of agency action only where courts would have "no law to apply" to determine whether an agency had behaved lawfully. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410 (1971).  "This is a very narrow exception . . .  it is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Id.  The phrase "committed to agency discretion by law has been interpreted to mean "committed to the agency's discretion absolutely." Heckler v. Chaney, 470 U.S. 821, 830 (1985).

The court concludes that this narrow exception is inapplicable in this case.  The CWA and implementing regulations provide extensive guidelines for assessing the adequacy of the federal defendants' decisions. Furthermore, as discussed above, the Fourth Circuit has held that the Corps' issuance of permits and the EPA's oversight of the permitting process is subject to judicial review. Hanson, 859 F.2d at 315-16; see also Tidwell, 837 F.Supp. at 1354-55.  The court is also persuaded by the numerous other cases

16

applying the APA's arbitrary and capricious standard of review to agency decisions to grant or deny §404 permits. <u>See</u>, <u>e.g.</u>, <u>Hill v. Boy</u>, 144 F.3d 1446, 1450 (11th Cir. 1998)(listing cases); <u>Avoyelles Sportsmen's League, Inc. v. Marsh</u>, 715 F.2d 897, 905-06 (5th Cir. 1983)(same). Accordingly, the court concludes that PTRF has stated viable and jurisdictionally appropriate alternative claims in Count I of its complaint pursuant to both the APA and §505(a)(2) of the CWA.

### D.    Count II - Violation of NEPA - Defective Alternatives Analysis

Count II of PTRF's complaint alleges that by refusing to fully evaluate the reasonable alternatives to PCS's proposed mining plan, the Corps violated its duties under NEPA and its implementing regulations. More specifically, PTRF alleges that in the §404 permit application process, PCS proffered, and the Corps adopted, an arbitrarily limited analysis of the possible alternatives to PCS's proposed mining activities and the environmental consequences of the alternatives versus the proposed activity. In its motion to dismiss, PCS argues that these allegations are legally insufficient to state a claim under NEPA because, if true, they would establish that the Corps fulfilled its legal duty.

"NEPA declares a national policy of protecting and promoting environmental quality." <u>Hughes River Watershed Conservancy v. Glickman</u>, 81 F.3d 437, 443 (4th Cir. 1996) (citing 42 U.S.C. §§4321, 4331(a); <u>see also</u> <u>Robertson v. Methow Valley Citizens Council</u>, 490

17

U.S. 332, 348 (1989)). While NEPA "does not mandate that agencies reach particular substantive results," it does require federal agencies "to follow certain procedures before undertaking projects that will affect the environment." Id. "Central to NEPA's procedural focus is the requirement that federal agencies prepare EISs to be included 'in every recommendation or report on proposals for . . . major federal actions significantly affecting the quality of the human environment.'" Id. (quoting 42 U.S.C. §4332(2)(c)). NEPA requires federal agencies to include in EISs a "detailed statement" on "alternatives to the proposed action." 42 U.S.C. §4332(2)(C)(iii). A federal agency must "rigorously" explore and evaluate all reasonable alternatives, and explain the reasons for excluding alternatives from detailed study. 40 C.F.R. §1502.14(a). The preparation of a complete EIS "ensures that an agency, when deciding whether to approve a project, will carefully consider, or take a 'hard look' at, the project's environmental effects." Hughes River, 81 F.3d at 443 (citing Robertson, 490 U.S. at 349). "The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." Baltimore Gas and Elec. Co. v. Nat'l Res. Def. Council, Inc., 462 U.S. 87, 97 (1983). Thus, the court must determine whether PTRF has adequately alleged a failure by the Corps to take this "hard look" in issuing the §404 permit to PCS.

In its complaint, PTRF alleges that the Corps failed to perform any *detailed* analysis of known reasonable alternatives to the proposed mining activity, such as restricting PCS's mining to an adjacent upland mining area or requiring the importation of phosphate ore to meet PCS's manufacturing needs. Compl. ¶¶39-46, 57. PTRF asserts that the omission of these alternatives from full and careful consideration violated NEPA and the implementing regulations requiring the analysis of alternatives discussed above. In short, PTRF alleges that the Corps failed to give a hard look to the alternatives, and therefore also failed to give a hard look at the proposed project as a whole.

