**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

_____
                                                    )
                                                    )
ALLIANCE TO SAVE THE MATTAPONI, et al.              )
                                                    )
                                                    )
                                                    )    **Docket No.**
v.                                                  )    **1:06-cv-01268-HHK**
                                                    )
UNITED STATES ARMY CORPS OF                         )
ENGINEERS, et al.                                   )
                                                    )
                                                    )
_____)

**MEMORANDUM**
**IN OPPOSITION TO THE UNITED STATES' PARTIAL MOTION TO DISMISS**

Plaintiffs the Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow

("Tribe") hereby oppose Defendants United States Army Corps of Engineers ("Corps") et

al. and United States Environmental Protection Agency's ("EPA") (collectively "United

States") motion to dismiss all claims asserted against EPA and the Tribe's claims against

the Corps asserted under the citizen suit provision of the Clean Water Act ("CWA" or

"Act"), 33 U.S.C. § 1365(a).

**BACKGROUND**

**I.  Statutory Background**

**A.  The Clean Water Act**

Congress enacted the CWA "to restore and maintain the chemical, physical, and

biological integrity of the Nation's waters" and to attain a level of "water quality which

provides for the protection and propagation of fish, shellfish, and wildlife and provides

for recreation in and on the water."  33 U.S.C. § 1251(a).  EPA and the Corps jointly

administer Section 404, which authorizes the issuance of permits for the discharge of

dredged or fill material into the waters of the United States, including wetlands. 33

U.S.C. § 1344. EPA's implementing regulations, known as the 404(b)(1) Guidelines,

prohibit the issuance of a Section 404 permit if "there is a practicable alternative to the

proposed discharge which would have a less adverse impact on the environment" or if the

discharge will have "significantly adverse effects" on the "life stages of aquatic life and

other wildlife," "aquatic ecosystem diversity, productivity, and stability," or

"recreational, aesthetic, [or] economic values." 40 C.F.R. § 230.10(a)-(c).

Section 505(a)(2) of the Act provides that "any citizen may commence a civil

action on his own behalf . . . against the Administrator where there is alleged a failure of

the Administrator to perform any act or duty . . . which is not discretionary." 33 U.S.C. §

1365(a)(2).

**B.  The Administrative Procedure Act**

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, provides

jurisdiction for plaintiffs that have "suffer[ed] a legal wrong because of agency action,"

id. § 702, to sue federal agencies for any nondiscretionary agency action alleged to be

"arbitrary, capricious, an abuse of agency discretion, or otherwise not in accordance with

law," id. § 706(2)(A). Additionally, Section 702 waives sovereign immunity for all suits

against federal agencies in which the plaintiff is not seeking monetary damages. Id. §

702 ("[A]n action in a court of the United States seeking relief other than money damages

and stating a claim that an agency . . . acted or failed to act in an official capacity or

under color of legal authority shall not be dismissed nor relief therein be denied on the

ground that it is against the United States").

2

## II. Background

### A. Factual Background

On November 16, 2005, the North Atlantic Division ("NAD") of the Corps granted the CWA section 404 permit to the City of Newport News for the construction of the King William Reservoir ("KWR"), which will withdraw water from the Mattaponi River. This permit decision overturned the Norfolk (Virginia) District of the Corps' initial recommendation to deny the KWR permit because it would cause or contribute to significant degradation of the Mattaponi River and its surrounding wetlands, because less harmful, practicable alternatives existed, and because, when weighing the costs against the benefits, the Norfolk District found the KWR project was contrary to the public interest. See U.S. Army Corps of Eng'rs, Final Recommended Record of Decision of the District Commander on Permit Application No. 93-0902-12 (July 2, 2001).

The reservoir's proposed withdrawal of up to 75 million gallons of water per day threatens to harm the Mattaponi River and its American shad population, on which the Tribe depends for its sustenance and way of life. The reservoir's intake structure will be located at Scotland Landing, the Tribe's prime fishing location, which is approximately three miles upstream of the Tribe's reservation. In addition to the direct effects that the intake structure will have on shad eggs and larvae, the Tribe has reason to believe that the water withdrawals will disturb the river's flow, increase the river's sedimentation, and alter salinity levels, which will all adversely affect shad, striped bass, and other river species on which the Tribe depends.

