UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
ALLIANCE TO SAVE THE                        )
MATTAPONI, et al.                           )
                                            )
            Plaintiffs,                     )
                                            )
    v.                                      )   Civil Action No. 06-CV-1268
                                            )
UNITED STATES ARMY CORPS OF                 )
ENGINEERS, et al.                           )
                                            )
            Defendants.                     )
_____ )

**REPLY IN SUPPORT OF THE UNITED STATES' PARTIAL MOTION TO DISMISS**

Intervenor-plaintiffs the Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow (collectively "Tribe") have failed to carry their burden of establishing (1) that the Court has jurisdiction over a citizen suit against the United States Army Corp of Engineers ("Corps") under the Clean Water Act, and (2) that the Court has jurisdiction over any claim the Tribe asserts against the United States Environmental Protection Agency ("EPA").[1]  The Tribe purports to

---

[1] The United States filed a combined memorandum in support of its Motion to Dismiss certain of the Tribe's claims (as to which the United States is entitled to a reply) and in opposition to the Alliance's Motion to Amend (as to which the United States is not entitled to any further briefing). With the exception of addressing the Alliance's arguments regarding claims based on the Chesapeake 2000 agreement – claims which were also the subject of the United States' Motion to Dismiss – the United States therefore limits this brief to rebutting arguments raised by the Tribe in its Memorandum in Opposition to the United States' Partial Motion to Dismiss.  To the extent that the Court seeks a further response to the Alliance's brief, however, the United States notes that the Alliance's jurisdictional arguments largely parallel those made by the Tribe and rebutted in this Reply.

1

rely on "well-established canons of statutory interpretation" while ignoring the most fundamental of all such canons – that a court begins with the plain language of a statute. Memorandum in Opposition to the United States' Partial Motion to Dismiss ("Tribe Opp.") at 6; see also id. at 7-9.  The plain language of the citizen-suit provision of the Clean Water Act upon which the Tribe relies authorizes certain suits "against the Administrator."  33 U.S.C. § 1365(a)(2).  The Tribe struggles, but fails, to make the unambiguous term "the Administrator" – a term which is used in the Act solely to refer to the Administrator of EPA – somehow include the Corps.  Regardless of whether the Tribe believes it would have been better policy to allow suits against the Corps as well as EPA, "Congress must have intended to limit the consent to suit to the Administrator when it chose the language of the citizen's suit provision."  Cascade Conservation League v. Segale, 921 F. Supp. 692, 697 (W.D. Wash. 1996).  The Court thus lacks jurisdiction over the claims asserted against the Corps under the Clean Water Act citizen-suit provision.

The citizen-suit provision at issue does allow suits against EPA, but only where it is alleged that EPA has failed to perform "any act or duty under this chapter which is not discretionary."  33 U.S.C. § 1365(a)(2).   The Tribe has failed to identify any applicable non-discretionary duty.  There has never been any dispute that EPA possesses various authorities under the Clean Water Act; however, the Tribe has not shown any pertinent mandatory duties. See Tribe Opp. at 11-14.  Again, while the Tribe might view it as better policy for Congress to have allowed a citizen suit against EPA for an alleged failure to properly exercise a discretionary authority, Congress did not do so.  The Court thus lacks jurisdiction over the claims asserted against EPA.

The Tribe is not, however, left without remedies. There has never been any dispute that the Tribe can pursue its action against the Corps under the Administrative Procedure Act ("APA") and argue that issuance of the Permit was arbitrary, capricious, or otherwise contrary to law. There is, moreover, no dispute that in so doing the Tribe may argue that the Corps misapplied the Section 404(b)(1) guidelines.[2/] Finally, there is no dispute that if the Tribe prevails, the Court has the power to invalidate the Permit and remand this matter to the Corps for further consideration – the maximum relief that would be available to the Tribe in any event. The Tribe thus can make all of its arguments, and obtain all the relief it is entitled to, through its existing APA action against the Corps.

The United States' Partial Motion to Dismiss should therefore be granted.

