UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ALLIANCE TO SAVE THE MATTAPONI, et al.,**

                Plaintiffs,

**MATTAPONI INDIAN TRIBE, et al.,**

                Plaintiff-Intervenors,

              v.                Civil Action 06-01268 (HHK)

**UNITED STATES ARMY CORPS OF ENGINEERS, et al.,**

                Defendants.

**MEMORANDUM OPINION AND ORDER**

This action challenges the United States Army Corps of Engineers' (the "Corps")[1] issuance of a permit to the City of Newport News ("Newport News") under § 404 of the Clean Water Act ("CWA"), 33 U.S.C. §1344, to construct a 1,526-acre reservoir in King William County, Virginia. Before the court are plaintiffs' motion for leave to file an amended complaint [#21] and defendants' partial motion to dismiss certain claims for lack of subject matter jurisdiction [#24]. Upon consideration of the motions, the responses and oppositions thereto, and

---

[1] For purposes of this memorandum and unless otherwise noted, the court will refer collectively to all of the originally named defendants (the Corps and officers of the Corps and the United States Army sued in their official capacities) as the "Corps."

the record of this case, the court concludes that it lacks jurisdiction over plaintiffs' and plaintiff-intervenors' claims brought against the Environmental Protection Agency ("EPA") and the Corps pursuant to the citizen-suit provision of CWA, 33 U.S.C. § 1365 (CWA § 505), but that plaintiffs' Administrative Procedure Act ("APA") claims against EPA may proceed.

## I.  BACKGROUND

This action was originally brought by plaintiffs Alliance To Save The Mattaponi, The Chesapeake Bay Foundation, Inc., and the Sierra Club, Virginia Chapter (collectively, the "Alliance"), to challenge the Corps' issuance of a § 404 permit (No. 93-0902-12), which permit authorized construction of a reservoir.  On November 8, 2006, the Mattaponi Indian Tribe and its Chief, Carl T. Lone Eagle Custalow (collectively, the "Tribe"), filed an unopposed motion to intervene as plaintiffs, which motion the court granted.  The Tribe's complaint adds both a new defendant (EPA) and additional claims against the Corps to those asserted in the Alliance's original complaint.

The Alliance has now moved to amend its complaint to add claims against EPA and the Corps that are essentially identical to those contained in the Tribe's complaint.  Defendants (collectively, the "United States") move to dismiss all claims against EPA, all claims against the Corps brought pursuant to § 505(a)(2) of CWA, and, accordingly, to deny the Alliance's motion for leave to amend its complaint as futile.

## II.  ANALYSIS

The parties' motions present three questions: whether these plaintiffs may sue EPA pursuant to § 505(a)(2), whether they may sue the Corps pursuant to § 505(a)(2), and finally, whether they may sue EPA under APA for its alleged inaction regarding the permit.

2

A.    **CWA § 505(a)(2)**

Section 505 of CWA sets forth the basis under which a citizen may initiate a private civil action. Such a suit may be brought:

> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a). The term "Administrator" refers to the Administrator of EPA. *Id.* at § 1251(d) ("Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator') shall administer this chapter.").

    1.    **Claims Against EPA**

As the statute makes plain, subsection (a)(2) of the citizen-suit provision of CWA authorizes claims against EPA only where EPA has failed to perform a nondiscretionary duty. Plaintiffs contend that EPA failed to perform two such duties.

First, they argue that pursuant to § 404(c) of CWA, EPA has a nondiscretionary duty to veto the Corps' issuance of the permit. That section provides, in pertinent part:

> The Administrator is *authorized* to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is *authorized* to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines . . . that the discharge . . . will have an unacceptable adverse effect . . . .

33 U.S.C. § 1344(c) (emphasis added). That the statute grants EPA a veto power over CWA permitting decisions is an unremarkable observation. This veto power, however, is discretionary. *City of Olmsted Falls v. EPA*, 266 F. Supp. 2d 718, 723 (N.D. Ohio 2003) (observing that the EPA veto power set forth in Section 404(c) is "obvious[ly] discretionary"); *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 915 F. Supp. 378, 380–81 (N.D. Ga. 1995) ("*P.E.A.C.H. I*"), *aff'd*, 87 F.3d 1242, 1249–50 (11th Cir. 1996) ("*P.E.A.C.H. II*") (dismissing for lack of jurisdiction claim that EPA failed to veto issuance of permit, and holding that such a claim was not authorized by 33 U.S.C. § 1365 (a)(2)); *see also Int'l Union, UAW v. Dole*, 919 F.2d 753, 756 (D.C. Cir. 1990) (stating that "may" confers discretion, while "shall" usually refers to an obligation to act).[2] EPA cannot be sued under § 505(a)(2), therefore, for failing to veto the issuance of the permit.

---

[2] In *P.E.A.C.H. I*, the district court summarized the various reasons why the veto power set forth in § 404(c) is best viewed as discretionary:

> The section providing for EPA review, states that the "Administrator is *authorized* to prohibit . . . and *authorized* to deny or restrict the use of any defined area for specification . . . ." 33 U.S.C. § 1344(c) (emphasis added). The use of the term "authorize" (as opposed to "shall") suggests a discretionary function. This interpretation has been sanctioned by the Supreme Court, albeit in a different context. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 835, 105 S. Ct. 1649, 1657, 84 L. Ed. 2d 714 (1985) (interpreting the term "authorize" in § 372 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 372). Further, common usage of the word "authorize" is understood to imply a discretionary delegation of duty. The discretionary nature of the EPA's veto authority is also the interpretation adopted by the agency, as seen in the regulations enacted pursuant to 33 U.S.C. § 1344(c), which use the permissive "may," as opposed to the mandatory "must" or "shall." *See* 40 C.F.R. § 231.1(a) (1994); 40 C.F.R. § 231.3(a) (1994).

915 F. Supp. at 381; *see also P.E.A.C.H. II*, 87 F.3d at 1249 ("We agree with the EPA that this power is discretionary. By statute, the Administrator is authorized rather than mandated to overrule the Corps. 33 U.S.C. § 1344(c). Because this power is discretionary, the citizen suit provision of the Clean Water Act does not apply.").

Plaintiffs next argue that under § 404(c), EPA has a general implied nondiscretionary duty to oversee the permitting process, and, given the facts of this case (where EPA expressed disagreement with the issuance of the permit), its decision not to veto evinced a failure to perform that duty. The answer to this argument comes from within the argument itself: EPA monitored the process throughout and by so doing performed the duty plaintiffs allege it did not perform. That EPA ultimately altered its position regarding the permit does not render its oversight insubstantial. In any event, the mere authority to oversee does not give rise to a tangible duty over which plaintiffs can sue. Only if (and even this proposition is uncertain) the claim was one of a substantial failure to engage in meaningful oversight could the claim survive a motion to dismiss. *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 699 (W.D. Wash. 1996) (noting that because § 505(a)(2) waives EPA's sovereign immunity, it must be construed narrowly; duty must be identifiable from statutory text as nondiscretionary to form basis of citizen's suit). Plaintiffs, however, do not make this claim. To the contrary, plaintiffs discuss at length (both in their complaints and in their briefs) EPA's engaged oversight of the process. Because plaintiffs have identified no nondiscretionary duty that EPA has failed to perform, their § 505(a)(2) claims against EPA must be dismissed.

    **2.**    **Claims Against The Corps**

Plaintiffs' § 505(a)(2) claims against the Corps fare no better. The citizen-suit provision of CWA functions as a limited waiver of sovereign immunity. In order for plaintiffs to sustain their burden to show that this waiver applies specifically to the Corps, the waiver of immunity must be clear on the face of the statute creating the cause of action. *United States v. Idaho*, 508 U.S. 1, 6 (1993) ("There is no doubt that waivers of federal sovereign immunity must be

'unequivocally expressed' in the statutory text."). The court may not expand a waiver beyond its express terms, but must construe it narrowly. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983).

As noted, CWA authorizes citizen suits against the Administrator. 33 U.S.C. § 1365(a)(2). The Administrator is defined as the Administrator of EPA, and not as the Corps or its officials. *Id.* § 1251(d) ("Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator') shall administer this chapter."). This plain language would end the question but for the Fourth Circuit's decision in *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988), which holds that because the EPA and the Corps share responsibility for enforcing the CWA, "Congress cannot have intended to" consent to suit against the EPA but not against the Corps. *Id.* at 316.

*Hanson* is contrary to a series of other cases, including the Eleventh Circuit's decision in *P.E.A.C.H. II*, 87 F.3d at 1249 (dismissing for lack of jurisdiction a claim brought pursuant to § 505(a)(2) against the Corps). *Hanson* is also unpersuasive. In *Hanson*, the court noted that "both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms," and determined that because of this shared duty, "Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination." 859 F.2d at 315–16.

However puzzled the court may have been by the statute, and even if the court were correct that "Congress cannot have intended to" waive sovereign immunity as to EPA but not as to the Corps, Congress's presumed intent is not the question when a court interprets a sovereign immunity waiver. Where possible, such an interpretation "begins and ends with the express terms of the statute. The Court must rely on plain meaning interpretation to the extent possible, and must resolve any ambiguities against a finding of waiver." *Cascade Conservation League*, 921 F. Supp. at 697; *see also Ardestani v. INS*, 502 U.S. 129, 137 (1991) (waivers "must be strictly construed in favor of the United States"). Here, a bar to CWA suits against the Corps "is precisely what the express terms of the statute accomplish, so the Court must assume that it was what Congress intended. '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Cascade Conservation League*, 921 F. Supp. at 697 (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).[3] The court therefore lacks subject matter jurisdiction over plaintiffs' § 505(a)(2) claims against the Corps.

---

[3] The Tribe attempts to rescue its § 505(a)(2) claim against the Corps by pointing to the D.C. Circuit's decision in *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006), wherein the court affirmed its long-held view that "APA's waiver of sovereign immunity applies to any suit whether under the APA or not." *Id.* at 186 (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996)). What the Tribe fails to recognize, however, is that this waiver is limited. The waiver provision itself declares:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. In other words, APA does not provide a back door for plaintiffs to raise claims *pursuant* to other statutes, such as § 505(a)(2), which disallow such claims.

B.   **APA Claims Against EPA**

Finally, the court must determine whether EPA may be sued pursuant to APA for its failure to veto the permit. This determination involves three questions: (1) whether APA suits against EPA are barred by the limited remedies set forth in CWA, *see* 5 U.S.C. § 701(a)(1) (disallowing APA suits where "statutes preclude judicial review"), § 702 (providing that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit," such as CWA § 505(a)(2), "expressly or impliedly forbids the relief which is sought"); (2) whether APA claims against EPA are barred because the agency's decisions regarding CWA permits are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2); and (3) whether the fact that plaintiffs challenge EPA's alleged inaction in failing to veto the permit (as opposed to challenging some affirmative action) precludes review pursuant to APA.

1.   **Whether the CWA Precludes APA Suits**

Newport News first argues that because CWA contains a citizen-suit provision, that remedy is exclusive as against EPA, and points both to the statutory text and the principle of *expressio unius est exclusio alterius*. Judicial review under APA is not available where other "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). And, as noted, the Act further provides that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* § 702. Newport News argues that CWA falls under these jurisdictional limitations because it expressly limits the ability of citizens to sue EPA for its actions taken pursuant to its oversight duties established by CWA.

This argument is foreclosed by the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997). In *Bennett*, the Court held that plaintiffs could not utilize the citizen-suit provision of the Endangered Species Act ("ESA") to sue the government for alleged violations. That citizen-suit provision, like the CWA's, allows private parties to sue the Secretary for the failure to perform any nondiscretionary duty. 16 U.S.C. § 1540(g)(1)(C). Notwithstanding ESA's preclusion of the plaintiffs' claims, the Court then went on to assess whether they could sue under the APA. The Court wrote:

> No one contends (and it would not be maintainable) that the causes of action against the Secretary set forth in the ESA's citizen-suit provision are exclusive, supplanting those provided by the APA. . . . Nothing in the ESA's citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so.

*Bennett*, 520 U.S. 175. The court sees no reason to distinguish the case at bar from *Bennett*. APA § 701(a)(1) and § 702, therefore, do not preclude plaintiffs' claims against EPA.

### 2. Whether There Is Law To Apply

Second, EPA argues that plaintiffs' APA claims are barred because APA does not apply where agency action or inaction is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).[4] But, as plaintiffs rightly note, the rare exception in which this provision bars suit, i.e., where the statute is "drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)), occurs only when "the court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821,

---

[4] The Tribe takes the position that if it cannot sue EPA pursuant to CWA § 505(a)(2), its APA claims are inherently barred.

830 (1985).[5]  Here, there is such a standard:  CWA provides that EPA may, pursuant to its discretion, veto a § 404 permit "whenever [it] determines . . . that the discharge . . . will have an unacceptable adverse effect . . . ."  Thus, the statute itself provides guidance, however minimal, to assist the court in determining whether the agency abused its (garden-variety (§ 706), not unreviewable (§ 701(a)(2))) discretion.[6]

### 3. EPA's "Inaction" And Its Impact On The Availability Of APA Relief

Finally, the fact that plaintiffs challenge EPA's failure to act (i.e., by failing to veto the permit) — rather than any affirmative decision — likewise does not preclude review.  This question involves two sub-questions: whether EPA's discretionary "inaction" is exempt from review pursuant to APA § 701(a)(2) (the provision excluding cases where "agency action is committed to agency discretion by law" from APA application), and the related question of when judicial review is available pursuant to § 706(1) and (2) (APA's "Scope of review" provisions).

---

[5] As the Supreme Court observed in *Chaney*, the exception applies not simply when an agency is vested with discretion as to particular actions or decisions, but rather in the rare occasion when the decisionmaking has been committed "to the agency's judgment *absolutely*." 470 U.S. at 830 (emphasis added).  "This construction," the court further observed, "avoids conflict with the [less deferential] 'abuse of discretion' standard of review in § 706." *Ibid.*; *see also* 33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8390 (2006) (discussing the reviewability of various types of agency discretion).

[6] In addition, EPA's § 404 permitting regulations may provide further guidance to assist the court (though plaintiffs do not specifically identify any such regulations).  *See Center for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988) ("Just as Congress can provide the basis for judicial review of nonenforcement decisions by spelling out statutory factors to be measured by the courts, so an agency can provide such factors by regulation."  Thus an agency's regulations that prescribe mandatory action are "self-imposed constraints" that overcome the "presumption against the review of agency inaction.").

      a.      **Agency "Inaction" And 5 U.S.C. § 701(a)(2) (The Absolute-Agency-Discretion Exception To APA Review)**

The landmark case regarding the availability of suits challenging discretionary agency inaction is the Supreme Court's aforementioned decision in *Chaney*. There, the Court held that the FDA's decision not to prevent the use of certain non-FDA-approved drugs in lethal injections involved unreviewable discretion. 470 U.S. at 832. The decision was grounded in the view that FDA's inaction was akin to a prosecutor's decision not to prosecute — a decision which "has traditionally been committed to agency discretion." *Ibid.* (internal quotation omitted). *Chaney* has been interpreted to create a presumption against the review of agency inaction. *See Center for Auto Safety*, 846 F.2d at 1534. The "inaction" here, however, is very different from a decision not to enforce or prosecute: it is essentially a decision (i.e., an action) to indirectly approve a permit, one that does not involve to the same extent the difficult decisions regarding manpower and allocation of resources that inform enforcement decisions and give rise to the hesitancy to undertake judicial review. And, as noted, *supra*, the most important factor for consideration pursuant to § 701(a)(2) is whether "the court would have no meaningful standard against which to judge the agency's exercise of discretion." *Chaney*, 470 U.S. at 830.

Recognizing the differences between the facts in *Chaney* and those arising in other contexts, the D.C. Circuit repeatedly has read *Chaney* narrowly in cases involving agency inaction. In *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987), the court suggested that APA review of inaction would be appropriate under three circumstances: (1) where agency inaction is final action having the same impact as agency action, *id.* at 793; (2) where agency inaction represents "agency recalcitrance . . . of such magnitude that it amounts to an abdication of

statutory responsibility," *ibid.*; and (3) where the inaction may constitute, in reality, an unreasonable delay in final action which may under some circumstances be reviewable (e.g., pursuant to APA § 706(1), which authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed"), *id.* at 794. This case falls squarely within the first category: the decision not to veto the permit had the same impact on the parties as an express denial of relief. *See Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) ("When administrative inaction has the same impact on the rights of the parties as an express denial of relief, judicial review is not precluded."). Indeed, it essentially *was* such a denial. *Chaney* and § 701(a)(2) therefore do not bar judicial review of EPA's failure to veto the permit simply because that failure constituted alleged inaction. *See also* II.B.2, *supra* (EPA's decision not to veto the permit is not an unreviewable discretionary decision "committed to agency discretion by law").

    b.  5 U.S.C. § 706 (The Scope Of APA Review)

    Though plaintiffs' APA claim is not barred by § 701, it must nonetheless also fall within the scope of APA review. This scope is set forth in APA § 706, which provides, in pertinent part: "The reviewing court shall — (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." *Id.* § 706. Pursuant to this statute, federal courts may review two types of claims: those seeking to compel certain required agency actions not yet taken (§ 706(1)), and those seeking to set aside arbitrary "agency actions" and determinations (§ 706(2)). The

question here is whether discretionary agency "inaction," such as EPA's failure to veto the permit here, falls under § 706(1), § 706(2), or both.

The government and the city rely on the Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) ("*SUWA*"), to argue that APA relief only arises for an agency's "failure to act" where such an act was legally required. In *SUWA*, the Court indeed held that pursuant to § 706(1), which was based on the pre-existing mandamus remedy (which in turn was limited to "enforcement of a specific, unequivocal command"), a claim under that provision "to compel agency action unlawfully withheld" can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 63–64.

A cursory reading of *SUWA* might interpret it to say that in any case where a party alleges inappropriate government inaction, her claims may only proceed where the government has failed to perform a mandatory duty. That is not, however, *SUWA*'s holding. *SUWA* addresses only attempts to "compel agency action" pursuant to § 706(1) and does not reach claims encompassed within § 706(2), which merely seek to "hold unlawful and set aside" arbitrary or capricious "agency action[s]." These claims are unaffected by *SUWA*. This reading is bolstered by the fact that according to the plain terms of APA, "failures to act" fall under the scope of *both* § 706(1) and § 706(2): the Act defines an "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added). Thus, plaintiffs' claim here — that EPA wrongly failed to exercise discretion in their favor — is directed not at an "agency action unlawfully withheld," but rather at a consummated "agency action" that APA views as final, notwithstanding the fact that

the agency "did" nothing. The court, therefore, has subject matter jurisdiction over these claims pursuant to § 706(2). *See Norton Constr. Co. v. U.S. Army Corps of Engineers*, 2006 WL 3526789, at *6–*7 (N.D. Ohio Dec. 6, 2006) (rejecting Corps' arguments that (1) § 706(1) and § 706(2) are mutually exclusive and that (2) "a plaintiff could not simultaneously challenge a failure to act as well as the merits of the decision not to act"); *see also Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Servs.*, __ F. Supp. 2d. __, 2007 WL 1031717, at *14 (W.D. Wash. Mar. 30, 2007) (holding that *SUWA* is not controlling where plaintiffs challenged a final agency action pursuant to § 706(2), and did not seek to "compel agency action unlawfully withheld"); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1280 (D.C. Cir. 2005) (discussing the differences between § 706(1) and § 706(2)).

### III.  CONCLUSION

For the foregoing reasons, the court determines that neither EPA nor the Corps may be sued pursuant to CWA § 505(a)(2), but that plaintiffs' APA claims against EPA may go forward. Accordingly, and as set forth in this memorandum opinion, it is this 30th day of May, 2007, hereby

**ORDERED** that plaintiffs' motion for leave to amend their complaint [#21] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that the United States' partial motion to dismiss [#24] is **GRANTED** in part and **DENIED** in part.

                                        Henry H. Kennedy, Jr.
                                        United States District Judge