UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                        )
ALLIANCE TO SAVE THE                    )
MATTAPONI, et al.                       )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )    Civil Action No. 06-CV-1268
                                        )
UNITED STATES ARMY CORPS OF             )
ENGINEERS, et al.                       )
                                        )
          Defendants.                   )
_____ )

## UNITED STATES' ENVIRONMENTAL PROTECTION AGENCY'S MOTION FOR PARTIAL RECONSIDERATION AND MEMORANDUM IN SUPPORT

Pursuant to Fed. R. Civ. P. 54(b), defendant United States Environmental Protection Agency ("EPA") hereby moves for partial reconsideration of the Court's order of May 30, 2007 ("Order").  The United States moved to dismiss claims asserted against both EPA and the Corps of Engineers under section 505(a)(2) of the Clean Water Act, 33 U.S.C. § 1365(a)(2), as well as to dismiss claims asserted against EPA under the Administrative Procedure Act ("APA").  See generally Combined Memorandum in Support of the United States' Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint ("U.S. Mem.") (Docket No. 24).[1]

_____

[1]  The complaint of plaintiff-intervenors Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow ("Tribe") asserts Clean Water Act and APA claims against EPA, and plaintiffs Alliance to Save the Mattaponi et al. ("Alliance") sought to amend their existing complaint to add similar claims.  See U.S. Mem. at 5-7 (discussing litigation background).  Because the jurisdictional issues raised by the complaint in intervention and the proposed amended complaint
(continued...)

1

The Court granted the United States' motion as to the Clean Water Act claims, but allowed a claim to proceed against EPA under the APA.  Order at 2.  The partial denial of a motion to dismiss is an interlocutory order that can be revised "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties," and reconsideration may be granted "as justice requires."  Fed. R. Civ. P. 54(b); M.K. v. Tenet, 196 F. Supp. 2d 8, 12 (D.D.C. 2001); see also Judicial Watch v. Department of the Army, 466 F. Supp.2d 112, 123 (D.D.C. 2006).[2]

In briefing the issue of whether the APA claims asserted against EPA should be dismissed, all parties focused on whether Section 404(c) of the Clean Water Act, 33 U.S.C. § 1344(c), imposes nondiscretionary duties on EPA.  See U.S. Mem. at 11-12; Response of the Alliance et al. to the United States' Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint (Docket No. 29) at 8 (stating that amended complaint alleges that EPA violated mandatory duties under 404(c)), 22-23 (arguing that because EPA allegedly has mandatory duties under 404(c), EPA's alleged failure to carry out those duties is reviewable under APA).  Indeed, as the Court noted, the Tribe actually conceded that if it could not identify a mandatory duty on EPA's part, then it could not pursue a claim under the APA.  Order at 9 n.

---

[1] (...continued)
are identical, the United States simultaneously moved to dismiss the Tribe's claims against EPA and opposed the Alliance's motion to amend.  For brevity, both the motion to dismiss and the opposition to the motion to amend are referred to herein as the United States' motion to dismiss.

[2] Motions to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), or for relief from a final judgment, order, or proceeding pursuant to Fed. R. Civ. P. 60(b), are governed by different, stricter standards.  Tenet, 196 F. Supp.2d at 12.

4; see also Tribe's Memorandum in Opposition to the United States' Partial Motion to Dismiss (Docket No. 30) at 11 n.3.

Because the question of whether section 404(c) creates a mandatory duty was treated in the briefs as being, in essence, dispositive of the APA claims against EPA, the United States failed to fully explicate the nature of section 404(c) and its implementing regulations and failed to draw the Court's attention to precedent relevant to the question on which the Court focused: whether EPA's alleged inaction with regard to the Permit is within the realm of matters that are "committed to agency discretion by law," and therefore unreviewable under the APA.  5 U.S.C. § 701(a)(2).  As the Court has recognized, a key issue is whether there is "law to apply," i.e., some meaningful statutory or regulatory standard against which EPA's alleged inaction can be judged.  See Order at 9-10, 11-12.  Viewed in the proper context, there is in fact no "law to apply" in considering whether EPA has been arbitrary or capricious in not invoking its authority under section 404(c).  The United States therefore respectfully requests that the Court reconsider its order of May 30, 2007, and dismiss all remaining claims against EPA.  See Judicial Watch, 466 F. Supp. 2d at 123 (reconsideration may be granted where, inter alia, a court has "made a decision outside the adversarial issues presented to the court by the parties" or has made "an error not of reasoning, but of apprehension").

## ARGUMENT

Section 404(c) reads in full:

The Administrator [of EPA] is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearing, that the discharge of such materials into such area will have unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

33 U.S.C. § 1344(c) (emphasis added). The existence of a formal determination that use of the disposal site at issue will have certain adverse effects is thus a precondition to any EPA "veto" of a permit under section 404(c). EPA has, moreover, promulgated regulations that set forth the procedures to be followed in making this determination. See generally 40 C.F.R. Part 231. Under these regulations, "[i]f the Regional Administrator has reason to believe after evaluating the information available to him" that an "unacceptable adverse effect" could result from a permit, he "may" initiate the process required to make a formal determination. 40 C.F.R. § 231.3(a). Steps involved in this process include, among other things, notification to the Corps District Engineer; public notice of the proposed determination, including publication in local newspapers and in the Federal Register; a public comment period, and in some cases public hearings; issuance of a recommended final determination (or withdrawal of the proposed determination) by the Regional Administrator, with associated intra-agency review; and, ultimately, a final determination by the EPA Administrator (following consultation with the Corps). 40 C.F.R. §§ 231.3-231.6.

4

EPA has not initiated these procedures and has not made the required "determination" that the Permit will have any of the "adverse effects" that could lead to a veto under 404(c) – indeed, none of the parties even alleges that it has done so.[3]   The only question the Court could possibly consider is therefore whether EPA acted arbitrarily and capriciously <u>in failing to initiate the process required to make the determination</u> that is a precondition for action under 404(c). For the reasons discussed below, there is no "law to apply" to that question.  The fact that EPA has not undertaken the process necessary to veto the Permit thus remains squarely within the class of agency inactions that are "committed to agency discretion by law," and that are therefore unreviewable. 5 U.S.C. § 701(a)(2).

First, section 404(c) itself does not provide a meaningful standard against which the Court could evaluate EPA's exercise of discretion not to initiate the veto process.   The statute provides only that "<u>whenever [the Administrator] determines</u>" that a discharge will have certain effects, the Administrator is authorized to veto a permit.  33 U.S.C. § 1344(c) (emphasis added). The D.C. Circuit considered a similar statute in <u>New York Public Interest Group v. Whitman</u>, 321 F.3d 316 (D.C. Cir. 2003) ("<u>NYPIRG</u>").  Section 502(i)(l) of the Clean Air Act states that "<u>[w]henever the Administrator makes a determination</u> that a permitting authority is not adequately administering and enforcing a [state Title V permitting] program," EPA "shall" provide notice of these deficiencies to the affected state and "may" apply certain sanctions.  42 U.S.C. § 7661a(i)(1) (emphasis added).  The petitioners in <u>NYPIRG</u> contended that this section obligated EPA to issue a notice of deficiency whenever it was made aware of certain defaults in

---

[3]  Given the detailed multi-step process that must occur before a final determination can be made, there could be no argument that EPA's comments on the Permit effectively constitute the requisite determination.

state administration.  NYPIRG, 321 F.3d at 330.  The D.C. Circuit rejected this argument,

agreeing with EPA that the opening language in the relevant provision ("[w]henever the

Administrator makes a determination") "grants discretion."  Id.; see also id. at 331 n.7.  The

court went on to state that agency decisions not to invoke discretionary authorities of this sort are

"not typically subject to judicial review" under the APA.  Id. at 331 (citing 5 U.S.C. § 701(a)(2)

and Heckler v. Chaney, 470 U.S. 821 (1985)).  As the court explained, "[t]he presumption

against judicial review of such refusal avoids entangling courts in a calculus involving variables

better appreciated by the agency."  Id. at 332; see also Wood v. Herman, 104 F. Supp.2d 43, 46-

47 (D.D.C. 2000) (statute providing that Secretary of Labor "shall cause such investigation to be

made as he deems appropriate" and bring action if, as a result of investigation, Secretary

determines that certain provisions have been violated did not provide "meaningful guidelines"

sufficient to overcome Chaney presumption of nonreviewability of enforcement decisions).

    The only other potential source of "law to apply" is 40 C.F.R. § 231.3, which, as already

noted, provides that "if the Regional Administrator has reason to believe after evaluating the

information available to him" that an "unacceptable adverse effect" could result from a permit,

he "may" initiate the process required to make a formal determination.  40 C.F.R. § 231.3(a)

(emphasis added); see Center for Auto Safety v. Dole, 846 F.2d 1532, 1534 (D.C. Cir. 1988)

("Dole II") (where agency chooses to "fetter its discretion" through regulations, those

regulations can provide standards for judicial review of agency inaction).  EPA's 404(c)

regulations do not, however, provide a meaningful standard against which the Court could

evaluate EPA's exercise of discretion not to initiate the necessary process.

In <u>Dole II</u> , the D.C. Circuit considered the National Highway Traffic Safety Administration's ("NHTSA's") denial of a petition to reopen a safety investigation against an automobile manufacturer.  <u>Dole II</u>, 846 F.2d at 1534.  A NHTSA regulation directed the agency to grant a petition seeking investigation into safety defects if, after a "technical review," the agency found a "reasonable possibility that the requested order will be issued at the conclusion of the appropriate proceeding." <u>Id.</u>; <u>see also</u> <u>Center for Auto Safety v. Dole</u>, 828 F.2d 799, 801-02 (D.C. Cir. 1987) ("<u>Dole I</u>").  In <u>Dole I</u>, the D.C. Circuit had concluded that the cited regulation provided "law to apply" in reviewing NHTSA's denial of the petitions.  <u>Dole I</u>, 828 F.2d at 803; <u>see also</u> <u>Dole II</u>, 846 F.2d at 1534 (noting that question of whether regulation provided adequate standards "was not a matter of dispute" in earlier decision).  In <u>Dole II</u>, however, following a petition for rehearing, the Circuit revisited this point and held that the regulation did not "limit the agency's discretion in a way that enables us to conduct a meaningful review of the agency's compliance."  <u>Dole II</u>, 846 F.2d at 1535.  As the court explained,

> While safety is an indispensable element of the decision not to investigate, NHTSA can and does consider such 'nonsafety' factors as its available resources, enforcement priorities, the likelihood of uncovering sufficient evidence to establish the existence of a defect, and the prospect of ultimately succeeding in any necessary enforcement litigation.  The regulation *sub judice* provides the court no way to second-guess the weight or priority to be assigned these elements. In particular, it would be unwise, and inconsistent with the broad mandate of the agency under the governing statute, to infer a mandatory allocation of the agency's limited resources from the regulation at issue.  We must thus conclude that NHTSA's decision governed by this regulation is not reviewable.

<u>Dole II</u>, 846 F.2d at 1535.[4]

---

[4] The pertinent regulations have since been amended to explicitly identify these nonsafety factors as factors the agency considers in deciding whether to grant a petition.  At the time of the decision, however, they were not spelled out in the regulation.  <u>See</u> <u>Dole I</u>, 818 F.2d at 801, 803;

(continued...)

40 C.F.R. § 231.3(a) is drafted in similarly broad terms, and thus likewise provides no "law to apply." Nothing in the regulatory language limits EPA's discretion with respect to the considerations that may inform the decision of whether and when to initiate the formal 404(c) process; thus, a court would have no meaningful standard against which to judge the fact that EPA had not done so. In this context, it should be noted that the Corps processes thousands of individual Section 404 permit applications annually.[5] Given the extensive process that must be undertaken before EPA can make the determination that is required to veto a permit under 404(c), and the agency resources that process would consume, the decision of whether to institute that process in each of these thousands of instances each year involves precisely the sort of "difficult decisions regarding manpower and allocation of resources that inform enforcement decisions and give rise to the hesitancy to undertake judicial review." Order at 11. The Court thus has no "law to apply" to the question of whether EPA's exercise of discretion in not initiating the necessary process was arbitrary or capricious.[6]

There is an additional problem with treating the APA claims against EPA as claims seeking review of a discretionary failure to act, that being that there has been no "final agency

---

[4] (...continued)
compare 49 C.F.R. § 552.8.

[5] See http://www.usace.army.mil/cw/cecwo/reg/2003webcharts.pdf (showing over 4000 standard permit applications evaluated in FY02 and FY03).

[6] Even if the Court did have "law to apply," the only question it could possibly consider is whether the Regional Administrator had "reason to believe" that certain adverse effects might occur, and therefore whether EPA should have initiated the 404(c) process. There is no way of knowing whether a veto of the Permit would be appropriate at the end of that process. Thus, at a minimum, EPA requests that the Court clarify its order and limit the scope of any APA claim against EPA to the question of whether EPA should have initiated the veto process, and not whether it should actually veto the Permit.

action." <u>See</u> 5 U.S.C. § 704.  Section 404(c) allows EPA to prohibit or <u>withdraw</u> the

specification of a disposal site – EPA still has authority to act, and plaintiffs can point to no

definitive, final EPA decision that it will never exercise its authority under 404(c) with regard to

the Permit.  The lack of a veto to date is not a "consummated agency action" (Order at 13), and

the Court therefore lacks jurisdiction over the APA claims against EPA.  <u>See</u> <u>Sierra Club v.</u>

<u>Thomas</u>, 828 F.2d 783, 793 (D.C. Cir. 1987) (declining to find that agency inaction represented

effectively final action where there was no allegation or other suggestion that failure to issue

final rule to date reflected acknowledged decision not to do so).

## <u>CONCLUSION</u>

   For the foregoing reasons EPA respectfully requests that the Court reconsider its order of

May 30, 2007 and dismiss all remaining claims against EPA.

June 13, 2007         Respectfully submitted,

        RONALD J. TENPAS
        Acting Assistant Attorney General
        United States Department of Justice
        Environment & Natural Resources Division

        */s/ Angeline Purdy*
        _____
        ANGELINE PURDY
        Trial Attorney
        Environmental Defense Section
        PO Box 23986
        Washington DC 20026-3986
        (202) 514-0996 (tel.)
        (202) 514-8865 (fax)
        Angeline.Purdy@usdoj.gov

        DEVON LEHMAN McCUNE
        Trial Attorney
        Natural Resources Section

1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

SAMANTHA KLEIN
Trial Attorney
Natural Resources Section
PO Box 663
Washington DC  20044-0663
(202) 305-0474 (tel.)
(202) 305-0506 (fax)
Samantha.Klein@usdoj.gov


Of Counsel:

Pat M. Falcigno
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers