UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____
                                            )
                                            )
ALLIANCE TO SAVE THE MATTAPONI, et al.      )
                                            )
                                            )
                                            )         **Docket No.**
v.                                          )         **1:06-cv-01268-HHK**
                                            )
UNITED STATES ARMY CORPS OF                 )
ENGINEERS, et al.                           )
                                            )
                                            )
_____ )

**MATTAPONI INDIAN TRIBE'S OPPOSITION TO UNITED STATES'
ENVIRONMENTAL PROTECTION AGENCY'S MOTION FOR PARTIAL
RECONSIDERATION**

Plaintiff-intervenors the Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow (collectively "Tribe"), through counsel, oppose the United States' Environmental Protection Agency's Motion for Partial Reconsideration of this Court's Order of May 30, 2007 and submit this Memorandum in support.

**BACKGROUND AND PROCEDURAL HISTORY**

The subject of this litigation is the issuance of a dredged or fill material discharge permit under section 404 the Clean Water Act ("CWA"), 33 U.S.C. § 1344, by the U.S. Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers ("the Corps"). The permit authorizes the construction of the King William Reservoir project. The Tribe's complaint alleged, inter alia, that the EPA and the Corps violated the CWA and its accompanying regulations when they issued this permit. Mattaponi Indian Tribe

et al., Complaint (Docket No. 17).[1]  The Tribe asserted that this Court had jurisdiction to review these claims under the citizen's provision of the CWA, 33 U.S.C. § 1365(a)(2), and the Administrative Procedure Act, ("APA"), 5 U.S.C. §§ 701-706.  Id. at ¶ 4.  The environmental plaintiffs, Alliance to Save the Mattaponi, the Chesapeake Bay Foundation, and the Virginia Chapter of the Sierra Club (collectively, "Alliance"), sought to amend their complaint to add EPA as a defendant and to assert the citizen's suit provision of the CWA as a basis of jurisdiction.  EPA and the Corps filed a motion to dismiss all claims against EPA and claims against the Corps brought under the citizen's suit provision of the CWA.  Combined Memorandum in Support of the United States' Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint (Docket No. 24).

On May 30, 2007, this Court issued an opinion and order, dismissing all claims brought under CWA citizen's suit provision and holding that claims asserted under the APA could go forward as to both EPA and the Corps.  Memorandum Opinion and Order (Docket No. 36).  In its May 30, 2007 Opinion and Order, this Court addressed whether EPA's ability to veto a permit under CWA § 404(c) is a mandatory duty or a discretionary authority.  Memorandum Opinion and Order at 3-5, 8-10.  This Court concluded that EPA's authority to veto permits issued under CWA § 404 is discretionary and that this discretionary action was reviewable under the APA.  Memorandum Opinion and Order at 5, 14.

---

[1] If this Motion for Reconsideration is resolved in favor of the plaintiffs, the Tribe intends to amend its complaint to add an allegation that EPA acted arbitrarily and capriciously by failing to issue a 404(c) veto.

On June 13, 2007, EPA filed a partial motion for reconsideration, asking this Court to dismiss the remaining claims against EPA. EPA's Motion for Partial Reconsideration and Memorandum in Support ["EPA's Motion"] at 9 (Docket No. 39).

## ARGUMENT

EPA asks this Court to reconsider its decision to allow claims to go forward against EPA on the basis that CWA § 404(c) does not provide a standard by which this Court may review EPA's failure to issue a veto. Reconsideration is not proper here, as this issue was before the court.[2] See Response of the Alliance et al. to the United States' Partial Motion to Dismiss and in Opposition to Plaintiffs' Motion to Amend Complaint at 22-23 (Mar. 16, 2007) ( Docket No 29); see also Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (noting that reconsideration may be appropriate when "the court has made a decision outside the adversarial issues presented to the Court by the parties") (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990)).

Furthermore, EPA's substantive argument is unpersuasive, as CWA § 404(c) clearly sets out a list of reasons for which EPA may veto a project. EPA attempts to confuse the issue by contending that CWA § 404(c) establishes a bifurcated process and that this Court may only consider "whether EPA acted arbitrarily and capriciously in failing to initiate the process required to make the determination that is a precondition for action under 404(c)." EPA's Motion at 5 (emphasis omitted). EPA's argument is not supported by either the structure or language of section 404(c) and is, therefore, untenable.

---

[2] We concur with the position of the Alliance set forth in its Opposition, which goes into more detail on why EPA's motion does not satisfy the standard for reconsideration.

3

This Court correctly concluded that, while courts are prohibited from reviewing discretionary agency actions when a statute is "drawn in such broad terms that . . . there is not law to apply," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26), that is not the situation here.  Section 404(c) articulates a "meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830 (1985).  Specifically, EPA has the authority to issue a veto "whenever [it] determines . . . that the discharge . . . will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife or recreational areas." 33 U.S.C. § 1344(c).  Based on these guidelines, this Court can evaluate whether EPA acted arbitrarily when it failed to veto the permit authorizing the King William Reservoir.  Therefore, this Court's jurisdiction is not precluded under APA § 701(a)(2), 5 U.S.C. § 701(a)(2) (barring review of actions "committed to agency discretion by law").

EPA's argument that there is "no law to apply" here rests entirely on its mischaracterization of EPA's veto power as a two-tiered process, consisting of a decision to initiate "veto proceedings" and an entirely separate decision to issue the veto.  EPA does not dispute that there is "law to apply" when evaluating whether EPA's exercise of its discretion in determining if a permit will have adverse effects that could lead to a § 404(c) veto is arbitrary or capricious.  EPA contends, however, that there is no "law to apply" when reviewing EPA's decision to *initiate* "veto proceedings."  EPA's Motion at 5.  Because the statute only describes one type of determination—whether to issue a veto—and is silent as to the initiation of "veto proceedings," EPA's argument necessarily fails.

The statute gives the EPA Administrator the authority to veto a project "whenever he determines . . . that the discharge of such materials into [any area designated as a disposal site] will have an unacceptable adverse effect." 33 U.S.C. § 1344(c). Even though the Administrator is required to notify the public, hold a public hearing, and consult with the Secretary when making such a determination, 33 U.S.C. § 1344(c); 40 C.F.R. § 231.3(a)(1), these requirements do not constitute a separate process.

The correctness of the Tribe's interpretation of CWA § 404(c) is borne out by the section's sentence structure and how the word "determination" is used throughout. More specifically, the notice and hearing requirement is set off by commas—"whenever [EPA] determines, *after notice and opportunity for public hearings*, that the discharge of such materials will have an unacceptable adverse effect." 33 U.S.C. § 1344(c) (emphasis added). As the Supreme Court held in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), a phrase "set aside by commas . . . stands independent of the language that follows." Thus, EPA's "determination" described in this section refers to whether the proposed discharge would have adverse effects, not to a "determination" to hold a public hearing, which is set forth in an independent clause.

Furthermore, it is the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570 (1995); Yousuf v. Samantar, 451 F.3d 248, 256, (D.C. Cir. 2006). After granting EPA the authority to veto a permit that it *determines* will lead to adverse effects, the section goes on to say that "[b]efore making *such determination*, [EPA] shall consult with the Secretary." 33 U.S.C. § 1344(c) (emphasis added). EPA is also required to "set forth in writing and make public his findings and his

5

reasons for making *any determination* under the subsection." Id. (emphasis added).
Applying a consistent meaning to "determination" indicates that when EPA decides to
veto a project because it will have an "unacceptable adverse affect," EPA must consult
with the Secretary of the Army and put the reasons for its decision in writing. In neither
case does the statutory language suggest, as EPA asserts in its motion, that
"determination" refers to EPA's decision to initiate some kind of process that is required
before EPA may issue a veto. EPA's Motion at 5.

       The corresponding regulations also support the Tribe's position that EPA's
determination to issue a veto is not preceded by a separate process. Section 213.3(a) says
that the Regional Administrator of EPA may make a "proposed determination" to veto if
he "has reason to believe after evaluating the information available to him . . . that an
'unacceptable adverse effect' could result from the specification or use for specification
of a defined area for the disposal of dredged or fill material." 40 C.F.R. § 213.3 (a).
Only after making this determination is the Regional Administrator required to "notify
the District Engineer or the state, if the site is covered by an approved state program, the
owner of record of the site, and the applicant" of this decision, and then notify the public
and hold a public hearing. Id. at 231.3(a)(1)-(2), (b). While the parties that EPA must
notify about a proposed determination are given the opportunity to refute the agency's
conclusion that the project will yield "unacceptable adverse effects," contrary to EPA's
characterization, the statute and regulations do not say that EPA must consult with these
parties *before* it makes its own *proposed determination* that the project will have an
"unacceptable adverse effect." See id at 231.3(a)(2) ("If within 15 days of receipt of the
Regional Administrator's notice [of a proposed determination to veto], it has not been

demonstrated to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur or the District Engineer or state does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator, the Regional Administrator shall publish notice of a proposed determination in accordance with the procedures of this section.").

Case law also supports the conclusion that the aforementioned notice requirements in CWA § 404(c) and its accompanying regulations do not create a separate process that is a precondition to the issuance of a veto. The notice requirements are not, as EPA suggests, the equivalent of an investigation that must take place before EPA can make a determination that a project will cause adverse effects. See Wood v. Herman, 104 F.Supp.2d 43, 46 (D.D.C. 2000) (holding that an agency's discretionary authority to undertake an investigation is unreviewable because there is no "law to apply"), cited in EPA's Motion at 6. The Wood court evaluated the following enforcement provision in Occupational Safety and Health Act ("OSHA"): "the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action." 29 U.S.C. § 660(c)(2). Section 404(c) is unlike the provision in OSHA because it does not call for a separate "investigation" or "veto process" before making the veto determination. Rather, it straightforwardly sets out that EPA may veto a project "whenever [it] determines" that a proposed discharge will have "unacceptable adverse effect[s]." 33 U.S.C. § 1344(c).

Section 404(c) is more like the Clean Air Act ("CAA") provision addressed in New York Public Interest Group v. Whitman, 321 F.3d 316 (D.C. Cir. 2003) ("NYPIRG"), cited in EPA's Motion 5-6. Both statutory provisions give the agency discretionary authority to make a determination and then, if the agency makes such a determination, require the agency to give notice to interested parties. Compare CAA § 502(i)(1), 42 U.S.C. § 7661a(i)(1) ("*Whenever the Administrator makes a determination* that a permitting authority is not adequately administering and enforcing a [state Title V permitting] program . . . the Administrator *shall* provide notice to the State.") (emphasis added), with 40 C.F.R. § 231.3 ("The Regional Administrator [of EPA] *will* notify the District Engineer or the state, . . . the owner of record of the site, and the applicant, if any, in writing that *the Regional Administrator intends to issue a public notice of a proposed determination* to [veto.]") (emphasis added).[3] The NYPIRG court described the notice requirement in CAA § 502(i)(1) as a "statutorily mandated consequence[]" that followed the agency's invocation of discretion to make a "determination." NYPIRG, 321 F.3d at 331. Applying this reasoning to CWA §404(c), the requirements that EPA consult with the Secretary, 33 U.S.C. § 1344(c), give notice and opportunity for a public hearing, id., and notify the district engineer, the state, and the applicant of an intention to "issue a public notice of a proposed determination," 40 C.F.R. § 213.3(a)(1), are the "statutorily

---

[3] Although section 404(c) states that "the Administrator [of EPA] shall consult with the Secretary" "*[b]efore* making such determination," this does not refer to a preliminary process or investigation. The regulations clarify that once EPA makes its determination that a veto is appropriate—in the form of a "proposed determination"—the Regional Administrator of EPA must notify the Secretary about this decision before the "proposed determination" can be finalized. 40 C.F.R. § 231.3(a)(1).

mandated consequences" that follow the determination, not a distinct initial process that must occur prior to the determination.[4]

Finally, this Court should also sustain its conclusion that EPA's failure to veto constitutes agency inaction that is reviewable under the APA. As this Court held, APA review of agency inaction is appropriate in this case because "'the agency inaction is final action having the same impact as agency action.'" Memorandum Opinion and Order at 11-12 (quoting Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C. Cir. 1987) and citing Her Majesty the Queen in right of Ontario v. EPA, 912 F.2d 1525, 1531 (D.C. Cir. 1990)). The impact of EPA's failure to veto is the same as if EPA had issued an express determination that it would not veto. In either case, the King William Reservoir is allowed to go forward and will injure the Tribe, as alleged in its complaint.

---

[4] Although the NYPIRG court concluded that EPA's failure to make a determination under CAA § 502(i)(1) was not reviewable under the APA, that particular statute, unlike CWA § 404(c), does not set out criteria to guide the Administrator's determination that a state is not adequately administering its permitting program, 42 U.S.C. § 7661a(i)(1). See supra p. 4. Thus, CWA § 404(c), unlike CAA § 502(i)(1), is the type of statute reviewable under Heckler precisely because it provides a "meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. at 830.

## **CONCLUSION**

For the foregoing reasons, the Tribe respectfully requests that this Court deny EPA's Partial Motion for Reconsideration and sustain its original opinion and order of May 30, 2007.

    Respectfully Submitted,

    /s/ Emma Garrison_____
    Emma E. Garrison, Staff Attorney
    Hope M. Babcock, Senior Attorney
    Institute for Public Representation
    600 New Jersey Avenue, NW
    Washington, D.C.  20001
    (202) 662-9535
    (202) 662-9634 (Facsimile)

    *Counsel for the Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow*