UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, et al. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 06-CV-1268 |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al. | ) ) ) ) |
| Defendants. | ) ) |

**UNITED STATES' ENVIRONMENTAL PROTECTION AGENCY'S
REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION**

In its Motion for Partial Reconsideration, defendant United States Environmental Protection Agency ("EPA") presented arguments and case law that, due to the parties' initial focus on issues other than those addressed in the Motion for Reconsideration, had not previously been presented to the Court.  See EPA's Motion for Partial Reconsideration And Memorandum In Support ("EPA Mem.") at 2-3, 5-8.  Neither the Alliance nor the Tribe has refuted EPA's arguments or distinguished the cases EPA relies upon.  EPA's motion for reconsideration should therefore be granted.

**A.    EPA Cannot "Veto" a Permit Without Following Statutorily Mandated Procedures.**

Both the Tribe and the Alliance argue that the Court should review EPA's alleged inaction in not exercising its Section 404(c) authority to "veto" the permit at issue in this

1

litigation ("Permit").  In its Motion for Partial Reconsideration, EPA demonstrated that, in order to exercise that authority, EPA would be required to follow certain statutory and regulatory procedures, and thus that the only alleged "inaction" the Court could possibly review would be the fact that EPA has not initiated those procedures.  EPA Mem. at 4-5, 8 n.6.  In response, the Tribe argues at length that EPA has "mischaracter[ized]" the requirements of Section 404(c) and its implementing regulations as a "two-tiered process" in which the decision to begin the veto process and the decision to veto a permit are entirely separate events.  Mattaponi Indian Tribe's Opposition to EPA's Motion for Partial Reconsideration ("Tribe Opp.") at 4; see generally id. at 3-8; see also Opposition of Plaintiffs the Alliance et al. to EPA's Motion for Partial Reconsideration ("Alliance Mem.") at 6-7 and n. 4 (concurring in Tribe's argument).

      The Tribe misconstrues EPA's argument, and seeks to have the Court ignore the plain language of the statute.  Section 404(c) plainly requires a determination by EPA that a project will have certain adverse effects before EPA is authorized to veto a permit, and further requires "notice and opportunity for public hearing" and consultation with the Corps before such a determination can be made.  33 U.S.C. § 1344(c); EPA Mem. at 4.  EPA has, by regulation, elaborated on the statutory notice, hearing, and consultation requirements, and has established certain procedures that must be followed in order to make the required determination.[1]  EPA Mem. at 4, 6, 8; see generally 40 C.F.R. Part 231.  In short, EPA must make a determination

---

[1] EPA does not necessarily agree with the Tribe's characterization of the procedural regulations governing the veto process.  See Tribe Mem. at 6-8.  The exact details of the required process are, however, irrelevant to the resolution of EPA's motion, and thus will not be further discussed.

before it can veto a permit, and it must follow certain procedures before it can make a determination.

In support of its claim that the Court can ignore the absence of the requisite process, the Tribe asserts that the public notice and consultation required by Section 404(c) and its implementing regulations follow, rather than precede, EPA's "determination" that a permit will have certain adverse effects. Tribe Mem. at 8-9. This argument is contradicted by the plain language of the statute.[2] Section 404(c) explicitly states that EPA is authorized to veto a permit "whenever [it] determines, <u>after</u> notice and opportunity for public hearing, that [certain adverse effects will occur]." 33 U.S.C. § 1344(c) (emphasis added). The statute goes on to state that "[b]<u>efore</u> making such determination," EPA is required to consult with the Corps. <u>Id</u>. (emphasis added). The statute is not only clear, but logical – the intent is, presumably, that EPA will receive and evaluate information from the public and from the Corps before making a final determination that any of the "unacceptable adverse effect[s]" that could justify a veto will occur.

Nowhere do either the Tribe or the Alliance explain how the Court can consider whether the lack of a veto is arbitrary or capricious when EPA has not gone through the procedures that would be required before EPA could issue such a veto. Nor does either party justify its extraordinary suggestion that the Court should disregard Congress's explicit instruction that EPA undertake public notice and comment and interagency consultation <u>before</u> exercising its Section

---

[2] In an effort to support this proposition the Tribe cites to 40 C.F.R. § 231.3, which requires that EPA notify certain interested parties of EPA's intent to provide public notice of a <u>proposed</u> 404(c) determination. 40 C.F.R. § 231.3(a)(1). This is only the first step in the required public process, and neither purports to nor could override the statutory requirement that EPA make, not merely propose, a determination before it can veto a permit.

404(c) authority. The Tribe and the Alliance have thus failed to demonstrate that the Court can ignore the fact that EPA has not undertaken the process that must, by law, precede a veto, and proceed directly to reviewing EPA's alleged improper failure to veto the Permit.

>   B.  **The Court Has no "Law to Apply" in Assessing Whether EPA Should Have Initiated the Veto Procedures.**

As discussed in the preceding section, EPA's argument is not, as the Tribe would have it, that there is a "bifurcated process," Tribe Opp. at 3, involved in EPA's exercise of its Section 404(c) authority. It is, rather, that there is a single process that must be followed before EPA can veto a Section 404 permit – and that EPA's decision of whether or not to initiate that process in the first place is unreviewably "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); EPA Mem. at 5-8. Efforts to distinguish New York Public Interest Group v. Whitman, 321 F.3d 316 (2d Cir. 2003) ("NYPIRG") and Center for Auto Safety v. Dole, 846 F.2d 1532 (D.C. Cir. 1988) as dealing with "enforcement-type actions" miss the mark.[3/] Alliance Opp. at 7; see also Tribe Opp. at 8. In both NYPIRG and Dole the question was whether a court could review an agency's discretionary decision not to initiate a process that could, ultimately, lead to further agency action. These courts concluded that they could not. See NYPIRG, 321 F.3d at 331-32 (court could not review agency's discretion in not invoking enforcement mechanism that could, if invoked, lead to application of sanctions); Dole, 846 F.2d at 1534-35 (court could not review agency's exercise of discretion in declining to grant petition seeking investigation that might lead to further action with regard to alleged safety defects). The question is precisely the same

---

[3/] Franklin v. Massachusetts, 505 U.S. 788 (1992) does not support the Alliance's argument. See Alliance Mem. at 8 (citing Franklin). The statement quoted by the Alliance appears in a dissent, and concerns an issue not addressed by the Court in the majority opinion. Franklin, 505 U.S. at 816, 819.

here, i.e., whether the Court can review EPA's discretionary decision not to initiate a process that might, on completion, produce a determination that might, in turn, lead to an EPA veto of the Permit; as in NYPIRG and Dole, the answer is that it cannot.

The concern that review of this sort of discretionary decision will "entangle reviewing courts" in internal agency operations, NYPIRG at 332, and require a court to "infer a mandatory allocation" of scarce agency resources to the desired process, Dole at 1535, carries just as much weight with regard to Section 404(c) and its implementing regulations as it did with regard to the statutes and regulations at issue in NYPIRG and Dole. In all three cases, the relevant statutory and regulatory language leaves agencies the freedom to decide whether to begin the often expensive and time-consuming process required to address alleged improprieties – whether they be allegedly deficient permitting programs, or alleged safety defects, or, as here, an allegedly improper Permit – or whether to prioritize other issues and allocate agency resources accordingly.[4] And in all three cases, the Court has no meaningful standard against which to judge the agency's choice.

Contrary to the Alliance's and the Tribe's arguments, the substantive standards of Section 404(c) and the 404(b) permitting regulations (and the other cited documents) do not provide "law to apply" that could be used to judge EPA's exercise of discretion in not initiating the veto process. See Alliance Mem. at 4-6; Tribe Mem. at 3, 9 n.4. Regardless of whether these provisions might inform EPA's decision of whether to veto a permit at the end of the veto process, they can have no applicability where that process has not even been initiated. EPA

---

[4] EPA's exercise of discretion in not initiating veto proceedings is, if anything, entitled to more deference in this context, where another federal agency has already gone through a full administrative process before issuing the Permit.

submitted comments on the Permit, but there is no way of knowing what additional information or arguments either supporting or opposing a veto might have been advanced during the public comment and agency review and consultation process, how EPA would have responded to any such evidence or arguments, or what EPA's conclusion at the end of the process would have been.

There is, moreover, nothing in Section 404(c) that defines <u>when</u> the veto process must be initiated; EPA can, in essence, initiate the process either before, during, or after the processing of a permit application by the Corps.[5/]  Section 404(c) does not contain any deadlines, and does not identify any triggers in response to which EPA would be required to initiate the veto process. The fact that EPA has not initiated the veto process to date thus does not constitute a "final action" reviewable under the APA – nothing in Section 404(c) either requires EPA to act now or precludes EPA from taking action at a future date.

Review of agency inaction is difficult in the best of circumstances.  <u>Cf</u>. <u>District of Columbia v. Schramm</u>, 631 F.2d 854, 859-60 (D.C. Cir. 1980) (where agency vetoes a state permit, clear record exists of its actions and reasons, but when agency decides not to act "there may be no record to review").  In these circumstances – where EPA has not gone through the statutorily mandated public process and consultation that could produce the determination that is a condition precedent for vetoing the Permit, where the statute provides no guidance or standard to assess when or whether EPA should have initiated that process, and where the Court would be

---

[5/]  Because Section 404(c) authorizes EPA to "prohibit" the specification of an area as a disposal site, EPA can initiate the veto process prior to the issuance of a permit, or even in the absence of a permit application.  Section 404(c) also authorizes EPA to initiate the process while a permit application is pending or after a permit has issued, through the "withdrawal" of specification of a defined area as a disposal site.  33 U.S.C. § 1344(c).

operating without benefit of the record that would have been developed had EPA gone through the veto process – it is simply impossible.

## CONCLUSION

For the foregoing reasons and the reasons stated in its opening memorandum EPA respectfully requests that the Court reconsider its order of May 30, 2007 and dismiss all remaining claims against EPA.

June 29, 2007                                         Respectfully submitted,

RONALD J. TENPAS
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

*/s/ Angeline Purdy*

_____
ANGELINE PURDY
Trial Attorney
Environmental Defense Section
PO Box 23986
Washington DC 20026-3986
(202) 514-0996 (tel.)
(202) 514-8865 (fax)
Angeline.Purdy@usdoj.gov

DEVON LEHMAN McCUNE
Trial Attorney
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO 80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

SAMANTHA KLEIN
Trial Attorney
Natural Resources Section

        PO Box 663
        Washington DC  20044-0663
        (202) 305-0474 (tel.)
        (202) 305-0506 (fax)
        Samantha.Klein@usdoj.gov


Of Counsel:

Pat M. Falcigno
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers