## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE TO SAVE THE MATTAPONI**, *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **1:06-cv-01268-HHK** |
| ) | |
| **UNITED STATES ARMY CORPS OF ENGINEERS,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### ANSWER OF THE INTERVENING DEFENDANT
### CITY OF NEWPORT NEWS, VIRGINIA TO THE FIRST AMENDED COMPLAINT

The City of Newport News, intervening defendant, answers the allegations of the

First Amended Complaint as follows:

1. Newport News admits the allegations contained in the first two sentences of

¶ 1. Newport News admits that the Division Commander's decision rejected the 2001

recommended decision of the Corps' Norfolk (Virginia) District Engineer but denies that the

recommended decision was "overturned," because it was merely a recommendation from a

subordinate to a superior officer and not an operative instrument of any kind.  Newport News

denies the remaining allegations of ¶ 1.

2. Newport News admits that the King William Reservoir will be constructed on

Cohoke Creek, a tributary to the Pamunkey River, and will inundate a portion

(approximately 14 percent) of the Cohoke Creek watershed.  Newport News admits that up

to a maximum of 75 million gallons per day (mgd) of water will be withdrawn from the

Mattaponi River and pumped to the Reservoir but states affirmatively that average daily

withdrawals, under peak use conditions, will be less than 20 mgd.  Newport News admits the remaining allegations of ¶ 2.

3.   Newport News admits that the project involves the excavation, fill, and/or flooding of over 400 acres of freshwater wetlands and of 21 miles of free flowing perennial and intermittent streams.  Newport News denies the remaining allegations of ¶ 3.

4.   Newport News admits that water withdrawals from the Mattaponi River will affect water flows and salinity patterns in the River, but the effects will be minor and insignificant.  Newport News denies that such withdrawals will impair critical spawning grounds of the American shad.  Newport News admits that American shad is an anadromous fish species but denies that it has been in steady decline in the Commonwealth of Virginia for the past several decades.  The remaining allegations of ¶ 4 purport to quote from written documents which speak for themselves, and Newport News denies any allegations concerning their contents that are inconsistent therewith.

5.   To the extent that ¶ 5 describes the Norfolk District Commander's recommended 2001 decision, it describes a written document which speaks for itself and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News denies the remaining allegations of ¶ 5.

6.   Newport News admits that some organizations and/or agencies have cited wetlands in the Chesapeake Bay watershed as nationally significant.  Newport News further admits that the Chesapeake Bay Estuarine Complex has been designated under the Ramsar Convention Treaty as wetlands of international significance.  Newport News denies the remaining allegations of ¶ 6.

7.   The first sentence of ¶ 7 sets forth contentions of law and requires no answer. Newport News denies the remaining allegations of ¶ 7.

8.   Paragraph 8 describes the plaintiffs' request for relief and requires no answer. Newport News denies, however, that the plaintiffs are entitled to the requested relief or to any other relief in this action.

9.   The allegations of ¶ 9 are admitted, except Newport News denies that the Tribe's complaint was filed on 8 November 2006.  The Tribe's complaint was filed on 16 November 2006.

10. The allegations of ¶ 10 are admitted.

11. Paragraph 11 sets forth contentions of law and requires no answer.  Newport News admits, however, that this Court has jurisdiction of this action.

12.  Paragraph 12 sets forth contentions of law and requires no answer.  Newport News admits, however, that venue is proper in this Court.

13.  The last sentence of ¶ 13 states a conclusion of law and requires no answer. Newport News admits the remaining allegations of ¶ 13.

14.  Newport News admits that plaintiff Alliance to Save the Mattaponi (Alliance) is an association or entity which on information and belief was created to oppose the King William Reservoir Project.  Newport News lacks knowledge or information sufficient to form a belief as to its location and legal status.  Newport News admits that the Alliance has participated in the public proceedings relating to the Reservoir.  Newport News lacks knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning the Alliance's members, the property they own, the sources of their livelihood or their use of these resources.  Newport News denies the remaining allegations of ¶ 14.

15.   Newport News admits that plaintiff Chesapeake Bay Foundation (CBF) is a Maryland nonprofit corporation registered to do business in the Commonwealth of Virginia with offices in, among other places, Richmond and Norfolk, Virginia.  Newport News lacks knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations regarding the size of CBF and the number, places of residence, and property ownership of CBF's members and the uses they make of the Mattaponi and Pamunkey Rivers.  Newport News admits that the CBF has participated in the public proceedings relating to the Reservoir.  Newport News denies the remaining allegations of ¶ 15.

16.   Newport News lacks knowledge or information sufficient to form a belief as to the truth of plaintiffs' allegations concerning CBF's educational programs.  Newport News denies that the Reservoir will injure CBF or its educational programs in any way.  Newport News denies any remaining allegations in ¶ 16.

17.   Newport News lacks knowledge or information sufficient to form a belief as to the truth of the first sentence of ¶ 17.  Newport News denies the remaining allegations of ¶ 17.

18.   Newport News lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 18.

19.   Newport News lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first three sentences of ¶ 19.  Newport News denies the remaining allegations of ¶ 19.

20.   Newport News admits that plaintiff Sierra Club is a nonprofit corporation organized under the laws of the State of California which purports to be dedicated to protecting and restoring the quality of the natural and human environment. Newport News

admits that the Sierra Club's Virginia Chapter is headquartered in Richmond, Virginia.

Newport News lacks knowledge or information sufficient to form a belief as to the truth of

plaintiffs' allegations regarding the number of voting members of the Sierra Club's Virginia

Chapter, and their uses of the Mattaponi River, Pamunkey River and Cohoke Creek.

Newport News admits that the Sierra Club has participated in the public proceedings relating

to the Reservoir.  Newport News admits that the Sierra Club has repeatedly argued that the

reservoir is not needed, that its construction would cause significant wetland and habitat loss,

and that Newport News is unable to mitigate for those losses.  Newport News admits that the

Sierra Club commissioned, sponsored and submitted to the Corps a July 1997 "report"

authored by Siegel and Muller.  That report speaks for itself and Newport News denies any

allegations concerning its contents that are inconsistent therewith.  Newport News denies that

the Reservoir project will injure Sierra Club or any of its members in any way.  Newport

News denies all remaining allegations of ¶ 20.

      21.  The first two sentences of ¶ 21 state conclusions of law and require no

answer.  Newport News admits that the Corps is headquartered in Washington, D.C., and has

a District Office in Norfolk, Virginia, and a Division Office, the North Atlantic Division, in

Brooklyn, New York.  Newport News admits that the North Atlantic Division rejected the

Norfolk District's "recommended decision" but denies that the Norfolk District's

recommended decision was "overturned," because it was merely a recommendation from a

subordinate to a superior officer and not an operative instrument of any kind.

      22.  Newport News denies that Peter Geren is the Secretary of the Army.  Newport

News admits, however, that Preston M. ("Pete") Geren is the Acting Secretary of the Army

and that the Department of the Army's headquarters is located in Washington, D.C.  The

remaining allegations of ¶ 22 either set forth contentions of law or describe the nature of this action and require no answer.

23.  Newport News admits that defendant Lieutenant General Robert L. Van Antwerp is the Chief of Engineers and Commanding General of the Corps and that the Office of the Chief of Engineers is located in the Corps headquarters in Washington, D.C.  The remaining allegations of ¶ 23 either set forth contentions of law or describe the nature of this action and require no answer.

24.  Newport News admits that defendant Brigadier General William T. Grisoli is the Commander and Division Engineer of the U.S. Army Corps of Engineers, North Atlantic Division, whose headquarters is located in Brooklyn, New York; that he supervises and manages all decisions and actions of the North Atlantic Division; that he signed the Section 404 permit that is the subject of this lawsuit; and that he is the official successor to Brigadier General Merdith W. B. Temple, who held this position at the time of the decision to approve the permit on 29 July 2005.  The remaining allegations of ¶ 24 describe the nature of this action and require no answer.

25.  Newport News admits the allegations of the first sentence of ¶ 25.  Newport News admits that the permit decision was elevated to the North Atlantic Division Commander, as a result of Governor Gilmore's objection, pursuant to 33 C.F.R. § 325.8(b)(2).  Newport News denies that the Norfolk District made a decision to deny the permit.  After the permit decision was elevated to the Division Commander as a result of Governor Gilmore's objection, the Norfolk District Engineer had no authority to make a decision whether to grant or to deny Newport News' permit application.  The District

Engineer had authority only to make a recommendation, and he recommended to the North Atlantic Division Commander that the permit be denied.

26.  Newport News admits that defendant Environmental Protection Agency (EPA) is a United States agency and that its headquarters are in Washington, D.C.  The remainder of ¶ 26 sets forth contentions of law and requires no answer.  Newport News denies, however, that the EPA has any supervisory authority over the Corps' administration of, and compliance with, Section 404 of the CWA, including EPA's regulations implementing Section 404(b)(1) of the CWA.

27.  Newport News admits that defendant Stephen L. Johnson is the Administrator of the EPA.  The remaining allegations of ¶ 27 either set forth contentions of law or describe the nature of this action and require no answer.  Newport News denies, however, that Administrator Johnson is charged with overseeing the Corps' administration of, and compliance with, the CWA, including EPA's regulations implementing Section 404(b)(1) of the CWA.

28.  The allegations of ¶ 28 are admitted.

29.  The allegations of ¶ 29 are admitted.

30.  Newport News admits that the King William Reservoir is the primary component of a regional water supply proposal intended to serve the long term public water supply needs of the lower Virginia peninsula, but through the year 2050 rather than 2040 as alleged in ¶ 30.  Newport News admits that the water supply proposal consists of brackish groundwater desalination, conservation measures and use restrictions, as well as the reservoir; but it does not include additional fresh groundwater, which has been determined not to be a practicable source of supply.

31. Newport News admits that the Reservoir project includes the Reservoir, a water intake structure in the Mattaponi River, a water pumping station located on a bluff adjacent to the river intake location, and a water conveyance pipeline from the Mattaponi River to the Reservoir and from the Reservoir to Newport News' other reservoirs, but denies that the Reservoir "component" of the project includes a "network" of pipelines or any distribution pipelines. The remaining allegations of ¶ 31 are admitted.

32. Newport News denies that the pumping station will be constructed in the Mattaponi River and states affirmatively that it will be constructed on a bluff adjacent to the river intake location. Newport News denies that the permit to construct the intake structure that the Virginia Marine Resources Commission issued in August 2004 significantly alters the Project's design. The remaining allegations of ¶ 32 are admitted.

33. The allegations of ¶ 33 are admitted.

34. Newport News admits that construction of the Reservoir will flood 1,526 acres of land and inundate 437 acres of wetlands and waters in the Cohoke Creek watershed and 21 miles of perennial and intermittent streams. Newport News denies that any wetlands will be destroyed, with the sole exception of 6.1 acres of wetlands that will be filled and converted to uplands, in the footprint of the dam. Newport News states affirmatively that most of the impacts will involve a conversion of wetland cover types, from forested, emergent and scrub-shrub wetlands and shallow open water to a lake environment. Newport News admits that the existing wetlands and streams provide habitat for some species of fish and wildlife. Newport News admits that the Reservoir Project will inundate an additional 875 acres of uplands but denies that such uplands comprise valuable wildlife habitat.

Newport News admits that the sensitive joint vetch is listed as a threatened species under the Endangered Species Act. Newport News denies the remaining allegations of ¶ 34.

35. Paragraph 35 purports to paraphrase a written agreement, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News denies the remaining allegations of ¶ 35.

36. Paragraph 36 sets forth contentions of law and requires no answer.

37. Paragraph 37 sets forth contentions of law and requires no answer.

38. Paragraph 38 sets forth contentions of law and requires no answer.

39. Paragraph 39 sets forth contentions of law and requires no answer.

40. Paragraph 40 sets forth contentions of law and requires no answer.

41. Paragraph 41 sets forth contentions of law and requires no answer.

42. Paragraph 42 sets forth contentions of law and requires no answer.

43. Paragraph 43 sets forth contentions of law and requires no answer.

44. Paragraph 44 sets forth contentions of law and requires no answer.

45. Paragraph 45 sets forth contentions of law and requires no answer.

46. Paragraph 46 sets forth contentions of law and requires no answer.

47. Paragraph 47 sets forth contentions of law and requires no answer.

48. Paragraph 48 sets forth contentions of law and requires no answer.

49. Paragraph 49 sets forth contentions of law and requires no answer.

50. Paragraph 50 sets forth contentions of law and requires no answer.

51. Paragraph 51 sets forth contentions of law and requires no answer.

52. Paragraph 52 sets forth contentions of law and requires no answer.

53. Paragraph 53 sets forth contentions of law and requires no answer.

54.  Newport News admits that it expressed to the Norfolk District of the Corps an interest in constructing a new regional water supply reservoir in or about June 1989 and that it did so on behalf of the Regional Raw Water Study Group (RRWSG), but it denies that it first did so in June 1989, and states affirmatively that such discussions were initiated and ongoing, at least intermittently, as early as March 1987.  Newport News admits that the RRWSG is an unincorporated coalition of local governments in the Lower Peninsula region of southeastern Virginia, consisting of the Cities of Newport News and Williamsburg and the County of York, but denies that the Cities of Hampton and Poquoson and the County of James City are members of the RRWSG, though they are customers of Newport News Waterworks and will receive water from the Reservoir project.  The remaining allegations of ¶ 54 are admitted, except that Newport News' water supply proposal is now expected to serve regional water supply needs through 2050 rather than 2040, and fresh groundwater has been determined not to be a possible source of supply.

55.  Newport News admits the allegations of ¶ 55.

56.  Newport News admits that on December 12, 1990, its City Manager, on behalf of the City, executed an agreement with the Board of Supervisors of King William County, Virginia, dated November 13, 1990, titled "King William Reservoir Project Development Agreement," regarding construction of the King William Reservoir and Mattaponi River pumpover.

57.  Newport News admits the allegations of ¶ 57.

58.  Newport News admits that the Corps issued a Draft EIS for the Virginia Lower Peninsula regional raw water supply plan in February 1994 and that the Draft EIS listed 31 alternatives and carried forward for further review three reservoir alternatives,

10

among others, including Newport News' preferred alternative of the King William Reservoir. Newport News denies that the stated purpose of either the Draft EIS or the regional raw water supply plan was to satisfy Newport News' claimed year 2040 water deficit of 30.2 million gallons per day (mgd) for the region and states affirmatively that the stated purpose of the Draft EIS and the regional raw water supply plan was "[t]o provide a dependable, long-term public water supply for the Lower Virginia Peninsula, in a manner which is not contrary to the overall public interest." (Draft EIS, page 1-1.)

59.  Newport News admits that the United States Fish and Wildlife Service (FWS) and the United States Environmental Protection Agency (EPA) submitted comments on the Draft EIS, dated 17 May 1994 and 1 June 1994, respectively.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

60.  Newport News admits the allegations of ¶ 60.

61.  Newport News admits that the FWS submitted comments to the Corps on the Supplement to the Draft EIS, dated 28 March 1996.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.  The remaining allegations of ¶ 61 set forth contentions of law and require no answer.

62.  Newport News admits that the EPA submitted comments to the Corps dated 13 November 1996.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

63.  Newport News admits the allegations of ¶ 63.

64. Newport News admits that the EPA and the FWS submitted comments to the Corps dated 25 July 1997. Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

65. The allegations contained in ¶ 65 are admitted, except that Newport News denies that the authors of the three reports were experts.

66. Newport News admits that the Norfolk District requested that IWR provide a technical review of Newport News' water needs forecast and the three reports critiquing it, that IWR contracted with PMCL, that in May 1998 PMCL issued a report and that Newport News submitted a rebuttal on July 31, 1998. The PMCL report is a written document which speaks for itself and Newport News denies any allegations concerning its contents that are inconsistent therewith. Any remaining allegations in ¶ 66 are denied.

67. Newport News admits the allegations contained in the first two sentences of ¶ 67. Newport News denies that the 1997 Final EIS had acknowledged that practicable non-reservoir alternatives by themselves could supply a combined treated water safe yield of 21.2 mgd. The remaining allegations of ¶ 67 purport to describe written documents which speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

68. Newport News denies that the Norfolk District's Draft Recommended Record of Decision (Draft RROD) was comprehensive, notwithstanding its length. Newport News also denies that the Norfolk District published a draft of its decision to deny a permit on 20 March 2001. The March 20, 2001, Draft RROD was merely a recommendation from a subordinate to a superior officer and not an operative instrument of any kind, and the Norfolk

District had no authority at that time to make a decision whether to grant or to deny Newport News' permit application.   Newport News admits the remaining allegations of ¶ 68.

69.   Newport News admits that the EPA and the FWS submitted written comments to the Corps dated 1 May 2001.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

70.   Newport News admits that the Norfolk District Corps of Engineers issued its Final Recommended Record of Decision (Final RROD) on 2 July 2001.  That document speaks for itself and Newport News denies any allegations concerning its contents that are inconsistent therewith.

71.   Paragraph 71 purports to paraphrase a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

72.   Newport News admits the allegations of ¶ 72.

73.   Newport News admits that on 30 September 2002, the North Atlantic Division Commander, Brigadier General Rhoades, issued a 38-page interim "Decision Memorandum for the King William Reservoir Project."  That document speaks for itself and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News denies that the Interim Decision Memorandum "overturn[ed] the Norfolk District's Final RROD," because the Final RROD was merely a recommendation from a subordinate to a superior officer and not an operative instrument of any kind.  Newport News further denies that the North Atlantic Division's conclusion that the Reservoir was necessary and was the least environmentally damaging practicable alternative was erroneous.  Newport

News admits that the Interim Decision Memorandum did not result in the issuance at that time of the Section 404 permit, but rather indicated that processing of the permit application should resume to address issues outstanding regarding historic resources and wetlands mitigation, among others.

74. Newport News admits that the RRWSG completed the development of a conceptual mitigation plan in August 1996 and that it was appended to the 1997 Final EIS. Newport News further admits that the mitigation plan was revised several times, culminating in the release of a draft conceptual mitigation plan in December 2003 for public comment and a Final Streams and Wetlands Mitigation Plan in June 2004 (Final Mitigation Plan). Any remaining allegations of ¶ 74 are denied.

75. Newport News admits that the Final Mitigation Plan describes, and it states affirmatively that the Corps of Engineers permit requires implementation of, a plan to provide compensation for the wetlands that will be impacted by the Reservoir Project, at a 2:1 acreage ratio, through the creation or (predominantly) the restoration of approximately 806 acres of freshwater wetlands on 11 separate sites. Newport News denies that any wetlands will be destroyed, with the sole exception of 6.1 acres of wetlands that will be filled and converted to uplands, in the footprint of the dam. Newport News admits that plaintiff CBF submitted comments on the Final Mitigation Plan dated 1 February 2005. Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith. Newport News is unable to admit or deny the allegation that "[m]any of the mitigation sites" are not of "like kind" of the mixture of palustrine forested, scrub-shrub and emergent wetlands that the Project will harm, because final site selection and design is yet to be done. Newport News also denies that the

14

mitigation sites are primarily composed of existing pastureland that will need to be converted to wetlands and states affirmatively that a substantial majority of the wetland mitigation acreage will consist of restoration of "prior converted croplands" (former wetlands) to wetland conditions.

76.  Newport News admits that the EPA submitted comments on the Draft RROD dated May 2001.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

77.  Newport News admits that the EPA and the FWS submitted written comments on the draft Final Mitigation Plan released for public comment in December 2003.  Those documents speak for themselves Newport News denies any allegations concerning their contents that are inconsistent therewith.

78.  Newport News admits that the FWS submitted comments on the Plan dated 29 March 2004 and 1 February 2005.  Those documents speak for themselves and Newport News denies any allegations concerning their contents that are inconsistent therewith.

79.  Newport News admits the allegations of ¶ 79.

80.  Paragraph 80 purports to paraphrase the 2005 ROD which is a written document that speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

81.  Newport News admits that on 11 August 2005, pursuant to the 1992 Memorandum of Agreement, the FWS's Regional Director for Region 5 advised the North Atlantic Division that it was recommending to the Department of Interior's Assistant Secretary for Fish and Wildlife and Parks (the AS-FWP) that the Assistant Secretary request that the decision to issue the Section 404 permit be elevated for review to the Assistant

Secretary of the Army for Civil Works (the ASA-CW).  Newport News denies that the

Regional Director advised the North Atlantic Division that it was recommending to the

AS-FWP that the decision to issue the Section 404 permit be elevated for review to the

ASA-CW, and Newport News denies that the AS-FWP has the authority to elevate a permit

decision to the ASA-CW.  The decision to elevate a permit decision rests with the ASA-CW,

and the AS-FWP may only request such elevation.  Newport News admits that certain

mitigation sites identified in the "Final Mitigation Plan" are no longer available but denies

that such sites are "key" to implementation of the mitigation requirements of the permit.

Newport News admits the remaining allegations of ¶ 81.

     82.  Newport News admits the allegations of ¶ 82.

     83.  Newport News admits the allegations of ¶ 83.

     84.  Newport News admits the allegations of ¶ 84.

     85.  The first and fourth sentences of ¶ 85 purport to paraphrase written

documents, which speak for themselves, and Newport News denies any allegations

concerning their contents that are inconsistent therewith.  Newport News admits the

remaining allegations of ¶ 85.

     86.  Newport News admits the allegations of ¶ 86.

     87.  Newport News admits that the Virginia Marine Resources Commission

(VMRC) voted to deny Newport News' application on 14 May 2003.  The remaining

allegations of ¶ 87 purport to quote from a written document, which speaks for itself, and

Newport News denies any allegations concerning its contents that are inconsistent therewith.

     88.  Newport News admits the allegations of ¶ 88.

89.  Newport News admits that the VMRC voted to issue a permit for the
Reservoir Project on August 12, 2004, and that it officially issued the permit on November
30, 2004.  Newport News denies that that the VMRC either issued or voted to issue a permit
on 17 August 2004.  The remaining allegations of ¶ 89 purport to paraphrase written
documents, which speak for themselves, and Newport News denies any allegations
concerning their contents that are inconsistent therewith.

90.  Newport News denies the allegations of ¶ 90.

91.  Newport News admits that the Commonwealth of Virginia, acting through the
Virginia Department of Environmental Quality, issued its concurrence with Newport News'
certification of consistency with the Virginia Coastal Resources Management Program on 27
December 2004.  Newport News denies that the VMRC permit resulted in a new pumping
scenario that warranted evaluation.  Newport News states affirmatively that neither the
plaintiffs nor any other person has challenged the Commonwealth's concurrence with
Newport News' consistency certification and that such concurrence is now final and not
subject to appeal.

92.  Newport News denies the allegations of ¶ 92.

93.  Newport News' responses to paragraphs 1 through 92 are incorporated by
reference.

94.  Newport News denies the allegations of ¶ 94.

95.  Newport News admits that the King William Reservoir Project will involve
the excavation, filling or flooding of 437 acres of waters of the United States, consisting of
403 acres of freshwater wetlands in the Cohoke Creek watershed and 34 acres of shallow
open water, and the inundation of 21 miles of free-flowing perennial and intermittent

17

streams.  Newport News denies that such aquatic resources and habitat will be permanently

lost, with the sole exception of 6.1 acres of wetlands that will be filled and converted to

uplands, in the footprint of the dam.  Newport News admits that minor, temporary wetland

impacts will occur as a result of construction of the pipelines, outfall and intake structure for

the Reservoir Project.  Newport News denies all remaining allegations in ¶ 95.

96.   Paragraph 96 purports to paraphrase the 2005 ROD which is a written

document that speaks for itself, and Newport News denies any allegations concerning its

contents that are inconsistent therewith.

97. Newport News denies the allegations of ¶ 97.

98.  Newport News denies the allegations of ¶ 98.

99.  Newport News admits that the sensitive joint vetch is listed as a threatened

species under the Endangered Species Act.  Newport News denies all remaining allegations

contained in the first two sentences of ¶ 99.  The remaining allegations of ¶ 99 purport to

quote from a written document, which speaks for itself, and Newport News denies any

allegations concerning its contents that are inconsistent therewith.

100.      Newport News admits that a population of a federally-listed threatened

aquatic plant, the sensitive joint vetch, is found in the vicinity of the proposed intake

structure and that other populations are located elsewhere on the Mattaponi River.  Newport

News denies that any of such populations could be impacted through changes in salinity

caused by the Reservoir and that pivotal changes to salinity regimes will occur in the wetland

regions during the sensitive springtime seed set, summer seed maturation, and fall dispersal

of seed, impacting the sensitive joint vetch and other wetland flora.  The remaining

allegations of ¶ 100 purport to paraphrase a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

101.    Newport News denies the allegations of ¶ 101.

102.    Newport News denies the allegations of ¶ 102.

103.    The first sentence of ¶ 103 purports to paraphrase and quote from the Final RROD which is a written document that speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News admits the North Atlantic Division rejected the Norfolk District's recommended decision. Newport News denies the remaining allegations of ¶ 103.

104.    Newport News admits that at various times representatives of EPA have submitted comments to the Corps which expressed concerns that the Reservoir project might significantly degrade waters of the United States. Newport News denies the remaining allegations of the first sentence of ¶ 104. The second sentence of ¶ 104 purports to paraphrase and quote from a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

105.    denies the allegations of ¶ 104.

106.    Newport News denies the allegations of ¶ 105.

107.    The first sentence of ¶ 106 sets forth contentions of law and requires no answer. Newport News denies the remaining allegations of ¶ 106.

108.    Newport News' responses to paragraphs 1 through 106 are incorporated by reference.

109.    Newport News denies the allegations of ¶ 108.

110.    Newport News denies the allegations contained in the first sentence of ¶ 109. Newport News admits that the calculation of the region's projected Year 2040 water deficit presented in the Draft EIS was 30.2 mgd, that the calculation of the region' projected Year 2040 water deficit presented in the 1997 Final EIS was 39.8 mgd and that such calculations agreed with its own calculations at the time, but denies that the Norfolk District simply incorporated Newport News' calculations without independent analysis. Newport News admits that the selection and analysis of alternatives in the Draft and Final EISs were based, in part, on the ability of the various potential alternatives to satisfy some portion of the projected deficits, but it denies that such selection and analysis of alternatives were based on the ability of the various potential alternatives to satisfy the entire deficit.

111.    The first sentence of ¶ 110 paraphrases written conclusions of the Norfolk District which speak for themselves, and Newport News denies any allegations concerning their contents that are inconsistent therewith. Newport News denies that the 1997 Final EIS stated that practicable non-reservoir alternatives by themselves could supply a combined treated water safe yield of 21.2 mgd.

112.    The first sentence of ¶ 111 describes the 2005 Final ROD, which is a written document that speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News denies the remaining allegations of ¶ 111.

113.    Newport News admits that the military has discontinued using the Big Bethel Reservoir at Fort Monroe in Hampton, Virginia. Newport News denies all of the remaining allegations of ¶ 112.

114.    Newport News denies the allegations of ¶ 113.

115.  Newport News denies the allegations of ¶ 114.

116.  Newport News denies the allegations of ¶ 115.

117.  Newport News' responses to paragraphs 1 through 115 are incorporated by reference.

118.  Newport News denies the allegations contained in the first sentence of ¶ 117.  The remaining allegations of ¶ 117 purport to paraphrase a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

119.  Newport News admits that the Reservoir Project will require the excavation, fill, and flooding of 403 acres of freshwater wetlands and 34 acres of shallow open water and the elimination of 21 miles of free-flowing perennial and intermittent streams.  Newport News denies that the Reservoir Project will indirectly impact an additional 105 acres of downstream wetlands from reduced flows.  Newport News denies that any wetlands will be destroyed, with the sole exception of 6.1 acres of wetlands that will be filled and converted to uplands, in the footprint of the dam, and states affirmatively that most of the impacts will involve a conversion of wetland cover types, from forested, emergent and scrub-shrub wetlands and shallow open water to a lake environment.  Newport News admits that the existing wetlands are diverse, ecologically significant and contiguous, and function as an integrated system.  Newport News denies that the North Atlantic Division's conclusion that implementation of the Final Mitigation Plan will result in no net loss of wetlands functions and values was erroneous or mutually exclusive of any other findings or conclusions in its Final Record of Decision (ROD).  Newport News further denies that the Corps' approval and issuance of either the 2005 Final ROD or the Section 404 permit is arbitrary or capricious or

that there is any "defect" that could be cured by "[r]eliance upon the Final Mitigation Plan." The remaining allegations of ¶ 118 purport to quote from a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

120.  Newport News admits that the Final Mitigation Plan describes a plan to provide compensation for the 403 acres of wetlands that will be impacted by the Reservoir Project, at a 2:1 acreage ratio, through the creation or (predominantly) the restoration of approximately 806 acres of freshwater wetlands on 11 separate sites, but Newport News denies that 403 acres of wetlands would be permanently lost.  Newport News further admits that the Plan describes a plan to create, restore, or preserve 36.4 miles of streams as compensation for the inundation of 21 miles of perennial and intermittent streams.  Newport News denies the remaining allegations of ¶ 119.

121.  Newport News denies that the mitigation plan is inadequate.

120(1).  Newport News admits that the large, integrated stream corridor-wetland complex of the Cohoke Creek watershed cannot be replaced by many smaller, unconnected, mitigation sites but denies that the mitigation described by the Plan mitigation plan and required by the Corps of Engineers permit is out-of-kind.  The permit requires the successful restoration and/or creation of 806 acres of freshwater wetland complexes consistent with the June 2004 King William Reservoir Project Reservoir Mitigation Plan, which requires a minimum of 1:1 compensation, i.e., a total 403 acres, for each affected hydrologic regime.  Newport News admits that it is not possible to replicate the ecology and diversity of an entire integrated system of wetlands and streams in scattered mitigation sites and in several small watersheds.  Newport News states affirmatively that there is no legal

requirement that compensatory mitigation occur on a single large site or that it replicate the same functions and values as the area to be replaced.

120(2). Newport News denies that functional replacement of the diverse mix of scrub-shrub and palustrine forested wetlands found in the Cohoke Creek wetland complex cannot be attained through what the First Amended Complaint refers to as fragmented and segregated mitigation sites.

120(3). Newport News admits that the largest wetland mitigation site included in the Final Mitigation Plan, accounting for 25% of the entire wetland restoration goal, is located in the Rappahannock River watershed, which, like the Mattaponi and Pamunkey River watersheds, is part of the Chesapeake Bay basin. Newport News denies that the proposed mitigation would result in a net loss of wetlands and aquatic habitats in the York River basin.

120(4). Newport News admits that the upland agricultural sites included in the Final Mitigation Plan cannot, by themselves, achieve functional replacement of the diverse mix of wetlands, including forested wetlands, that would be impacted, but states that a substantial majority of the wetland mitigation acreage will not consist of upland agricultural sites but of restoration of "prior converted croplands" (former wetlands) to wetland conditions. Newport News denies that any wetlands will be destroyed, with the sole exception of 6.1 acres of wetlands that will be filled and converted to uplands, in the footprint of the dam.

120(5). Newport News admits that certain sites included in the Final Mitigation Plan are now no longer available to Newport News, including the Meadow Farm and Burlington site. Newport News denies that the Final Mitigation Plan will not

compensate for the losses in wetland functions, values, and specific habitat, with the sole

exception of impacts to shallow, slow-moving freshwater stream habitat, which may or may

not be fully compensated by implementation of the mitigation plan.  Newport News states

affirmatively that a Special Condition of the Corps of Engineers permit at issue in this case

provides that mitigation construction work must be completed to the written satisfaction of

the Corps of Engineers prior to Newport News' commencement of raw water withdrawals

from the Mattaponi River.  Newport News further states affirmatively that the purpose of the

wetlands mitigation plan is to demonstrate that impacts can be mitigated and not necessarily

to lock in place the specific sites to be developed for mitigation purposes, and that

substitutions can be made provided that they are approved in advance in writing by the Corps

of Engineers in consultation with an Interagency Mitigation Team to include the Corps of

Engineers, the U.S. Environmental Protection Agency Region III, the U.S. Fish & Wildlife

Service Chesapeake Bay Field Office and the Commonwealth of Virginia Department of

Environmental Quality.

      122.  Newport News denies the allegations of ¶ 121.

      123.  Newport News denies the allegations of ¶ 122.

      124.  Newport News denies the allegations of ¶ 123.

      125.  Newport News' responses to paragraphs 1 through 123 are incorporated by

reference.

      126.  Paragraph 125 sets forth contentions of law and requires no answer.

      127.  Newport News admits that the Norfolk District's 2001 Recommended

Record of Decision recommended that the North Atlantic Division Commander deny

Newport News' permit application on the ground that issuing a Section 404 permit for the

Reservoir Project would be contrary to the public interest. Newport News admits that the North Atlantic Division Commander concluded in the 2005 ROD that the Reservoir Project is not contrary to the public interest. Newport News denies that such conclusion was erroneous on the grounds stated in the First Amended Complaint or any others. Newport News further denies that the Corps' conclusions and issuance of the Section 404 permit violate the requirements pertaining to the Corps' "public interest review" in 33 C.F.R. § 320.4. The remaining allegations of ¶ 126 purport to paraphrase or quote from written documents, which speak for themselves, and Newport News denies any allegations concerning their contents that are inconsistent therewith.

128. Newport News denies the allegations of ¶ 127.

129. Newport News denies the allegations of ¶ 128.

130. Newport News denies the allegations of the first sentence of ¶ 129. The remaining allegations of ¶ 129 set forth contentions of law and require no answer.

131. Newport News denies the allegations of ¶ 130.

132. Newport News' responses to paragraphs 1 through 130 are incorporated by reference.

133. Paragraph 132 sets forth contentions of law and requires no answer.

134. Paragraph 133 sets forth contentions of law and requires no answer.

135. Newport News denies that the 1997 Final EIS is inadequate under NEPA on the grounds stated in the First Amended Complaint or any others.

134(a)(i). Newport News denies the allegations of ¶ 134(a)(i).

134(a)(ii).  Newport News admits that the 1997 Final EIS does not mention the possibility of reopening the Big Bethel Reservoir, which the military did not discontinue using until 2004.  Newport News denies all of the remaining allegations of ¶ 134(a)(ii).

134(a)(iii).  Newport News denies the allegations of ¶ 134(a)(iii).

134(b)(i).  Newport News admits that the Reservoir Project entails freshwater withdrawals of up to 75 mgd from the Mattaponi River to fill and maintain the Reservoir.  Newport News denies the remaining allegations of ¶ 134(b)(i).

134(b)(ii).  Newport News denies the allegations of ¶ 134(b)(ii).

134(b)(iii).  Newport News admits that the 1997 Final EIS did not address the potential for methyl mercury formation in the Reservoir and that there is some published research indicating that newly flooded reservoirs and constructed wetlands have the potential to increase mobilization of mercury, potentially harming aquatic species.  Newport News states affirmatively that the issue of potential methyl mercury formation was raised for the first time in June 2005, and that the Corps reasonably concluded there is no greater than a small risk of methyl mercury formation in the King William Reservoir and that if that were to occur the Commonwealth of Virginia would require Newport News to take appropriate measures to address water quality issues.

134(b)(iv).  Newport News admits that other counties in the region, including King and Queen County and Caroline County, Virginia, may need to obtain their future water supplies from the Mattaponi River, but denies that it is likely that they will need to do so.  Newport News admits that there are some farmers along the Mattaponi River who withdraw water to irrigate their lands.  Newport News denies the remaining allegations of ¶ 134(b)(iv).

134(b)(v).  Newport News admits that the 1997 Final EIS did not address the impacts that could result through a potential future expansion of the Reservoir footprint. Newport News states affirmatively that the Corps of Engineers was under no duty or obligation to address such impacts because there was and is no proposal to expand the Reservoir footprint.  Newport News denies that expansion of the Reservoir, if permitted, would destroy an additional 137 to 216 acres of highly valuable freshwater wetlands and their associated fish and aquatic resources.  Newport News denies that future expansion of the Reservoir was or is reasonably foreseeable.  The remaining allegations of ¶ 134(b)(v) purport to paraphrase written documents, which speak for themselves, and Newport News denies any allegations concerning their contents that are inconsistent therewith.

134(b)(vi).  Newport News admits that the 1997 Final EIS did not address the impacts that could result from a potential second pumpover from the Pamunkey River to supply the Reservoir.  Newport News states affirmatively that the Corps of Engineers was under no duty or obligation to address such impacts because there was and is no proposal to implement a second pumpover.  Newport News denies that a second pumpover was or is reasonably foreseeable.  Newport News denies that the 1997 Final EIS failed to evaluate potential cumulative impacts from other freshwater withdrawals from the Pamunkey River. The allegations of ¶ 134(b)(vi) with respect to the agreement between Newport News and King William County purport to paraphrase a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith. Newport News denies the remaining allegations of ¶ 134(b)(vi).

136.  Newport News denies the allegations of ¶ 135.

137.  Newport News' responses to paragraphs 1 through 135 are incorporated by reference.

138.  Paragraph 137 sets forth contentions of law and requires no answer.

139.  Newport News denies the allegations of the introductory paragraph of ¶ 138.

138(a).  Newport News denies that the Reservoir Project has substantially changed as a result of the conditions imposed in the state permit issued by the VMRC in 2004.  Newport News admits that the VMRC permit prohibits Newport News from withdrawing water from the Mattaponi River between 1 March and 31 July of each year, unless a water emergency is declared, pending the completion of an eight-year pre-operational monitoring program designed to identify Mattaponi River water temperature triggers, to be established by the VMRC, that will govern the beginning and ending dates of the pumping hiatus each year.  Newport News admits that the Reservoir Project was designed as a high-flow skimming operation, in which more water will be withdrawn during the higher flow months of the year.  Newport News admits that the "springtime pumping hiatus" imposed by the VMRC permit corresponds to some, but not all, of the higher flow months of the year.  Newport News denies that the project relies on pumping during those months to satisfy its demand.  Newport News admits that as a result of the VMRC permit it will now have to increase its pumping during other months of the year, some of which may be drier than the hiatus months, in order to make up for not being able to pump water during hiatus months.  Newport News states affirmatively that the maximum withdrawal rates from the Mattaponi River under the current withdrawal regime, including the interim five-month (March through July) withdrawal hiatus each year, are much less than the maximum withdrawal rates used in the simulated withdrawal regime which formed the basis for the

Mattaponi River salinity analysis and other analyses in the Corps of Engineers' Final EIS. Any remaining allegations of ¶ 138(a) are denied.

138(b).  The allegations of ¶ 138(b) with respect to the recommendations of the VMRC staff and VIMS purport to paraphrase written documents, which speak for themselves, and Newport News denies any allegations concerning their contents that are inconsistent therewith.  Newport News denies the remaining allegations of ¶ 138(b). Newport News further denies that the Corps of Engineers has any duty or authority to review or second-guess the findings and decisions of the VMRC.

138(c).  Newport News denies the allegations of ¶ 138(c).  Newport News further denies that the Corps of Engineers has any duty or authority to review or second-guess the findings and decisions of the VMRC.

138(d).  Newport News admits that the FWS submitted a letter to the Corps on 23 June 2005.  The remaining allegations of ¶ 138(d) purport to paraphrase that document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

138(e).  Newport News denies the allegations of ¶ 138(e).

138(f).  Newport News admits that the 2004 VMRC permit allows for the installation of a chemical feed system within the water intake pipe for the purpose, if needed, of controlling bio-fouling organisms.  Newport News also admits that the Corps has not analyzed the potential impacts from the installation of a chemical feed system, but denies that there would be any such impacts.  Newport News admits that the sensitive joint vetch is listed as a threatened species under the Endangered Species Act.  Newport News denies that the addition of the pipes for the intake chemical feed system could have significant adverse

impacts on other unintended animal and plant species, including the sensitive joint vetch.

Newport News states affirmatively that the chemical feed system cannot be installed or used

without further approval from the Corps, and that a Special Condition of the Corps of

Engineers permit at issue in this case provides as follows:

> Should bio-fouling mollusks, such as the zebra mussel, become present
> in the York River, the permittee shall submit to the U.S. Army Corps of
> Engineers and the U.S. Fish & Wildlife Service, Chesapeake Bay Field
> Office, for approval an Operational Plan for installation and operation
> of a chemical feed system that can apply chemicals within the intake
> pipe on the river side of raw water pump discharge check valves.  The
> Operational Plan shall detail the proposed chemicals or other measures
> to be utilized to protect its intake structures from such species, and shall
> be accompanied by a technical assessment of the potential impact on
> river habitat and fisheries resources, including a specific assessment for
> listed species, resulting from activation of the proposed measures.  The
> permittee shall not install or operate this chemical feed system until the
> U.S. Army Corps of Engineers has notified them in writing that the
> requirements of Section 7 of the Endangered Species Act of 1973, as
> amended (Title 16, U.S. Code § 1531 et. seq.) have been satisfied and
> that permission is granted to install and activate the chemical feed
> system.

138(g).  Newport News admits that certain mitigation sites identified in the

Final Mitigation Plan are no longer available.  Newport News denies that the Corps has not

considered or analyzed the adequacy of the Plan and the feasibility of mitigation if all of the

identified sites were not available.

138(h).  Newport News denies that the Corps has failed to address the

potential for methyl mercury formation in the Reservoir and that Corps has failed to conduct

its own analysis of this issue.  The remaining allegations of ¶ 138(h) purport to paraphrase

written documents, which speak for themselves, and Newport News denies any allegations

concerning their contents that are inconsistent therewith.

140.   Newport News denies that there has been any significant changes or new information.  Newport News admits the remaining allegations of ¶ 139.

141.   Newport News denies the allegations of ¶ 140.

142.   Newport News' responses to paragraphs 1 through 140 are incorporated by reference.

143.   Paragraph 142 purports to paraphrase a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

144.   Paragraph 143 purports to paraphrase or quote from a written document, which speaks for itself, and Newport News denies any allegations concerning its contents that are inconsistent therewith.

145.   Paragraph 144 sets forth contentions of law and requires no answer.

146.   Newport News denies the allegations of ¶ 145.

147.   Newport News denies the allegations of ¶ 146.

Newport News denies that the plaintiffs are entitled to the requested relief, or to any relief of any kind, in this action.

All allegations of the First Amended Complaint which are not otherwise specifically admitted or denied are hereby denied.

## AFFIRMATIVE DEFENSE

Count VII of the First Amended Complaint alleges that the Corps' issuance of the Section 404 permit and the EPA's "failing to prohibit the specification of the disposal site for the Reservoir" violate the Chesapeake 2000 Agreement and that "[t]he Agreement is binding

on the Corps and EPA." There is no waiver of sovereign immunity in the Chesapeake 2000

Agreement, and the claim that the plaintiffs attempt to present in Count VII is barred by the

sovereign immunity of the United States.

Newport News reserves the right to assert any other affirmative defenses as they

may be established in the course of this litigation.

WHEREFORE, Newport News requests the First Amended Complaint be

dismissed and that the Court enter judgment in favor of Newport News, awarding it the costs

incurred in defending this action and granting such other and further relief as the Court

deems just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

TROUTMAN SANDERS LLP

Charles A. Zdebski (D.C. Bar #451075)
Troutman Sanders LLP
401 9th Street, N.W.
Suite 1000
Washington, DC 20004-2134
(202) 274-2909 (Phone)
(202) 654-5632 (Fax)

*Counsel for the City of Newport News, Virginia*

</div>

Of Counsel:

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1200 (Phone)
(804) 698-1339 (Fax)

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, Virginia  23462
(757) 687-7500 (Phone)
(757) 687-7510 (Fax)

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Street
Newport News, Virginia  23607
(757) 926-8416 (Phone)
(757) 926-8549 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on July _13_, 2007, true copies of the foregoing Answer were mailed to the following:

Deborah M. Murray, Esquire
Senior Attorney
Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA 22902

        Counsel for Plaintiffs Alliance to Save the Mattaponi, Chesapeake Bay
        Foundation, Inc., and Sierra Club, Virginia Chapter

Jon A. Mueller, Esquire
Director of Litigation
The Chesapeake Bay Foundation, Inc.
6 Herndon Ave.
Annapolis, MD  21403

        Co-Counsel for Plaintiff Chesapeake Bay Foundation, Inc.

Angeline Purdy, Esquire
U.S. Department of Justice
P.O. Box 23986
Washington, DC  20026

Devon Lehman McCune, Esquire
U.S. Department of Justice
1961 Stout Street
8th Floor
Denver, CO 80294

Samantha Klein, Esquire
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044

Pat M. Falcigno, Esquire
Office of Counsel
North Atlantic Division
U.S. Army Corps of Engineers
Fort Hamilton
302 General Lee Avenue
Brooklyn, New York  11252-6700

Counsel for Defendants U.S. Army Corps of Engineers, *et al.*

Charles A. Zdebski

#1629125

35