UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ALLIANCE TO SAVE THE                      )
MATTAPONI, et al.                         )
                                          )
          Plaintiffs,                     )
                                          )
     v.                                   )     Civil Action No. 06-CV-1268-HHK
                                          )
UNITED STATES ARMY CORPS OF               )
ENGINEERS, et al.                         )
                                          )
          Defendants.                     )
_____ )


**UNITED STATES ARMY CORPS OF ENGINEERS ET AL.'S ANSWER TO
ALLIANCE TO SAVE THE MATTAPONI, ET AL.'S FIRST AMENDED COMPLAINT**

Defendants United States Army Corps of Engineers; Preston N. Geren, Secretary of the

Army (in his official capacity); Robert L. Antwerp, Chief of Engineers and Commanding

General of the United States Army Corps of Engineers (in his official capacity); Brigadier

General Todd T. Semonite, Commander and Division Engineer of the United States Army Corps

of Engineers, North Atlantic Division (in his official capacity) (collectively "Corps"); United

States Environmental Protection Agency; and Stephen L. Johnson, Administrator, United States

Environmental Protection Agency (collectively "EPA") (the Corps and EPA being referred to

collectively herein as "defendants") hereby answer the allegations in the Alliance to Save the

Mattaponi, et. al.'s ("plaintiffs'") First Amended Complaint as follows:

1.       The first sentence of Paragraph 1 characterizes plaintiffs' claim and requires no

response.  Defendants admit the allegations in the second sentence of Paragraph 1.  Defendants

aver that EPA submitted comments on the Norfolk District's Recommended Record of Decision

stating, inter alia, that "The proposed KWR IV, if approved, would represent the largest single destruction of wetlands and their associated habitat ever evaluated by the Environmental Protection Agency in Region III."  MAR 041815 at 041816 (May 1, 2001).  Defendants further aver that EPA submitted comments on the December 2003 King William Reservoir Project Mitigation Plan stating, inter alia, that "The proposed KWR IV, if approved, would represent the largest single permitted wetland loss in the Mid-Atlantic region in the history of the Clean Water Act Section 404 program . . . ."  MAR 023770 at 023772 (March 22, 2004).  These and other comments submitted by EPA on these and other draft or proposed documents appear in the administrative record and speak for themselves.  To the extent that the allegations in the third sentence of Paragraph 1 are inconsistent with EPA's comments or other relevant information in the administrative record, defendants deny those allegations.

2.      Defendants admit that the King William Reservoir ("Reservoir") will be constructed on Cohoke Creek, a tributary to the Pamunkey River.  Defendants lack information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 2.  Defendants admit the allegations in the second, third, fourth, and fifth sentences of Paragraph 2.

3.      The first sentence of Paragraph 3 consists of legal conclusions that require no response.  Defendants admit the allegations in the second sentence of Paragraph 3.  Defendants deny the allegations in the third sentence of Paragraph 3.  Defendants deny that the project will destroy important riparian and forested habitat.  Defendants lack information sufficient to admit or deny the remaining allegations in the fourth sentence of Paragraph 3.

4.      Defendants admit that water withdrawals from the Mattaponi River will affect the flows and salinity patterns in the River.  Defendants further admit that the American shad is an

andromadous fish species. Defendants lack information sufficient to admit or deny the allegation that the American shad has been in steady decline in the Commonwealth of Virginia for the past several decades. Defendants deny the remaining allegations in the first sentence of Paragraph 4. The second sentence of Paragraph 4 quotes a Virginia Marine Resources Commission document, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 4 are inconsistent with the quoted document, defendants deny those allegations. The fourth sentence of Paragraph 4 quotes a letter from EPA, which speaks for itself. To the extent that the allegations in the fourth sentence of Paragraph 4 are inconsistent with the quoted letter, defendants deny those allegations.

5.     Defendants deny the allegations in the first sentence of Paragraph 5. The second sentence of Paragraph 5 characterizes the 1997 Final Environmental Impact Statement ("Final EIS") and other documents, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 5 are inconsistent with the Final EIS and other documents referred to, defendants deny those allegations. The third and fourth sentences of Paragraph 5 characterize the 2001 Recommended Record of Decision ("RROD"), which speaks for itself. To the extent that the allegations in the third and fourth sentences of Paragraph 5 are inconsistent with the RROD, defendants deny those allegations. The fifth sentence of Paragraph 5 consists of legal conclusions that require no response.

6.     Defendants deny the allegations in the first sentence of Paragraph 6. Defendants aver that EPA submitted comments on the Norfolk District's Recommended Record of Decision stating, inter alia, that "EPA continues to believe that wetlands of Cohoke Mill Creek would qualify as Aquatic Resources of National Importance (ARNI), as described under the 404(q)

- 3 -

Memorandum of Agreement between EPA and the Department of the Army."  MAR 041815 at

041818 (May 1, 2001).  Defendants further aver that EPA submitted comments on the Final

Environmental Impact Statement ("FEIS") and the Section 404 permit application for the King

William Reservoir IV stating, inter alia, that "If not appropriately mitigated, the proposed project

may result in substantial and unacceptable impacts to Aquatic Resources of National Importance

(ARNI)."  MAR 015563 at 015564 (July 25, 1997).  These and other comments submitted by

EPA on these and other draft or proposed documents appear in the administrative record and

speak for themselves.  To the extent that the allegations in the second sentence of Paragraph 6

are inconsistent with EPA's comments or other relevant information in the administrative record,

defendants deny those allegations.  Defendants admit that wetlands in the Chesapeake Bay

watershed are recognized as nationally significant.  Defendants lack information sufficient to

admit or deny the remaining allegations in the third sentence of Paragraph 6.  The fourth

sentence of Paragraph 6 consists of legal conclusions that require no response.  The fifth

sentence of Paragraph 6 contains legal conclusions that require no response. The fifth sentence

of Paragraph 6 also characterizes the Chesapeake 2000 Agreement, which speaks for itself.  To

the extent that any factual allegations in the fifth sentence of Paragraph 6 are inconsistent with

that Agreement, defendants deny those allegations.

      7.      Paragraph 7 consists of legal conclusions that require no response.

      8.      Paragraph 8 characterizes plaintiffs' claim and requires no response.

<b>PROCEDURAL POSTURE</b>

      9.      Defendants admit the allegations in Paragraph 9.

      10.      Defendants admit the allegations in Paragraph 10.

**JURISDICTION AND VENUE**

11.     Paragraph 11 consists of legal conclusions that require no response.

12.     Defendants admit that the headquarters of the United States Army Corps of

Engineers is located at 441 G St. NW, Washington, D.C., 20314.  The remainder of Paragraph 10

consists of legal conclusions that require no response.

**PARTIES AND STANDING**

13.     The first sentence of Paragraph 13 identifies plaintiffs and requires no response.

Defendants admit that plaintiffs participated in the public process relating to issuance of the

Permit.  Defendants lack information sufficient to admit or deny the remaining allegations in the

second sentence of Paragraph 13.  Defendants lack information sufficient to admit or deny the

allegations in the third or fourth sentences of Paragraph 13.  The fifth sentence of Paragraph 13

consists of legal conclusions that require no response.

14.     Defendants lack information sufficient to admit or deny the allegations in the first

sentence of Paragraph 14.  Defendants admit that the Alliance to Save the Mattaponi

("Alliance") participated in the public process relating to issuance of the Permit.  Defendants

admit that the Alliance submitted comments on the Draft EIS, but lack information sufficient to

admit or deny whether the Alliance submitted comments on the Final EIS.  The remainder of the

second sentence of Paragraph 14 consists of legal conclusions that require no response.

Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph

14.

15.     Defendants lack information sufficient to admit or deny the allegations in the first,

second, or third sentences of Paragraph 13.  Defendants admit that the Chesapeake Bay

Foundation ("Foundation") participated in the public process relating to issuance of the Permit and that the Foundation submitted comments on the Draft EIS and on Newport News' wetlands mitigation plan.  Defendants lack information sufficient to admit or deny the remaining allegations in the fourth sentence of Paragraph 15.  The fifth sentence of Paragraph 15 characterizes comments submitted by the Foundation, which speak for themselves.  To the extent that the allegations in the fifth sentence of Paragraph 15 are inconsistent with those comments, defendants deny those allegations.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 15.

16.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 16.

17.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 17.

18.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 18.

19.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 19.

20.     Defendants lack information sufficient to admit or deny the allegations in the first two sentences of Paragraph 20.  Defendants admit that the Sierra Club participated in the public process relating to issuance of the Permit and that the Sierra Club submitted comments on the Draft EIS.  Defendants lack information sufficient to admit or deny the remaining allegations in the third sentence of Paragraph 20.  Defendants lack information sufficient to admit or deny the allegations in the fourth sentence of Paragraph 20.  The fifth sentence of Paragraph 20

characterizes a document, which speaks for itself. To the extent that the allegations in the fifth sentence of Paragraph 20 concerning the content of that document are inconsistent with the cited document, defendants deny those allegations. Defendants lack information sufficient to admit or deny the remaining allegations in the fifth sentence of Paragraph 20. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 20.

21.     Defendants admit that the Corps is a federal agency. The remainder of the first sentence of Paragraph 21 consists of legal conclusions that require no response. The second sentence of Paragraph 21 consists of legal conclusions that require no response. Defendants admit the allegations in the third sentence of Paragraph 21. Defendants deny the allegations in the fourth sentence of Paragraph 21**.**

22.     Defendants deny that Peter Geren is the Secretary of the Army, and aver that Preston N. Geren is Secretary of the Army. The remainder of the first sentence of Paragraph 22 characterizes plaintiffs' claim and requires no response. The second sentence of Paragraph 22 consists of legal conclusions that require no response. Defendants admit the allegations in the third sentence of Paragraph 22.

23.     Defendants admit the allegations in the first and second sentences of Paragraph 23. The third sentence of Paragraph 23 contains legal conclusions and characterizes plaintiffs' claim, and requires no response.

24.     Defendantsdeny that Brigadier General William T. Grisoli is Commander of the North Atlantic Division, but aver that Brigadier General Todd T. Semonite is Commander of the North Atlantic Division. Defendants admit the remaining allegations in the first sentence of Paragraph 24. The second sentence of Paragraph 24 characterizes plaintiffs' claim and requires

no response.  Defendants deny that Brigadier General Grisoli personally supervises and manages all decisions, but aver that he oversees the Division and is ultimately responsible for decisions. Defendants admit that Brigadier General Grisoli signed the Section 404 permit that is the subject of this lawsuit.  Defendants admit that Brigadier General William T. Grisoli was the official succcessor to Brigadier General Meredith W. B. Temple, but deny that Brigadier General Grisoli still holds this position, and aver that Brigadier General Todd T. Semonite is the official successor to Brigadier General Grisoli.  Defendants admit the remaining allegations in the fourth sentence of Paragraph 24.

25.     Defendants admit the allegations in the first sentence of Paragraph 25.  The second sentence of Paragraph 25 consists of legal conclusions that require no response.

26.     Defendants admit that EPA is a federal agency.  The remainder of the first sentence of Paragraph 26 consists of legal conclusions that require no response.  Defendants admit the allegations in the second sentence of Paragraph 26.

27.     Defendants admit that Stephen L. Johnson is the Administrator of EPA.  The remainder of the first sentence of Paragraph 27 characterizes plaintiffs' claim and requires no response.  The second sentence of Paragraph 27 consists of legal conclusions that require no response.

28.     Defendants admit the allegations in the first and second sentences of Paragraph 28.  Defendants admit that the Corps issued a permit to the City of Newport News on November 16, 2005 ("Permit").  The remaining allegations in the third sentence of Paragraph 28 characterize the Permit, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 28 are inconsistent with the Permit, defendants deny those allegations.

29.     Defendants admit the allegations in Paragraph 29.

### The King William Reservoir

30.      The allegations in Paragraph 30 characterize the water supply proposal contained in the Final EIS, which speaks for itself.  To the extent that the allegations in Paragraph 30 are inconsistent with the water supply proposal contained in the Final EIS, defendants deny those allegations.

31.     Defendants admit that the Reservoir component includes the Reservoir itself, a water intake structure in the Mattaponi River, and a pumping station.  Defendants deny the remaining allegations in the first sentence of Paragraph 31.  Defendants admit the allegations in the second and third sentences of Paragraph 31.

32.     Defendants admit that the raw water intake would be constructed in the Mattaponi River at Scotland Landing, Virginia.  Defendants deny the remaining allegations in the first sentence of Paragraph 32.  Defendants admit the allegations in the second, third, and fourth sentences of Paragraph 32.  Defendants admit that the Virginia Marine Resources Commission issued a permit in August 2004.  The remaining allegations in the fifth sentence of Paragraph 32 characterize that permit, which speaks for itself.  To the extent that the allegations in the fifth sentence of Paragraph 32 are inconsistent with the permit, defendants deny those allegations.

33.     Defendants admit the allegations in Paragraph 33.

34.     Defendants admit that construction of the Reservoir would flood 1,526 acres of land, destroy 437 acres of wetlands in the Cohoke Creek watershed, destroy 21 miles of perennial and intermittent streams, and inundate 875 acres of uplands.  Defendants aver that EPA  submitted comments on the Norfolk District's Recommended Record of Decision stating,

inter alia, that "EPA does not agree with the assessment that the wetlands of Cohoke Mill Creek watershed are not valuable or highly diverse," and that "The information collected during the NEPA process and included in the FEIS clearly shows that these wetlands, interspersed among each other and among some very significant upland habitat, are of high quality and are structurally complex thereby providing multiple ecological functions to the watershed."  MAR 041815 at 041818 (May 1, 2001).   These and other comments submitted by EPA on this and other draft or proposed documents appear in the administrative record and speak for themselves. To the extent that the allegations in the first and second sentences of Paragraph 34 are inconsistent with EPA's comments or other relevant information in the administrative record, defendants deny those allegations.   Defendants deny the allegations in the third sentence of Paragraph 34.  Defendants admit that freshwater withdrawals from the Mattaponi River could alter salinity patterns in the River, and that the sensitive joint vetch is listed as a threatened species under the Endangered Species Act.  Defendants deny the remaining allegations in the fourth sentence of Paragraph 34.

35.    The first sentence of Paragraph 35 characterizes a document, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 35 are inconsistent with the cited document, defendants deny those allegations.  The second sentence of Paragraph 35 identifies the cited document and requires no response.  Defendants deny the allegations in the third sentence of Paragraph 35.

### Federal Statutory and Regulatory Background.

36.    Paragraph 36 consists of legal conclusions that require no response.

37.    Paragraph 37 consists of legal conclusions that require no response.

38.    Paragraph 38 consists of legal conclusions that require no response.

39.    Paragraph 39 consists of legal conclusions that require no response.

40.    Paragraph 40 consists of legal conclusions that require no response.

41.    Paragraph 41 consists of legal conclusions that require no response.

42.    Paragraph 42 consists of legal conclusions that require no response.

43.    Paragraph 43 consists of legal conclusions that require no response.

44.    Paragraph 44 consists of legal conclusions that require no response.

45.    Paragraph 45 consists of legal conclusions that require no response.

46.    Paragraph 46 consists of legal conclusions that require no response.

47.    Paragraph 47 consists of legal conclusions that require no response.

48.    Paragraph 48 consists of legal conclusions that require no response.

49.    Paragraph 49 consists of legal conclusions that require no response.

50.    Paragraph 50 consists of legal conclusions that require no response.

51.    Paragraph 51 consists of legal conclusions that require no response.

52.    Paragraph 52 consists of legal conclusions that require no response.

53.    Paragraph 53 consists of legal conclusions that require no response.

**Proceedings Relating to Section 404 Permit and NEPA Review for the Project**

54.    Defendants admit the allegations in the first sentence of Paragraph 54.

Defendants lack information sufficient to admit or deny the allegations in the second sentence of

Paragraph 54.  Defendants admit the allegations in the third sentence of Paragraph 54.  The

fourth and fifth sentences of Paragraph 54 characterizes the water supply proposal contained in

the Final EIS, which speaks for itself.  To the extent that the allegations in the sentence of

Paragraph 54 are inconsistent with the water supply proposal contained in the Final EIS, defendants deny those allegations.

55.    Defendants admit the allegations in Paragraph 55.

56.    Defendants admit that on November 13, 1990, Newport News executed an agreement with the Board of Supervisors of King William County, Virginia.  The remaining allegations in Paragraph 56 characterize that agreement, which speaks for itself.  To the extent that the allegations in Paragraph 56 are inconsistent with that agreement, defendants deny those allegations.

57.    Defendants admit the allegations in Paragraph 57.

58.    Defendants admit that the Corps issued a Draft EIS for the Virginia Lower Peninsula regional raw water supply plan in February 1994.  The remaining allegations in the first sentence of Paragraph 58 characterize the draft EIS and the regional raw water supply plan, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph 58 are inconsistent with the draft EIS and the plan, defendants deny those allegations.  The second sentence of Paragraph 58 characterizes the Draft EIS, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 58 are inconsistent with the Draft EIS, defendants deny those allegations.

59.    Defendants admit that the United States Fish and Wildlife Service ("FWS") and EPA submitted comments on the Draft EIS dated May 17, 1994, and June 1, 1994, respectively.  The remaining allegations in Paragraph 59 characterize these comments, which speak for themselves.  To the extent that the allegations in Paragraph 59 are inconsistent with the comments, defendants deny those allegations.

60.    Defendants admit the allegations in Paragraph 60.

61.    Defendants admit that the FWS submitted comments on the Supplement to the Draft EIS dated March 28, 1996.  The remaining allegations in the first sentence of Paragraph 61 characterize those comments, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph 61 are inconsistent with those comments, defendants deny those allegations.  The second sentence of paragraph 61 characterizes a Memorandum of Agreement, which speaks for itself.  To the extent that the allegations in the second sentence of paragraph 61 are inconsistent with that Memorandum, defendants deny those allegations.

62.    Defendants admit that EPA submitted comments dated November 13, 1996.  The remaining allegations in Paragraph 62 characterize those comments, which speak for themselves.  To the extent that the allegations in Paragraph 62 are inconsistent with those comments, defendants deny those allegations.

63.    Defendants admit the allegations in Paragraph 63.

64.    The first sentence of Paragraph 64 characterizes comments submitted by EPA, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph 64 are inconsistent with those comments, defendants deny those allegations.  The second sentence of Paragraph 64 characterizes comments submitted by the FWS, which speak for themselves.  To the extent that the allegations in the second sentence of Paragraph 64 are inconsistent with those comments, defendants deny those allegations.

65.    The first sentence of Paragraph 65 characterizes the 1997 Final EIS, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 65 are inconsistent with the Final EIS, defendants deny those allegations.  Defendants admit that during the public

comment period on the Final EIS the Corps received a July 14, 1997, report authored by Michael

Siegel and Dr. Thomas Muller and entitled "Analysis of the Lower Virginia Peninsula, Regional

Raw Water Supply Plan." Defendants lack information sufficient to admit or deny that the

Corps received three reports or that these were "expert" reports. The remaining allegations in

the second sentence of Paragraph 65 characterize the July 14, 1997, report, which speaks for

itself. To the extent that the allegations in the second sentence of Paragraph 65 are inconsistent

with the report, defendants deny those allegations.

66.     Defendants admit that the Norfolk District requested that the Corps' Institute for

Water Resources ("IWR") provide an independent technical review of Newport News' water

needs forecast and reports critiquing that forecast. Defendants lack information sufficient to

admit or deny that there were three reports or that these were "expert" reports. Defendants deny

the remaining allegations in the first sentence of Paragraph 66. Defendants admit that IWR

contracted with Planning and Management Consultants, Ltd. ("PMCL"), and that in May 1998,

PMCL issued a report. The remaining allegations in the second sentence of Paragraph 66

characterize the May 1998 report, which speaks for itself. To the extent that the allegations in

the second sentence of Paragraph 66 are inconsistent with the May 1998 report, defendants deny

those allegations.   The allegations in the third sentence of Paragraph 66 characterize the May

1998 report, which speaks for itself. To the extent that the allegations in the third sentence of

Paragraph 66 are inconsistent with the May 1998 report, defendants deny those allegations.

Defendants admit the allegations in the fourth sentence of Paragraph 66.

67.     Defendants admit the allegations in the first and second sentences of Paragraph

67. The third sentence of Paragraph 67 characterizes the IWR 1999 Panel Report, which speaks

for itself.  To the extent that the allegations in the third sentence of Paragraph 67 are inconsistent with that report, defendants deny those allegations.  The fourth sentence of Paragraph 67 characterizes the 1997 Final EIS, which speaks for itself.  To the extent that the allegations in the fourth sentence of Paragraph 67 are inconsistent with the 1997 Final EIS, defendants deny those allegations.  Defendants deny that the IWR finalized its report in August 2001, but aver that it was finalized in June 2001.  The remaining allegations in the fifth sentence of Paragraph 67 characterize the IWR Final Report, which speaks for itself.  To the extent that the allegations in the fifth sentence of Paragraph 67 are inconsistent with the IWR Final Report, defendants deny those allegations.

68.     The allegations in the first sentence of Paragraph 68 characterize a June 4, 1999, letter from the Norfolk District to Newport News, which speaks for itself.   To the extent that the allegations in the first sentence of Paragraph 68 are inconsistent with that letter, defendants deny those allegations.  Defendants admit that then-Governor Gilmore of Virginia wrote a letter dated June 8, 1999.  The remaining allegations in the second sentence of Paragraph 68 characterize this letter, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 68 are inconsistent with that letter, defendants deny those allegations.  Defendants admit that on March 20, 2001, the Norfolk District published a Draft Recommended Record of Decision ("Draft RROD").  The remaining allegations in the third sentence of paragraph 68 characterize the Draft RROD, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 68 are inconsistent with the Draft RROD, defendants deny those allegations.

69.     Defendants admit that EPA submitted a letter to the Corps dated May 1, 2001.

- 15 -

Defendants further admit that the FWS submitted a letter to the Corps dated May 1, 2001. The remaining allegations in Paragraph 69 characterize those letters, which speaks for themselves. To the extent that the allegations in Paragraph 69 are inconsistent with those letters, defendants deny those allegations.

70.    Defendants admit that the Norfolk District issued a Final RROD on July 2, 2001. The remaining allegations in Paragraph 70 characterize the Final RROD, which speaks for itself. To the extent that the allegations in Paragraph 70 are inconsistent with the Final RROD, defendants deny those allegations.

71.    The allegations in Paragraph 71 characterize the Final RROD, which speaks for itself. To the extent that the allegations in Paragraph 71 are inconsistent with the Final RROD, defendants deny those allegations.

72.    Defendants admit that the permit application was elevated to the North Atlantic Division for review. The remainder of Paragraph 72 consists of legal conclusions that require no response.

73.    Defendants admit that on September 30, 2002, the North Atlantic Division issued a 38-page interim decision memorandum for the King William Reservoir project ("Interim Decision Memorandum"). Defendants admit that Brigadier General Rhoades signed the Interim Decision Memorandum. The remaining allegations in the first sentence of Paragraph 73 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 73 are inconsistent with the Interim Decision Memorandum, defendants deny those allegations. The allegations in the second sentence of Paragraph 73 characterize the Interim Decision Memorandum, the IWR Final Report, and the

1997 Final EIS, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 73 are inconsistent with the documents characterized therein, defendants deny those allegations. The allegations in the third sentence of Paragraph 73 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the third sentence of Paragraph 73 are inconsistent with the Interim Decision Memorandum, defendants deny those allegations. Defendants admit that the Interim Decision Memorandum did not result in issuance of the Permit. The remaining allegations in the fourth sentence of Paragraph 73 characterize the Interim Decision Memorandum, which speaks for itself. To the extent that the allegations in the fourth sentence of Paragraph 73 are inconsistent with the Interim Decision Memorandum, defendants deny those allegations.

  74. The allegations in the first sentence of Paragraph 74 characterize the Conceptual Wetlands Mitigation Plan. To the extent that the allegations in the first sentence of Paragraph 74 are inconsistent with the Conceptual Wetlands Mitigation Plan, defendants deny those allegations. Defendants admit that the mitigation plan was revised several times; that a draft conceptual mitigation plan was released for public comment in December 2003; and that a Final Streams and Wetlands Mitigation Plan ("Final Mitigation Plan") was released in June 2004. Defendants deny the remaining allegations in the second sentence of Paragraph 74.

  75. The allegations in the first sentence of Paragraph 75 characterize the Final Mitigation Plan, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 75 are inconsistent with the Final Mitigation Plan, defendants deny those allegations. Defendants admit that the CBF submitted comments on the Final Mitigation Plan dated February 1, 2005. The remaining allegations in the second sentence of Paragraph 75 characterize those

comments, which speak for themselves. To the extent that the allegations in the second sentence of Paragraph 75 are inconsistent with those comments, defendants deny those allegations. The allegations in the third and fourth sentences of Paragraph 75 characterize the Final Mitigation Plan, which speaks for itself.   To the extent that the allegations in the third and fourth sentences of Paragraph 75 are inconsistent with those Final Mitigation Plan, defendants deny those allegations.

76.     Defendants admit that EPA submitted comments on the Draft RROD dated May 2001. The remaining allegations in Paragraph 76 characterize EPA's comments, which speak for themselves. To the extent that the remaining allegations in Paragraph 76 are inconsistent with those comments, defendants deny those allegations.

77.     Defendants admit that both EPA and FWS submitted comments on the draft Final Mitigation Plan. The remaining allegations in Paragraph 77 characterize those comments, which speak for themselves. To the extent that the allegations in Paragraph 77 are inconsistent with those comments, defendants deny those allegations.

78.     Defendants admit that the FWS submitted written comments on the draft Final Mitigation Plan on March 29, 2004, and February 1, 2005. The remaining allegations in Paragraph 78 characterize the FWS's comments, which speak for themselves. To the extent that the allegations in Paragraph 78 are inconsistent with the FWS's comments, defendants deny those allegations.

79.     Defendants admit the allegations in the first sentence of Paragraph 79. The allegations in the second sentence of Paragraph 79 characterize the 2005 ROD, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 79 are inconsistent

with the 2005 ROD, defendants deny those allegations.  Defendants admit the allegations in the third sentence of Paragraph 79.

80.     The allegations in Paragraph 80 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in Paragraph 80 are inconsistent with the 2005 ROD, defendants deny those allegations.

81.     Defendants admit that on August 11, 2005, the FWS's Regional Director for Region 5 issued a letter.  The remaining allegations in the first sentence of Paragraph 81 characterize that letter, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 81 are inconsistent with that letter, defendants deny those allegations.  The allegations in the second sentence of Paragraph 81 characterize a September 1, 2005, letter from the Department of the Interior, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 81 are inconsistent with that letter, defendants deny those allegations.  The third sentence of Paragraph 81 characterizes agreements between the FWS and the Corps, which speak for themselves.  To the extent that the allegations in the third sentence of Paragraph 81 are inconsistent with those agreements, defendants deny those allegations.  Defendants admit that certain mitigation sites identified in the Final Mitigation Plan are no longer available.  Defendants lack information sufficient to admit or deny the remaining allegations in the fourth sentence of Paragraph 81.

82.     Defendants admit the allegations in Paragraph 82.

**Related State Proceedings**

83.     Defendants admit that the Virginia State Water Control Board issued a permit on December 22, 1997 (the "VWP Permit").  The remaining allegations in Paragraph 83

characterize the VWP Permit, which speaks for itself. To the extent that the allegations in Paragraph 83 are inconsistent with the VWP Permit, defendants deny those allegations.

84.    Defendants admit the allegations in Paragraph 84.

85.    Defendants admit that Newport News sent a letter to the Virginia Department of Environmental Quality dated December 13, 2005. The remaining allegations in the first sentence of Paragraph 85 characterize this letter, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 85 are inconsistent with the letter, defendants deny those allegations. Defendants are without information sufficient to admit or deny the remaining allegations in Paragraph 85.

86.    The first sentence of Paragraph 86 consists of legal conclusions that require no response. Defendants admit that in 1993 Newport News applied to the VMRC for a permit. The remaining allegations in the second sentence of Paragraph 86 characterize that permit application, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 86 are inconsistent with the permit application, defendants deny those allegations.

87.    Defendants admit that the VMRC voted to deny Newport News' permit application on May 14, 2003. The remaining allegations in the first, second, and third sentences of Paragraph 87 characterize the VMRC's denial, which speaks for itself. To the extent that the allegations in the first, second, and third sentences of Paragraph 87 are inconsistent with the denial, defendants deny those allegations. The fourth sentence of Paragraph 87 consists of a citation to the VMRC's denial, and requires no response.

88.    Defendants admit the allegations in the first sentence of Paragraph 88. The allegations in the second sentence of Paragraph 88 characterize an agreement between VMRC

and Newport News, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 88 are inconsistent with that agreement, defendants deny those allegations.

89.     Defendants admit that the VMRC issued a permit for the Reservoir Project, but deny the allegation that the permit was issued on August 17, 2004 and aver that the permit was officially issued on November 30, 2004.  Defendants lack information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 89.  The allegations in the second and third sentences of Paragraph 89 characterize the VMRC permit, which speaks for itself.  To the extent that the allegations in the second and third sentences of Paragraph 89 are inconsistent with the VMRC permit, defendants deny those allegations.  The allegations in the fourth, fifth, and sixth sentences of Paragraph 89 characterize comments submitted on the draft VMRC permit, which speak for themselves.  To the extent that the allegations in the fourth, fifth, and sixth sentences of Paragraph 89 are inconsistent with those comments, defendants deny those allegations.

90.     The allegations in Paragraph 90 characterize the VMRC permit, which speaks for itself.  To the extent that the allegations in Paragraph 90 are inconsistent with the VMRC permit, defendants deny those allegations.

91.     Defendants admit that the Virginia Department of Environmental Quality issued its concurrence with Newport News' certification of consistency with the Virginia Coastal Resources Management Program on December 27, 2004.  Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 91.

92.     Defendants deny the allegations in Paragraph 92.

## CLAIMS FOR RELIEF

### Count I

93.    Defendants incorporate their responses to Paragraphs 1 through 92 above.

94.    Paragraph 94 consists of legal conclusions that require no response.

95.    Defendants admit that the project will involve the excavation, filling, and flooding of 437 acres of waters of the United States that includes 403 acres of wetlands in the Cohoke Creek watershed and 34 acres of shallow open water.  Defendants deny the remaining allegations in the first sentence of Paragraph 95.  Defendants deny the allegations in the second sentence of Paragraph 95.  Defendants lack information sufficient to admit or deny the allegations in the third sentence of Paragraph 95.  Defendants deny the allegations in the fourth sentence of Paragraph 95.  Defendants admit that wetlands impacts would occur as a result of construction of the pipeline.  Defendants deny the remaining allegations in the fifth sentence of Paragraph 95.

96.    The allegations in Paragraph 96 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in Paragraph 96 are inconsistent with the 2005 ROD, defendants  deny those allegations.

97.    Defendants aver that EPA submitted comments on the December 2003 King William Reservoir Project Mitigation Plan stating, inter alia, that "The KWR IV construction will result in the effective loss of most of an entire ecologically valuable and diverse watershed," and that "Changes in the ecosystems of Cohoke Mill Creek, whether stream, wetland or upland, represent a dramatic alteration of a functioning stream valley ecosystem in the Chesapeake Bay watershed."  MAR 023770 at 023772 (March 22, 2004).  These and other comments submitted

by EPA on this and other draft or proposed documents appear in the administrative record and speak for themselves. To the extent that the allegations in Paragraph 97 are inconsistent with EPA's comments or other relevant information in the administrative record, defendants deny those allegations.

98.     Defendants deny the allegations in Paragraph 98.

99.     Defendants deny the allegations in the first sentence in Paragraph 99. Defendants admit that changes in salinity patterns may occur and that the sensitive joint vetch is a threatened species under the Endangered Species Act.   Defendants deny the remaining allegations in the second sentence of Paragraph 99. The third sentence of Paragraph 99 characterizes a document of the VMRC, which speaks for itself. To the extent that the allegations in the third sentence of Paragraph 99 are inconsistent with that document, defendants deny those allegations.

100.     Defendants admit that a population of a federally threatened aquatic plant, the sensitive joint vetch, is found in the vicinity of the proposed intake structure. Defendants further admit that other such populations are located elsewhere on the Mattaponi River. Defendants admit that these populations could be affected by changes in salinity caused by the Reservoir. Defendants lack information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 100. The allegations in the second sentence of Paragraph 100 characterize a VIMS study, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 100 are inconsistent with the cited study, those allegations are denied. The third sentence of Paragraph 100 consists of a citation to the VIMS study and requires no response. The allegations in the fourth sentence of Paragraph 100 characterize a VIMS study, which

speaks for itself.  To the extent that the allegations in the fourth sentence of Paragraph 100 are inconsistent with the cited study, defendants deny those allegations.

101.    The allegations in the first sentence of Paragraph 101 characterize the VWP and VMRC permits, which speak for themselves.  To the extent that the allegations in the first sentence of Paragraph 101 are inconsistent with the VWP and VMRC permits, those allegations are denied.  Defendants lack information sufficient to admit or deny the allegations in the second sentence of Paragraph 101.

102.    Defendants deny the allegations in Paragraph 102.

103.    The allegations in the first sentence of Paragraph 103 characterize the 2001 RROD, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 103 are inconsistent with the 2001 RROD, defendants deny those allegations.  The allegations in the  second sentence of Paragraph 103 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 103 are inconsistent with the 2005 ROD, defendants deny those allegations.

104.    The allegations in Paragraph 104 characterize comments submitted by EPA on the RROD, which speak for themselves.  To the extent that the allegations in Paragraph 104 are inconsistent with EPA's comments, defendants deny those allegations.

105.    Paragraph 105 consists of legal conclusions that require no response.

106.    Paragraph 106 consists of legal conclusions that require no response.

**Count II**

107.    Defendants incorporate their responses to Paragraphs 1 through 106 above.

108.    Paragraph 108 consists of legal conclusions that require no response.

109.    The allegations in the first sentence of Paragraph 109 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 109 are inconsistent with the 2005 ROD, defendants deny those allegations.  The allegations in the second and third sentences of Paragraph 109 characterize the Draft and Final EISs, which speak for themselves.  To the extent that the allegations in the second and third sentences of Paragraph 109 are inconsistent with the Draft and Final EISs, defendants deny those allegations.

110.    The allegations in Paragraph 110 characterize the Final EIS, which speaks for itself.  To the extent that the allegations in Paragraph 110 are inconsistent with the Final EIS, defendants deny those allegations.

111.    The allegations in the first sentence of Paragraph 111 characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 111 are inconsistent with the 2005 ROD, defendants deny those allegations.  Defendants deny the allegations in the second and third sentences of Paragraph 111.

112.    Defendants admit that the military has discontinued use of the Big Bethel Reservoir at Fort Monroe in Hampton, Virginia.  Defendants aver that EPA submitted comments on the Norfolk District's Recommended Record of Decision stating, inter alia, that "We believe that the substantial impacts to wetlands and other important natural resources are avoidable because there are options available to the RRWSG members to reduce water demand and optimize existing sources of water," and that "in light of the significance of environmental impact associated with the KWR IV, these steps are not only prudent, but clearly represent the least damaging practicable alternative to offset future water demands."  MAR 041815 at 041817 (May 1, 2001).  These and other comments submitted by EPA on this and other draft or

proposed documents appear in the administrative record and speak for themselves. To the extent that the remaining allegations in Paragraph 112 are inconsistent with EPA's comments or other relevant information in the administrative record, defendants deny those allegations. .

113.     Paragraph 113 consists of legal conclusions that require no response.

114.     Defendants deny the allegations in the first sentence of Paragraph 114.  The second and third sentences of Paragraph 114 consists of legal conclusions that require no response.

115.     Paragraph 115 consists of legal conclusions that require no response.

**Count III**

116.     Defendants incorporate their responses to Paragraphs 1 through 115 above.

117.     The first sentence of Paragraph 117 consists of legal conclusions that require no response.  Defendants admit that the Corps and EPA entered into a 1990 Memorandum of Agreement.  The remaining allegations in the second through fifth sentences of Paragraph 117 characterize that MOA, which speaks for itself.  To the extent that the allegations in the second through fifth sentences of Paragraph 117 are inconsistent with the MOA, defendants deny those allegations.

118.     Defendants admit that the project will involve the excavation, filling, and flooding of 403 acres of wetlands in the Cohoke Creek watershed and 34 acres of shallow open water and the elimination of 21 miles of free-flowing streams.  Defendants deny the remaining allegations in the first sentence of Paragraph 118.  Defendants aver that EPA submitted comments on the December 2003 King William Reservoir Project Mitigation Plan stating, inter alia, that "The KWR IV construction will result in the effective loss of most of an entire

ecologically valuable and diverse watershed." MAR 023770 at 023772 (March 22, 2004).
These and other comments submitted by EPA on this and other draft or proposed documents
appear in the administrative record and speak for themselves. To the extent that the allegations
in the second sentence of Paragraph 118 are inconsistent with EPA's comments or other relevant
information in the administrative record, defendants deny those allegations. The allegations in
the third and fourth sentences of Paragraph 118 characterize the 2005 ROD, which speaks for
itself. To the extent that the allegations in the third and fourth sentences of Paragraph 118 are
inconsistent with the 2005 ROD, defendants deny those allegations. The fifth and sixth
sentences of Paragraph 118 consist of legal conclusions that require no response.

119.    The allegations in the first two sentences of Paragraph 119 characterize the Final
Mitigation Plan, which speaks for itself. To the extent that the allegations in the first two
sentences of Paragraph 119 are inconsistent with the Final Mitigation Plan, defendants deny
those allegations. Defendants deny the allegations in the third sentence of Paragraph 119.

120.    The assertion that the Final Mitigation Plan is inadequate constitutes a legal
conclusion that requires no response. The factual allegations in the first five sentences of
Paragraph 120 characterize the Final Mitigation Plan, which speaks for itself. To the extent that
the factual allegations in the first five sentences of Paragraph 120 are inconsistent with the Final
Mitigation Plan, defendants deny those allegations. Defendants aver that EPA submitted
comments on the December 2003 King William Reservoir Project Mitigation Plan stating, inter
alia, that "Even with the best mitigation plan the diverse wetland communities present at the site
may be difficult to adequately replace." MAR 043770 at 023772 (March 22, 2004). These and
other comments submitted by EPA on this and other draft or proposed documents appear in the

administrative record and speak for themselves. To the extent that the allegations in the final sentence of Paragraph 120 are inconsistent with EPA's comments or other relevant information in the administrative record, defendants deny those allegations.

121.    Paragraph 121 contains legal conclusions that require no response. To the extent that Paragraph 121 contains factual allegations, defendants deny those allegations.

122.    Paragraph 122 consists of legal conclusions that require no response.

123.    Paragraph 123 consists of legal conclusions that require no response.

**Count IV**

124.    Defendants incorporate their responses to Paragraphs 1 through 123 above.

125.    Paragraph 125 consists of legal conclusions that require no response.

126.    The allegations in the first two sentences of Paragraph 126 characterize the RROD and the 2005 ROD, which speak for themselves. To the extent that the allegations in the first two sentences of Paragraph 126 are inconsistent with the RROD and the 2005 ROD, defendants deny those allegations. The third sentence of Paragraph 126 consists of legal conclusions that require no response.

127.    Paragraph 127 consists of legal conclusions that require no response.

128.    Paragraph 128 consists of legal conclusions that require no response.

129.    Paragraph 129 consists of legal conclusions that require no response.

130.    Paragraph 130 consists of legal conclusions that require no response.

**Count V**

131.    Defendants incorporate their responses to Paragraphs 1 through 130 above.

132.    Paragraph 132 consists of legal conclusions that require no response.

133.   Paragraph 133 consists of legal conclusions that require no response.

134.   The first clause of Paragraph 134 consists of legal conclusions that require no response.

(a) (i)   The allegations in the first sentence of Paragraph 134(a)(1) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 134(a)(i) are inconsistent with the Final EIS, defendants deny those allegations.  Defendants deny the allegations in the second and third sentences of Paragraph 134(a)(i).

(a)(ii)   The allegations in Paragraph 134(a)(ii) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in Paragraph 134(a)(ii) are inconsistent with the Final EIS, defendants deny those allegations.

(a)(iii)   Paragraph 134(a)(iii) consists of legal conclusions that require no response.

(b)(i)   Defendants admit the allegations in the first sentence of Paragraph 134(b)(i).  Defendants admit that withdrawals from the Mattaponi will alter salinity patterns in the River.  Defendants deny the remaining allegations in the second sentence of Paragraph 120(b)(i).  The allegations in the third sentence of Paragraph 134(b)(i) characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 134(b)(i) are inconsistent with the 2005 ROD, defendants deny those allegations.

(b)(ii)   The allegations in the first three sentences of Paragraph 134(b)(ii)

characterize the 1997 Final EIS, which speaks for itself.  To the extent that the allegations in the first three sentences of  Paragraph 134(b)(ii) are inconsistent with the Final EIS, defendants deny those allegations.  The first three sentences of Paragraph 134(b)(ii) also contain legal conclusions that require no response.  Defendants deny the allegations in the fourth sentence of Paragraph 134(b)(ii)

(b)(iii)  The allegations in the first sentence of Paragraph 134(b)(iii) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 134(b)(iii) are inconsistent with the Final EIS, defendants deny those allegations.  Defendants lack information sufficient to admit or deny the allegations in the second sentence of Paragraph 134(b)(iii).

(b)(iv)  The allegations in the first sentence of Paragraph 134(b)(iv) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the first  sentence of Paragraph 134(b)(iv) are inconsistent with the Final EIS, defendants deny those allegations.  Defendants admit that farmers along the Mattaponi River withdraw water to irrigate their lands. Defendants deny the remaining allegations in the second sentence of Paragraph 134(b)(iv).  Defendants lack information sufficient to admit or deny the allegations in the third sentence of Paragraph 134 (b)(iv). Defendants deny the allegations in the fourth sentence of Paragraph 134(b)(iv).

- 30 -

(b)(v)  The allegations in the first sentence of Paragraph 134(b)(v) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 134(b)(v) are inconsistent with the Final EIS, defendants deny those allegations.  The allegations in the second sentence of Paragraph 134 (b)(v) characterize the 2005 ROD, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 134(b)(v) are inconsistent with the 2005 ROD, defendants deny those allegations.  The allegations in the third sentence of Paragraph 134(b)(v) characterize the RROD, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 134(b)(v) are inconsistent with the RROD, defendants deny those allegations.  The allegations in the fourth sentence of Paragraph 134(b)(v) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the fourth sentence of Paragraph 134(b)(v) are inconsistent with the Final EIS, defendants deny those allegations.

(b)(vi) The allegations in the first sentence of Paragraph 134(b)(vi) characterize the Final EIS, which speaks for itself.  To the extent that the allegations in the first sentence of Paragraph 134(b)(vi) are inconsistent with the Final EIS, defendants deny those allegations.  The allegations in the second and third sentences of Paragraph 134(b)(vi) characterize an agreement between Newport News and King William County, which speaks for itself.  To the extent that the allegations in the second and third sentences

of Paragraph 134(b)(vi) are inconsistent with the cited agreement, defendants deny those allegations. The allegations in the fourth and fifth sentences of Paragraph 134(b)(vi) characterize the RROD, which speaks for itself. To the extent that the allegations in the fourth and fifth sentences of Paragraph 134(b)(vi) are inconsistent with the RROD, defendants deny those allegations. The allegations in the sixth sentence of Paragraph 134(b)(vi) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the sixth sentence of Paragraph 134(b)(vi) are inconsistent with the Final EIS, defendants deny those allegations.

135.    Paragraph 135 consists of legal conclusions that require no response.

## Count VI

136.    Defendants incorporate their responses to Paragraphs 1 through 135 above.

137.    Paragraph 137 consists of legal conclusions that require no response.

138.    The first sentence of Paragraph 138 consists of legal conclusions that require no response.

a.    Defendants deny that the Reservoir Project has substantially changed as a result of conditions imposed in the state permit issued by the VMRC to Newport News in 2004. The remaining allegations in the first sentence of Paragraph 138(a) characterize that permit, which speaks for itself. To the extent that the allegations in the first sentence of Paragraph 138(a) are inconsistent with that permit, defendants deny those allegations. The

allegations in the second sentence of Paragraph 138(a) characterize the Final EIS, which speaks for itself. To the extent that the allegations in the second sentence of Paragraph 138(a) are inconsistent with the Final EIS, defendants deny those allegations. Defendants admit that the pumping hiatus imposed by the VMRC permit corresponds to some of the highest flow months of the year. Defendants deny the remaining allegations in the third sentence of Paragraph 138(a). Defendants lack information sufficient to admit or deny the allegations in the fourth sentence of Paragraph 138(a).

b.    Defendants deny that there was a significant alteration to project design and pumping regime that would have an impact on aquatic resources. Defendants admit the remaining allegations in the first sentence of Paragraph 138(b). Defendants lack information sufficient to admit or deny the allegations in the second sentence of Paragraph 138(b). Defendants deny that there was a significant change in the pumping regime that may affect the salinity modeling results. Defendants admit the remaining allegations in the third sentence of Paragraph 138(b). The fourth sentence of Paragraph 138(b) consists of legal conclusions that require no response. Defendants admit the allegations in the fifth sentence of Paragraph 138(b). Defendants lack information sufficient to admit or deny the allegations in the sixth sentence of Paragraph 138(b). Defendants admit the allegations in the seventh sentence of Paragraph

138(b).

c.    Defendants deny the allegations in the first two sentences of Paragraph

138(c).  Defendants lack information sufficient to admit or deny the

allegations in the third sentence of Paragraph 138(c).  The fourth sentence

of Paragraph 138(c) consists of legal conclusions that require no response.

d.    Defendants admit that the FWS submitted a letter to the Corps dated June

23, 2005.  The remaining allegations in Paragraph 138(d) characterize this

letter, which speaks for itself.  To the extent that the allegations in

Paragraph 138(d) are inconsistent with the letter, defendants deny those

allegations.

e.    Defendants admit that Michael Siegel submitted a letter to the Corps dated

September 2, 2005.  The remaining allegations in the first three sentences

of Paragraph 138(e) characterize this letter, which speaks for itself.  To the

extent that the allegations in the first three sentences of Paragraph 138(e)

are inconsistent with that letter, defendants deny those allegations.  The

fourth sentence of Paragraph 138(e) consists of legal conclusions that

require no response.

f.    The allegations in the first sentence of Paragraph 138(f) characterize the

VMRC permit, which speaks for itself.  To the extent that the allegations

in the first sentence of Paragraph 138(f) are inconsistent with the VMRC

permit, defendants deny those allegations.  Defendants admit that the

- 34 -

sensitive joint vetch is listed as a threatened species under the Endangered Species Act.  Defendants lack information sufficient to admit or deny the remaining allegations in the second sentence of Paragraph 138(f). Defendants admit that the Corps did not analyze the potential impacts of the installation of a chemical feed system.  Defendants deny the remaining allegations in the third sentence of Paragraph 138(f).

g.    Defendants admit that certain mitigation sites identified in the Final Mitigation Plan are no longer available.  Defendants lack information sufficient to admit or deny the remaining allegations in the first sentence of Paragraph 138(g).  Defendants deny the allegations in the second sentence of Paragraph 138(g).

h.    Defendants deny the allegations in the first sentence of Paragraph 138(h). The allegations in the second sentence of Paragraph 138(h) characterize a USGS document, which speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 138(h) are inconsistent with the cited document, defendants deny those allegations.  The allegations in the third sentence of Paragraph 138(h) characterize the FWS letter of June 23, 2005, which speaks for itself.  To the extent that the allegations in the third sentence of Paragraph 138(h) are inconsistent with that letter, defendants deny those allegations.  The defendants deny the allegations in the fourth sentence of Paragraph 138(h).

139.    Defendants admit that plaintiffs requested the Corps to prepare a supplemental

EIS.  The remaining allegations in the first sentence of Paragraph 139 characterize the plaintiffs'

request, which speaks for itself.  To the extent that the allegations in the first sentence of

Paragraph 139 are inconsistent with the plaintiffs' request, defendants deny those allegations.

The allegations in the second sentence of Paragraph 139 characterize the 2005 ROD, which

speaks for itself.  To the extent that the allegations in the second sentence of Paragraph 139 are

inconsistent with the 2005 ROD, defendants deny those allegations.

140.    Paragraph 140 consists of legal conclusions that require no response.

## Count VII

141.    Defendants incorporate Paragraphs 1 through 140 above.

142.    The allegations in Paragraph 142 characterize the Chesapeake 2000 Agreement,

which speaks for itself.  To the extent that the allegations in Paragraph 142 are inconsistent with

that Agreement, defendants deny those allegations.

143.    The allegations in Paragraph 143 characterize the Chesapeake 2000 Agreement,

which speaks for itself.  To the extent that the allegations in Paragraph 143 are inconsistent with

that Agreement, defendants deny those allegations.

144.    Paragraph 144 consists of legal conclusions that require no response.

145.    Defendants deny the allegations in Paragraph 145.

146.    Paragraph 146 consists of legal conclusions that require no response.

## PRAYER FOR RELIEF

Plaintiffs' Prayer for Relief requires no response.

## GENERAL DENIAL

To the extent that any allegation of plaintiffs' Complaint has not been admitted or

specifically responded to, defendants deny such allegation.

### **AFFIRMATIVE DEFENSES**

A.    The Court lacks subject matter jurisdiction over some or all of plaintiffs' claims.

B.    Some or all of plaintiffs' claims fail to state a claim for which relief may be granted.

WHEREFORE, defendants pray that plaintiffs take nothing by their complaint.

Respectfully submitted this 10th day of August, 2007

RONALD J. TENPAS
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Angeline Purdy*

_____

ANGELINE PURDY
Environmental Defense Section
U.S. Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986
Voice: (202) 514-0996
Fax: (202) 514-8865
e-mail: angeline.purdy@usdoj.gov

DEVON LEHMAN McCUNE
Trial Attorney
Natural Resources Section
1961 Stout St., 8th Floor
Denver, CO  80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

SAMANTHA KLEIN
Trial Attorney
Natural Resources Section
P.O. Box 0663
Washington DC 20044-0663
(202) 305-0474 (tel.)
(202) 305-0506 (fax)


Attorneys for Defendants,


OF COUNSEL


PAT M. FALCIGNO
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers


DAWN M. MESSIER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, D.C.