UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| ALLIANCE TO SAVE THE | ) | |
| MATTAPONI, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-CV-1268-HHK, AK |
| | ) | |
| UNITED STATES ARMY CORPS OF | ) | |
| ENGINEERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

Defendant United States Environmental Protection Agency ("EPA") hereby opposes the

Motions to Compel filed by Plaintiffs Alliance to Save the Mattaponi, et al. ("Alliance") and

Plaintiff-Intervenors Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow ("Tribe")

(collectively "plaintiffs"). See generally Motion of Plaintiffs Alliance to Save the Mattaponi, et

al. to Compel Production of Record or for Leave to Obtain Discovery, and for Protective Order

("Alliance Mot."); Motion to Compel Agency Record ("Tribe Mot.").

Plaintiffs have brought an action under the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701-706, challenging the United States Army Corps of Engineers' ("Corps's")

issuance of a permit (the "Permit") authorizing construction of the King William Reservoir.  The

administrative record underlying the Corps's decision has been assembled and filed with the

Court.[1]  Plaintiffs further contend, however, that EPA erred by declining to exercise its

---

[1] The Corps is preparing a supplement to the administrative record to incorporate certain
additional documents identified by plaintiffs and by defendant-intervenor City of Newport News.

discretionary authority to "veto" the Permit pursuant to Section 404(c) of the Clean Water Act, 33 U.S.C. § 1344(c).  See Alliance Mot. at 1-2 and n. 1.  It is the (alleged) administrative record underlying EPA's choice that plaintiffs argue EPA should be required to produce.  See generally Alliance Mot. at 3-10; Tribe Mot. at 1-2.

EPA cannot do so, because there is no such administrative record.  The "agency action" at issue in this case is actually a discretionary inaction – i.e., EPA's choice not to institute the process necessary to exercise a wholly discretionary authority.  EPA was not required to, and did not, prepare a decision document or other memorialization of this choice, nor was the choice based on the outcome of an administrative process or a body of documents assembled at the time the choice was made.  EPA thus offers a declaration from the Regional Administrator that serves the function of an administrative record – it provides a basis for judicial review by explaining the decisionmaker's reasons for choosing not to institute the Section 404(c) process.  See Declaration of Donald S. Welsh ("Welsh Decl.") (Attachment 1).

As the D.C. Circuit has stated, where an agency has no obligation to explain its actions contemporaneously, "the entire record, or a good part of it, is actually created for the sole purpose of judicial review," and "much that is presented to the court is developed *post-hoc*." Women Involved in Farm Economics v. USDA ("WIFE"), 876 F.2d 994, 999 (D.C. Cir. 1989). Plaintiffs nonetheless argue that the Court should enter a "protective order" barring EPA from even filing the Regional Administrator's declaration.  Alliance Mot. at 10-11; Tribe Mot. at 2-3. Plaintiffs remain free to argue on the merits that the declaration does not provide adequate justification for EPA's choice.  Plaintiffs are not, however, entitled to an order that would prohibit EPA from even attempting to explain the basis on which it chose not to institute the

process necessary to exercise its Section 404(c) veto authority.

Finally, plaintiffs seek an order authorizing them to "obtain discovery." Alliance Mot. at

2; see also id. at 11, Tribe Mot. at 2-3. EPA does not concede that discovery in this matter is

appropriate, but neither EPA nor the Court can assess the propriety of wholly hypothetical

discovery requests. Plaintiffs' request for a generic order giving them a blanket authorization to

conduct unspecified discovery is unwarranted.

Plaintiffs' motion should therefore be denied in all respects.

## ARGUMENT

As a threshold matter, there is still a dispute over the nature of the claim against EPA.

Absent a clear statement from the Court on this issue, EPA maintains that the only claim the

Court should review is a claim that EPA's choice not to initiate the Section 404(c) veto process

was arbitrary or capricious.[2]

In its Motion for Partial Reconsideration, EPA sought reconsideration of the Court's

ruling that the Court has jurisdiction over any claims at all against EPA. See EPA's Motion for

Partial Reconsideration and Memorandum in Support (Dkt. No. 39) ("Recons. Mot.") at 3. EPA

also demonstrated, however, that it is required by statute and regulation to go through an

extensive process (including providing the opportunity for public comments, as well as inter- and

intra-agency consultation) before it can veto a permit under Section 404(c). See generally 40

C.F.R. Part 231; see also Recons. Mot. at 4-5; Reply in Support of Motion for Partial

Reconsideration (Dkt. No. 44) at 1-4. Plaintiffs offered nothing to rebut this demonstration. The

Court rejected EPA's Motion for Reconsideration without elaboration, stating only that the

---

[2] EPA reserves for appeal its argument that even this claim is beyond the Court's jurisdiction.

motion was denied.  See Order of July 17, 2007 (Dkt. No. 47).

Contrary to the Alliance's assertions, see Alliance Mot. at 1, 4, EPA is not attempting to revisit the question of whether plaintiffs can pursue an APA claim against EPA.  The Court has ruled that they can.  The Court's denial of EPA's Motion for Reconsideration still leaves open, however, the question of precisely what the Court is reviewing: a claim that EPA should have vetoed the Permit, or a narrower claim that it should have initiated the Section 404(c) veto process?  EPA could not issue a veto without first following the procedures required by statute and regulation – such an action would, itself, potentially be subject to challenge under the APA. See 5 U.S.C. § 706(2)(D) (court may "hold unlawful and set aside" agency action taken "without observance of procedure required by law"); Fried v. Hinson, 78 F.3d 688, 690 (D.C. Cir. 1996) (courts have generally required an agency to follow its own regulations).  EPA does not understand the Court's denial of EPA's Motion for Reconsideration to suggest that the Court has concluded that EPA could veto the Permit without following this required procedure, or to resolve the question of whether the Court can move directly to reviewing the absence of a veto even though EPA never undertook the requisite veto process.  Because EPA cannot provide any "administrative record" on which the Court could base review of this claim, and because plaintiffs cannot justify the other relief they seek, plaintiffs' motion should be denied.[3]

---

[3] Even if the claim under review were the broader claim that EPA improperly failed to veto the Permit, there would be no administrative record.  EPA never undertook the 404(c) veto process whereby such a record would have been developed.  See 40 C.F.R. § 231.5(e) (administrative record includes, inter alia, proposed 404(c) determination, public notice, written comments, and transcript or recording of any public hearing).

**A.**    **Plaintiffs Have Failed To Demonstrate That EPA Can Be Required To Produce An Administrative Record.**

There is no dispute that, in a typical APA case, agency action is reviewed based on a contemporaneous agency administrative record.  See Camp v. Pitts, 411 U.S. 138, 142-43 (1973); see also Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326, 331 (1976) (ordinarily review of administrative decisions is to be confined to consideration of the decision of the agency and of the evidence on which it was based) (citation omitted).  An agency assembles an administrative record by gathering the information it considered, the factors it weighed, and the reasons it made the decision under review.  Because it is the agency's decision that is under attack, and the agency is the one that best knows why it acted, it naturally falls to the agency to define the record and proffer that record to the Court.  See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court") (citation omitted); San Luis Obispo Mothers for Peace v. NRC, 751 F.2d 1287, 1325 (D.C. Cir. 1984) (principle that judges review administrative action on basis of an agency's stated rationale and findings is well-established; judicial reliance on agency's stated rationale and findings "is central to a harmonious relationship between agency and court").    This is not, however, an entirely typical APA case.  The Court is reviewing agency inaction, not agency action, a situation in which there often is not an administrative record.  See San Francisco Baykeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002) (where case concerns agency inaction, there can be no final agency action that closes record or explains agency actions; district court thus did not err in relying on allegedly post-hoc memorandum).  This case is further complicated by the fact that the "inaction" at issue is not a

refusal to carry out a mandatory statutory duty, or a failure to respond to an administrative

petition – rather, it is EPA's choice not to exercise a wholly discretionary authority.  See 33

U.S.C. § 1404(c); Memorandum Opinion and Order of May 30, 2007 (Dkt. No. 36) at 3-5

(recognizing discretionary nature of EPA's authority under Section 404(c)).  The reasons for that

choice were not memorialized in a decision document (nor were they required to be) and are not

contained in an administrative record.  See Welsh Dec. ¶¶ 8-10.  As the Regional Administrator

of EPA Region III, Mr. Welsh was responsible for choosing not to initiate the 404(c) process.  40

C.F.R. §§ 231.3-.5; Welsh Decl. ¶¶ 1, 3, 6-7.  His declaration – containing, as it does, an

explanation of his reasons for making that choice – stands in lieu of an administrative record and

provides at least some basis for judicial review.  See WIFE, 876 F.2d at 999 (if agency had no

obligation to explain actions contemporaneously, explanation can be presented by agency

officials who directed agency action); Partlo v. Johanns, 2006 WL 1663380 *23 (D.D.C. 2006)

(where agency has no obligation to explain actions contemporaneously, by definition record may

be created post hoc for purpose of judicial review).

The Alliance reasons in circles, arguing that because the Court has allowed a claim

against EPA to go forward, there must be a record on which that claim can be reviewed.

Alliance Mot. at 5 ("EPA's argument that no record exists is contrary to this Court's ruling

allowing plaintiffs' claims to go forward and the principle that review of agency action or

inaction must be based on the administrative record.").  Cases cited by plaintiffs do not,

however, support their claim that an EPA administrative record must exist.  See Alliance Mot. at

4-8; Tribe Mot. at 1-2.  In the vast majority of these cases, there was no apparent dispute over the

fact that an administrative record existed, although there may have been a dispute over its

content.[4]

In only one case cited by plaintiffs did an agency state, as here, that there was no

administrative record.  See Biodiversity Legal Foundation v. Norton, 180 F. Supp.2d 7, 8

(D.D.C. 2001).  In that case, however, the agency apparently presented no alternate foundation

on which the court could review its actions.  Id. at 11.  Here, by contrast, EPA has provided

sworn testimony from the decisionmaker explaining EPA's choice.  In addition, in Biodiversity

the plaintiffs presented documents that the court found to evidence the existence of a record that

had not yet been placed before the court.  Id.  In this case, the only specific documents that

plaintiffs point to as evidence of their claim that an administrative record must exist – comment

letters submitted by EPA in the course of its exercise of statutory authorities other than its 404(c)

authority – are already before the Court because they appear in the Corps's administrative

record.[5]  See Alliance Mot. at 3; Welsh Decl. ¶¶ 4 (discussing EPA's various roles in the 404

_____

[4]See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419 and 420 n.34 (1971)
(administrative record existed but had not been considered by lower court); American Bioscience
v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001) (no reason given for fact that administrative
record was never filed in district court); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095
(D.C. Cir. 1996) (plaintiffs had not shown that court needed to supplement existing record);
Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) (although
nothing purporting to be whole administrative record had been submitted by either party in
pending litigation, agency had later compiled administrative record for challenged rule that had
been submitted in other cases); Natural Resources Defense Council v. Train, 519 F.2d 287, 289
(D.C. Cir. 1975) (agency had already filed record with court; question was whether additional
documents identified by plaintiffs should be included ); Fund for Animals v. Williams, 391 F.
Supp.2d 191, 194 (D.D.C. 2005) (plaintiff sought to supplement existing record with four
specific documents); Washington Toxics Coalition v. Department of Interior, Case No. C04-
1998C Order at 2 (W.D. Wash. 2005) (unpublished order; Ex. A to Alliance Mot.) (plaintiffs
argued that certain materials had improperly been excluded from administrative record produced
by agency).

[5]  To be clear, EPA does not adopt the Corps's administrative record wholesale as its own.

permitting process).  EPA has not disavowed these letters; indeed, Mr. Welsh's declaration

specifically states that he was aware of their existence.  Welsh Decl. ¶¶ 5, 10(f).

Plaintiffs also assert that "it is simply implausible" that there would be no body of

"internal [EPA] documents, memoranda, and correspondence" beyond the letters that appear in

the Corps's administrative record.  Alliance Mot. at 7.  EPA does not claim that no such internal

documents exist– only that, to the extent that they do, they are not part of any administrative

record.  See San Luis, 751 F.2d at 1325-26 (court evaluates record compiled by agency that

states agency's "rationale and supporting findings," but does not consider predecisional

materials); Amfac Resorts LLC v. United States Dep't of the Interior, 143 F. Supp.2d 7, 13

(D.D.C. 2001) (deliberative intra-agency memoranda and other such records ordinarily need not

be included in record); cf  Coastal States Gas Corp. v. Department of Energy, 617 F.2d  854, 866

(D.C. Cir. 1980) (deliberative process privilege "protect[s] against confusing the issues and

misleading the public by dissemination of documents suggesting reasons and rationales for a

course of action which were not in fact the ultimate reasons for the agency's action.").  Because

EPA exercised other statutory and regulatory responsibilities related to the Permit, moreover,

EPA naturally has documents related to the King William Reservoir.[6]  These documents are not,

however, part of any EPA administrative record pertaining to EPA's choice not to institute the

---

[6]  EPA reviewed and commented on the Permit pursuant to 33 C.F.R. § 325.3 and the
Memorandum of Agreement between the Environmental Protection Agency and the Department
of the Army Concerning Clean Water Act Section 404(q).  EPA also reviewed and commented
on the draft and final environmental impact statements for the project in connection with its
responsibilities under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-
4375 and Section 309 of the Clean Air Act, 42 U.S.C. § 7609.  Welsh Decl. ¶¶ 4-5.  As noted
above, EPA's comments and the documents commented upon are in the Corps's administrative
record.

Section 404(c) veto process. See Welsh Decl. ¶¶ 4-5, 10.

Plaintiffs have thus failed to demonstrate that an EPA administrative record exists.   Nor have plaintiffs demonstrated that, with the filing of Mr. Welsh's declaration, the existing record before the Court is in any way inadequate.  The Corps's administrative record already contains the comment letters that plaintiffs have identified (together with the documents on which EPA was commenting), and Mr. Welsh's declaration contains EPA's explanation of the basis on which EPA opted not to initiate the 404(c) process.  Plaintiffs are free to use EPA's comment letters, the underlying documents on which EPA commented, and any other documents referenced in Mr. Welsh's declaration to support their argument that EPA's choice not to initiate the 404(c) veto process was arbitrary or capricious.  What plaintiffs cannot do, however, is force EPA to produce materials that would add nothing to the information already before the Court.

**B.    EPA Is Entitled To Offer An Explanation For Its Decision Not To Initiate The 404(c) Veto Process.**

Plaintiffs seek a "protective order" prohibiting EPA from filing Mr. Welsh's declaration, arguing that the declaration constitutes an improper post hoc rationalization.  Alliance Mot. at 7, 10-11; Tribe Mot. at 2-3.  The Alliance's claim that EPA is "attempting to have its cake and eat it too" by both claiming there is no administrative record and filing a declaration (Alliance Mot. at 8) misses the point – Mr. Welsh's declaration is necessary precisely because there is no pre-existing decision document or contemporaneous administrative record that identifies the basis and reasons for EPA's choice not to initiate the 404(c) process.  None of the cases cited for the proposition that courts should disregard post hoc rationalizations went so far as to prevent an agency from even placing its position in the court record, and plaintiffs offer no justification for

asking the Court to do so here.[7]

EPA does not dispute the principle that agencies typically cannot rely on post hoc

rationalizations or litigation affidavits to justify their actions, but disagrees that Mr. Welsh's

declaration falls into this category.  See Independence Mining Co. v. Babbitt, 105 F.3d 502, 511

(9th Cir. 1997) ("The rule barring consideration of *post hoc* agency rationalizations operates

where an agency has provided a particular justification for a determination at the time the

determination is made, but provides a different justification for that same determination when it

is later reviewed by another body.").  EPA is not trying after the fact to alter an existing

explanation for its actions, or to bolster an existing administrative record with previously

unconsidered material.  Instead, it offers the sworn testimony of the decisionmaker as the best

evidence it has to explain the basis on which it opted not to undertake the 404(c) process.  This is

a perfectly acceptable way for EPA to explain its choice.

The D.C. Circuit has recognized that what might otherwise be an improper post hoc

rationalization may be appropriate where there is no contemporaneous administrative record.

See WIFE, 876 F.2d at 998-99.  In WIFE, plaintiffs challenged a regulation that had been

---

[7] Plaintiffs have, initially, chosen the wrong form of relief.  Protective orders typically guard
against action threatened or taken against the person seeking the order (e.g., discovery requests
or a subpoena), or prevent the dissemination of certain information.  See Fed. R. Civ. P. 26(c)
(on motion by party or by person from whom discovery is sought, court may make order to
protect party or other person "from annoyance, embarrassment, oppression, or undue burden or
expense;" court may order limitations on discovery or disclosure of certain information).  The
plaintiffs cite no case, and EPA is aware of none, in which a "protective order" was used to
prevent an agency from placing an explanation for its actions in the court record.  Nor do the
plaintiffs explain what harm or prejudice an order would "protect" the plaintiffs from.  If the
plaintiffs believe that EPA's declaration should not even appear in the record, the proper
procedure would have been to file a motion to strike after the declaration was filed, not to try to
preempt EPA from filing the declaration at all.

promulgated many years previously under an exception to the APA's notice and comment

requirements whereby the agency had not been required to develop an administrative record. Id.

at 998. The D.C. Circuit concluded that under those circumstances it was appropriate to consider

counsel's explanations for the agency's action (even without a supporting agency affidavit). Id.

at 998. As the court explained,

> [I]f an agency has no obligation to explain its actions contemporaneously . . . the
> entire record, or a good part of it, is actually created for the sole purpose of
> judicial review; by definition, much that is presented to the court is developed
> *post hoc*. Typically, any challenges to the agency's action will follow soon after
> the action is taken so the explanation given to the court can be presented by those
> agency officials who directed the agency action.

Id. at 999 (underlining added). Similarly, in Partlo v. Johanns, the D.C. District Court denied a

motion to strike an agency official's affidavit explaining the agency's reasons for adopting a

particular regulation that had, as in WIFE, properly been promulgated without notice and

comment or other contemporaneous explanation. Partlo, 2006 WL at *20, 22-23. In this case, as

in WIFE and Partlo, EPA was not required to develop a contemporaneous administrative record

for its discretionary decision not to initiate the 404(c) veto process – and as in those cases,

without the explanation provided in Mr. Welsh's declaration, there will be nothing in the record

before the Court that explains the basis on which EPA chose as it did.

This matter thus contrasts with cases in which agencies sought to enhance or deviate

from existing administrative records. See Alliance Mot. at 10 and n. 3 (citing cases), For

example, in Motor Vehicle Mfrs Ass'n v. State Farm, 463 U.S. 29 (1983), the Court concluded

that NHTSA had arbitrarily failed to give any consideration at all to adopting a mandatory airbag

requirement as a way of achieving certain objectives of the Transportation Safety Act. See id. at

46-47. Because the agency had not previously considered this possibility, and therefore had

offered no reasons in the existing administrative record for having declined to adopt such a

requirement, the Court refused to consider arguments offered on appeal regarding the alleged

difficulties proposed by an airbag requirement.  Id. at 49-50.  Similarly, in American Textile

Mfrs. Institute v. Donovan, 452 U.S. 490  (1981), the statutorily-required statement of reasons

published by an agency in the Federal Register to justify an action did not contain a particular

explanation for its action.  The Court therefore declined to allow the agency to offer that

explanation in later litigation.  Id. at 539.[8]  One case, moreover, involved a court's decision not

to consider affidavits submitted by a plaintiff that both parties agreed contained information that

had not been before the agency at the time that it acted – a situation that clearly is not present

here.  See IMS P.C. v. Alvarez, 129 F.3d 618, 623-24 (D.C. Cir. 1997).

If the Court did decline to consider Mr. Welsh's affidavit, the proper course would in any

event be to remand the matter to EPA for a fuller explanation.  See Florida Power, 470 U.S. at

744 ("If the record before the agency does not support the agency action, if the agency has not

considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged

---

[8] See also D&F Afonso Realty Trust v. Garvey, 216 F.3d 1191, 1194-96 (D.C. Cir. 2000) (where
agency findings and supporting record did not contain requisite substantial evidence of link
between applicable standards and agency action, agency could not offer post hoc justification for
deviating from established procedure and for failing to substantiate determination); Reeve
Aleutian Airways Inc. v. United States, 889 F.2d 1139, 1141, 1144 (D.C. Cir. 1989) (where
original notice of suspension did not state what standards were violated or how determination
was made, affidavit detailing standards that might have been used was prohibited post-hoc
rationalization); AT&T Information Systems Inc. v. GSA, 810 F.2d 1233, 1235-56 (D.C. Cir.
1987) (where administrative record filed with court contained no explanation for agency
determination, agency could not rely on litigation affidavit to provide one); Anacostia Watershed
Society v. Babbitt, 871 F. Supp. 475, 484-86 (D.D.C. 1994) (where Record of Decision
contained no evidence that National Park Service had even considered another agency's
environmental assessment, Park Service could not argue post hoc that its decision not to prepare
its own assessment was based on other agency having done so).

agency action on the basis of the record before it, the proper course, except in rare

circumstances, is to remand to the agency for additional explanation or explanation"); accord

Occidental Petroleum Corp. v. Securities & Exchange Commission, 873 F.2d 325, 338-9 (D.C.

Cir. 1989); see also AT&T Information Systems, 810 F.2d at 1233 ("In view of the inadequacy

of the record, we must reverse with direction to remand to GSA for development of its reasons

for deciding not to withhold [documents requested under FOIA]").  If Mr. Welsh's declaration is

removed from the record (thus leaving it bare of any explanation for EPA's choice), in all

likelihood this matter would have to be remanded to the agency, only to have the agency provide

the precise explanation that it is proffering now.  This process would represent an unnecessary

consumption of both judicial and agency resources, and the better course is to leave Mr. Welsh's

declaration in the court record.

The question of precisely what weight the Court should give Mr. Welsh's declaration

need not, moreover, be resolved now.  Plaintiffs remain free to argue in briefing on the merits

that the declaration should be disregarded because it is post hoc or that it otherwise fails to

provide adequate justification for EPA's choice not to initiate the Section 404(c) veto process.

This issue is better resolved in the full context of the parties' arguments on summary judgment

than by ruling now that the declaration should not even remain in the record.

**C.     Plaintiffs Have Not Demonstrated That They Are Entitled to an Order Authorizing Them to Conduct Undefined Discovery.**

Plaintiffs ask the Court to grant them blanket approval to conduct unspecified discovery.

See Alliance Mot. at 2-3, 9-10; Tribe Mot. at 2.[9]  Plaintiffs have not served discovery requests

---

[9] Plaintiffs state only that they should be able to obtain discovery of "all the information and materials that were before the agency in reviewing the proposed King William Reservoir permit and relating to EPA's ultimate failure to veto the project," Alliance Mot. at 12.  Even if

on EPA, and there is no basis on which the Court can determine whether as-yet-nonexistent

discovery requests are proper in light of the Federal Rules and the state of the record.  EPA does

not agree that discovery is warranted in this case, and reserves the right to object to any

discovery requests and seek a protective order if necessary.  The fact remains, however, that

EPA cannot prevent plaintiffs from serving whatever discovery requests they deem appropriate.

Plaintiffs thus are not entitled to a wholly unnecessary order offering them carte blanche to

conduct unspecified discovery.

### CONCLUSION

For the foregoing reasons, plaintiffs' Motions to Compel should be denied.

Respectfully submitted this 1st day of October, 2007

> RONALD J. TENPAS
> Acting Assistant Attorney General
> U.S. Department of Justice
> Environment & Natural Resources Division
>
>
> */s/ Angeline Purdy*
> _____
>
> ANGELINE PURDY
> Environmental Defense Section
> U.S. Department of Justice
> P.O. Box 23986
> Washington, D.C. 20026-3986
> Voice: (202) 514-0996
> Fax: (202) 514-8865
> e-mail: angeline.purdy@usdoj.gov
>
>
> DEVON LEHMAN McCUNE
> Trial Attorney
> Natural Resources Section

_____

discovery in this matter were appropriate (which EPA does not concede), this request would be
both vague and overbroad.

1961 Stout St., 8th Floor
Denver, CO  80294
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov


SAMANTHA KLEIN
Trial Attorney
Natural Resources Section
P.O. Box 0663
Washington DC 20044-0663
(202) 305-0474 (tel.)
(202) 305-0506 (fax)


Attorneys for Defendants,


OF COUNSEL


PAT M. FALCIGNO
Assistant Counsel
North Atlantic Division Regional Business Center
United States Army Corps of Engineers


DAWN M. MESSIER
U.S. Environmental Protection Agency
Office of General Counsel
Washington, D.C.