UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, et al.<br><br>Defendants. | Civil Action No. 06-CV-1268-HHK |

## DECLARATION OF DONALD S. WELSH

I, Donald S. Welsh, hereby declare that:

1. I am the Regional Administrator for the United States Environmental Protection Agency ("EPA" or "Agency") Region III. Region III consists of Delaware, Maryland, Pennsylvania, Virginia, West Virginia, and the District of Columbia. As Regional Administrator, I am responsible for implementing all of EPA's programs within Region III. I base this declaration, in my capacity as Regional Administrator, upon my personal knowledge and upon statements and representations made to me by Region III staff with personal knowledge of the King William Reservoir project and issuance by the U.S. Army Corps of Engineers ("Corps") of Permit No. 93-0902-12 for the discharge of dredged and/or fill material associated with the King William Reservoir project.

2. Section 404(c) of the Clean Water Act ("CWA"), 33 U.S.C. § 1344(c), authorizes the Administrator of EPA to "prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site ... [and to] deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas ... wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary [of the Army]." EPA's exercise of its authority pursuant to Section 404(c) is often referred to as a "veto" of a permit issued by the Corps pursuant to Section 404(a) of the CWA, *id.* § 1344(a), for the discharge of dredged and/or fill material to waters of the United States.

3. EPA promulgated regulations describing the process for exercising EPA's CWA Section 404(c) authority at 40 C.F.R. Part 231. Pursuant to those regulations, the first step in the process is for the Regional Administrator to propose a determination to prohibit or withdraw specification of a defined area as a disposal site, or to deny, restrict or withdraw the use of a defined area for the discharge of dredged and/or fill material. The Regional Administrator must notify the Corps' District Engineer of any such proposed determination and publish such proposed determination for public comment. Under certain circumstances, the regulations also direct that the Regional Administrator conduct a public hearing. Only after notification to the Corps' District Engineer and completion of the public process may the Regional Administrator take the next step, which is a recommendation to the Administrator regarding exercise of EPA's CWA Section 404(c) authority.

4. It is my understanding that EPA's authority pursuant to CWA Section 404(c) is separate and distinct from EPA's role to comment upon applications to the Corps for Section 404 permits pursuant 33 C.F.R. § 325.3 and the *Memorandum of Agreement between the Environmental Protection Agency and the Department of the Army Concerning Clean Water Act Section 404(q)*. It is also my understanding that EPA's authority pursuant to CWA Section 404(c) is separate and distinct from EPA's responsibilities to review and comment in writing on the environmental impact of federal actions pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4375, and Section 309 of the Clean Air Act, 42 U.S.C. § 7609.

5. The Corps issued Permit No. 93-0902-12 for the discharge of dredged and/or fill material in connection with the King William Reservoir project on November 16, 2005. Based on statements and representations made to me by members of the Region III staff with personal knowledge of the King William Reservoir project, I was aware that EPA had reviewed and commented upon the draft and final Environmental Impact Statements for the King William Reservoir project pursuant to Section 309 of the Clean Air Act, and had submitted comments regarding the application for Permit No. 93-0902-12 to discharge dredged and/or fill material to waters of the United States in connection with the proposed King William Reservoir project to the U.S. Army Corps of Engineers consistent with the coordination procedures described in the *Memorandum of Agreement between the Environmental Protection Agency and the Department of the Army Concerning Clean Water Act Section 404(q)*.

6. It is my understanding that I have discretion whether to initiate CWA Section 404(c) proceedings with respect to any particular permit, and that I am not required to initiate CWA Section 404(c) proceedings even if EPA disagrees with a permitting decision by the Corps.

7. In approximately November 2005, I determined not to initiate with respect to Permit No. 93-0902-12 the process that is prerequisite for exercise of EPA's authorities pursuant to Section 404(c) of the CWA. At that time, I was aware that Section 404(c) proceedings could be initiated at a later date if circumstances or Agency resources so warranted. I also recognized that it was unlikely that EPA would initiate Section 404(c) proceedings at a later date.

8. My understanding of the King William Reservoir project and Permit No. 93-0902-12 was based upon briefings by Region III staff.

9. Because my determination not to initiate the Section 404(c) process with respect to Permit No. 93-0902-12 in November 2005 was a decision not to take any specific action at that time, my determination was communicated verbally to relevant Region III staff. Consistent with my usual practice when no action is required, I did not memorialize my determination in writing.

10. My determination not to initiate Section 404(c) proceedings in November 2005 was based upon a balancing of the following considerations:

    a. Region III is responsible for reviewing and commenting upon CWA Section 404 permits issued in Region III by five Corps Districts in five states plus the District of Columbia. Region III also is responsible for reviewing and commenting upon draft and final Environmental Impact Statements for all federal actions significantly affecting the human environment within Region III, including federal actions within the District of Columbia. Initiation of CWA Section 404(c) proceedings for the King William Reservoir permit would necessarily consume significant Region III staff time and other Region III resources. Initiation of CWA Section 404(c) proceedings would divert Region III resources away from Region III's other ongoing responsibilities, including those under CWA Section 404 and NEPA.

    b. I was aware that the Corps had solicited public comment in connection with aspects of the application for a CWA Section 404 permit for the King William Reservoir project on multiple occasions. Given the extensive public process already provided by the Corps, it was my view that the Section 404(c) process would be unlikely to yield any new information regarding the impacts of the King William Reservoir project, despite expense of considerable Region III resources.

    c. I was aware that there were competing studies and controversy regarding the precise projected water supply shortfall for the service population for the King William Reservoir. I was also aware, however, that all studies agreed that a water

supply shortfall was projected and that some means of increasing water supply was necessary.

d. While I was aware that there was a projected water supply shortfall, my determination not to initiate the CWA Section 404(c) proceedings was not based upon any independent determination regarding the magnitude of the projected water supply shortfall nor on any determination whether the King William Reservoir project represented the least damaging practicable alternative to meet the projected shortfall. I also did not base my determination on any analysis of whether or not the King William Reservoir project complied with the Guidelines promulgated by EPA pursuant to Section 404(b) of the CWA, 40 C.F.R. Part 230.

e. While I was aware that the proposed King William Reservoir project would result in the loss of an intact and functioning ecosystem, and that it would be difficult to fully mitigate for these impacts, I balanced that consideration against my understanding that the goal of the Mitigation Plan was full functional replacement of impacted wetland resources and that the Mitigation Plan included input from the Corps, EPA, the U.S. Fish and Wildlife Service, the Virginia Department of Environmental Quality, and the Regional Raw Water Study Group.

f. While I was aware of the concerns expressed by EPA regarding the King William Reservoir in conjunction with Region III's statutory obligation to review and comment upon the draft and final Environmental Impact Statements and also consistent with the coordination procedures described in the *Memorandum of Agreement between the Environmental Protection Agency and the Department of the Army Concerning Clean Water Act Section 404(q)*, I balanced those concerns against my understanding that the King William Reservoir project had been reconfigured twice to reduce the size of the impacts, as well as the other considerations described in this Declaration.

g. I was aware that the permit application for Permit 93-0902-12 had been pending for over ten years. Based upon various statements by members of the public and by the project proponent, I anticipated that the Corps' decision regarding Permit 93-0902-12 would be the subject of litigation regardless of whether or not the Corps ultimately decided to issue the permit and regardless of whether or not EPA exercised its Section 404(c) authority. It was my view that exercise of EPA's Section 404(c) authority would add a layer of process and delay without substantially contributing to the ultimate resolution of the issues

h. I had been informed that, in 1988, the Corps had issued a notice of intent to issue a permit to James City County for the discharge of dredged and/or fill material in connection with the Ware Creek Project. The Ware Creek Project had been intended as a local water supply project for James City County. I also had been

informed that, in 1989, EPA had vetoed pursuant to CWA Section 404(c) the permit for the Ware Creek Project. I had been informed that, at the time of its veto, EPA had stated that it would consider differently a proposal for a regional project (rather than multiple local projects) in order to avoid and minimize the potential adverse environmental impacts associated with multiple local water supply projects in the same region. The project proponents had stated to me on numerous occasions that they view the King William Reservoir project as an attempt to address EPA's stated preference for a regional water supply project.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed   SEP 2 7 2007                  *Donald S. Welsh* (signature)

Donald S. Welsh
Regional Administrator
U.S. Environmental Protection Agency
Region III