UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) | CIVIL ACTION 06-1268 (HHK) (AK) |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' REPLY TO DEFENDANT U.S. EPA'S OPPOSITION TO
MOTION TO COMPEL PRODUCTION OF RECORD OR FOR LEAVE TO
OBTAIN DISCOVERY, AND MOTION TO STRIKE**

**INTRODUCTION**

Pursuant to this Court's Scheduling Order, Scheduling Order at 1 (Dkt. No. 51) (filed

August 7, 2007), Plaintiffs Alliance to Save the Mattaponi, the Chesapeake Bay Foundation,

Inc., Sierra Club (collectively the "Alliance"), and Plaintiff-Intervenors, the Mattaponi Indian

Tribe (collectively "Plaintiffs") filed motions to compel the United States Environmental

Protection Agency ("EPA") to produce the administrative record supporting its decision to not

exercise its authority to withdraw the Section 404 permit issued by the Army Corps of Engineers

to the City of Newport News to construct a reservoir. In the alternative, Plaintiffs sought

discovery from EPA. The Plaintiffs also moved for a protective order in an attempt to prevent

EPA from submitting, as it said it would in the parties' most recent Joint Submission Regarding

Briefing Schedule at 1-2 (Dkt. No. 50) (filed 6 Aug. 2007) ("Joint Submission"), a declaration justifying its decision to not veto the permit.

EPA has replied to the motions. Memorandum in Opposition to Motion to Compel (Dkt No.60) filed October 1, 2007 ("Opposition"). Despite its complaints about circularity in the arguments of the Plaintiffs, EPA's Opposition presents a whirlwind of conflicting arguments. Further, instead of waiting for a ruling on the motion for a protective order, EPA strikes out on its own and submits a declaration from its Region III Administrator. Declaration of Donald S. Welsh (Dkt No. 60-2)("Welsh Declaration"). The arguments presented by EPA in support of its opposition, as convoluted as they are, unravel in the declaration it so desperately clings to in order to justify its failure to act in the best interests of the environment – its Congressionally mandated duty. 33 U.S.C. § 1344 (b) and (c).

EPA must be compelled to produce an administrative record supporting its decision to not veto the Section 404 permit issued by the Corps and Mr. Welsh's declaration should be stricken. In the alternative, the Plaintiffs should be permitted to submit written discovery to EPA and depose Mr. Welsh on the matters discussed in his declaration.

ARGUMENT

I. <u>EPA Admits That It Has Decided Not to Veto the Permit</u>

In three separate pleadings, EPA stated it had not made a decision whether to invoke Section 404(c) and revoke the permit issued by the Corps. EPA Motion for Partial Reconsideration and Memorandum in Support (Dkt No. 39) filed on June 13, 2007 at pp. 8-9; EPA Reply to Plaintiffs' Opposition to Motion for Partial Reconsideration (Dkt No. 44) filed on June 29, 2007 at p. 6, and; Joint Submission at pp. 1-2. Thus, according to EPA, there was no decision and there is no record. Joint Submission at pp. 1-2.

2

Perhaps after reading a decision cited by Plaintiffs in their Motion to Compel, *Biodiversity Legal Foundation v. Norton,* 180 F. Supp. 2d 7 (D.D.C. 2001), EPA now says it <u>has</u> made a decision to not veto the permit. In support, EPA submits the sworn declaration of Mr. Welsh wherein he declares: "In approximately November <u>2005</u>, I determined not to initiate" the Section 404(c) process with respect to the permit at issue.[1] Welsh Declaration at ¶ 7 (emphasis added); *see also* ¶¶ 9 and 10.

Despite these sworn statements, EPA argues "as a threshold matter, there is still a dispute over the nature of the claim against EPA." Opposition at p. 3. "The Court's denial of EPA's Motion for Reconsideration still leaves open, ..., the question of precisely what the Court is reviewing: a claim that EPA should have vetoed the Permit, or a narrower claim that it should have initiated the Section 404(c) process?" *Id.* at p. 4. This is simply old wine in a new skin. EPA has raised this point several times with the Court to no avail.

EPA's attempts to narrow the scope of this Court's review from a decision to not veto the federal permit issued to Newport News into a decision to not invoke the veto process is meaningless. When it decided not to invoke the process it clearly decided not to revoke the permit. Mr. Welsh states as much when he declares that he decided *two years ago* to not initiate the Section 404(c) process and knew *then* that "it was unlikely that EPA would initiate Section 404(c) proceedings at a later date." Welsh Declaration at ¶ 7. Like it or not, EPA has effectively made a final decision to not veto the permit. That decision is reviewable by this Court, Memorandum Opinion and Order (Dkt. No. 36) filed May 30, 2007, and any documents generated by EPA or submitted to EPA that concern the Agency's review of the permit and its

---

[1] The Corps issued the final permit to Newport News on November 16, 2005. Hence, Mr. Welsh's decision was essentially simultaneous with the Corps' decision.

decision to not veto the permit should be compiled as the administrative record and produced forthwith.

Further, there is no dispute about the claim against EPA. *See* Amended Complaint ¶¶ 106, 115, 123, 130, and 146. EPA decided not to veto the permit. Plaintiffs assert that the decision was arbitrary, capricious, and an abuse of discretion. The Court has repeatedly recognized that this claim can be asserted against EPA. Memorandum Opinion and Order at p. 14; Order Denying Motion for Reconsideration. The agency's attempts to parse the claim into something "narrower" must end. Its decision to not veto the permit despite years of protesting the reservoir design, location, and Mitigation Plan was clearly arbitrary and capricious. The Plaintiffs firmly believe that internal EPA documents not submitted to the Army Corps of Engineers will prove that to be true. As discussed below, the very declaration the agency relies upon proves Plaintiffs' argument.

Thus, once EPA's smoke and mirrors are ignored, Plaintiffs' motion is distilled down into three issues for the Court to resolve: 1) is there an administrative record the agency must produce, 2) may the *post hoc* declaration of Mr. Welsh stand; and; 3) if so, may the Plaintiffs obtain discovery from EPA?

II. EPA Must Produce An Administrative Record

All parties agree that once an agency has taken final action the validity of that action may be tested upon the administrative record created in the course of the agency's deliberations. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *see also* 5 U.S.C. § 706 (directing the reviewing court to make its determinations based on the "whole record"); Opposition at p. 5. This premise is true whether it concerns the promulgation of a rule or a decision on something left to agency discretion by Congress.

4

Although EPA originally couched Plaintiffs' claim as one addressing the agency's failure to act and hence, no record was ever generated, Joint Submission at pp. 1-2, it appears that the agency made a final decision two years ago, Welsh Declaration at ¶ 7. Even if the agency did not contemporaneously designate a formal administrative record like it would for a rulemaking, 5 U.S.C. § 502, or the development of a final Record of Decision in a matter directed to the agency's expertise, *e.g.*, a Superfund matter, 42 U.S.C. § 9613(j)(1), EPA does have documents relevant to its review of the Corps' permit and its decision to not veto the permit. Opposition at p. 8.[2]  To render an effective decision upon the Plaintiffs' claim against EPA, the Court must require EPA to produce documents within its files relevant to the issues presented by this lawsuit. *Overton Park, supra*, 401 U.S. at 420.

Plaintiffs believe the documents within EPA's files will establish the basis for its comment letters objecting to the reservoir and will prove that Mr. Welsh arbitrarily and capriciously decided not to veto the permit (or initiate the veto process). For example, Mr. Welsh admits he was aware of "competing studies ... regarding the precise projected water supply shortfall for the service population of the King William Reservoir." Welsh Declaration at ¶ 10(c). He also states that he balanced his knowledge that the reservoir would destroy "an intact and functioning ecosystem" with his understanding of "the goal of the Mitigation Plan." *Id.* at ¶ 10(e). Mr. Welsh was also aware of the concerns expressed by EPA over the proposed reservoir "in conjunction with Region III's statutory obligation to review and comment on the final

---

[2] EPA admits "internal documents exist"; however, it erroneously asserts "they are not part of any administrative record." Opposition at p. 8. Just because EPA has not arranged these documents into a neat folder does not mean they are not "the record" or that this Court cannot order their production. *See Biodiversity*.

Environmental Impact Statements..." *Id.* at ¶ 10(f). He was also aware of various statements by the public and Newport News concerning the proposed reservoir. *Id.* at ¶ 10(g).

Thus, it is apparent that EPA has, at least, these documents in its files. Many of these documents are hundreds of pages long. Apparently Mr. Welsh did not read them but was briefed by his staff about their contents. *Id.* at ¶¶ 5 and 8. They presumably read these numerous and voluminous documents, analyzed them, took notes, wrote memos, attended meetings, and exchanged emails concerning them before briefing Mr. Welsh. Part of that analysis was a statutory obligation not only to comment on the permit but also to determine the impact the project would have on the ecosystem and municipal water supplies, shellfish beds, fishery areas ... wildlife, or recreational areas as part of its veto authority. 33 U.S.C. 1344(c). *Id.* at ¶¶ 2 and 10(f). These documents too, are part of the record and must be produced.

Plaintiffs have cited a number of cases in support of their motions to compel. EPA attempts to distinguish them from the case at hand on the basis that those cases concern agency action, not inaction. Opposition at p. 5. But, Mr. Welsh's declaration establishes that there <u>has</u> <u>been</u> agency action. Thus, those cases cited by Plaintiffs are all relevant to the matter before this Court.

Moreover, to the extent that Plaintiffs' claim is one of agency inaction, the decisions cited by Plaintiffs' in their opening memorandum most notably *Biodiversity v. Norton, supra,* likewise are pertinent. There, several citizens and citizen groups sued the Department of the Interior ("DOI") for failing to make a "12 month determination" concerning the critical habitat of the Cape Sable seaside sparrow. The plaintiffs had sued both under the Endangered Species Act and one of the same provisions of the Administrative Procedure Act ("APA") asserted by Plaintiffs here, 5 U.S.C. § 706. The defendant argued, as EPA originally did here, that there was no final

agency action and thus there was no administrative record. This Court held that the failure to act

within a statutorily proscribed period was a final decision reviewable by the Court and that DOI

was required to produce a record.

The facts of *Biodiversity* are directly analogous to the matter at hand. Here, EPA was

granted by Congress the authority to veto dredge and fill permits when the project would have an

unacceptable adverse impact on the ecosystem and municipal water supplies, shellfish beds,

fishery areas ... wildlife, or recreational areas. 33 U.S.C. § 1344(c). EPA has decided not to

exercise that authority. Welsh Declaration at ¶ 7. It has refused to produce any documents

concerning its review of the permitting decision or its decision to not veto the permit. This Court

should, as it did in *Biodiversity*, order the production of all documents within EPA's possession

that concern or relate to its review of the Corps' permit <u>and</u> EPA's decision to not exercise its

Section 404(c) authority.

EPA suggests that the case is not analogous because DOI "apparently presented no

alternate foundation on which the court could review its actions." Opposition at p. 7. EPA is

mistaken. DOI did offer several explanations for its failure to act including that it had

insufficient time and resources to address the matter. *Biodiversity*, 180 F.Supp. 2d at 11.

EPA also argues that the cases are not similar because the plaintiffs in *Biodiversity*

produced documents establishing that a record must exist. Opposition at p. 7. While it is true

that the plaintiffs in *Biodiversity* did produce documents obtained from DOI via the Freedom of

Information Act establishing that documents that could comprise an administrative record did

exist in the Department's files, the documents submitted here as exhibits to Plaintiffs' motion

(EPA's comment letters to the Corps, *see* Exhibits 1-3 of Plaintiffs' Motion to Compel) as well

as those identified in Mr. Welsh's declaration and EPA's Opposition prove such documents exist

here. In addition, as EPA admits, many of these documents are in the Corps' administrative record. Thus, EPA presents no distinction between these two cases.

For example, the comment letters submitted by EPA to the Corps clearly are summaries of agency staff reviews of the materials identified in Mr. Welsh's declaration. In fact, Mr. Welsh's declaration admits as much. Welsh Declaration at ¶ 10(f). However, after the last changes were made by the Corps to the Mitigation Plan and it was resubmitted for public notice and comment, EPA repeatedly asked for an extension of the comment period. Surprisingly, EPA never issued comments on the final permit and Mitigation Plan. Certainly agency staff had been reviewing the revised permit and mitigation plans and had prepared notes, comments, emails, and memos weighing the impacts of the permit under the Section 404(b)(1) guidelines and Section 404(c) – as they were required to do by law. Those materials either support or reject Mr. Welsh's decision. Thus, because EPA failed to comment on the proposed final Mitigation Plan and Mr. Welsh made a final decision to not veto the permit, it must generate an administrative record supporting those decisions. *Overton Park, supra.*

III. Mr. Welsh's Declaration Must be Stricken

EPA states that there is no record and urges the Court to rely on the "record" it developed solely for litigation – the *post hoc* rationalization of its Regional Administrator. Opposition at p. 2. However, such a declaration standing alone is not the record. Documents generated by or submitted to EPA contemporaneous with its review of the Corps' permit and EPA's decision to not veto the permit comprise the record and should be produced. EPA cannot simply say "there is no written documentary record" and then make up one that suits its purposes.

As this Court has held, "a complete administrative record should include all materials that might have influenced the agency's decision, not merely those on which the agency relied in its

final decision." *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (internal quotations and citations omitted). Thus, the cases cited by EPA are pertinent only when the agency <u>has</u> submitted a record and the opposing party seeks to <u>supplement</u> the record. Those are not the facts here.

If there is no record, then there is no declaration to justify the decision not to invoke Section 404(c). If any declaration is permitted, it would be one stating that no documents were generated in the process of reaching that decision – not Mr. Welsh's far ranging expose on *why* EPA chose not to invoke Section 404(c).

The Supreme Court has held that the record is not one the agency concocts out of whole cloth after its action has been challenged. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Court of Appeals for this Circuit has held that this rule applies to informal agency proceedings like those involved here. *AT&T Information-Systems, Inc. v. General Services Administration*, 810 F.2d 1233, 1236 (D.C. Cir. 1987)(reverse FOIA matter), citing *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 840 (D.C. Cir. 1976).

Further, the Circuit Court has repeatedly applied this rule to bar the introduction of litigation affidavits to supplement the administrative record. *AT&T v. GSA, supra*, citing *Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792-94 (D.C. Cir. 1984); *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 285-86 (D.C. Cir. 1981); *Rodway v. United States Department of Agriculture*, 514 F.2d 809, 816 (D.C. Cir. 1975).

In certain circumstances an agency may be allowed to supplement the administrative record to provide "such additional explanations of the reasons for the agency decision as may prove necessary." *Pitts, supra*, 411 U.S. at 142-43; *see also Overton Park, supra*, 401 U.S. at 420. However, this exception may not be employed to offer *post-hoc* rationalizations where no

9

rationalization exists. Moreover, the exception presumes and is dependent upon the existence of an administrative record and does not allow the creation of a new record via a declaration after the fact.

For example, the record may be supplemented to provide background information or evidence of whether all relevant factors were examined by an agency, *see Environmental Defense Fund, supra,* 657 F.2d at 285 (citing *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir. 1980)). However, the Court of Appeals has made clear that "the new material should be merely explanatory of the original record and should contain no new rationalizations." *Id.* (citing *Bunker Hill Co. v. EPA,* 572 F.2d 1286, 1292 (9th Cir. 1977)). Here, EPA provided no rationalization at the agency level for its refusal to veto the permit and is therefore precluded from initially offering one on judicial review. *See ATT v. GSA, supra.* Therefore, at the most, EPA should be permitted to submit a declaration from Mr. Welsh stating that the agency has decided not to veto the permit. The agency should be ordered to produce all documents relevant to its review of the permit and its decision to not veto the permit. The review of the permit is integrally tied to EPA's decision not to veto the permit; thus all of the documents relating to EPA's review properly comprise the administrative record. In no case should the agency be allowed to simply submit Mr. Welsh's declaration in its current form as the record.

EPA relies on *Women Involved in Farm Economics v. USDA,* 876 F.2d 994 (D.C. Cir. 1989) ("*WIFE*"), for the proposition that it may offer Mr. Welsh's *post hoc* declaration in lieu of documents from its files. However, *WIFE* is not applicable here. There, the Court of Appeals reversed a decision of the District Court dismissing the statements of counsel offering a *post hoc* explanation of why the Secretary of Agriculture had acted as he had 20 years earlier. The Court of Appeals reached this decision because Congress had explicitly exempted the Secretary from

having to develop a contemporaneous record concerning regulations defining the word "person"
and the consequent development of the "husband wife rule" under the Agricultural Adjustment
Act. Given "the unusual situation in which [that] challenge evolved," the Court of Appeals felt
comfortable relying on the statements of counsel *without* a declaration from the Secretary. *Id.* at
998. *WIFE* does not, as EPA suggests, stand for the proposition that an agency may concoct a
*post hoc* rationalization for an administrative decision separate and apart from the documentary
records in its files. Here, EPA was under no Congressional exemption from developing a
contemporaneous record and in fact one does exist. Thus, Mr. Welsh's declaration should be
stricken and the record produced.

The agency also relies on an unreported decision, *Partlo v. Johanns*, 2006 WL
1663380*23 (D.D.C. 2006). Again, the reliance is misplaced. There, two organic farmers sued
the Department of Agriculture alleging that its Crop Loss Disaster Assistance program rules
violated equal protection and were arbitrary and capricious. Again, Congress explicitly
exempted the Department from having to undertake notice and comment rulemaking under the
Administrative Procedure Act. Thus, no administrative record was generated concerning the
development of the regulations at issue there.

The Court of Appeals allowed the declaration of the Secretary explaining the new rules
because such information was essential to its rational basis / equal protection review. *Id.* at *44-
46. Such a claim is not before this Court; thus, that analysis is irrelevant here. With respect to
the APA claim, as in *WIFE*, the Department had been specifically exempted from having to
follow the APA in the development of the new crop rules. Thus, relying on *WIFE*, the Court of
Appeals allowed the post hoc declaration of the agency to stand. *Id.* at * 75-76. Those are
simply not the facts here.

EPA reached a decision in November 2005 not to veto the permit. The documents within its files at that point in time either support that decision or they do not. The *post hoc* explanation from Mr. Welsh cannot supplant that information which either exists or not in the agency's files.

IV.  If Mr. Welsh's Declaration is Permitted, Plaintiffs Are Entitled to Discovery

If Mr. Welsh's declaration is allowed to stand then Plaintiffs should be permitted to obtain discovery from EPA. That discovery should include the right to depose Mr. Welsh on all matters relevant to his declaration. Further, Plaintiffs should be permitted to submit written discovery seeking all documents relevant to the agency's review of the permit, all documents referred to in Mr. Welsh's declaration, and all documents concerning the agency's decision to not invoke Section 404(c).

This Court has held "[t]o obtain discovery from an agency in an APA case, a party must overcome the standard presumption that the 'agency properly designated the Administrative Record.'" *Amfac, supra,* at 11-12, citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) (permitting discovery when a party has made a "showing that the record may not be complete"). To determine whether a party has made "a 'strong showing'" that a record is incomplete, it is necessary to comprehend what constitutes the 'whole record.'" *Amfac, supra,* at 12, citing 5 U.S.C. § 706.

> First and most basically, a complete administrative record should include all materials that "might have influenced the agency's decision," and not merely those on which the agency relied in its final decision. *See Bethlehem Steel v. EPA*, 638 F.2d 994, 1000 (7th Cir. 1980) (citing *National Courier Association v. Board of Governors of the Fed. Reserve Sys.*, 170 U.S. App. D.C. 301, 516 F.2d 1229, 1241 (D.C. Cir. 1975)). Thus, if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well. *See Bar MK Ranches*, 994 F.2d at 739 ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency.").

*Amfac, supra,* at 12 (citations omitted). Plaintiffs here can easily meet these standards.

First, the record is obviously incomplete; the agency has not provided one. Second, if Mr. Welsh's declaration is allowed to stand, the agency has not submitted all materials that influenced his decision. *See*, Argument section II, above. In fact, Mr. Welsh admits that he relied upon subordinates to review the permit and to brief him on their findings as well as brief him on his decision to not invoke Section 404(c). Thus, the tests of *Amfac* and *Bar MK Ranches* have clearly been met and discovery is permissible.

## CONCLUSION

For the foregoing reasons, Plaintiffs, The Alliance to Save the Mattaponi *et al.*, request that this Court order EPA to compile and produce a record consisting of all the information and materials that were before the agency in reviewing the proposed King William Reservoir permit and relating to EPA's ultimate decision to not veto the project. In the alternative, Plaintiffs seek leave to obtain discovery of this information and to thereafter supplement the administrative record. Further, Plaintiffs move to strike the declaration of Mr. Welsh "explaining" the agency's failure to act, as an improper *post-hoc* rationalization.

The Plaintiffs request oral argument pursuant to Local Rule 7(f).

Respectfully submitted this 15th day of October 2007.

> */s/ Deborah M. Murray*
> Deborah M. Murray (D.C. Bar No. 362563)
> Senior Attorney
> Southern Environmental Law Center
> 201 West Main Street, Suite 14
> Charlottesville, VA  22902
> (434) 977-4090 Telephone
> (434) 977-1483 Fax
>
> Counsel for Plaintiffs
> Alliance to Save the Mattaponi
> The Chesapeake Bay Foundation, Inc.
> Sierra Club, Virginia Chapter

Jon A. Mueller
Director of Litigation
The Chesapeake Bay Foundation, Inc.
6 Herndon Ave.
Annapolis, MD 21403
(410) 268-8816 Telephone
(410) 268-6687 Fax

Co-Counsel for Plaintiff
The Chesapeake Bay Foundation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on 15 October 2007, I electronically filed the Response of Plaintiffs Alliance to Save the Mattaponi, *et al.* to Defendant's Opposition to Motion to Compel Production of Record or for Leave to Obtain Discovery, and for Protective Order with the Clerk of Court, as well as the Proposed Order, using the CM/ECF system.

I also hereby certify that on 15 October 2007, true and correct copies of the Response of Plaintiffs Alliance to Save the Mattaponi, *et al.* to Defendant's Opposition to Motion to Compel Production of Record or for Leave to Obtain Discovery, and for Protective Order, and the Proposed Order, were served by first class mail, postage prepaid, properly addressed to the following counsel who do not receive electronic notification of filings:

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
PO Box 1122
Richmond, VA 23218-1122

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Street
Newport News, VA  23607

Pat M. Falcigno
Office of Counsel
North Atlantic Division
U.S. Army Corps of Engineers
Fort Hamilton
302 General Lee Avenue
Brooklyn, NY  11252-6700

*/s/ Deborah M. Murray*