UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALLIANCE TO SAVE THE MATTAPONI, et al.,** | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| ` | : | 1:06-cv-01268-HHK |
| | : | |
| | : | |
| **UNITED STATES ARMY CORPS OF ENGINEERS, et al.,** | : | |
| | : | |
| | : | |
| Defendants. | : | |

_____

**PETITIONERS' APPLICATION FOR FEE AWARD AND EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT**

**INTRODUCTION**

Plaintiffs the Alliance to Save the Mattaponi et al. (collectively, the "Alliance"), respectfully petition this Court to award the Alliance its reasonable attorneys' fees and costs of litigation in the total amount of $356,435.42, as detailed and documented in the attached records, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §2412(d)(1).  This application is supported by the declarations of Deborah Murray, lead attorney, and Jon Mueller, co-counsel for plaintiff the Chesapeake Bay Foundation ("CBF"), and the relevant time sheets for each of the attorneys involved in the case and expense summaries.  Pursuant to LCvR 7(m), counsel for the Alliance has conferred with counsel for the federal defendants.

Counsel is authorized to state that the federal defendants are in the process of evaluating the fee claims, and have not yet determined their position.  However, concurrently with this motion, the Alliance, plaintiff-intervenors, the Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow (collectively, the "Tribe"), and the federal defendants are filing a joint motion to

stay briefing on the Alliance's and the Tribe's motions for attorneys' fees until 16 October 2009 to allow the parties the opportunity to attempt to resolve this matter without intervention by this Court. As set forth in the Joint Motion for Stay, to comply with the 30-day deadline under EAJA, plaintiffs are filing this Motion/Application and supporting material now, with additional materials in support of this application to be submitted at a future date, if necessary.

EAJA provides that the Court "shall" award attorneys' fees and expenses to a prevailing party unless the United States can demonstrate that its position was substantially justified. 28 U.S.C. §2412(d)(1)(A). Because the plaintiffs are prevailing parties and the federal defendants' positions were not substantially justified, plaintiffs respectfully seek an award of fees and expenses, as specified in the accompanying motion, pursuant to EAJA.

## STATEMENT OF THE FACTS

Having rendered a decision on the merits, the Court is familiar with the underlying facts of this case. Accordingly, plaintiffs will review only those facts that are most relevant to this petition. Plaintiffs, the Alliance to Save the Mattaponi, the Chesapeake Bay Foundation ("CBF"), and the Sierra Club, Virginia Chapter (collectively, the "Alliance"), filed suit on 17 July 2006, challenging the issuance in 2005 of a Clean Water Act §404 permit to the City of Newport News, Virginia, by the North Atlantic Division ("NAD") of the U.S. Army Corps of Engineers (the "Corps") for the construction of a proposed reservoir. The Alliance alleged that the Corps' action violated the Clean Water Act, 33 U.S.C. §§1251 *et seq*. ("Clean Water Act") and the National Environmental Policy Act, 42 U.S.C. §§4321 *et seq*. ("NEPA"), and was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706. The Alliance also

sought to challenge the U.S. Environmental Protection Agency's ("EPA") failure to "veto" the permit under §404(c) of the Clean Water Act.

The NAD's decision overturned the comprehensive 2001 recommended record of decision ("RROD") of the Corps' Norfolk District, in which the Norfolk District recommended that the permit be denied because the reservoir was not needed and alternatives were available to satisfy Newport News' legitimate water needs, and because of the significant harm to the environment and to the Native Americans from the project. Throughout the proceedings, EPA objected to the project, and it supported the Norfolk District's RROD, stating that the project could have an "unacceptable adverse effect" on waters of the U.S. within the meaning of Clean Water Act §404(c).

As a preliminary matter, EPA claimed that the Court lacked jurisdiction to review plaintiffs' challenge to EPA's failure to veto the permit. This Court ruled in plaintiffs' favor, finding that such failure was subject to review as "agency inaction" under the APA and that §404(c) afforded the criteria against which to assess EPA's failure to veto the permit.[1] *Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 7-10 (D.D.C. 2007). In the Court's opinion on the merits, the Court reiterated that EPA's action was reviewable, and held that the failure to veto the permit was arbitrary and capricious because EPA's rationale, as set forth in the declaration of EPA Regional Administrator Welsh, had nothing to do with whether granting the permit would have an "unacceptable adverse effect" within the meaning of §404(c). Mem. Op., Dkt. No. 88, at 32 (31 Mar. 2009)("Mem. Op.").

---

[1] This Court rejected plaintiffs' argument, however, that the Corps had a mandatory duty to comply with the §404(b)(1) Guidelines. 515 F. Supp.2d at 5-6.

This Court also ruled in plaintiffs' favor against the Corps on the merits on the claims arising under the Clean Water Act, finding that the Corps' decision was arbitrary and capricious because the Corps failed to demonstrate that the reservoir was the least damaging practicable alternative and that the proposed mitigation would offset the unprecedented wetland losses, contrary to the §404(b)(1) Guidelines.  *Id*. at 12-14, 15-20.  The Court further held that, as a result, the Corps' finding that the project was in the public interest was also arbitrary and capricious.  *Id*. at 25.  The Court rejected plaintiffs' claim, however, that the Corps was required to prepare a supplemental Environmental Impact Statement.  *Id*. at 25-30.

The federal defendants initially filed a notice of appeal, and plaintiffs and plaintiff-intervenors accordingly filed notices of cross appeal.  Subsequently, on 25 June 2009, the parties filed a joint stipulation of dismissal of the appeals, and on 1 July 2009, the U.S. Court of Appeals for the District of Columbia Circuit dismissed the appeal.  Order, No. 09-5201 (D.C. Cir. 1 July 2009).  Plaintiffs are filing the motion/application for attorneys' fees and expenses within the 30-day statutory deadline under EAJA.

## ARGUMENT

The Equal Access to Justice Act provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. §2412(d)(1)(A).  Part I of this argument shows that the plaintiffs in this case are "prevailing parties" under EAJA.  Part II demonstrates that the Corps' and EPA's positions were

not "substantially justified," and Part III establishes that plaintiffs' fee request is reasonable. Plaintiffs thus are entitled to reimbursement of the reasonable attorneys' fees, costs and expenses they seek.

## I. PLAINTIFFS ARE "PREVAILING PARTIES" WITHIN THE MEANING OF EAJA.

Plaintiffs qualify as prevailing parties under EAJA, having prevailed at every stage of the lawsuit against the federal defendants. This Court granted plaintiffs' motion for summary judgment on their claims that the Corps violated the binding §404(b)(1) Guidelines that no permit shall issue if there are less damaging practicable alternatives available or if the permit will cause or contribute to significant degradation of the waters of the U.S. Mem. Op. at 9-20, 22-24. Additionally, the Court concluded that, as a result, the Corps' finding that the project was in the public interest was also arbitrary and capricious. *Id*. at 25. While plaintiffs did not prevail on their claim that the Corps was required to prepare a supplemental EIS under NEPA, Mem. Op. at 25-30, the underlying facts were essentially the same as those asserted in support of the Clean Water Act claims.[2] *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)(where claims involve a "common core of facts," focus should be on significance of overall relief obtained). Nevertheless, counsel for plaintiff deleted any entries specifically identified as involving the NEPA claims. *See* Declaration of Deborah M. Murray ¶ 5.

With respect to EPA, the Court ruled in plaintiffs' favor on EPA's motion to dismiss, holding that the EPA's failure to veto the §404 permit was actionable under the APA. *Alliance to Save the Mattaponi*, 515 F. Supp. 2d at 7-10. The Court's summary judgment decision

---

[2] Moreover, this Court found that one of the rationales advanced by the plaintiffs for requiring a supplemental EIS, the imposition of the seasonal pumping hiatus, at least presented a "close question." Mem. Op. at 27.

reiterated this holding and further held that EPA's rationale for failing to veto the permit was arbitrary and capricious.  Mem. Op. at 30-33.

## II. THE CORPS' AND EPA'S POSITIONS WERE NOT "SUBSTANTIALLY JUSTIFIED."

The government bears a heavy burden of proving that its position, "including both the underlying agency action and the arguments defending that action in court, was 'substantially justified' within the meaning of the Act."  *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000).  While not automatically determinative, a court's decision on the merits can be "quite relevant to the resolution of the substantial justification question."  *Id*.

### A. The Corps' Determination that the Reservoir was the Least Damaging Alternative Lacked Substantial Justification.

This Court held that the Corps acted arbitrarily and capriciously in finding that the reservoir project was the least damaging practicable alternative, given the greatly reduced need and the continued reliance by the Corps on the alternatives set forth in the 1997 Final EIS.  Mem. Op. at 14; *see also id*. at 10-14 (finding the NAD never explained why the alternatives in final EIS remained sufficient).  As this Court stated, there was "no evidence in the ROD that the Corps re-analyzed" the alternatives in light of the reduced need and the higher cost of the Reservoir project.  *Id*. at 12-13.  The Court concluded:  "Before determining that a Project that would flood 403 acres of functioning wetlands is the least-damaging practicable alternative, the Corps must do more than give vague explanations about the potential adverse effects of or potential political opposition to other alternatives.  It must explain fully, based on an analysis adequate to the task, why other alternatives are either impracticable or more damaging," *id.* at 14, which the Corps failed to do.

The Corps' position thus lacked evidentiary support and was contrary to the clear requirement under the §404(b)(1) Guidelines that no permit shall issue if less damaging practicable alternatives are available.  40 C.F.R. §230.10(a).   On the basis of these facts, the Corps' position and the government's subsequent defense of that position were not substantially justified.  *See Precision Concrete v. NLRB*, 362 F.3d 847, 851-52 (D.C. Cir. 2004) (agency position not substantially justified because "obviously insufficient under well-established precedent"); *see also Cooper v. United States R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994) (agency decision not substantially justified because it lacked a reasonable factual basis in the record).

### B. The Corps' Determination that the Reservoir Would Not Cause Significant Degradation of the Aquatic Ecosystem Lacked Substantial Justification.

There is no question that the reservoir project would have serious adverse impacts on the environment; it would result in the single largest authorized loss of wetlands in the mid-Atlantic region in the 37-year history of the Clean Water Act.  The Corps failed to justify its conclusory assertion that the plan to mitigate the destruction caused by the reservoir by recreating wetlands at other locations would adequately compensate for the lost wetlands and streams, however.  *See* Mem. Op. at 17-18.  As the Court stated, the

> "Corps cannot simply say that it is not required to replicate the destroyed wetlands as it argues; it must explain how the Mitigation Plan will adequately compensate for lost wetland functions and values such that it results in no net loss of wetland functions and values"

*Id*. at 18.  Further, the Corps failed to address the significant criticisms of the Mitigation Plan:

> "The Corps, however, does not address anywhere the fact that the same Wetland Evaluation Technique ("WET"), Evaluation for Planned Wetlands ("EPW") studies, and Habitat Evaluation Procedures ("HEP") on which Newport News based its functional assessments were seriously critiqued by the Norfolk District in the recommended ROD. . . . In the face of such criticism, the Corps must explain why it believes that the methods used by Newport News in the functional assessment are a reliable basis for concluding

7

>that 'successful completion of the elements of the Streams & Wetlands Mitigation Plan will as a whole offset anticipated losses in these functional areas.'"

*Id.* at 18-19. Moreover, as this Court found, nowhere in the ROD did the Corps address the comments that it was not possible to conclude that the project would not cause or contribute to significant degradation absent greater site-specific information about the mitigation sites. *Id.* at 19.

When faced with significant comments and criticisms contrary to its position, an agency must explain why it disagrees with them. Mem. Op. at 17 (citing *ARCO Oil & Gas Co. v. FERC*, 932 F.2d 1501, 1504 (D.C. Cir. 1991)); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). Because the Corps failed to provide a rational explanation, its decision and the government's subsequent defense of that decision were not substantially justified. *See Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 326 (D.C. Cir. 2004) (government not substantially justified in defending decision that made findings contrary to the evidence); *Precision Concrete v. NLRB*, 362 F.3d at 851-52 (agency position not substantially justified because "obviously insufficient under well-established precedent").

The Corps similarly lacked substantial justification for its determination that the potential adverse effects of the reservoir project on salinity levels would not cause significant degradation to the aquatic system. That determination directly conflicted with the Norfolk District's recommended decision, completely ignoring the facts cited by the Norfolk District indicating that the effects of chronic exposure to salinity could have significant adverse effects. *See* Mem. Op. at 24. As the Court found, the Corps did not address the Norfolk District's conclusion "that even very small increases in salinity, because 'they would be sustained for as long as the withdrawal exists,' could harm vulnerable species and cause a 'significant decrease in growth and reproduction for these organisms.'" *Id.* The Corps' failure to consider the effects of this

chronic exposure rendered its decision that changes in salinity would not have a significant adverse effect arbitrary and capricious. Likewise, the Corps' failure to address this relevant information shows that the government's defense of the underlying agency decision was not substantially justified.

### C. EPA's Position Was Not Substantially Justified.

EPA's position both at the agency level and in court was not substantially justified within the meaning of EAJA. In defending the EPA Administrator's failure to veto the permit, EPA argued throughout the litigation that the decision was not subject to judicial review. The Court rejected this position on four different occasions. First in response to EPA's motion to dismiss, the Court held that such "agency inaction" was reviewable under the APA and that the statutory criterion whether the discharge would have an "unacceptable adverse effect" was the standard against which to judge the agency's failure to veto the permit. *Alliance to Save the Mattaponi,* 515 F. Supp. 2d at 8-9.

Despite the Court's ruling, EPA pressed the issue a second time, requesting that the Court reconsider its judgment, which the Court denied, Order, Dkt. No. 47 (17 July 2007). The agency then refused to produce an administrative record on the grounds that there was no agency action and therefore no record. *See* Fed. Defs. Mem. in Opp. to Motion to Compel, Dkt. No. 60, at 2-4 (1 Oct. 2007). EPA's position forced the plaintiffs to file a motion to compel production of the record. *See* Motion to Compel, Dkt. No. 57 (31 Aug. 2007). While the Magistrate did not compel EPA to produce a record, the Court made clear that it rejected EPA's argument that there was no agency action upon which a decision could be rendered. Nevertheless, EPA continued to argue in its summary judgment brief that there was no agency action to review. In its decision on the merits, this Court again rejected this argument, finding EPA's "current efforts to redefine

the determination under review" to be "equally unavailing." Mem. Op. at 31. EPA's persistence in raising the issue after the Court had already ruled was unreasonable and not substantially justified, and required the plaintiffs to expend additional resources responding to such claims. *See Jones v. Lujan*, 887 F.2d 1096, 1100 & n.7 (D.C. Cir. 1989) (government not substantially justified in continuing to argue an issue it already lost before the court); *see also United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000) (question is not simply whether the government was substantially justified at the beginning or end of the proceedings but whether it was substantially justified in continuing to push forward at each stage).

Moreover, on the merits, EPA's decision not to veto the permit ran counter to the position EPA had taken throughout the permit proceedings and was also based on factors that were completely outside the scope of EPA's statutory authority. *See* Mem. Op. at 17, 30. As the Court found, none of the reasons for failing to act set forth in the Regional Administrator's declaration had anything to do with whether granting the permit would have an unacceptable adverse effect or whether or not the project complied with the §404(b)(1) Guidelines promulgated by EPA. Rather, the reasons put forth in Mr. Welsh's declaration were "completely divorced from the statutory text." *Id.* at 32. This Court properly concluded that, because the Regional Administrator "'relied on factors which Congress has not intended [him] to consider,' his decision was arbitrary and capricious." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). These facts likewise show that EPA's position was not substantially justified.

### III.     PLAINTIFFS' FEES AND COSTS ARE REASONABLE.

Plaintiffs seek attorneys' fees at the standard hourly rate under the EAJA, adjusted for inflation. Congress last amended the statutory cap for EAJA in March 1996, changing the rate, without adjustment for inflation, from $70/hour to $125/hour. Counsel for plaintiffs has

10

calculated the adjustments to the statutory rate using the Consumer Price Index for urban consumers ("CPI-U") for "Washington-Baltimore, DC-MD-VA-WV." This CPI-U, copied from the website of the U.S. Department of Labor, Bureau of Labor Statistics, is attached as Exhibit 6. The adjusted caps for the relevant time periods are as follows:

> Nov 1996 = 100[3]
>
> 2005 Annual Average = 124.3; Adjusted cap = $125/hr x 1.243 = $155.38/hr
> 2006 Annual Average = 128.8; Adjusted cap = $125/hr x 1.288 = $161.00/hr
> 2007 Annual Average = 133.464; Adjusted cap = $125/hr x 1.33464 = $166.83/hr
> 2008 Annual Average = 139.499; Adjusted cap = $125/hr x 1.39499 = $174.37/hr
> Jan. 2009 = 137.598; Adjusted cap = $125/hr x 1.37598 = $172.00/hr
> Mar. 2009 = 138.620; Adjusted cap = $125/hr x 1.38620 = $173.28/hr
> May 2009 = 139.311; Adjusted cap = $125/hr x 1.39311 = $174.14/hr

As stated above, Deborah Murray ("Murray"), senior attorney with the Southern Environmental Law Center ("SELC") acted as lead counsel in this case for the plaintiffs, and CBF's Director of Litigation, Jon Mueller, was co-counsel for CBF. *See* attached Declaration of Jon A. Mueller ¶ 3, Exhibit 9 ("Mueller Declaration"). Murray was assisted at various stages of the litigation by other SELC attorneys, Morgan Butler, Mary Cromer, and Marirose Pratt. Neither CBF nor SELC included the substantial numbers of hours devoted to this case by law school interns working for CBF and SELC. Mueller Declaration ¶ 3, Exhibit 9 ; Declaration of Deborah M. Murray ¶ 5, Exhibit 1 ("Murray Declaration"). As documented by the attached records, SELC and CBF devoted a total of 1720 and 234 hours, respectively, to this case, for a

---

[3] Congress set the $125/hr cap for EAJA in March 1996. Beginning in November 1996, the Bureau of Labor Statistics changed the sample area for its localized CPI-U calculations for the D.C. area from "Washington, DC-MD-VA" to "Washington-Baltimore, DC-MD-VA-WV." The new index uses a different sample area and thus cannot be compared to the pre-November 1996 values. Because of this change, plaintiffs used November 1996 as the baseline for the cost of living increase calculations. This is a conservative application of the CPI-U because use of the November instead of the March 1996 value will almost certainly result in lower fees, as the CPI-U generally trends upward. For instance, the national CPI-U increased 1.47% from March to November 1996.

combined total of 1954 hours.  *See* Murray Declaration ¶ 7, Exhibit 1; Timesheets for Attorneys Murray, Butler, Cromer, and Pratt, Exhibits 2-5;  Attorney Mueller Timesheets, Exhibit 11; Summary of Attorney Hours, Exhibit 7.  At the EAJA statutory rate of $125 per hour adjusted for inflation using the Consumer Price Index, this amounts to $293,133.59 and $40,281.64, respectively, for a combined total of $333,415.23 in attorneys' fees.  In addition, plaintiffs seek recovery of related expenses, totaling $23,020.19.  *See* Murray Declaration ¶ 8; SELC Expenses, Exhibit 8; CBF Expenses, Exhibit 12; Summary of Total Attorney Hours and Expenses, Exhibit 13.

The time and expenses are reasonable. Murray carefully reviewed all of the time entries for the attorneys and reduced substantial numbers of hours, exercising professional billing judgment as to each entry claimed and as to the total hours for which reimbursement is sought, and seeking to eliminate any time that could be construed as excessive, redundant, or inefficient. *See* Murray Declaration ¶ 5, Exhibit 1.  Jon Mueller similarly exercised professional billing judgment as to each of his hours claimed.  Mueller Declaration ¶ 3, Exhibit 9.

The Alliance to Save the Mattaponi and CBF both meet the statutory requirements for eligibility as 501(c)(3) organizations with fewer than 500 employees each, but environmental plaintiff Sierra Club does not.  All of the work in the litigation, however, was done to advance the collective interests of all plaintiffs.  No work was done, or expense incurred, to further some separate interest of the Sierra Club.  Counsel's hours and work would have been exactly the same whether there were three or two environmental plaintiffs.  Therefore, Sierra Club's ineligibility should not affect the Court's decision on the amount of recovery for the eligible plaintiffs.  A ruling to the contrary would amount to a windfall to the government and be contrary to the intent of EAJA to encourage parties with limited resources to utilize litigation to

rectify unreasonable government conduct.  *See* Note following 5 U.S.C. §504, Pub. L. 96-481, §202(a)(findings and purpose of EAJA), 94 Stat. 2325 (21 Oct. 1980).  The Alliance to Save the Mattaponi and CBF should not be penalized simply because they allied themselves with an ineligible party.  To ensure that these smaller organizations are given full and fair access to the court system, in accordance with the purpose of EAJA, they should be entitled to a full recovery of attorneys' fees and expenses.

## CONCLUSION

For the reasons set forth above, plaintiffs are entitled to an award of reasonable attorneys' fee and expenses in the total amount of $356,435.42.

Dated this 30th day of July 2009.          Respectfully submitted,

/s/ Deborah M. Murray
Deborah M. Murray (D.C. Bar. 362563)
Southern Environmental Law Center
201 West Main Street, Suite 14
Charlottesville, VA   22902
434.977.4090
*Counsel for the Alliance to Save the Mattaponi, et al.*

/s/ Jon A. Mueller
Jon A. Mueller
Chesapeake Bay Foundation, Inc.
6 Herndon Avenue
Annapolis, MD   21403
410. 268.8816
*Co-Counsel for Plaintiff*
*Chesapeake Bay Foundation, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on 30 July 2009, I electronically filed Petitioners' Application for Fee Award and Expenses under the Equal Access to Justice Act with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties in this matter.

I also hereby certify that on 30 July 2009, true and correct copies of Petitioners' Application for Fee Award and Expenses under the Equal Access to Justice Act were served by first-class mail, postage prepaid, properly addressed to the following counsel who do not receive electronic notification of filings:

M. Scott Hart
Troutman Sanders LLP
222 Central Park Avenue
Suite 2000
Virginia Beach, VA 23462

James E. Ryan, Jr.
George A. Somerville
Lynne F. Rhode
Troutman Sanders LLP
PO Box 1122
Richmond, VA 23218-1122

Stuart E. Katz, City Attorney
Allen L. Jackson, Chief Deputy City Attorney
City of Newport News
2400 Washington Avenue
Newport News, VA   23607

Pat M. Falcigno
Office of Counsel
North Atlantic Division
U.S. Army Corps of Engineers
Fort Hamilton
302 General Lee Avenue
Brooklyn, NY   11252-6700

*/s/ Deborah M. Murray*