UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE TO SAVE THE MATTAPONI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br><br> Defendants. | Civil Action 06-01268 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Alliance to Save the Mattaponi ("Alliance"), Chesapeake Bay Foundation, Inc., Sierra Club, Virginia Chapter, and plaintiff-intervenors Carl T. Lone Eagle Custalow, chief of the Mattaponi Indian Tribe ("Tribe"), and the Tribe (collectively, "plaintiffs"), brought this action against the United States Army Corps of Engineers ("Corps"), the United States Environmental Protection Agency ("EPA"), and against Peter Green, Secretary of the Army and Robert L. Van Antwerp, Chief of Engineers and Commanding General of the Corps, in their official capacities (collectively, "federal defendants"). The City of Newport News, Virginia ("Newport News") also intervened as a defendant. Before the Court is the federal defendants' objection [Dkt. # 118] to the Report and Recommendation [Dkt. # 117] issued by Magistrate Judge John M. Facciola concerning plaintiffs' request for attorneys' fees. Upon consideration of plaintiffs' motions for attorneys' fees, the Report and Recommendation, the objection thereto,

and the record of this case, the Court adopts Judge Facciola's Report and Recommendation in substantial part.[1]

## I.  BACKGROUND

Plaintiffs challenged a permit issued by the Corps to Newport News for the construction of the King William Reservoir ("Reservoir Project"), as well as the EPA's failure to veto the permit.  On March 31, 2009, on cross-motions for summary judgment, this Court found in part for plaintiffs and in part for the federal defendants, holding that both the Corps and the EPA acted arbitrarily and capriciously with respect to the permit.  *See Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 606 F. Supp. 2d 121 (D.D.C. 2009) ("*Alliance II*").  As a remedy, the Court ordered that the case be remanded to the Corps and the EPA for further proceedings consistent with the Court's memorandum opinion.  *See* Order of Mar. 31, 2009 [Dkt. # 89].

Plaintiffs subsequently moved for attorneys' fees and costs [Dkt. ## 101, 103, 107, 108] which were referred to Magistrate Judge Facciola for his consideration pursuant to Local Rule 72.3 [Dkt. # 113].  Judge Facciola concluded that plaintiffs are entitled to attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), because the federal defendants' positions in this action were not substantially justified.  Judge Facciola, however, did not calculate the amount of fees and costs owed.  He instead recommended that the Court first indicate whether it agrees with his determination that the federal defendants' positions were not substantially justified.

---

[1] Under Local Rule 72.3, "[a] district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made."  LCvR 72.3(c).

The federal defendants object to Judge Facciola's recommendation, and their objection is now pending before the Court.

## II. ANALYSIS

**A.    Legal Standard**

The EAJA allows parties who prevail in civil actions against the United States to recover reasonable attorneys' fees and costs, provided that the position of the United States is not substantially justified. *Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 325 (D.C. Cir. 2004) (per curiam).[2] The "position of the United States" refers both to "the position taken by the United States in the civil action," and to "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(1)(B). "A position is substantially justified if the underlying agency action and the legal arguments in defense of the action had a reasonable basis both in law and fact." *Hill v. Gould*, 555 F.3d 1003, 1006 (D.C. Cir. 2009) (internal quotation marks omitted). "That standard demands more than mere non-frivolousness, but less than a showing that the government's decision to litigate was based on a substantial probability of prevailing." *Id.* (internal quotation marks omitted).

Although the inquiry into reasonableness may not "collapse[] into [the] antecedent evaluation of the merits," *Cooper v. U.S. R.R. Ret. Bd.*, 24 F.3d 1414, 1416 (D.C. Cir. 1994), the United States' position on the merits "obviously plays an important role in a substantial justification evaluation." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005). A party is therefore not entitled to attorneys' fees merely because the United States was found to

---

[2]    The party claiming attorneys' fees must also be the "prevailing party." 28 U.S.C. § 2412(a)(1). Here, plaintiffs' prevailing party status is conceded.

have acted arbitrarily and capriciously in the underlying action. *Fed. Election Comm'n v. Rose*, 806 F.2d 1081, 1087 (D.C. Cir. 1986).

**B.     Whether Federal Defendants' Positions Were Substantially Justified**

Judge Facciola concluded that the federal defendants' positions with respect to the permit were not substantially justified. In particular, he determined that: (1) the Corps' actions in analyzing alternatives to granting the permit under the relevant regulations were not substantially justified; (2) the Corps' conclusion that the Reservoir Project would not cause significant degradation of the waters was not substantially justified; (3) the Corps' determination that the permit was in the public interest was not substantially justified; and (4) the EPA's failure to veto the permit and its defense of this failure were not substantially justified. As explained below, the Court agrees with Judge Facciola's determination with respect to the first three issues and adopts the portions of the report addressing those issues. The Court disagrees, however, with part of Judge Facciola's treatment of whether the EPA's position was substantially justified.

The federal defendants object generally to Judge Facciola's conclusions that their positions were not substantially justified. In addition, they make three specific objections to the report. First, they maintain that Judge Facciola erred in failing to give significance to the Court's determination to remand the permit matter to the Corps, rather than vacating the permit. United States' Objection to the Magistrate Judge's Report & Recommendation ("Objection") at 2–4. Second, they argue that the report is flawed "to the extent that it is based on the assumption that the Court found the Corps had entirely failed to consider any alternatives to the Reservoir." *Id.* at 4. Third, they contend that the Report and Recommendation is mistaken "[t]o the extent

that the Recommendation concludes that Section 404(c) [of the Clean Water Act] contains a 'Congressional demand . . . that the agency has to do something.'" *Id.* at 4–5.

The Court now turns to each of Judge Facciola's conclusions, addressing the federal defendants' specific objections where relevant. With respect to each of the specific objections, the Court finds the federal defendants' arguments to be without merit.

### 1. The Corps' Conduct in Considering Alternatives Was Not Substantially Justified

Section 404 of the Clean Water Act ("CWA") authorizes the Secretary of the Army to issue permits for the discharge of dredged or fill material into waters of the United States when certain conditions are met. 33 U.S.C. § 1311(a). When it reviews a permit application, the Corps must follow binding guidelines established by the Corps and the EPA (the "Guidelines"), which are codified at 40 C.F.R. Part 230. *See* 33 U.S.C. § 1344(b). In relevant part, the Guidelines prohibit the permitting of projects where there "is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a). In *Alliance II*, the Court found the Corps' actions to have been arbitrary and capricious because, *inter alia*, the Corps did not adequately explain why the Reservoir Project was the least damaging alternative. *Alliance II*, 606 F. Supp. 2d at 129–30. In particular, the Court found fault with the Corps' failure to address changed water-need projections and the higher costs of the Reservoir Project, as well as the Corps' "vague explanations" that other options "may" have harmful effects. *Id.* In his Report and Recommendation, Judge Facciola determined that the Corps' position in assessing practicable alternatives was not substantially justified.

The federal defendants contend that Judge Facciola erred to the extent that he based his conclusion regarding substantial justification on a determination that the Corps "never considered alternatives." Report & Recommendation at 13.  The Court disagrees.  In context it is clear that Judge Facciola meant to say that the Corps failed to consider alternatives in the manner required by the statute and regulations.  Indeed, Judge Facciola quoted the portion of *Alliance II* in which the Court found fault with the Corps' efforts to explain away other alternatives.  *See id.* at 12 (quoting *Alliance II*, 606 F. Supp. 2d at 130, for its holding that before the Corps determines that "a project that would flood 403 acres of functioning wetlands is the least-damaging practicable alternative, [it] must do more than give vague explanations about the potential adverse effects of or potential political opposition to other alternatives").  Thus, Judge Facciola's determination that the Corps' position lacked substantial justification rests on his understanding that the Corps did not consider alternatives in the manner required by the statute and regulations, and not on the mistaken notion that the Corps "never considered alternatives" at all.  The Court therefore overrules the federal defendants' objection to this portion of Judge Facciola's report, and adopts this portion of the report for the reasons set forth therein.

**2.     The Corps' Assessment of Degradation Was Not Substantially Justified**

The CWA prohibits the Corps from issuing section 404 permits if the proposed discharge of dredged or fill material "will cause or contribute to significant degradation of the waters of the United States." 40 C.F.R. § 230.10(c).  As set forth above, the Corps concluded that the Reservoir Project would not cause significant degradation, and Judge Facciola determined that the Corps lacked substantial justification in so concluding.  The federal defendants have not made any specific objections to this portion of Judge Facciola's report.  Because the federal

defendants have failed to identify any flaws in Judge Facciola's reasoning, and because the Court agrees with his analysis, the Court adopts Judge Facciola's determination that the Corps lacked substantial justification in concluding that the Reservoir Project would not cause significant degradation.

### 3. The Corps' Public Interest Determination Was Not Substantially Justified

In *Alliance II*, the Court held that the Corps acted arbitrarily and capriciously in determining that issuance of the permit complied with the Corps' public interest requirement, which prohibits the issuance of a section 404 permit if the "district engineer determines that it would be contrary to the public interest." 606 F. Supp. 2d at 136 (citing 33 C.F.R. § 320.4(a)). In his Report and Recommendation, Judge Facciola concluded that the Corps' public interest determination was not substantially justified. Because the Court agrees with Judge Facciola's reasoning, and because the federal defendants have not identified any specific objections, the Court adopts this portion of the Report and Recommendation for the reasons stated therein.

### 4. The EPA's Actions in Allowing the Permit Were Not Substantially Justified, But its Litigation Position Regarding the Court's Jurisdiction Was

Section 404(c) of the CWA authorizes the EPA to veto permits that will "have an unacceptable adverse effect on [the aquatic environment]." 33 U.S.C. § 1344(c). In *Alliance II*, the Court held that the EPA acted arbitrarily and capriciously by considering factors outside the scope of its statutory authority when it decided not to veto the permit. 606 F. Supp. 2d at 140. Specifically, the EPA's decision not to veto the permit was based on the Regional Administrator's findings that: (1) notice and comment proceedings would divert resources; (2) such a process would be unlikely to add any new information; (3) the water supply shortage

needed to be addressed; and (4) any permit would likely result in litigation regardless, among other factors. *Id.*

After this dispute moved into litigation, the EPA argued that the Court lacked subject matter jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to review the EPA's failure to veto. First, at the motion to dismiss stage, the EPA argued that its decision to not exercise its veto authority amounted to "inaction" and was not reviewable under the APA because the issue was "committed to agency discretion by law." United States' Partial Mot. to Dismiss [Dkt. # 24] at 11. The Court did not agree, holding that the EPA's decision was reviewable under the APA and that the statutory criterion for whether the discharge would have an "unacceptable adverse effect" was the standard against which to judge the agency's failure to veto the permit. *Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 8–9 (D.D.C. 2007) ("*Alliance I*"). Next, federal defendants moved for reconsideration, arguing that the Court could not review any question other than the EPA's failure to initiate the process necessary to make the statutory determination of whether to veto the permit—a motion that the Court denied without comment. *See* U.S. EPA's Mot. for Partial Recons. [Dkt. # 39]; Order of July 17, 2007 [Dkt. # 47]. Finally, at the summary judgment stage, the EPA briefly renewed its argument that the permitting process is "committed to agency discretion by law." *See* United States' Mot. for Summ. J. [Dkt. # 76] at 52. The agency also renewed its alternative argument that judicial review is limited to considering the EPA's decision not to initiate the veto process. *Id.* at 52–53. In *Alliance II*, the Court reaffirmed that the EPA's conduct was subject to

judicial review and rejected the agency's attempt to redefine the scope of the Court's review. 606 F. Supp. 2d at 140.[3]

Plaintiffs maintain that the EPA was not substantially justified in reviving its jurisdiction-related arguments, given the Court's repeated rejection of those arguments. The federal defendants disagree. They argue that the "existence or nonexistence of subject matter jurisdiction over a claim is a critical threshold question that confronts any federal court," and that the EPA was not as repetitive as plaintiffs would suggest. United States' Opp'n to Pls.' and Pl.-Intervenors' Pets. for Fees and Costs ("Defs.' Opp'n") [Dkt. # 104] at 12.

In his Report and Recommendation, Judge Facciola found the federal defendants' arguments unavailing. Judge Facciola determined that the EPA's position was not substantially justified because the agency "disregarded its statutory obligations." Report & Recommendation at 23. In addition, he found the EPA's litigation position to be unreasonable because, contrary to the agency's arguments, the CWA makes clear that the decision to veto a permit must be based on the standards outlined in the statute. *Id.* at 22.

The Court agrees with Judge Facciola that the EPA's position was not substantially justified at the agency stage. For the reasons he stated, it was not reasonable for the EPA to rely on factors outside of the agency's statutory authority. This conclusion is bolstered by the fact

---

[3] In addition, the EPA raised related arguments in opposing plaintiffs' motions to compel the agency to provide an administrative record. Specifically, the EPA argued that there was no administrative record to produce because its failure to veto the permit involved discretionary authority. Consequently, the EPA contended, it did not "prepare a decision document or other memorialization of this choice." Defs.' Opp'n to Mot. to Compel [Dkt. # 60] at 2. Because the EPA's arguments related to the existence of an administrative record, the Court does not find them relevant to the issue of whether the EPA was substantially justified in making jurisdiction-related arguments during the litigation phase.

that, in opposing plaintiffs' fee petition, the federal defendants have not even attempted to justify the EPA's position at the agency stage. *See F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996) ("The Government bears the burden of establishing that its position was substantially justified.").

Regarding the EPA's jurisdiction-related arguments at the litigation stage, however, the Court cannot agree with Judge Facciola's conclusion. Plaintiffs' arguments regarding the EPA's litigation position focus on the fact that the EPA pressed jurisdictional arguments on multiple occasions. The Court does not believe that the EPA was so unduly repetitive as to be unreasonable. The EPA's arguments at the different stages of this case raised different issues. In moving to dismiss, the EPA argued that the Court lacked jurisdiction under the APA entirely. In moving for reconsideration, the EPA put forward arguments regarding the precise nature of APA review. Especially because the Court denied that motion without comment, it was not unreasonable for the EPA to renew this argument at the summary judgment stage.

Nor, on the merits, did the EPA's arguments lack substantial justification. Although the Court repeatedly rejected them, under the EAJA, "the question is not whether the [agency] had the better arguments." *Hill*, 555 F.3d at 1007. Rather, the question is whether the agency's "arguments had a reasonable basis in fact and in the text and purpose of the controlling statute." *Id.* The EPA's argument that the APA did not confer subject matter jurisdiction over this action, while flawed, did not lack substantial justification. In so arguing, the EPA contended, *inter alia*, that its permit review authority was "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2). In *Heckler v. Chaney,* 470 U.S. 821, 832 (1985), the Supreme Court held that this exception to the general presumption of judicial review is particularly appropriate in cases

involving an agency's decision not to prosecute or enforce. Here, the EPA argued unsuccessfully that its failure to veto the permit fell within the *Chaney* exception. Although the Court rejected this argument, *Alliance I*, 515 F. Supp. 2d at 10, the EPA's position was not unreasonable.

As to the EPA's argument that judicial review should be limited to its decision not to initiate the veto process, the EPA made this argument based on a careful (though mistaken) reading of its regulations. This argument, too, "had a reasonable basis both in law and fact." *Hill*, 555 F.3d at 1006 (internal quotation marks omitted).

Thus, the Court agrees with Judge Facciola that the EPA's position was not substantially justified at the agency stage. The Court, however, does not agree with Judge Facciola that the EPA's jurisdiction-related arguments lacked substantial justification at the litigation stage.

5. **Federal Defendants' Objection Regarding Congressional Demand that the EPA "Do Something"**

As set forth above, section 404(c) of the CWA authorizes the EPA to veto section 404 permits that "will have an unacceptable adverse effect on [the aquatic environment]." 33 U.S.C. § 1344(c). *Alliance II* concluded that the EPA acted arbitrarily and capriciously by considering factors outside the scope of its statutory authority when it decided not to veto the permit. 606 F. Supp. 2d at 139–41. In his Report and Recommendation, Judge Facciola found that the EPA's position was not substantially justified because the agency did not abide by the CWA's command that the EPA's discretion be constrained "to a specific statutory standard." Report & Recommendation at 22.

The federal defendants contend that the Report and Recommendation is flawed because it suggests that the CWA "contains a 'Congressional demand . . . that the agency has to do

11

something.'"  Objection at 5 (quoting Report & Recommendation at 22).  This argument must be rejected, as Judge Facciola did not reach such a conclusion.  The relevant sentence in the report states in full: "Put another way, the agency's interpretation is that Congress gave it *carte blanche* to do nothing, when the Congressional demand is clear that the agency has to do something." Report & Recommendation at 22.  Read in relationship to other sentences in the same paragraph, the "something" that Judge Facciola found the EPA must "do" is to base its decision whether to veto a permit "on the factors identified in the statute."  *Id.*  This is consistent with the Court's opinion in *Alliance II*, and cannot be reasonably read as stating that the EPA must generally "do something."  Accordingly, the Court does not accept the federal defendants' invitation to decline to adopt the disputed phrase from the Report and Recommendation.

### 6.     Federal Defendants' Objection Regarding the Decision to Remand

After finding the Corps' and the EPA's conduct regarding the permit to be arbitrary and capricious, the Court remanded the case to the Corps and the EPA for further proceedings.  The federal defendants argue that "[t]he fact that the Court left the Permit in place should satisfy a reasonable person that the Corps' action in issuing the Permit, EPA's action in not vetoing it, and the United States' defense of both agencies were justified."  Defs.' Opp'n at 9.  The federal defendants further describe the remand as a "limited relief," and argue that, as such, it should "weigh heavily in the Court's consideration of the United States' 'substantial justification' defense."  *Id.* at 8–9.  Judge Facciola rejected this argument, stating that the Court's decision to remand rather than vacate the permit "has absolutely nothing to do with whether the position that the government took . . . was substantially justified."  Report & Recommendation at 9.

The Court agrees. Nowhere does the *Alliance II* opinion indicate that the Court chose to remand because remand is a form of limited relief, or because the Corps' actions were justified. *See generally Alliance II*, 606 F. Supp. 2d 121. Judge Facciola is correct that the Court's chosen remedy does not bear on whether the federal defendants' position was substantially justified.[4]

### III.  CONCLUSION

The Court adopts Judge Facciola's findings that: (1) the Corps' actions in analyzing alternatives to granting the permit under the relevant regulations were not substantially justified; (2) the Corps' conclusion that the Reservoir Project would not cause significant degradation of the waters was not substantially justified; (3) the Corps' determination that the permit was in the public interest was not substantially justified; and (4) the EPA's failure to veto the permit was not substantially justified. The Court does not, however, adopt Judge Facciola's conclusion that the EPA's litigation position regarding the scope and availability of judicial review lacked substantial justification.

For the reasons stated above, plaintiffs and plaintiff-intervenors are entitled to their attorneys' fees and costs. Consequently, their motions for attorneys' fees and costs [Dkt. ## 101, 103, 107, 108] are granted in part and are resubmitted to Magistrate Judge Facciola for his Report and Recommendation as to the amount of the fees and costs.

---

[4] The federal defendants further object to Judge Facciola's report for failing to find that the Court could have both remanded and vacated. They contend that Judge Facciola erroneously suggests that the Court had to choose one remedy over another. The federal defendants misread the report. The Report and Recommendation concludes that the Court's decision to "choose one remedy, remand, over another, vacating the permit," has no effect on the significance of the Court's conclusion that the agency's action was arbitrary or capricious, or on the finality of the Court's conclusion. Report & Recommendation at 9. Nowhere does Judge Facciola state that a remand must be exclusive of a decision to vacate an agency decision.

      **SO ORDERED** this 13th day of September, 2011.

                                                                  Henry H. Kennedy, Jr.
                                                                   United States District Judge