PCS notes that the allegations of PTRF's complaint suggest that the Corps did consider, at least to a minimal extent, the upland mining and ore importation alternatives. PCS argues that a full "hard look" is not required for alternatives to a proposed activity (only for the activity itself), and that the alleged cursory consideration by the Corps was sufficient to meet its duty under NEPA. PCS cites <u>Town of Norfolk v. EPA</u>, 761 F.Supp. 867, 884 (D. Mass. 1991) as support for this argument.

The court declines to accept PCS's approach. First, nothing in the holding of the <u>Norfolk</u> case suggests that an arbitrary and capricious omission of alternatives from a reasonably detailed consideration is permissible. Instead, the court in <u>Norfolk</u> noted that the federal agency *had* conducted an adequate examination of

19

reasonable alternatives to the proposed activity in that case, and provided legitimate reasons for rejecting the alternatives. The adequacy of the Corps' investigation of PTRF's proffered alternatives in this case is a matter more appropriate for summary judgment. Second, as discussed above, NEPA regulations clearly require that federal agencies rigorously explore reasonable alternatives to a proposed activity. The court therefore concludes that something more than an arbitrary rejection of reasonable alternatives to a proposed activity is an essential aspect of conducting a hard look at the activity.

The court agrees with PCS and the Fourth Circuit that "there must be an end to the process somewhere. Otherwise so long as there are unexplored and undiscussed alternatives that inventive minds can suggest, there could never be a federal project." Providence Road Cmty. Ass'n v. EPA, 683 F.2d 80, 83 (4th Cir. 1982); see also Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 551 (1978). Indeed, NEPA does not require federal agencies to foresee and rigorously examine all possible alternatives for a proposed project. However, the court finds that an arbitrary and capricious omission of known practical alternatives from reasonably detailed consideration by a federal agency is a violation of that agency's duties under NEPA. This is what PTRF has alleged. Accordingly, Count II of PTRF's complaint is sufficient to survive PCS's motion to dismiss.

E.    Count III – Violation of NEPA – Improper Segmentation

Count III is closely related to Count II.    In Count III, PTRF alleges that the Corps failed to adequately consider the environmental impact of the proposed mining activity by adopting an improperly segmented view of the activity.    PTRF claims that, in issuing the §404 permit that is the subject of this action, the Corps prepared and considered an EIS that addressed the proposed mining activity in approximately one-third of the area that PCS ultimately seeks to mine.    PTRF alleges that by failing to consider *all* of the mining activity in conjunction with each other, the Corps "skewed the analysis of alternatives and [environmental] impacts" of the entire mining activity and therefore failed to take a "hard look" at the mining activity.

PTRF notes that NEPA regulations require that connected and cumulative actions, including those that are "interdependent parts of a larger action," should be considered in a single EIS.    40 C.F.R. §1508.25(a)(1)(iii).    PTRF also cites a case from the Middle District of North Carolina holding that a decision by a federal agency to analyze two related sections of road separately violated NEPA.    N.C. Alliance for Transp. Reform v. United States DOT, 151 F.Supp.2d 661, 684-86 (M.D.N.C. 2001).    In light of the regulations and the Middle District's holding in N.C. Alliance, the court finds that a cumulative consideration of interdependent activities in an EIS is necessary for a hard look as required by NEPA.    Because PTRF

has alleged that the federal defendants failed to prepare or consider an EIS addressing the cumulative interdependent mining activities of PCS, the court finds that Count III is adequate to survive PCS' motion to dismiss.

### CONCLUSION

For the foregoing reasons, the court hereby DENIES defendants' motions to dismiss.

This  __13th__  day of August, 2003.

_____
MALCOLM J. HOWARD
United States District Judge

At Greenville, NC
#3

I certify the foregoing to be a true and correct copy of the original.
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina
By: _____
Deputy Clerk

22