**B. Litigation Background**

Plaintiffs Alliance to Save the Mattaponi et al. initiated this lawsuit against the

Corps on July 17, 2006.  The Tribe filed a motion to intervene on November 8, 2006,

which this Court granted on November 16, 2006.

In its complaint, the Tribe asserts that this Court has jurisdiction over its claims

against EPA and the Corps under, inter alia, APA sections 701-706 and CWA section

505(a)(2).  The Tribe makes four claims against the Corps under CWA section 505(a)(2).

Tribe Compl. ¶ 4 (citing 33 U.S.C. § 1365(a)(2)).  First, the Tribe asserts that the Corps

violated its nondiscretionary duty under the 404(b)(1) Guidelines to evaluate less

harmful, practicable alternatives to the KWR project.  Tribe Compl. ¶¶ 107-111.  Second,

the Tribe asserts that the Corps failed to investigate and balance factors relevant to the

public interest review, as required by 33 C.F.R. § 320.4(a).  Tribe Compl. ¶¶ 112-120.

Third, the Tribe asserts that the Corps violated a second nondiscretionary duty under the

404(b)(1) Guidelines when it issued a permit that will significantly degrade the aquatic

ecosystem.  Tribe Compl. ¶¶ 121-129.  Fourth, the Tribe asserts that the Corps issued a

permit contrary to the public interest, in violation of 33 C.F.R. § 320.4(a)(1).  Tribe

Compl. ¶¶ 130-134.

Because EPA has ultimate and final supervisory authority over the Corps'

administration of, and compliance with, Section 404 of the CWA, the Tribe also asserts

two claims against EPA under the CWA for violation of nondiscretionary duties that the

404(b)(1) Guidelines impose.  Specifically, the Tribe first asserts that EPA violated the

404(b)(1) Guidelines by allowing the issuance of the KWR permit despite the Corps'

failure to reevaluate less harmful alternatives in light of changes in the project's design.

Tribe Compl. ¶ 111. Second, the Tribe asserts that EPA violated the 404(b)(1)

Guidelines by allowing the Corps to issue the KWR permit despite evidence in the record

that the KWR will "result in significant degradation of the aquatic ecosystem." Tribe

Compl. ¶ 129.

On February 23, 2007, the United States moved to dismiss the Tribe's assertion of

CWA section 505(a)(2) as a basis for jurisdiction for the Tribe's claims against the

Corps, and moved to dismiss all claims asserted against EPA.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, courts must accept plaintiffs' factual allegations

as true and must construe complaints liberally in favor of plaintiffs. See Conley v.

Gibson, 355 U.S. 41 (1957); Wilderness Soc'y v. Griles, 824 F.2d 4 (D.C. Cir. 1987).

Courts can dismiss an action only if "no plausible inferences can be drawn from the facts

alleged that, if proven, would provide grounds for relief." Price v. Socialist People's

Libyan Arab Jamahiriya, 294 F.3d 82, 93 (D.C. Cir. 2002).

## ARGUMENT

Both EPA and the Corps have nondiscretionary duties under CWA section 404,

and CWA section 505(a)(2) provides this Court with jurisdiction to review the failure of

either agency "to perform any act or duty . . . which is not discretionary." 33 U.S.C. §

1365(a)(2). EPA retains administrative authority over Section 404 and has the specific

duty to establish guidelines for the issuance of Section 404 dredge and fill permits. 33

U.S.C. § 1344(b). In turn, the Corps has authority to issue Section 404 permits, but only

pursuant to EPA's guidelines. 33 U.S.C. § 1344(b) ("[E]ach such disposal site *shall* be

specified for each such permit by the Secretary . . . through the application of guidelines

developed by the Administrator."). Courts have held that the 404(b)(1) Guidelines create

a nondiscretionary duty. See, e.g., Bersani v. EPA, 850 F.2d 36, 40 (2d Cir. 1988)

(holding that the Corps must follow the 404(b)(1) Guidelines when issuing permits).

When applying well-established canons of statutory interpretation, the only

reasonable interpretation of the Act is that Section 404 imposes mandatory duties on both

agencies, and that both agencies are liable for a failure to carry out these duties. In its

Motion to Dismiss, the United States essentially asks this Court to conclude that (1)

although the Corps has a nondiscretionary duty under Section 404, the citizen suit

provision does not provide jurisdiction for suits against the Corps, and (2) although the

citizen suit provision provides jurisdiction for suits against EPA, EPA does not have any

nondiscretionary duties under Section 404. This reading would be inconsistent with

Congress's establishment of nondiscretionary duties in Section 404. It is also

inconsistent with the Act as a whole because it would provide an enforcement remedy for

all duties in the CWA, except for the nondiscretionary duty to comply with the 404(b)(1)

Guidelines. Adopting the United States' interpretation would also thwart the overall

purpose of the CWA—to protect and restore the Nation's waters.

I.      **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE
        CLEAN WATER ACT CLAIMS AGAINST THE CORPS**

   A. **CWA Section 505(a)(2) Provides Jurisdiction for the Tribe's Claims Against
      the Corps**

Whether the citizen suit provision of the CWA provides jurisdiction for claims

against the Corps is a question of first impression in the D.C. Circuit. There is a long-

standing circuit split over this issue, and the United States' assertion that Section

505(a)(2) "has consistently been held to . . . exclude suits against the Corps," Motion to

Dismiss at 14, is incorrect.  Compare Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 316

(4th Cir. 1988) (holding that Sections 404 and 505 must be read together because EPA

and the Corps "share responsibility for issuance of permits under the CWA and

enforcement of their terms"), with Preserve Endangered Areas of Cobb's History v. U.S.

Army Corps of Eng'rs, 87 F.3d 1242 (11th Cir. 1996) ("P.E.A.C.H.") (holding that

Section 505(a)(2) does not provide jurisdiction over the Corps because it does not waive

the Corps' sovereign immunity).  See also Save Our Cmty. v. EPA, 741 F. Supp. 605,

610 n.2 (N.D. Tex. 1990) (CWA section 505(a)(2) "provides a cause of action against the

Corps or EPA").  Applying well-established canons of statutory construction to examine

the Act as a whole and to avoid interpretations that would thwart the purpose of the Act,

the Fourth Circuit's reasoning that Section 505(a)(2) must be read to include jurisdiction

for suits against the Corps because the Corps jointly administers Section 404 with EPA is

more persuasive than the reasoning of the Eleventh Circuit.  See Hanson, 859 F.2d at

316.

It is a well established canon that courts should consider specific provisions of an

act in their statutory context.  Crandon v. United States, 494 U.S. 152, 158 (1990) ("In

determining the meaning of the statute, we look not only to the particular statutory

language, but to the design of the statute as a whole and to its object and policy.").  The

D.C. Circuit has generally taken a "whole act" approach to interpreting the CWA.  See,

e.g., Nat'l Wildlife Fed'n v. Gorsuch, 693 F.2d 156, 178 (D.C. Cir. 1982) (reading the

CWA "as a whole" to interpret Congress' intent regarding the feasibility of limiting all

sources of pollution); Natural Res. Def. Council, Inc. v. Costle, 568 F.2d 1369, 1375

(D.C. Cir. 1977) (interpreting CWA effluent guidelines in light of the Act's legislative

7

history in order to retain "the fundamental logic of the statute").  Because the CWA

establishes that the Corps must abide by mandatory guidelines when issuing Section 404

permits, it is most reasonable to read the Act's citizen suit provision in Section 505(a)(2)

to include suits alleging the Corps' failure to "perform any act or duty . . . that is not

discretionary."  33 U.S.C. § 1365(a)(2).  It would be inconsistent to read Section

505(a)(2) in a way that enables enforcement of all nondiscretionary duties enumerated in

the rest of the Act, but excludes from enforcement the nondiscretionary duties of Section

404.

Another statutory canon holds that Section 505(a)(2) must be interpreted in a way

that would not thwart the Act's purpose to "restore and maintain the chemical, physical,

and biological integrity of the Nation's waters."  33 U.S.C. § 1251; see Helvering v.

Hamel, 311 U.S. 504, 510 (1941) ("[C]ourts in the interpretation of a statute have some

scope for adopting a restricted rather than a literal or usual meaning of its words where

acceptance of that meaning would lead to absurd results, or would thwart the obvious

purpose of the statute.").  To achieve this purpose, Congress established particular,

mandatory guidelines that govern the issuance of Section 404 permits.  As articulated by

the Fourth Circuit, "Congress cannot have intended to allow citizens to challenge

erroneous wetlands determinations when the EPA Administrator makes them but to

prohibit such challenges when the Corps makes the determination and the EPA fails to

exert its authority over the Corps' determination."  Hanson, 859 F.2d at 315; see also

Envtl. Def. Fund v. Tidwell, 837 F.Supp. 1344 (E.D.N.C. 1992) (following Hanson to

hold that a Section 505(a)(2) citizen suit may be brought against the Corps).  A holding

that the Act's citizen suit provision in Section 505(a)(2) excludes suits against the Corps

would thwart the purpose of the Act and would improperly "impute to Congress a purpose to paralyze with one hand what it sought to promote with the other." Clark v. Uebersee Finanz-Korporation, A.G., 332 U.S. 480, 489 (1947).  As such, the only commonsensical reading of Section 505(a)(2), given the context of the statute and the objects it promotes, is to include the Corps within the term "Administrator."  33 U.S.C. § 1365(a)(2).

The United States' reliance on P.E.A.C.H. is misguided.  The P.E.A.C.H. court declined to allow jurisdiction over the Corps because the citizen suit provision did not clearly and unambiguously waive the Corps' sovereign immunity.  See P.E.A.C.H., 87 F.3d at 1249.  See also Northwest Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs, 118 F.Supp. 2d. 1115 (D. Or. 2000) (citing P.E.A.C.H. in its determination that jurisdiction under section 505(a)(2) did not extend to the Corps); Cascade Conservation League v. M.A. Segale, Inc., 921 F.Supp. 692, 697 (W.D. Wash. 1996) (citing P.E.A.C.H. and rejecting the Hanson court's "logical" purposive reasoning because "construction of a waiver of sovereign immunity begins and ends with the express terms of the statute."). The Eleventh Circuit's reasoning is faulty and should not be adopted by this Court as a basis for granting the United States' motion because APA section 702 waives the Corps' sovereign immunity.

The Corps has clearly and unambiguously waived its sovereign immunity through Section 702 of the APA, which provides a blanket waiver of sovereign immunity for all suits against federal agencies that seek injunctive or declaratory relief.  5 U.S.C. § 702 (providing that an action seeking relief other than money damages "shall not be dismissed nor relief therein be denied on the ground that it is against the United States").

Congress amended Section 702 of the APA in 1976 in order to "broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity."[1] Bowen v. Massachusetts, 487 U.S. 879, 891-892 (1988).  As this Court has consistently held, the waiver of sovereign immunity with respect to claims for equitable relief against federal agencies "applies to any suit whether under the APA or not."  Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996); see also Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006) ("There is nothing in the language of the second sentence of Section 702 that restricts its waiver [of sovereign immunity] to suits brought under the APA . . . and hence [the waiver] applies regardless of whether the elements of an APA cause of action are satisfied").  Therefore, this Court's jurisdiction as to the Corps is not precluded by the P.E.A.C.H. court's reasoning because the APA's explicit waiver of sovereign immunity extends to cases brought under the CWA.  5 U.S.C. § 702; see also P.E.A.C.H., 87 F.3d at 1249 (holding that CWA section 505(a)(2) did not apply to the Corps because the Corps had not waived its sovereign immunity).

Furthermore, the cases on which the P.E.A.C.H. court relies for the proposition that a waiver of immunity must be clear and unambiguous are not suits that sought equitable relief, like the present case, but rather suits that were seeking a judgment of costs from the United States.  See P.E.A.C.H., 87 F.3d at 1249 (citing United States v. Idaho ex rel. Dir., Idaho Dept. of Water Res., 508 U.S. 1, 6 (1993) (holding that Idaho water rights legislation requiring all claimants to pay a filing fee did not waive the United States' sovereign immunity) and Ruckelshaus v. Sierra Club, 463 U.S. 680, 685-86

---

[1] Prior to this enactment, Congress provided waivers of sovereign immunity for "non-monetary actions seeking judicial review of official conduct . . . statute-by-statute."  Wright & Miller, 14A Federal Prac. & Proc. § 3659.  Congress amended APA Section 702 in order to "reduce the existing doctrinal uncertainty" regarding these statute-by-statute waivers of sovereign immunity.  Id.

(1983) (noting that the United States is immune from claims for attorney's fees except to the extent that it has waived its sovereign immunity)).  Thus, the heart of the reasoning in P.E.A.C.H. and its progeny is unavailing, and the Tribe respectfully asks this Court to hold that Section 505(a)(2) of the CWA extends jurisdiction to citizen suits against the Corps.[2]

### B. The Tribe Asserts No Claims Under CWA Section 505(a)(1)

Contrary to the United States' assertion in its Motion to Dismiss, the Tribe presents no claims against the Corps under Section 505(a)(1), which applies to violations of the Act's effluent standards or limitations.  33 U.S.C. § 1365(a)(1).  Instead, the Tribe alleges under Section 505(a)(2) that the Corps failed to fulfill its nondiscretionary duties under the CWA and its implementing regulations in 33 C.F.R. § 320.4(a) and 40 C.F.R. § 230.10, inter alia.  Therefore, the United States' arguments to dismiss on this basis are inapplicable here.

## II.    THIS COURT HAS JURISDICTION OVER ALL CLAIMS AGAINST EPA

Contrary to the United States' assertions, EPA does have mandatory duties under CWA section 404 and, therefore, is subject to suit under section 505(a)(2).[3]  The 404(b)(1) Guidelines mandate that "all requirements in § 230.10 *must* be met" and that "no discharge of a dredged or fill material shall be permitted if there is a practicable alternative . . . which would have a less adverse impact on the aquatic ecosystem." 40

---

[2] Although the APA provides an alternate basis of jurisdiction for suits against the Corps, this does not solve the problem that a literal reading of the CWA's citizen suit provision would be inconsistent with the Act as a whole.  Furthermore, exclusion of the Corps from jurisdiction under the CWA conflicts with the purpose of the citizen suit provision—to encourage citizens to act as private attorneys general and provide them with reasonable attorney's fees when successful.  33 U.S.C. § 1365(d); Hanson, 859 F.2d at 316-17 (4th Cir. 1988) ("The legislative history of the fee shifting provisions indicates that they were enacted to encourage litigation to ensure proper administrative implementation of the environmental statutes.").

[3] If this Court holds that Section 505(a)(2) of the CWA does not provide jurisdiction over EPA because EPA does not have nondiscretionary duties under Section 404, jurisdiction would also not exist under the APA and all of the Tribe's claims against EPA would be precluded. 5 U.S.C. §§ 701(2), 706(2)(A).

11

C.F.R. § 230.10(a) (emphasis added).  The Tribe alleges that EPA failed to fulfill its

nondiscretionary duties to administer Section 404 and to ensure that the Corps complied

with the 404(b)(1) Guidelines in issuing the KWR permit, 40 C.F.R. § 230.  Tribe Compl.

¶¶ 111, 129.  See Bersani, 850 F.2d at 40 (holding that EPA and the Corps share

responsibility for issuing Section 404 permits).

The Clean Water Act establishes that the EPA has oversight authority over

permits for the discharge of dredged or fill material.  33 U.S.C. § 1344(b)(1) (providing

that the Administrator must develop guidelines for the issuance of permits for the

discharge of dredged or fill material); 33 U.S.C. § 1344(h) (providing that the

Administrator has authority to approve state programs for the issuance of permits for

dredged or fill material); 33 U.S.C. § 1344(i) (providing that the Administrator has the

authority to withdraw approval of state programs that are not in compliance with the

Section 404(b)(1) Guidelines); 33 U.S.C. § 1319 (providing that the Administrator has

enforcement authority over violations of permits issued by a state under an approved

permit program for dredged or fill material under 33 U.S.C. § 1344(h)).  See also 118

Cong. Rec. 33,699 (1972), reprinted in 1 Legislative History of the Federal Water

Pollution Control Act Amendments of 1972, at 177 (1973) (stating that Congress

envisioned that the EPA Administrator would "prior to the issuance of any permit [by the

Corps] . . . determine that the material to be disposed of will not adversely affect

municipal water supplies, shellfish beds, and fishery areas (including spawning and

breeding areas)" in the proposed site); 43 U.S. Op. Atty. Gen. 197 (Sept. 5, 1979)

(concluding that the Administrator of EPA "share[s] responsibility for issuance of

[CWA] permits and enforcement of their terms" with the Secretary of the Army).

Moreover, EPA and the Corps have enacted inter-agency agreements that

establish EPA's authority over permits issued under Section 404.  See Memorandum of

Agreement Between the Department of the Army and the Environmental Protection

Agency Concerning the Determination of the Section 404 Program and the Application of

the Exemptions Under Section 404(f) of the Clean Water Act (Jan. 19, 1989), available at

http://www.epa.gov/owow/wetlands/guidance/404f.html (assigning EPA the ultimate

authority to determine the jurisdictional scope of wetlands); Memorandum Between the

Department of the Army and The Environmental Protection Agency: Federal

Enforcement for the Section 404 Program of the Clean Water Act, available at

http://www.epa.gov/owow/wetlands/regs/enfmoa.html (allocating section 404

enforcement authority to both the Corps and EPA).

Finally, the courts have consistently recognized that Congress intended that EPA

maintain authority over the Section 404 program.  See, e.g., James City County v. EPA,

12 F.3d 1330, 1336 (4th Cir. 1993) (noting that Congress charged EPA with making final

Section 404 permitting decisions because of its expertise and environmental

commitment); Hanson, 859 F.2d at 316 (asserting that the EPA is "ultimately responsible

for the protection of wetlands"); Orange Env't v. County of Orange, 811 F. Supp. 926,

930 (S.D.N.Y. 1993) (confirming EPA's "ultimate responsibility for wetlands

protection"); see also Sierra Club v. Leavitt, 355 F. Supp. 2d. 544, 552, 556 (confirming

that Clean Air Act regulations, similar to the 404(b)(1) Guidelines, create mandatory

duties, the violation of which can be challenged through a citizen suit against EPA).

Again, taking into account the statutory canons, Section 404 must be read as

imposing a mandatory oversight duty on EPA.  Because Congress intended that EPA is

13

responsible for administration over Section 404, it is logical that Congress also intended

to provide an enforcement mechanism for EPA's failure to ensure compliance with the

404(b)(1) Guidelines.  Clark, 332 U.S. at 489 (noting that courts should not "impute to

Congress a purpose to paralyze with one hand what it sought to promote with the

other.").  It would thwart the CWA's purpose and would be inconsistent in the context of

the Act as a whole to conclude that the Corps' independent authority to issue Section 404

permits, 33 U.S.C. § 1344(a), excuses EPA from liability for failing to ensure that

nondiscretionary duties imposed by the 404(b)(1) Guidelines are carried out.

Thus, the Tribe respectfully asks this Court to hold that Section 505(a)(2) of the

CWA extends jurisdiction to citizen suits against EPA for its failure to fulfill its

mandatory duties under Section 404.

## CONCLUSION

For the foregoing reasons, the Court should uphold all of the Tribe's claims

asserted against the Corps under CWA section 505(a)(2) and all claims asserted against

EPA for its violation of Section 404.

Respectfully Submitted,

/s/ Emma Garrison_____
Emma E. Garrison, Staff Attorney
Hope M. Babcock, Senior Attorney
Institute for Public Representation
600 New Jersey Avenue, NW
Washington, D.C.  20001
(202) 662-9535
(202) 662-9634 (Facsimile)

*Counsel for the Mattaponi Indian Tribe and Chief*
*Carl T. Lone Eagle Custalow*