## ARGUMENT

**I.  THE STATUTE WAIVING THE UNITED STATES' SOVEREIGN IMMUNITY AS TO CITIZEN SUITS "AGAINST THE ADMINISTRATOR" DOES NOT EXTEND TO CITIZEN SUITS AGAINST THE CORPS OF ENGINEERS.**

In its opening memorandum, the United States demonstrated that Section 505(a)(2) of the Clean Water Act, 33 U.S.C. § 1365(a)(2) – which waives the United States' sovereign immunity as to citizen suits "against the Administrator" – allows citizen suits against the Administrator of EPA, but not against the Corps.[3/]  See Combined Memorandum in Support of United States'

---

[2/]  The United States does not concede that the Tribe's characterization of the potential effects of the Permit and the process leading to its issuance are accurate. See Tribe Opp. at 3 ("Factual Background"). Any factual disputes are not, however, pertinent to the issues raised by the United States' Partial Motion to Dismiss, and thus will not be addressed at this time.

[3/]  The Tribe states that it is not pressing a claim under Section 505(a)(1) of the citizen-suit provision, 33 U.S.C. § 1365(a)(1), and that "the United States' arguments to dismiss on this basis are inapplicable here." Tribe Opp. at 11. Saving a single reference in the statutory background, the United States' Motion made no mention of Section 505(a)(1), and none of its

Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint ("US Mem.") at 4, 14-15.  In response, the Tribe relies on the Fourth Circuit's decision in National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir. 1988), and argues that the Court should apply "well-established canons of statutory construction" to reach the same result.  Tribe Opp. at 7; see also id. at 8-9.  This argument is entirely unpersuasive.  Both Hanson and plaintiffs ignore the most fundamental canon – that the Court must begin with the plain language of the statute.  If that language is clear, there is no need to go further.  The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations and internal quotations omitted); see also Amoco Production Co. v. Watson, 410 F.3d 722, 734 (D.C. Cir. 2005) ("No canon of construction justifies construing the actual statutory language beyond what the terms can reasonably bear").

In Hanson, the Fourth Circuit considered whether, for purposes of adjudicating an attorney's fee claim, the plaintiffs' challenge to a Corps determination that two tracts of land in North Carolina were not wetlands qualified as a citizen suit under Section 505(a)(2).  Hanson, 859 F.2d at 315.  The Fourth Circuit found it "quite clear" that "both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms," a function which requires making "reasoned wetlands determinations."  Id.  The court then concluded – with no explication of its reasoning, and no authority to support its interpretation of

---

arguments for dismissal are based on the assumption that the Tribe is proceeding under that section of the statute.

the statute – that "Congress cannot have intended citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and EPA fails to exert its authority over the Corps' determination." Id. at 316. The court further stated that Section 505(a)(2) should therefore be interpreted in conjunction with the joinder provisions of Fed. R. Civ. P. 20 "to allow citizens to sue the Administrator and join the Corps" when the Corps fails to make a reasoned wetlands determination and EPA "fails to exercise the duty of oversight imposed by section 1344(c)."[4]

As subsequent courts have noted, contrary to the Hanson court's conclusion, there is simply no way in which "the Administrator" reasonably can be read to include the Corps of Engineers.[5] See US Mem. at 14-15 and cases cited therein. The United States has provided unrebutted evidence that "the Administrator," as used in the Act, means "the Administrator of EPA." See id; see also Cascade Conservation, 921 F. Supp. at 696 (noting that statute elsewhere refers to the "Secretary" in connection with the Corps, and that "Administrator" therefore is not a catchall term). Congress clearly knew how to create a broader waiver of sovereign immunity

---

[4] The Hanson court thus erred twice, by concluding that the waiver of sovereign immunity in Section 505(a)(2) extends to the Corps and by concluding that Section 404(c) of the Act, 33 U.S.C. § 1344(c), imposes a nondiscretionary duty on EPA. See US Mem. at 10-11; infra at 9-10.

[5] The Tribe also points to Save our Community v. EPA, 741 F. Supp. 605, 610 n.2 (N.D. Tex. 1990). Tribe Opp. at 7. The court stated that it had jurisdiction in that case pursuant to Section 505(a)(1) of the Act (which is not at issue here) and the APA. Save our Community, 741 F. Supp. at 609. The court's single brief statement that Section 505(a)(2) "provides a cause of action against the Corps or EPA" – a statement offered in passing in a footnote, with no further analysis – was merely a preface to finding that "no basis for subject matter jurisdiction" existed under Section 505(a)(2) in any event, since the plaintiffs had failed to identify a non-discretionary duty. See id. at 610 n.2. There is no evidence that the court seriously considered whether "the Administrator" could properly be interpreted to mean "the Administrator and the Corps of Engineers."

5

had it wished to do so, as demonstrated by the fact that the immediately preceding clause of the citizen-suit provision authorizes suit against "the United States" generally. 33 U.S.C. § 1365(a)(1). Congress's choice of the narrower term "the Administrator" for Section 505(a)(2) therefore cannot indicate anything other than a deliberate choice to limit suits under that clause to suits against EPA. See Cascade Conservation, 921 F. Supp. at 696.

      The Tribe's belief that it would have been a better choice to allow Section 505(a)(2) suits against the Corps as well as against EPA cannot trump Congress's plain language.[6] Several courts have noted precisely this concern in rejecting similar arguments based on Hanson and concluding that Section 505(a)(2) does not waive sovereign immunity as to suits against the Corps. See Preserve Endangered Areas of Cobb's History ("P.E.A.C.H.") v. United States Army Corps of Engineers, 87 F.3d 1242, 1249 and n. 5 ("We must conclude that Congress did not intend to waive sovereign immunity in regard to suits against the Army Corps of Engineers under the Clean Water Act;" court "most respectfully disagree[s]" with Hanson's conclusion to the contrary); Preserve Endangered Areas of Cobb's History ("P.E.A.C.H.") v. United States Army Corps of Engineers, 915 F. Supp. 378, 380 (N.D. Ga. 1995) (rejecting argument that court should rely on Hanson to "look beyond the statute's plain meaning;" while construction plaintiff favored "might be a logical means of citizen enforcement . . . , it is not the method selected by Congress, as evidenced by the unambiguous language of § 1365(a)(2)"). As another court

---

[6] The Tribe suggests that the rule that a waiver of sovereign immunity must be clear and unambiguous carries less force where a claimant seeks equitable relief. Tribe Opp. at 10. There is no support for this distinction. See Coast Federal Savings Bank v. Director, Office of Thrift Supervision, 785 F. Supp. 170 (D.D.C. 1991) (fact that plaintiff was seeking equitable relief rather than monetary relief did not alter limits on sovereign immunity waivers).

explained in response to a similar plea to include the Corps within the ambit of Section 505(a)(2),

> Hanson's purposive reasoning may appear logical, but construction of a waiver of sovereign immunity begins and ends with the express terms of the statute. The Court must rely on plain meaning interpretation to the extent possible, and must resolve any ambiguities *against* a finding of waiver. The Court presumes that Congress was familiar with this principle of construction when it enacted the statute. Therefore, Congress must have intended to limit the consent to suit to the Administrator when it chose the language of the citizen's suit provision.

Cascade Conservation, 921 F. Supp. at 697 (underlining added, italics in original; internal citation omitted); cf. Pamlico-Tar River Foundation v. United States Army Corps of Engineers, E.DN.C. No. 02-CV-53 (2003) (unpublished decision; previously submitted as Ex. 1 to Response of the Alliance, et al., to the United States' Partial Motion to Dismiss) at 12 (district court within Fourth Circuit states that "[g]iven the widely-accepted narrow construction of waivers of sovereign immunity," there is "some force" to argument that Section 505(a)(2) does not waive the Corps's sovereign immunity, but concludes that under Fourth Circuit's decision in Hanson it was "compelled to hold" that suit against Corps could proceed).

There is, moreover, no reason to accept the Tribe's conclusion that applying the citizen-suit provision as written will somehow "thwart the purpose of the Act." Tribe Opp. at 7. The Tribe appears to base this statement in part on its conclusion that reading Section 505(a)(2) as written "enables enforcement of all nondiscretionary duties enumerated in the rest of the Act, but excludes from enforcement the nondiscretionary duties of Section 404." Tribe Opp. at 8. This is simply incorrect. Section 505(a)(2) permits enforcement of any nondiscretionary duty under the Act against EPA. What it does not permit is any action at all against the Corps, whether based on a discretionary act or a nondiscretionary duty. Nor does the Tribe ever explain why an action

against the Corps under the APA is not an adequate avenue by which to challenge the Permit as arbitrary, capricious, or otherwise contrary to law.  See Cascade Conservation, 921 F. Supp. at 697 (reading Section 505(a)(2) not to permit suits against the Corps does not deprive citizens of relief from erroneous determinations by Corps; APA provides alternate means of obtaining judicial review).[7]

  Finally, the Tribe is incorrect in arguing that the APA's waiver of sovereign immunity allows the Tribe to proceed against the Corps under the Clean Water Act.  See Tribe Opp. at 9-10.  The D.C. Circuit has stated that the APA's waiver of sovereign immunity and the cause of action created by the APA are two separate entities; thus, the APA waives sovereign immunity for some claims other than those brought under the APA itself.  Trudeau v. FTC, 456 F.3d 178, 186 (D.C. Cir. 2006).   This does not mean, however, that the Tribe can use the APA waiver of sovereign immunity to pursue a claim that is clearly precluded by the more specific statutory waiver contained in the Clean Water Act itself.  See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1 (1981).  In Middlesex County, the Supreme Court considered whether plaintiffs had an implied right of action to pursue claims that were based on an alleged violation of the Clean Water Act but were not expressly authorized by that Act. Middlesex County, 453 U.S. at 12.  The Court concluded that, in view of the "elaborate

---

[7] In fact, the only apparent difference between an APA action against the Corps and an action under the Clean Water Act itself is the amount of attorney's fees the Tribe may seek to recover if it prevails.  See Tribe Opp. at 11 n.2 (citing one of purposes of Clean Water Act citizen suit provision as desire to "provide [litigants] with reasonable attorney's fees when successful" in such suits).  If the Tribe prevails on its APA claim in this action, it will be entitled to seek attorney's fees under the Equal Access to Justice Act, 24 U.S.C § 2412 ("EAJA").  EAJA is more restrictive than the attorney's fees provision of the Act itself.  Compare, e.g., 28 U.S.C. § 2412(d)(2)(A) (imposing hourly cap on attorneys' fees) with 33 U.S.C. § 1365(d) (allowing recovery of "reasonable" fees, without statutory limitation).

enforcement provisions" of the Act, including the citizen-suit provisions, "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens." Id. at 15. "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate" for alleged violations of the Act. Id.; see generally id. at 14-21. The Corps' final agency action in issuing the Permit gives rise to a claim under the APA, and in pursuing that claim the Tribe may certainly argue that the Corps has misapplied the Act or its implementing regulations. The Tribe cannot, however, use the APA's general waiver of sovereign immunity to bootstrap its way into a claim under the Clean Water Act itself.

The Tribe's claims against the Corps under the Clean Water Act should therefore be dismissed.

**II.     THE TRIBE HAS FAILED TO ESTABLISH ANY MANDATORY DUTY ON EPA'S PART.**

Section 505(a)(2) allows a citizen suit against EPA where EPA has failed "to perform any act or duty under this chapter which is not discretionary." 33 U.S.C. § 1365(a)(2). There is no dispute that EPA possesses certain authorities under the Clean Water Act. The only authority potentially relevant to this case, however – EPA's authority to "veto" a permit under Section 404(c) of the Act, 33 U.S.C. § 1344(c) – is wholly discretionary and does not give rise to a claim that falls within the ambit of Section 505(a)(2). See US Mem. at 10-11.

The Tribe offers no response to cases cited by the United States holding that EPA's Section 404(c) authority is entirely discretionary. Instead, the Tribe points to a laundry list of EPA's authorities under various provisions of the Act not at issue in this case, attempts to merge these into an ill-defined "oversight authority," and argues that the exercise of this authority rises

9

to the level of a nondiscretionary duty.  See Tribe Opp. at 12.  This attempt to equate the existence of discrete EPA authorities with the existence of a single omnibus mandatory duty to oversee Corps operations is simply untenable.  See Cascade Conservation, 921 F. Supp. at 699 (because Section 505(a)(2) waives EPA's sovereign immunity, it must be construed narrowly; duty must be identifiable from statutory text as nondiscretionary to form basis of citizen's suit).  Nor do the memoranda of understanding cited by the Tribe provide any support for the Tribe's arguments.  See Tribe Opp. at 13.  These memoranda simply establish policy and procedures for coordination between EPA and the Corps regarding Section 404 implementation.

Cases cited by the Tribe for the proposition that Congress intended EPA to "maintain authority" over the Section 404 program are not on point.  See Tribe Opp. at 13.  For example, in James City County v. EPA, 12 F.3d 1330 (4th Cir. 1993), EPA had vetoed a permit under Section 404(c); the question for the court was thus whether that veto was proper.  James City, 12 F.3d at 1332.  The court noted in passing that EPA's "authority to veto [a permit] to protect the environment is practically unadorned," but did not rule on, or even speak to, whether EPA ever has a mandatory duty to veto.  Id. at 1336; see also Bersani v. EPA, 850 F.2d 36, 40 (2d Cir. 1988) (stating in background discussion that EPA and Corps are responsible for administering Section 404 permitting program; Corps has authority to issue permits and EPA has authority to veto them); Orange Environment Inc. v. County of Orange, 811 F. Supp. 2d 926, 930 (S.D.N.Y. 1993) (noting in background discussion that EPA "holding ultimate responsibility for wetlands protection, has authority to seek penalties for unpermitted discharges of pollutants").  These cases offer no support for the Tribe's attempt to convert EPA's undisputed authority to veto a permit into an actionable mandatory duty to do so.  Still less do they offer any support for the

Tribe's contention that EPA's various discrete authorities under the Act can be merged into a single "oversight authority," and that the alleged failure to exercise this implied authority gives rise to a claim under Section 505(a)(2).

The Tribe also relies on the Section 404(b)(1) guidelines that govern the issuance of permits, arguing that EPA is required to ensure that the allegedly "nondiscretionary duties" imposed by these guidelines are carried out. Tribe Opp. at 14. This reliance is misplaced. The Tribe's ultimate complaint is not that the Corps did not use these guidelines at all, but rather that the Corps allegedly misapplied or misinterpreted them. The Tribe obviously disagrees with the Corps's conclusions regarding scientific or technical issues such as whether issuance of the Permit will "result in significant degradation of the aquatic ecosystem" or whether there are less harmful practicable alternatives to the project authorized by the Permit. See Tribe Opp. at 4-5, 11-12; Tribe Complaint ¶¶ 108-111, 122-129. The Tribe can raise these issues in its APA claim against the Corps, and is free to argue that the Corps's alleged misapplication of the Section 404(b)(1) guidelines renders the issuance of the Permit arbitrary, capricious, or otherwise contrary to law. The Tribe has, however, utterly failed to show that its disagreement with the Corps's conclusions somehow gives rise to any claim against EPA.

Because the Tribe has failed to identify any nondiscretionary duty that EPA has failed to perform, its claims against EPA should be dismissed.[8]

---

[8] The Tribe properly acknowledges that the failure to identify such a duty also dooms any claim against EPA under the APA. Tribe Opp. at 11 n.3.

### III. THE ALLIANCE ACKNOWLEDGES THAT IT RAISES NO INDEPENDENT CLAIMS BASED ON THE CHESAPEAKE 2000 AGREEMENT.

Count VII of the Alliance's original Complaint is identified as "Failure to Comply with Chesapeake 2000 Agreement." Alliance Complaint ¶¶ 127-132. In its Motion to Dismiss, the United States established that there is no waiver of sovereign immunity that authorizes a claim based on the alleged failure to comply with this agreement. See U.S. Mem. at 12-13. The Alliance states, however, that it intended merely to raise the alleged violation of the Chesapeake 2000 Agreement as one reason that issuance of the Permit was arbitrary, capricious, or otherwise contrary to law. See Response of the Alliance et al. to the United States' Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint ("Alliance Opp.") at 23-24 (stating that Alliance "does not contend that the Chesapeake 2000 Agreement contains a direct waiver of sovereignty [sic] itself," but instead "merely alleges that ignoring and violating the Chesapeake 2000 Agreement is one of the ways in which EPA and the Corps . . . abused their discretion").

The United States argued only that the Alliance does not have an independent claim against the Corps or EPA based on alleged violations of the Chesapeake 2000 Agreement. The Alliance can attempt to argue in its APA claim against the Corps that issuance of the Permit was arbitrary or capricious because the Corps did not take proper account of the Agreement. The United States does, however, reserve its right to challenge the Alliance's characterization of the Agreement and its alleged relevance to the permitting decision at issue here in later briefing on the merits. See Alliance Mem. at 25-32.

**CONCLUSION**

For the foregoing reasons and for the reasons stated in the United States' opening Memorandum, all of the Tribe's claims against EPA, and all claims asserted against the Corps under the Clean Water Act, should be dismissed.

April 20, 2007                                    Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Angeline Purdy*
_____
ANGELINE PURDY
Trial Attorney
Environmental Defense Section
PO Box 23986
Washington DC 20026-3986
(202) 514-0996 (tel.)
(202) 514-8865 (fax)
Angeline.Purdy@usdoj.gov

DEVON LEHMAN McCUNE
Trial Attorney
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

SAMANTHA KLEIN
Trial Attorney
Natural Resources Section
PO Box 663
Washington DC  20044-0663
(202) 305-0474 (tel.)
(202) 305-0506 (fax)
Samantha.Klein@usdoj.gov

Of Counsel:

Pat M. Falcigno
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers